02/17/2000  17:57   13056727959                    WINGS:307                    PAGE  31
02/17/00  16:55 FAX 212  554 7700        MOSES & SINGER LLP                     ☐001/033

NON-NEGOTIABLE NOTE

New York, New York
As of October 31, 1999

FOR VALUE RECEIVED, Marco Destin, Inc. ("Maker"), having an address at 10400
N.W. 33rd St., Miami, Florida hereby promises to pay to L&L Wings, Inc. ("Payee"), having an
address at 18 E. 42nd St., New York, N.Y., or such other address as may be designated by Payee
by written notice to Maker, the sum of $2,322,310, with interest at the per annum rate of 6.31 per
cent.

The Note shall be payable in ten equal annual installments of principal and interest in the
amount of $320,177.94, commencing October 31, 2000, and continuing on each anniversary of
such date thereafter until October 31, 2009, when the remaining unpaid amount of the Note and
accrued interest shall be due and payable.

This Note may be prepaid in whole or in part, at any time.

This Note shall be governed by and be enforceable in accordance with the laws of the
State of New York applicable to contracts made and to be performed wholly within such State.

This Note may not be modified, orally or otherwise, except by a writing duly executed by
the Payee and the Maker.

Marco Destin, Inc.

By _____

136033v3

MD 00061
MARCO/L&L WINGS

02/17/2000  17:57    13056727959                    WINGS: 307                      PAGE  11
02/17/00  16:50 FAX 212  554 7700        MOSES & SINGER LLP                        ☒011/033

### NON-NEGOTIABLE NOTE

New York, New York
As of October 31, 1999

FOR VALUE RECEIVED, Panama Surf & Sport Inc. ("Maker"), having an address at 10400 N.W. 33rd St., Miami, Florida hereby promises to pay to L&L Wings, Inc. ("Payee"), having an address at 18 E. 42nd St., New York, N.Y., or such other address as may be designated by Payee by written notice to Maker, the sum of $24,000, with interest at the per annum rate of 6.31 per cent.

The Note shall be payable in ten equal annual installments of principal and interest in the amount of $3,308.89, commencing October 31, 2000, and continuing on each anniversary of such date thereafter until October 31, 2009, when the remaining unpaid amount of the Note and accrued interest shall be due and payable.

This Note may be prepaid in whole or in part, at any time.

This Note shall be governed by and be enforceable in accordance with the laws of the State of New York applicable to contracts made and to be performed wholly within such State.

This Note may not be modified, orally or otherwise, except by a writing duly executed by the Payee and the Maker.

Panama Surf & Sport, Inc.

By _____

236037v3

MD 00062
MARCO/L&L WINGS

02/17/2000  17:57   13056727959              WINGS: 307                    PAGE  16
  02/17/00  16:51 FAX 212  554 7700     MOSES & SINGER LLP                    ☑016/033

## NON-NEGOTIABLE NOTE

New York, New York
As of October 31, 1999

FOR VALUE RECEIVED, 1000 Highway 98 East Corp. ("Maker"), having an address at 10400 N.W. 33ʳᵈ St., Miami, Florida hereby promises to pay to L&L Wings, Inc. ("Payee"), having an address at 18 E. 42ⁿᵈ St., New York, N.Y., or such other address as may be designated by Payee by written notice to Maker, the sum of $1,355,988, with interest at the per annum rate of 6.31 per cent.

The Note shall be payable in ten equal annual installments of principal and interest in the amount of $186,950.68, commencing October 31, 2000, and continuing on each anniversary of such date thereafter until October 31, 2009, when the remaining unpaid amount of the Note and accrued interest shall be due and payable.

This Note may be prepaid in whole or in part, at any time.

This Note shall be governed by and be enforceable in accordance with the laws of the State of New York applicable to contracts made and to be performed wholly within such State.

This Note may not be modified, orally or otherwise, except by a writing duly executed by the Payee and the Maker.

1000 Highway 98 East Corp.

By: _____

736035v2

MD 00063
MARCO/L&L WINGS

02/17/2000  17:57   13056727959              WINGS: 387              PAGE 13
  02/17/00  16:50 FAX 212  654 7700      MOSES & SINGER LLP              ⌀013/033

## NON-NEGOTIABLE NOTE

New York, New York
As of October 31, 1999

FOR VALUE RECEIVED, E&T Inc. ("Maker"), having an address at 10400 N.W. 33rd St., Miami, Florida hereby promises to pay to L&L Wings, Inc. ("Payee"), having an address at 18 E. 42nd St., New York, N.Y., or such other address as may be designated by Payee by written notice to Maker, the sum of $341,702, with interest at the per annum rate of 6.31 per cent.

The Note shall be payable in ten equal annual installments of principal and interest in the amount of $47,110.61, commencing October 31, 2000, and continuing on each anniversary of such date thereafter until October 31, 2009, when the remaining unpaid amount of the Note and accrued interest shall be due and payable.

This Note may be prepaid in whole or in part, at any time.

This Note shall be governed by and be enforceable in accordance with the laws of the State of New York applicable to contracts made and to be performed wholly within such State.

This Note may not be modified, orally or otherwise, except by a writing duly executed by the Payee and the Maker.

E&T Inc.

By: _____

2360364v3

MD 00064
MARCO/L&L WINGS

**11**

MD 00065
MARCO/L&L WINGS

CONSULTING AGREEMENT
(MARCO DESTIN, INC.)

This Consulting Agreement dated as of October 31, 1999 by and between L & L Wings, Inc., a South Carolina corporation (the "Company"), having its principal office at 18 E. 42ⁿᵈ Street, New York, N.Y., and Marco Destin, Inc. (the "Consultant"), having an address at 10400 N.W. 33ʳᵈ St., Miami, Florida.

P R E A M B L E

The Company and its affiliates sell at retail clothing and related merchandise in various locations in, inter alia, the Southern United States. The Consultant and its executives have become expert in the management and operation of the industry in the Southern United States area. The Company desires to make available to its officers and those of its affiliates the consulting services of Consultant and its executives and Consultant is willing to make the same available from time to time, all on the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the premises and the mutual covenants contained herein and for other good and valuable consideration heretofore or simultaneously with the execution hereof furnished by each party to the other, the sufficiency of which the parties hereby acknowledge, the parties hereto hereby agree as follows:

1.     Consulting.

The Company hereby retains Consultant and Consultant hereby agrees to provide its executives to consult with the Company and its executives (and those of its affiliates) for the period set forth in Section 2 hereof, subject to and upon the other terms and conditions herein provided.

2.     Term of Consulting.

The period of Consultant's consulting under this Agreement shall commence as of the date hereof and shall continue thereafter until October 31, 2009 (the "Term"). In the event that the Consultant continues to consult with the Company after the end of the Term, such continued employment shall be subject to such terms and conditions as the Company and the Consultant may then agree.

3.     Responsibilities and Duties.

(a)     During the period of his retention hereunder, Consultant agrees to provide its executives to consult with the Company and its executives (and those of its affiliates) at their request given to it from time to time and upon reasonable notice (and, in this connection,

235983v3

MD 00066
MARCO/L&L WINGS

taking into account the reasonable needs of the Consultant for the services of its executives in its own business). Consultant and its executives shall not be required as a condition of its compensation to render any minimum level of consultation during any period , it being understood and agreed that Consultant shall render its services through its executives only as requested by the Company and its affiliates hereunder and further that such services shall be rendered by Consultant and its executives solely within (or from) the State of Florida and finally that Consultant has in the past furnished other services and other good and sufficient consideration for the obligations of the Company hereunder in addition to its undertakings hereunder. Any travel or other expenses required of Consultant and its executives (for example, for travel to the Company's stores in North and South Carolina) to render services hereof shall be at the sole expense of the Company and shall be payable upon presentation of suitable documentation therefor by Consultant.

      (b)    This Agreement shall not be deemed to create any employer-employee relationship or joint venture.

    4.    <u>Compensation</u>.

      (a)    For all services rendered by Consultant and its executives during its retention hereunder, the Company shall pay to Consultant the annual amount of $320,177.94 during the Term, payable in arrears annually on each anniversary date hereof, the final payment to be due on October 31, 2009.

    5.    <u>Death or Disability; Merger etc</u>.

      (a)    In the event that by reason of any death or disability of its executives, Consultant shall be unable to perform its duties hereunder, it shall, nevertheless, be entitled to continue to receive the compensation due hereunder until the end of the Term on October 31, 2009.

      (b) In the event of any merger, consolidation, sale or liquidation of Consultant during the term, the Company shall continue to pay to Consultant's successors or assigns (including but not limited to its shareholders) designated by written notice to the Company, its annual compensation otherwise due hereunder and such compensation shall not cease until the end of the Term on October 31, 2009. If Consultant is a surviving entity in any merger or consolidation or other such transaction it shall endeavor to continue to make its executives available hereunder but its compensation hereunder shall in no event cease until the end of the Term on October 31, 2009.

    6.    <u>Binding Agreement</u>.

    This Agreement shall be binding upon, and inure to the benefit of, Consultant and the Company and their respective, successors and assigns. Neither the Company nor the Consultant may assign or otherwise encumber this Agreement or any rights or obligations of such party hereunder without the prior written consent of the other party.

**MD 00067**
**MARCO/L&L WINGS**

7.   Modification and Waiver.

   (a)   Amendment of Agreement.  This Agreement may not be modified or amended, terminated or cancelled except by a written instrument signed by the parties hereto.

   (b)   Waiver.  No term or condition of this Agreement shall be deemed to have been waived, nor shall there be any estoppel against the enforcement of any provision of this Agreement, except by written instrument of the party charged with such waiver or estoppel. No such written waiver shall be deemed a continuing waiver unless specifically stated therein, and each such waiver shall operate only as to the specific term or condition waived and shall not constitute a waiver of such term or condition for the future or as to any act other than that specifically waived.

8.   Severability.

   If, for any reason, any provision of this Agreement is held invalid, such invalidity shall not affect any other provision of this Agreement not held so invalid, and each such other provision shall to the full extent consistent with law continue in full force and effect.

9.   Headings.

   The headings of the Sections herein are included solely for convenience of reference and shall not control the meaning or interpretation of any of the provisions of this Agreement.

10.   Governing Law.

   This Agreement shall be governed solely by the laws of the State of New York without giving effect to any conflict of laws provisions thereof. Any and all matters of dispute between the parties hereunder or in connection herewith shall be resolved in New York County, New York State by arbitration before the American Arbitration Association and shall include the jurisdiction in the federal courts of the Southern District of New York and of the state courts of the State of New York in New York County to enforce such arbitration and/or confirm any award thereof. The parties hereby consent to jurisdiction as set forth herein. Furthermore, notwithstanding the foregoing, in the event of a timely objection to arbitration, either party may commence a proceeding in Supreme Court of the State of New York and County of New York and/or Federal District Court for the Southern District of New York.

11.   Notices.

   Any notices or other communications to be given hereunder shall be deemed to have been given if delivered personally to the party to which directed, or if mailed, then by registered or certified mail, return receipt requested, directed to the address of the party first hereinabove set forth. Any party may change his or its address for purposes of this Section 11 by giving written notice thereof hereunder.

235983v3                              3

MD 00068
MARCO/L&L WINGS

12.    Due Authorization.

The Company hereby warrants and represents to the Consultant that the execution, delivery and performance hereof by the Company has been duly authorized by all requisite or appropriate corporate and shareholder action.

13.    Attorneys' Fees.

In the event that it shall be necessary for either party hereto to retain legal counsel and/or incur other costs and expenses in connection with the enforcement hereof whether by a judicial action or proceeding or by arbitration, such party shall to the extent it shall prevail (whether by settlement or by judicial or arbitral action or otherwise) be entitled to recover from the other party such first party's reasonable attorneys' fees and costs and expenses in connection with such enforcement.

IN WITNESS WHEREOF, the Company and the Consultant have caused this Agreement to be executed by their officers thereunto duly authorized, in the City of New York as of the day and year first above written.

L & L Wings, Inc.

By: _____

Marco Destin, Inc.

By: _____

235983v3                                    4

MD 00069
MARCO/L&L WINGS

CONSULTING AGREEMENT
(PANAMA SURF & SPORT, INC.)


This Consulting Agreement dated as of October 31, 1999 by and between L & L Wings, Inc., a South Carolina corporation (the "Company"), having its principal office at 18 E. 42nd Street, New York, N.Y., and Panama Surf & Sport, Inc. (the "Consultant"), having an address c/o Marco Destin, Inc. at 10400 N.W. 33rd St., Miami, Florida.


P R E A M B L E


The Company and its affiliates sell at retail clothing and related merchandise in various locations in, inter alia, the Southern United States. The Consultant and its executives have become expert in the management and operation of the industry in the Southern United States area. The Company desires to make available to its officers and those of its affiliates the consulting services of Consultant and its executives and Consultant is willing to make the same available from time to time, all on the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the premises and the mutual covenants contained herein and for other good and valuable consideration heretofore or simultaneously with the execution hereof furnished by each party to the other, the sufficiency of which the parties hereby acknowledge, the parties hereto hereby agree as follows:

1.    Consulting.

The Company hereby retains Consultant and Consultant hereby agrees to provide its executives to consult with the Company and its executives (and those of its affiliates) for the period set forth in Section 2 hereof, subject to and upon the other terms and conditions herein provided.

2.    Term of Consulting.

The period of Consultant's consulting under this Agreement shall commence as of the date hereof and shall continue thereafter until October 31, 2009 (the "Term"). In the event that the Consultant continues to consult with the Company after the end of the Term, such continued employment shall be subject to such terms and conditions as the Company and the Consultant may then agree.


3.    Responsibilities and Duties.

(a)    During the period of his retention hereunder, Consultant agrees to provide its executives to consult with the Company and its executives (and those of its affiliates) at their request given to it from time to time and upon reasonable notice (and, in this connection,

236093v2

MD 00070
MARCO/L&L WINGS

taking into account the reasonable needs of the Consultant for the services of its executives in its own business). Consultant and its executives shall not be required as a condition of its compensation to render any minimum level of consultation during any period , it being understood and agreed that Consultant shall render its services through its executives only as requested by the Company and its affiliates hereunder and further that such services shall be rendered by Consultant and its executives solely within (or from) the State of Florida and finally that Consultant has in the past furnished other services and other good and sufficient consideration for the obligations of the Company hereunder in addition to its undertakings hereunder. Any travel or other expenses required of Consultant and its executives (for example, for travel to the Company's North and South Carolina stores) to render services hereof shall be at the sole expense of the Company and shall be payable upon presentation of suitable documentation therefor by Consultant.

(b)    This Agreement shall not be deemed to create any employer-employee relationship or joint venture.

4.    Compensation.

(a)    For all services rendered by Consultant and its executives during its retention hereunder, the Company shall pay to Consultant the annual amount of $3,308.89 during the Term, payable in arrears annually on each anniversary date hereof, the final payment to be due on October 31, 2009.

5.    Death or Disability; Merger etc.

(a)    In the event that by reason of any death or disability of its executives, Consultant shall be unable to perform its duties hereunder, it shall, nevertheless, be entitled to continue to receive the compensation due hereunder until the end of the Term on October 31, 2009.

(b) In the event of any merger, consolidation, sale or liquidation of Consultant during the term, the Company shall continue to pay to Consultant's successors or assigns (including but not limited to its shareholders) designated by written notice to the Company, its annual compensation otherwise due hereunder and such compensation shall not cease until the end of the Term on October 31, 2009. If Consultant is a surviving entity in any merger or consolidation or other such transaction it shall endeavor to continue to make its executives available hereunder but its compensation hereunder shall in no event cease until the end of the Term on October 31, 2009.

6.    Binding Agreement.

This Agreement shall be binding upon, and inure to the benefit of, Consultant and the Company and their respective, successors and assigns. Neither the Company nor the Consultant may assign or otherwise encumber this Agreement or any rights or obligations of such party hereunder without the prior written consent of the other party.

236093v2

2

7.    Modification and Waiver.

(a)    Amendment of Agreement.  This Agreement may not be modified or amended, terminated or cancelled except by a written instrument signed by the parties hereto.

(b)    Waiver.  No term or condition of this Agreement shall be deemed to have been waived, nor shall there be any estoppel against the enforcement of any provision of this Agreement, except by written instrument of the party charged with such waiver or estoppel. No such written waiver shall be deemed a continuing waiver unless specifically stated therein, and each such waiver shall operate only as to the specific term or condition waived and shall not constitute a waiver of such term or condition for the future or as to any act other than that specifically waived.

8.    Severability.

If, for any reason, any provision of this Agreement is held invalid, such invalidity shall not affect any other provision of this Agreement not held so invalid, and each such other provision shall to the full extent consistent with law continue in full force and effect.

9.    Headings.

The headings of the Sections herein are included solely for convenience of reference and shall not control the meaning or interpretation of any of the provisions of this Agreement.

10.    Governing Law.

This Agreement shall be governed solely by the laws of the State of New York without giving effect to any conflict of laws provisions thereof. Any and all matters of dispute between the parties hereunder or in connection herewith shall be resolved in New York County, New York State by arbitration before the American Arbitration Association and shall include the jurisdiction in the federal courts of the Southern District of New York and of the state courts of the State of New York in New York County to enforce such arbitration and/or confirm any award thereof. The parties hereby consent to jurisdiction as set forth herein.  Furthermore, notwithstanding the foregoing, in the event of a timely objection to arbitration, either party may commence a proceeding in Supreme Court of the State of New York and County of New York and/or Federal District Court for the Southern District of New York.

11.    Notices.

Any notices or other communications to be given hereunder shall be deemed to have been given if delivered personally to the party to which directed, or if mailed, then by registered or certified mail, return receipt requested, directed to the address of the party first hereinabove set forth. Any party may change his or its address for purposes of this Section 11 by giving written notice thereof hereunder.

236093v2                                            3

MD 00072
MARCO/L&L WINGS

02/17/2000  17:57    13056727959                    WINGS:307                                    PAGE  09
02/17/00  16:49 FAX 212  664 7700        MOSES & SINGER LLP                                      ☑010/033

12.    Due Authorization.

The Company hereby warrants and represents to the Consultant that the execution, delivery and performance hereof by the Company has been duly authorized by all requisite or appropriate corporate and shareholder action.

13.    Attorneys' Fees.

In the event that it shall be necessary for either party to retain legal counsel and/or incur other costs and expenses in connection with the enforcement hereof whether by a judicial action or proceeding or by arbitration, such party shall to the extent it shall prevail (whether by settlement or by judicial or arbitral action or otherwise) be entitled to recover from the other party such first party's reasonable attorneys' fees and costs and expenses in connection with such enforcement.

IN WITNESS WHEREOF, the Company and the Consultant have caused this Agreement to be executed by their officers thereunto duly authorized, in the City of New York as of the day and year first above written.

L & L Wings, Inc.

By: _____

Panama Surf & Sport, Inc.

By: _____

236093v2                                    4

MD 00073
MARCO/L&L WINGS

CONSULTING AGREEMENT
(1000 HIGHWAY 98 EAST CORP.)

This Consulting Agreement dated as of October 31, 1999 by and between L & L Wings, Inc., a South Carolina corporation (the "Company"), having its principal office at 18 E. 42nd Street, New York, N.Y., and 1000 Highway 98 East Corp. (the "Consultant"), having an address c/o Marco Destin, Inc. at 10400 N.W. 33rd St., Miami, Florida.

P R E A M B L E

The Company is engaged in real estate operations for its affiliates which sell at retail clothing and related merchandise in various.locations in, inter alia, the Southern United States. The Consultant and its executives have become expert in the management and operation of real estate for the retail clothing industry in the Southern United States area. The Company desires to make available to its officers and those of its affiliates the consulting services of Consultant and its executives and Consultant is willing to make the same available from time to time, all on the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the premises and the mutual covenants contained herein and for other good and valuable consideration heretofore or simultaneously with the execution hereof furnished by each party to the other, the sufficiency of which the parties hereby acknowledge, the parties hereto hereby agree as follows:

1.    Consulting.

The Company hereby retains Consultant and Consultant hereby agrees to provide its executives to consult with the Company and its executives (and those of its affiliates) for the period set forth in Section 2 hereof, subject to and upon the other terms and conditions herein provided.

2.    Term of Consulting.

The period of Consultant's consulting under this Agreement shall commence as of the date hereof and shall continue thereafter until October 31, 2009 (the "Term"). In the event that the Consultant continues to consult with the Company after the end of the Term, such continued employment shall be subject to such terms and conditions as the Company and the Consultant may then agree.

3.    Responsibilities and Duties.

(a)    During the period of his retention hereunder, Consultant agrees to provide its executives to consult with the Company and its executives (and those of its affiliates)

236094v3

MD 00074
MARCO/L&L WINGS

at their request given to it from time to time and upon reasonable notice (and, in this connection, taking into account the reasonable needs of the Consultant for the services of its executives in its own business). Consultant and its executives shall not be required as a condition of its compensation to render any minimum level of consultation during any period , it being understood and agreed that Consultant shall render its services through its executives only as requested by the Company and its affiliates hereunder and further that such services shall be rendered by Consultant and its executives solely within (or from) the State of Florida and finally that Consultant has in the past furnished other services and other good and sufficient consideration for the obligations of the Company hereunder in addition to its undertakings hereunder. Any travel or other expenses required of Consultant and its executives (for example, for travel to the Company's North and South Carolina stores) to render services hereof shall be at the sole expense of the Company and shall be payable upon presentation of suitable documentation therefor by Consultant.

      (b)     This Agreement shall not be deemed to create any employer-employee relationship or joint venture.

    4.    Compensation.

      (a)     For all services rendered by Consultant and its executives during its retention hereunder, the Company shall pay to Consultant the annual amount of $186,950.68 during the Term, payable in arrears annually on each anniversary date hereof, the final payment to be due on October 31, 2009.

    5.    Death or Disability; Merger etc.

      (a)     In the event that by reason of any death or disability of its executives, Consultant shall be unable to perform its duties hereunder, it shall, nevertheless, be entitled to continue to receive the compensation due hereunder until the end of the Term on October 31, 2009.

      (b) In the event of any merger, consolidation, sale or liquidation of Consultant during the term, the Company shall continue to pay to Consultant's successors or assigns (including but not limited to its shareholders) designated by written notice to the Company, its annual compensation otherwise due hereunder and such compensation shall not cease until the end of the Term on October 31, 2009. If Consultant is a surviving entity in any merger or consolidation or other such transaction it shall endeavor to continue to make its executives available hereunder but its compensation hereunder shall in no event cease until the end of the Term on October 31, 2009.

    6.    Binding Agreement.

This Agreement shall be binding upon, and inure to the benefit of, Consultant and the Company and their respective, successors and assigns. Neither the Company nor the Consultant may assign or otherwise encumber this Agreement or any rights or obligations of such party hereunder without the prior written consent of the other party.

MD 00075
MARCO/L&L WINGS

7.    Modification and Waiver.

(a)    Amendment of Agreement. This Agreement may not be modified or amended, terminated or cancelled except by a written instrument signed by the parties hereto.

(b)    Waiver. No term or condition of this Agreement shall be deemed to have been waived, nor shall there be any estoppel against the enforcement of any provision of this Agreement, except by written instrument of the party charged with such waiver or estoppel. No such written waiver shall be deemed a continuing waiver unless specifically stated therein, and each such waiver shall operate only as to the specific term or condition waived and shall not constitute a waiver of such term or condition for the future or as to any act other than that specifically waived.

8.    Severability.

If, for any reason, any provision of this Agreement is held invalid, such invalidity shall not affect any other provision of this Agreement not held so invalid, and each such other provision shall to the full extent consistent with law continue in full force and effect.

9.    Headings.

The headings of the Sections herein are included solely for convenience of reference and shall not control the meaning or interpretation of any of the provisions of this Agreement.

10.    Governing Law.

This Agreement shall be governed solely by the laws of the State of New York without giving effect to any conflict of laws provisions thereof. Any and all matters of dispute between the parties hereunder or in connection herewith shall be resolved in New York County, New York State by arbitration before the American Arbitration Association and shall include the jurisdiction in the federal courts of the Southern District of New York and of the state courts of the State of New York in New York County to enforce such arbitration and/or confirm any award thereof. The parties hereby consent to jurisdiction as set forth herein. Furthermore, notwithstanding the foregoing, in the event of a timely objection to arbitration, either party may commence a proceeding in Supreme Court of the State of New York and County of New York and/or Federal District Court for the Southern District of New York.

11.    Notices.

Any notices or other communications to be given hereunder shall be deemed to have been given if delivered personally to the party to which directed, or if mailed, then by registered or certified mail, return receipt requested, directed to the address of the party first hereinabove set forth. Any party may change his or its address for purposes of this Section 11 by giving written notice thereof hereunder.

236094v3                                    3

MD 00076
MARCO/L&L WINGS

02/17/2000  17:57    13056727959           WINGS:307                    PAGE  88
  02/17/00  16:49 FAX 212  554 7700      MOSES & SINGER LLP                    ☎005/033

12.    Due Authorization.

The Company hereby warrants and represents to the Consultant that the execution, delivery and performance hereof by the Company has been duly authorized by all requisite or appropriate corporate and shareholder action.

13.    Attorneys' Fees.

In the event that it shall be necessary for either party to retain legal counsel and/or incur other costs and expenses in connection with the enforcement hereof whether by a judicial action or proceeding or by arbitration, such party shall to the extent it shall prevail (whether by settlement or by judicial or arbitral action or otherwise) be entitled to recover from the other party such first party's reasonable attorneys' fees and costs and expenses in connection with such enforcement.

IN WITNESS WHEREOF, the Company and the Consultant have caused this Agreement to be executed by their officers thereunto duly authorized, in the City of New York as of the day and year first above written.

L & L Wings, Inc.

By: _____

1000 Highway 98 East Corp.

By: _____

236094v3                              4

MD 00077
MARCO/L&L WINGS

CONSULTING AGREEMENT
(E&T, INC.)

This Consulting Agreement dated as of October 31, 1999 by and between L & L Wings, Inc., a South Carolina corporation (the "Company"), having its principal office at 18 E. 42nd Street, and E&T, Inc. (the "Consultant"), having an address c/o Marco Destin, Inc. at 10400 N.W. 33rd St., Miami, Florida.

P R E A M B L E .

The Company and its affiliates sell at retail clothing and related merchandise in various locations in, inter alia, the Southern United States. The Consultant and its executives have become expert in the management and operation of the industry in the Southern United States area. The Company desires to make available to its officers and those of its affiliates the consulting services of Consultant and its executives and Consultant is willing to make the same available from time to time, all on the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the premises and the mutual covenants contained herein and for other good and valuable consideration heretofore or simultaneously with the execution hereof furnished by each party to the other, the sufficiency of which the parties hereby acknowledge, the parties hereto hereby agree as follows:

1.    Consulting.

The Company hereby retains Consultant and Consultant hereby agrees to provide its executives to consult with the Company and its executives (and those of its affiliates) for the period set forth in Section 2 hereof, subject to and upon the other terms and conditions herein provided.

2.    Term of Consulting.

The period of Consultant's consulting under this Agreement shall commence as of the date hereof and shall continue thereafter until October 31, 2009 (the "Term"). In the event that the Consultant continues to consult with the Company after the end of the Term, such continued employment shall be subject to such terms and conditions as the Company and the Consultant may then agree.

3.    Responsibilities and Duties.

(a)    During the period of his retention hereunder, Consultant agrees to provide its executives to consult with the Company and its executives (and those of its affiliates) at their request given to it from time to time and upon reasonable notice (and, in this connection,

336091v3

MD 00078
MARCO/L&L WINGS

taking into account the reasonable needs of the Consultant for the services of its executives in its own business). Consultant and its executives shall not be required as a condition of its compensation to render any minimum level of consultation during any period , it being understood and agreed that Consultant shall render its services through its executives only as requested by the Company and its affiliates hereunder and further that such services shall be rendered by Consultant and its executives solely within (or from) the State of Florida and finally that Consultant has in the past furnished other services and other good and sufficient consideration for the obligations of the Company hereunder in addition to its undertakings hereunder. Any travel or other expenses required of Consultant and its executives (for example, for travel to the Company's stores in North and South Carolina) to render services hereof shall be at the sole expense of the Company and shall be payable upon presentation of suitable documentation therefor by Consultant.

(b)    This Agreement shall not be deemed to create any employer-employee relationship or joint venture.

4.    Compensation.

(a)    For all services rendered by Consultant and its executives during its retention hereunder, the Company shall pay to Consultant the annual amount of $47,110.61 during the Term, payable in arrears annually on each anniversary date hereof, the final payment to be due on October 31, 2009.

5.    Death or Disability; Merger etc.

(a)    In the event that by reason of any death or disability of its executives, Consultant shall be unable to perform its duties hereunder, it shall, nevertheless, be entitled to continue to receive the compensation due hereunder until the end of the Term on October 31, 2009.

(b) In the event of any merger, consolidation, sale or liquidation of Consultant during the term, the Company shall continue to pay to Consultant's successors or assigns (including but not limited to its shareholders) designated by written notice to the Company, its annual compensation otherwise due hereunder and such compensation shall not cease until the end of the Term on October 31, 2009. If Consultant is a surviving entity in any merger or consolidation or other such transaction it shall endeavor to continue to make its executives available hereunder but its compensation hereunder shall in no event cease until the end of the Term on October 31, 2009.

6.    Binding Agreement.

This Agreement shall be binding upon, and inure to the benefit of, Consultant and the Company and their respective, successors and assigns. Neither the Company nor the Consultant may assign or otherwise encumber this Agreement or any rights or obligations of such party hereunder without the prior written consent of the other party.

MD 00079
MARCO/L&L WINGS

7.     <u>Modification and Waiver</u>.

(a)     <u>Amendment of Agreement</u>. This Agreement may not be modified or amended, terminated or cancelled except by a written instrument signed by the parties hereto.

(b)     <u>Waiver</u>. No term or condition of this Agreement shall be deemed to have been waived, nor shall there be any estoppel against the enforcement of any provision of this Agreement, except by written instrument of the party charged with such waiver or estoppel. No such written waiver shall be deemed a continuing waiver unless specifically stated therein, and each such waiver shall operate only as to the specific term or condition waived and shall not constitute a waiver of such term or condition for the future or as to any act other than that specifically waived.

8.     <u>Severability</u>.

If, for any reason, any provision of this Agreement is held invalid, such invalidity shall not affect any other provision of this Agreement not held so invalid, and each such other provision shall to the full extent consistent with law continue in full force and effect.

9.     <u>Headings</u>.

The headings of the Sections herein are included solely for convenience of reference and shall not control the meaning or interpretation of any of the provisions of this Agreement.

10.     <u>Governing Law</u>.

This Agreement shall be governed solely by the laws of the State of New York without giving effect to any conflict of laws provisions thereof. Any and all matters of dispute between the parties hereunder or in connection herewith shall be resolved in New York County, New York State by arbitration before the American Arbitration Association and shall include the jurisdiction in the federal courts of the Southern District of New York and of the state courts of the State of New York in New York County to enforce such arbitration and/or confirm any award thereof. The parties hereby consent to jurisdiction as set forth herein. Furthermore, notwithstanding the foregoing, in the event of a timely objection to arbitration, either party may commence a proceeding in Supreme Court of the State of New York and County of New York and/or Federal District Court for the Southern District of New York.

11.     <u>Notices</u>.

Any notices or other communications to be given hereunder shall be deemed to have been given if delivered personally to the party to which directed, or if mailed, then by registered or certified mail, return receipt requested, directed to the address of the party first hereinabove set forth. Any party may change his or its address for purposes of this Section 11 by giving written notice thereof hereunder.

236091v3

3

MD 00080
MARCO/L&L WINGS

02/17/2000  17:57   13056727959            WINGS:307                    PAGE  15
  02/17/00  16:51 FAX 212  354 7700        MOSES & SINGER LLP                      ☎013/033

12.    Due Authorization.

The Company hereby warrants and represents to the Consultant that the execution, delivery and performance hereof by the Company has been duly authorized by all requisite or appropriate corporate and shareholder action.

13.    Attorneys' Fees.

In the event that it shall be necessary for either party to retain legal counsel and/or incur other costs and expenses in connection with the enforcement hereof whether by a judicial action or proceeding or by arbitration, such party shall to the extent it shall prevail (whether by settlement or by judicial or arbitral action or otherwise) be entitled to recover from the other party such first party's reasonable attorneys' fees and costs and expenses in connection with such enforcement.

IN WITNESS WHEREOF, the Company and the Consultant have caused this Agreement to be executed by their officers thereunto duly authorized, in the City of New York as of the day and year first above written.

L & L Wings, Inc.

By:

B&T, Inc.

By:

236091v3                                4

MD 00081
MARCO/L&L WINGS

**12**

MD 00082
MARCO/L&L WINGS

## LICENSING AGREEMENT

THIS AGREEMENT dated for purposes of reference as of the 1st day of November, 1998, is made by and between L & L WINGS, INC. d/b/a Wings, a South Carolina Corporation with an address at 18 East 42nd Street, New York, New York 10017, ("Licensor") and Marco-Destin Inc. (hereinafter, "Marco-Destin"), 1000 Highway 98 East Corp. ("Highway"), Panama Surf & Sport, Inc. ("Surf") and E&T Inc. (hereinafter, "ET"), being Florida and South Carolina corporations, and all having an address all c/o Marco Destin 10400 Northwest 33rd Street, Miami, Florida (collectively, hereinafter, "Licensee").

WHEREAS, Licensor is the owner of the unregistered servicemark, "Wings" and is the owner of trade dress rights to its distinctive design; and

WHEREAS, Licensee utilized the mark "Wings" on retail stores that it owns and has been for many years with the permission and an oral license from Licensor who was a one-half owner of the issued and outstanding shares of stock of Licensee (except shares in ET); and

WHEREAS, the ownership by Licensor of the shares of Licensee are being sold simultaneous with the execution of this Agreement; and

WHEREAS, Licensor and Licensee each adorn some of their retail locations with Licensor's unique wave sculpture design highlighted with a signature colored neon light combination, (hereinafter, Licensor's "Trade Dress"); and

WHEREAS, Licensee recognizes the goodwill, reputation and strong marketing value of using the "Wings" name as a trade/servicemark and trade name and its Trade Dress in the operation of its retail business establishments; and

WHEREAS, Licensee desires to continue do business using the name "Wings" in the "Territory" hereinafter defined after the separation of their respective ownership; and

WHEREAS, Licensee and/or entities and/or principals of Licensee are unwilling to enter into the simultaneous agreements purchasing the interest of Licensor and/or its principals interest in Licensee (except any interest in ET) without this Agreement; and

WHEREAS, Licensor is willing to grant a license to Licensee to use "Wings" and the Trade Dress in the Territory upon the terms and conditions set forth below and other than as set-forth hereinafter has the authority to do so;

NOW, THEREFORE, in consideration of the covenants and agreements hereinafter set forth, one dollar ($1.00) and other valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the parties hereto agree as follows:

1. Definitions. The following terms as used in this Agreement shall have the meanings set forth below:

221916v2

MD 00083
MARCO/L&L WINGS

1.1.    "Trade Dress" shall mean the unique wave sculpture design highlighted with a signature colored neon light combination used by Licensor (and also heretofore used by Licensee) in connection with some of their respective business locations.

1.2.    "Territory" shall be defined as the following geographic areas: (i) Within the city limits of Marco Island, Florida; St Augustine, Florida; and Pigeon Forge, Tennessee; (and within two miles of each such city limit); (ii) in North Myrtle Beach within the area bound by from the south side of 1639 Highway 17S in North Myrtle Beach, SC to the intersection of Highway 9 and Highway 17S which is just north of North Myrtle Beach SC and the boundaries shall include the coast line and two miles inland between such points. (By way of clarification, Licensor may operate in all other areas of the Myrtle Beach Area except the area described hereinabove); and (iii) in the geographic area from Panama City Beach, Florida west to the Alabama-Mississippi state line and not more than 10 miles inland from the coast line. All areas not specifically included herein are specifically excluded from the Territory.

1.3.    "Termination Date" shall be October 31, 2006 or such other date as the license granted hereunder shall be properly terminated pursuant to the terms of this Agreement.

2.    Grant of License. (a) So long as Eli Tabib, and upon his death his estate, heirs and/or beneficiaries, shall be the owner or owners of not less than 66⅔% of the shares of Licensee, Licensee shall have, and Licensor hereby grants to Licensee, an exclusive license in the Territory to use the name "Wings" and the Trade Dress (hereinafter the "Mark") in connection with Licensee's business establishments, and only for the term (the "Term") commencing from November 1, 1998 until October 31, 2006, unless sooner properly terminated or extended as provided herein (hereinafter, the "Termination Date"); provided, however, that upon the death of Eli Tabib, it shall also be a condition of continuation that either Nir Tzanani or Raffi Zabari shall continue to be involved in the management of Licensee. Licensee may not use the Mark outside the Territory and the License granted hereunder shall be exclusive in the Territory with the exception of the State of South Carolina, where the License shall be limited to area specified in paragraph 1.2(ii). The License granted hereby shall extend to any entity hereafter acquired or created by Eli Tabib so long as his ownership interest therein shall comply with this paragraph 2 (a) and such entity shall notify Licensor in writing and become a party to this Agreement pursuant to a suitable instrument.

(b) Licensor hereby warrants and represents to Licensee that except as set-forth hereinafter it has the authority to grant the License to Licensee and that its Board of Directors and shareholders have consented to this License.

(c) Licensor agrees that during the Term and for a period of 10 years immediately thereafter Licensor shall not, nor shall it permit any licensee to, use the name Mark (or any derivative or similar name and/or Trade Dress) in the Territory.

3.    Advertising Reimbursement.

(a) Licensor is under no obligation to advertise the Mark in the Territory.

MD 00084
MARCO/L&L WINGS

(b) In Licensor's sole discretion, Licensor may shall advertise the Mark in the Territory. Should Licensor advertise in the Territory set forth in paragraph 1.2(ii), Licensee shall pay to Licensor at its address set forth above, Licensee's pro rata share of all advertising costs incurred for advertising in the Myrtle Beach Area. (By way of example, Licensee operates two (2) stores and Licensor operates twenty (20) stores in the Myrtle Beach, South Carolina region. Therefore, if Licensor advertises in that region, Licensee shall pay 1/11 of the advertising costs incurred by Licensor.) Any stores which Licensor licenses to third persons shall be treated as operated by Licensor for the purposes of the calculations required in this Paragraph 3. On or before September 30th of any year, Licensor shall render to Licensee statement of such advertising costs, which statement shall be deemed a conclusive substantiation for such costs unless Licensee shall within 30 days contest the same in writing. Payment of the statement shall be due within thirty (30) days of the date thereof unless contested. At Licensor's option, Licensor may provide statements at shorter intervals but in no event less than once per year.

(c)   Notwithstanding the foregoing , for the Territory set forth paragraph 1.2(ii), Licensee shall not be responsible for advertising costs for any twelve month period in excess of $10,000.00 per store  increased annually by the increase in the Consumer Price Index. The Consumer Price Index shall mean the Consumer Price Index published by the Bureau of Labor Statistics of the U.S. Department of Labor, All Items, New York, New York -- Northeastern, N.J., for urban wage earners and clerical workers, or any successor or substitute index appropriately adjusted.

4.  Termination. Licensor may, at its option, terminate the license and rights granted in this Agreement to Licensee immediately and without prior notice upon the occurrence of any of the following events (but the restriction on Licensor in Paragraph 2(c) shall continue in effect):

4.1.   If Licensee shall file a voluntary petition in bankruptcy or is adjudicated bankrupt or insolvent or files any petition or answer seeking any reorganization, arrangement, composition, adjustment or readjustment, liquidation, dissolution or similar relief under the present or any future Federal Bankruptcy Act or any present or future applicable United States federal, state or other statute or law, or seeks or consents to, or acquiesces in, the appointment or any trustee, receiver, conservator in, the appointment of any trustee, receiver, conservator or liquidator of Licensee, or of all or any substantial part of its properties or of its interests.

4.2.   If within ninety (90) days after the commencement of any proceeding against Licensee seeking any bankruptcy, reorganization, arrangement, composition, adjustment or readjustment, liquidation, dissolution or similar relief under the present or any future applicable United States federal, state or other statute or law the proceeding is not stayed or dismissed, or if within ninety (90) days after the expiration of any stay, the filing is not vacated.

4.3.   If Licensee executes an assignment of substantially all of its assets or any other similar agreement for the benefit of creditors.

4.4.   If Licensee fails to pay any amounts to Licensor properly due pursuant to this Agreement or fails to perform any of the obligations required of it set forth in this Agreement

MD 00085
MARCO/L&L WINGS

in Paragraphs 6, 7, 8, 10 or of any other obligation contained in this Agreement and such default shall continue uncured for 30 days after written notice thereof by Licensor.

4.5     If Licensee initiates any action, proceeding or claim against Licensor challenging any provision or the validity of this Agreement and said action is determined to be either frivolous and/or Licensor's prevails in said action and/or claim except as set forth in paragraph 19 hereinafter. (Claim does not include any counterclaims by Licensee in response to a claim initiated by Licensor against Licensee.)

4.6     If there is any change in ownership of Licensee in violation of Paragraph 2.

5.     Obligations and Responsibilities Upon Termination. Upon expiration or termination of the License granted hereunder, by operation of law or otherwise:

5.1.     All rights of Licensee to use the Mark granted hereunder (other than its rights under Paragraph 2(c)), including the right to use the name "Wings" and the Licensor's Trade Dress shall (subject to the four month removal period set forth in Paragraph 5.2) cease.

5.2.     Licensee, at its own cost and expense, shall within four months remove and/or cause to be removed, all materials, signs, promotions, bags, and any and all other items, bearing the Mark or any evidence of the Mark licensed hereunder. Thereafter, Licensee shall not, in any manner whatsoever, use the name Mark, any similar name or any name created by changing, adding or dropping one or more letters from the name "Wings", (hereinafter, collectively, referred to as "Similar Name") nor shall Licensee use Licensor's Trade Dress in any form whatsoever.

5.3.     Licensee shall pay any and all outstanding proper statements for advertising within thirty (30) days of the termination or expiration hereof.

5.4.     In the event Licensee fails to promptly fulfill all of its obligations upon the termination or expiration of this Agreement, Licensor shall have the right to pursue all legal remedies including, but not limited to, an action for trademark and/or servicemark infringement and/or for trade dress infringement, temporary restraining order, preliminary and/or permanent injunction. Licensee shall have the same rights with respect to Licensor's obligations (including without limitation, under Paragraph 2(c)).

6.     Infringement.

6.1.     In the event Licensee learns of any infringement or alleged infringement, has notice of any written claim or allegation by a third person of infringement of Licensor's Mark, Licensee shall promptly notify Licensor with the particulars thereof.

6.2.     In the event Licensor decides to pursue any infringement claim against a third party in the Territory, Licensor may request that Licensee join in or assist in any of the steps necessary to enforce the infringement claim. In the event Licensee agrees to assist, then each party shall bear one-half of the costs of any action; provided, however, that Licensee's share shall not

MD 00086
MARCO/L&L WINGS

exceed for any calendar year the product of (x) one-half of the costs incurred in the year, and (y) a fraction, the numerator of which is the number of years then remaining on the License and denominator of which is eight. In the event Licensee does not agree to assist within a reasonable period, then Licensor may terminate this License Agreement (but subject to Paragraph 2(c)). In all events, Licensee shall cooperate with Licensor in the pursuit of any action (but Licensee shall not, except as required by this Paragraph, be obligated to incur material expense in so cooperating).

### 7. Indemnification.

7.1.          Licensee, jointly and severally, shall hold Licensor harmless and shall indemnify Licensor from any and all liabilities, injuries, damages, claims, suits, attorney's fees, etc., sustained by Licensor by reason of this Agreement which Licensee has, may have or which may hereinafter exist or due to Licensee's operation of its business, use of the Licensor's Mark, Trade Dress, and/or use of the name "Wings" (provided, however, that Licensee shall have no indemnification obligation to the extent that any claim, damage, etc. is attributable to any defect or alleged defect in Licensor's ownership or right to license the name "Wings" or the Trade Dress). Licensee will, at all times, act and conduct business in such a manner so as not to adversely affect or otherwise harm the good will and reputation associated with the name "Wings", and will promptly comply with reasonable written notices from Licensor with respect thereto. Licensee will, at all times, maintain general liability, errors and omissions insurance naming Licensor as an additional insured (to the extent permitted by the carrier). Licensee understands that Licensor is or may be bound by and subject to certain Court orders, consent orders, stipulations. agreements and the like and Licensee agrees that, in the conduct of its business, it shall abide by any such Court orders, consent orders, stipulations, agreements and the like of which Licensor shall give it notice, including, in particular, those with Anheuser Busch Incorporated and Two's Company, a Rhode Island Corporation, copies of which are annexed hereto. Notwithstanding anything herein contained to the contrary, Licensor may terminate this Agreement effective immediately, subject to Licensee's right to a 30 day period to cure, upon written notice to Licensee in the event Licensee shall act or refrain from acting in any way that a reasonable consumer would determine that said action and/or inaction materially diminished the reputation and/or goodwill of Licensor's Mark. (By way of example and not by way of limitation, actions that may be determined to diminish the reputation of and/or goodwill are trade/servicemark and/or other intellectual property violations, deceptive trade practices or false advertising.)

7.2. Licensee shall notify Licensor of any claims to which Paragraph 7.1 may apply withing thirty days from when Licensee learns therof.

7.3.          Owners Designation. Licensee shall, at all times, post a placard in a clearly visible and unobstructed location situated at the entranceway to each of its stores doing business as "Wings", which placard shall be at least 12 inches by 18 inches and shall bear the inscription "THIS STORE IS OWNED AND OPERATED BY" and name the appropriate entity. The lettering of the inscription shall be no smaller than one inch high. In addition, promptly upon execution of this Agreement, Licensee shall file a certificate of assumed name with the appropriate governmental agencies, to the extent required thereby.

221916v2                                5

MD 00087
MARCO/L&L WINGS

**8.**  **Liquidated Damages.** Licensee specifically acknowledges that the use of the Mark, the name "Wings" or any Similar Name and/or the use of Licensor's Trade Dress after the Termination Date will cause Licensor to suffer irreparable harm, damages for which would be extremely difficult to ascertain. Therefore, in addition to all other remedies, including but not limited to injunctive relief, in the event of Licensee's breach of this Agreement to which Licensor shall be entitled, Licensor shall be entitled to injunctive relief, and liquidated damages in the sum of $200.00 per day (subject, however, to the four month period described in Paragraph 5.2) per business establishment utilizing the Mark and/or name "Wings" and/or any Similar Name or Trade Dress until cessation of any improper use, together with all costs and disbursements, including reasonable attorney's fees arising from Licensee's failure promptly to use the name "Wings" or any Similar Name or Trade Dress. The calculation of the liquidated damages of $200.00 per day per business establishment shall be calculated without regard to the four month period described in Paragraph 5.2 if Licensee does not comply with the terms and conditions of the removal set forth herein within said four month period. (By way of example if Licensee complies with the removal of the Mark etc. within the four months then there shall be no liquidated damages but if Licensee removes the Mark etc. four months and 1 day later then Licensor shall be entitled to $2,420.00 ($200.00 X 121) per store as liquidated damages assuming 30 days per month.)

**9.**  **Assignment Prohibited.** Except as explicitly stated herein, this Agreement shall not be assignable either in whole or in part. Nothing in this Agreement is intended or shall be construed to confer upon or to give to any person, firm, or corporation, other than the parties hereto, any right, remedy, or claim under or by reason of this Agreement. All terms and conditions in this Agreement shall be for the sole and exclusive benefit of the parties. Nothing contained in this Agreement shall be deemed or construed to create or effectuate the relationship of principal and agent or of franchisor and franchisee or of partnership or joint venture between the parties hereto.

**10.**  **Waiver.** No failure by Licensor and/or Licensee to insist upon the strict performance of any term or condition of this Agreement or to exercise any right or remedy consequent upon the breach, and no acceptance of full or partial payments due under this Agreement during the continuance of any breach, shall constitute a waiver of the breach or the term or condition. No term or condition of this Agreement to be performed or observed by Licensor and/or Licensee and no breach shall be waived, altered or modified except by written instrument executed by the parties. No waiver of any breach shall affect or alter this Agreement but each term and condition of this Agreement shall remain and continue in effect with respect to any other existing or subsequent breach. No delay or failure by either party to exercise any right under this Agreement, and no partial or single exercise of that right, shall constitute a waiver of that or any other right. No waiver, modification or amendment of this Agreement shall be valid unless in writing signed by the party to be charged.

**11.**  **Licensor's Paramount Rights.**

**11.1.**  Licensee shall not contest Licensor's exclusive ownership of all rights including trademark and/or servicemark rights to the name "Wings" or copyright rights to any

MD 00088
MARCO/L&L WINGS

element of the Trade Dress. Licensee shall not at any time apply for a registration for the name "Wings" or any confusingly similar mark or for any other right in the name anywhere in the world nor shall Licensee file any opposition or in any other manner hinder any application for registration of the mark "Wings" that Licensor has, will or may make.

11.2.    Licensee acknowledges and agrees that any and all rights and assets in the Mark "Wings" and/or its Trade Dress, shall belong to and be the property of Licensor free of any and all claims of Licensee except as state herein.

11.3    Licensee acknowledges that Licensor informed him that there are one or more individuals and/or entities that have registered trademarks and/or servicemarks to the mark "Wings" and can and/or may claim a paramount right to the use of said mark "Wings". Licensor does not warrant or give any other assurances and/or indemnification to Licensee's use of said mark "Wings" and or the Mark. Notwithstanding anything to the contrary, if any claim is made against Licensor and/or Licensee for infringement related to the use of the Mark and/or·"Wings", neither shall indemnify the other for any loss and/or expense including an award for infringement and/or legal fees.

12. Governing Law. This Agreement shall be governed solely by the laws of the State of New York without giving effect to any conflict of laws provisions thereof. Any and all matters of dispute between the parties hereunder or in connection herewith shall be resolved in New York County, New York State by arbitration before the American Arbitration Association and shall include the jurisdiction in the federal courts of the Southern District of New York of the state courts and the State of New York in New York County to enforce such arbitration and/or confirm any award thereof. Licensee and Licensor hereby consent to jurisdiction as set forth herein. Notwithstanding the foregoing, either party may apply to a court of competent jurisdiction for a temporary restraining order, preliminary or permanent injunction or any other form of relief to assure that any judgment awarded in arbitration is not rendered ineffective and/or prevent termination of the License prior to an opportunity to cure in the event of dispute hereunder as to a party's rights and/or obligations. Furthermore, notwithstanding the foregoing, in the event of a timely objection to arbitration, either party may commence a proceeding in Supreme Court of the State of New York and County of New York and/or Federal District Court for the Southern District of New York.

13. Attorneys' Fees. If Licensor or Licensee shall file any action against the other party for any breach of this Agreement and shall successfully recover on the same, such prevailing party shall be entitled to recover from the other party reasonable attorneys' fees incurred in so doing.

14. Notices. Notices required under this Agreement shall be made or given to the parties at the addresses specified at the beginning of this Agreement or at any other address that the parties may, by notice, specify. Copies of all notices shall be sent to the attorney for the party. Notices shall be deemed given 5 days after mailing by certified or registered mail, return receipt requested (unless sent by overnight mail service in which event notice shall be deemed given 1 day after mailing).

15. Binding Effect. This Agreement shall be binding upon the parties and their agents, and successors, including, without limitation, successor officers, directors and trustees, if any, of the Licensor or Licensee.

MD 00089
MARCO/L&L WINGS

16. Headings. The headings for each paragraph are simply for the convenience of the parties and shall not be used to interpret the meaning of any of the provisions.

17. Entire Agreement. This Agreement contains the entire agreement between the parties and supersedes all agreements and understandings previously made between the parties relating to its subject matter, all of which have been merged herein. There are no other understandings or agreements between them, nor are there any representations made which are not herein contained. This agreement shall be governed in accordance with the laws of the State of New York, the courts of which (and the Federal District for the Southern District of New York) shall have exclusive jurisdiction (subject to and in accordance with the arbitration clause of Paragraph 13).

18. Time Of The Essence. All dates and obligations in this Agreement which rely upon specific dates or periods of time shall be deemed to be "Time of the Essence" and any failure to timely comply with any such obligations and/or dates shall, subject to any notice requirements and period to cure, be deemed a material breach of this agreement.

19. Breach of Related Agreements. Licensor and Licensee are parties to various other agreements. If Licensee and/or their assigns and/or successors default and/or fail to comply with terms and/or conditions contained in one or more of the other agreements between the parties and such failure to comply with said terms and/or conditions continue for more than 30 days after written notice to the party against whom compliance is sought then that default shall be deemed a material default hereunder and shall automatically terminate the Licensee subject however to the party against whom compliance is sought having a right to bring a "Yellowstone Injunction" or similar remedy to toll the time to comply while the parties litigate the issue of default or their respective rights and/or obligations.

20. Breach of This Agreement. If Licensor and/or Licensee and/or their assigns and/or successors default and/or fail to comply with terms and/or conditions contained herein and such failure to comply with said terms and/or conditions continue for more than 30 after written notice to the party against whom compliance is sought or such greater time if provided for hereinabove then that default shall be deemed a material default hereunder and shall automatically terminate the Licensee subject however to the party against whom compliance is sought having a right to bring a "Yellowstone Injunction" or similar remedy to toll the time to comply while the parties litigate the issue of default or their respective rights and/or obligations.

21. Compliance. Neither party is aware of any breach by either party prior to the execution of this Agreement.

MD 00090
MARCO/L&L WINGS

IN WITNESS WHEREOF, the parties have set their hands hereto as of the day and date above first appearing.

L & L WINGS, INC.

By: Shaul Levy, President
    MEIR LEVY, V. President

MARCO-DESTIN, INC.
PANAMA SURF & SPORT, INC.
1000 HIGHWAY 98 EAST CORP.
B&T, INC.


By: Eli Tabib, President



Eli Tabib

MD 00091
MARCO/L&L WINGS

02/17/2000  17:57  13056727959                    WINGS: 307                    PAGE  21
   02/17/00  16:52 FAX  212  664 7700      MOSES & SINGER LLP              Ø021/033

IN WITNESS WHEREOF, the parties have set their hands hereto us of the day and date above first appearing.

L & L WINGS, INC.

_____
By:  Shaul Levy, President

MARCO-DESTIN, INC.
PANAMA SURF & SPORT, INC.
1000 HIGHWAY 98 EAST CORP.
E&T, INC.

_____
By:  Eli Tabib, President

_____
Eli Tabib

721916v2                              9

MD 00092
MARCO/L&L WINGS

# CORRESPONDENCE

IN RE ——— TABIB, ELI
——Re: Estate Planning          06935-101

FROM _____ 9 -
TABIB, ELI
MARCO DESTIN/WINGS

To _____

## 006935-0101

[barcode]
I00021620

CORRESPONDENCE

CORRESPONDENCE VOL. 1 - 9/16/98 - 2/9/00

Insert:  0001
Folder:  0001          Concourse

TABIB, ELI                                   006935-0101
MARCO DESTIN/WINGS
CORRESPONDENCE
CORRESPONDENCE VOL. 1 - 9/16/98 - 2/9/00



*Tab 6*
*06935/101*
*Cov*

# MOSES & SINGER LLP

1301 Avenue of the Americas, New York, NY 10019-6076
Telephone: 212.554.7800        Facsimile: 212.554.7700

# Facsimile Transmission
# Cover Sheet

Date:        February 9, 2000

<u>To</u>                   <u>Firm name</u>              <u>Fax number transmitted to</u>

Bennett Krasner, Esq.                              516-432-7016

From:        Steven Glaser, Esq.        Phone:  212-554-7820

Client/Matter:   06935-101

Number of Pages: *14*
(Including cover page)

Comments:

_____

If you do not receive all pages, or have any other problems receiving this transmission, please call 212-554-7800 and ask for the telecopy operator.

CONFIDENTIALITY NOTE
This facsimile transmission contains information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, confidential, and/or exempt from disclosure under applicable law.

If you are not the intended recipient (or an employee or agent responsible for delivering this facsimile transmission to the intended recipient), you are hereby notified that any copying, disclosure or distribution of this information may be subject to legal restriction or sanction. Please notify the sender by telephone to arrange for the return or destruction of the information and all copies.

MD 00095
MARCO/L&L WINGS

10400 N.W. 33rd St. Ste.#110
Miami, FL 33172
Phone: (305) 471-9394
Fax:   (305) 471-9398



**MARCO DESTIN, INC.**

# Fax

| To: | Steve Glaser | From: | Raffi Zabari. |
|-----|-------------|-------|---------------|
| Fax: | (212) 554-7700 | Date: | February 3, 2000 |
| Phone: | (212) 554-7820 | Pages: | 1 |
| Re: | IMPORTANT NOTE | CC: | |

☐ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle



**‣COMMENT**

Dear Steve,

We would like to make a change on the contract, on paragraph 1.2 page #2, stating that:  L&L Wings cannot open another store in South Carolina in the territory. Address 2701 South King Highway North Myrtle Beach, S.C., all the way to the border of South Carolina & North Carolina, and from the Atlantic Ocean in the east to 10 miles west in land.

If you have any questions, please do not hesitate to call me.

Thank you,

Raffi Zabari

02/03/06  15:48 FAX      554 7700        MOSES & SINGER LLP                      @001

```
*********************
***   RX REPORT   ***
*********************
```

RECEPTION OK

TX/RX NO                6613
CONNECTION TEL                    3054719394
SUBADDRESS
CONNECTION ID           Marco Destin Fax
ST. TIME                02/03 15:47
USAGE T                 00'30
PGS.                      1
RESULT                  OK

MD 00097
MARCO/L&L WINGS

```
*******************
***   TX REPORT   ***
*******************

TRANSMISSION OK

TX/RX NO              2600
CONNECTION TEL        06935101915164327016
SUBADDRESS
CONNECTION ID
ST. TIME              02/09 15:29
USAGE T               04'13
PGS. SENT             14
RESULT               OK
```

# MOSES & SINGER LLP

1301 Avenue of the Americas, New York, NY 10019-6076
Telephone: 212.554.7800        Facsimile: 212.554.7700

# Facsimile Transmission
# Cover Sheet

Date:        February 9, 2000

To                    Firm name            Fax number transmitted to
Bennett Krasner, Esq.                       516-432-7016

From:        Steven Glaser, Esq.           Phone:  212-554-7820

Client/Matter:   06935-101

Number of Pages: *14*
(Including cover page)

Comments:

MD 00098
MARCO/L&L WINGS

# MOSES & SINGER LLP

*06935/101*
*Cov*

1301 Avenue of the Americas, New York, NY 10019-6076
Telephone: 212.554.7800         Facsimile: 212.554.7700

# Facsimile Transmission
# Cover Sheet

Date:           February 9, 2000

<u>To</u>                    <u>Firm name</u>                    <u>Fax number transmitted to</u>

Morty Etgar, CPA                                          305 665-5501

From:         Steven Glaser, Esq.              Phone:   212 554-7820

Client/Matter:    06935/101

Number of Pages:
(including cover page)

Comments:

If you do not receive all pages, or have any other problems receiving this transmission, please call 212-554-7800 and ask for the telecopy operator.

CONFIDENTIALITY NOTE
This facsimile transmission contains information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, confidential, and/or exempt from disclosure under applicable law.

If you are not the intended recipient (or an employee or agent responsible for delivering this facsimile transmission to the intended recipient), you are hereby notified that any copying, disclosure or distribution of this information may be subject to legal restriction or sanction.  Please notify the sender by telephone to arrange for the return or destruction of the information and all copies.

MD 00099
MARCO/L&L WINGS

parties. Eli and Marco Destin further agree that, if required by Landlord, they and/or either or both of them, shall remain liable for the lease obligations of Tenant. This store was formerly operated by Marco-Destin and since abandoned.

2 3.    1014 N. Lake Park Road, Carolina Beach, NC (transfer of real property). In consideration of the sum of $_____ payable by delivery to it at the Closing by Shaul and Meir of ___ shares of its capital stock, 1000 Highway shall, as soon as practicable after the Closing sell, transfer and convey to Shaul and Meir and/or ~~their assignees and/or designees~~ L&L or SMP (subject to all liens and encumbrances consented to by Shaul, Meir, or their affiliates or of which any of them otherwise have knowledge), the real property, together with the buildings and improvements thereon located, known by the parties as store #765 located at 1014 N. Lake Park Road, Carolina Beach, pursuant to the form of deed reasonably satisfactory to the parties.

2.4.    1014 N. Lake Park Road, Carolina Beach, NC (transfer of leasehold interest). In consideration of the sum of $1.00, Marco-Destin shall, as soon as practicable after the Closing, assign (subject to any liens or encumbrances consented to by Shaul, Meir, L & L or their affiliates or of which any of them otherwise has knowledge) to L & L any right, title or interest it has or may claim to have as Tenant and is surrendering to L & L any claims to the business operated in the premises known by the parties as store #765 located at 1014 N. Lake Park Road, Carolina Beach, NC. Eli, 1000 Highway, pursuant to a form of assignment and surrender agreement reasonably satisfactory to the parties. This store was formerly operated by Marco-Destin and since abandoned.

2.5.    9952 Beach Road, Calabash, NC. In consideration of the sum of $1.00 Eli and 1000 Highway shall assign, as soon as practicable after the Closing (subject to any liens or

221819v3                                          5

MD 00100
MARCO/L&L WINGS

encumbrances consented to by Shaul, Meir, L & L or their affiliates or of which any of them has knowledge), to L & L ~~and/or Shaul~~ and Meir or ~~its assignees~~ SMP, any right, title or interest either or both of them has or may have or may claim to have in and to the land and/or buildings and improvements located thereon and known by the parties as store #605 located at 9952 Beach Road, Calabash, NC, pursuant to an assignment and surrender agreement reasonably satisfactory to the parties. The parties acknowledge and understand that the said real property is owned by SMP; that the building and improvements thereon were paid for by 1000 Highway in repayment of money owed to L & L and carried on the books of 1000 Highway as accounts payable; and that, however, 1000 Highway inadvertently and erroneously booked the building on its books. [The book value of the building and equipment shall be offset by a reduction in certain accounts payable owing to L & L in the amount of $ _____ ]

    2.6.   581 South Collier Boulevard, Marco Island, FL (correction of title). The parties hereby agree and acknowledge that 1000 Highway is the lawful owner of the land with the buildings and improvements thereon located at 551 South Collier Boulevard, Marco Island, Florida and known by the parties as store #317. Shaul, Meir, Eli and 1000 Highway hereby further acknowledge and agree, each for it, him and themselves, that the deed of conveyance incorrectly reflects that they are the owners of the property while the corporate books of 1000 Highway correctly reflect that it owns the said property. In order to correct this error, Shaul, Meir, Eli and 1000 Highway, shall as soon as practicable after the Closing, for a consideration of $1.00 execute a correction deed to 1000 Highway in form reasonably satisfactory to the parties. Said property will be conveyed subject to all existing mortgage(s) and U.C.C. security interests known to and previously consented to by Eli, 1000 Highway and Marco-Destin.

221819v3                             6

MD 00101
MARCO/L&L WINGS

02/09/00  09:43 FAX      554 7700      MOSES & SINGER LLP                    ☒001

```
********************
***   TX REPORT   ***
********************

TRANSMISSION OK

TX/RX NO              3363
CONNECTION TEL        06935101913056655501
SUBADDRESS
CONNECTION ID
ST. TIME              02/09 09:41
USAGE T               01'23
PGS. SENT                3
RESULT                OK
```

# MOSES & SINGER LLP

1301 Avenue of the Americas, New York, NY 10019-6076
Telephone: 212.554.7800          Facsimile: 212.554.7700

# Facsimile Transmission
# Cover Sheet

Date:          February 9, 2000

To                    Firm name                  Fax number transmitted to
Morty Etgar, CPA                                 305 665-5501

From:          Steven Glaser, Esq.        Phone:  212 554-7820

Client/Matter:  06935/101

Number of Pages:
(Including cover page)

Comments: _____

MD 00102
MARCO/L&L WINGS

*Tab 6*
*06935/401*

*Cov*

**Steven J. Glaser**

| | |
|---|---|
| From: | Bennett D. Krasner [bkrasner@optonline.net] |
| Sent: | Tuesday, February 08, 2000 12:34 PM |
| To: | sglaser@mosessinger.com; Bennett Krasner |
| Subject: | (no subject) |

  

license agreement -    license agreement
02-08-00 r...    2-8-00 redl...    Dear Steve:

After reviewing, if you need to contact me, beep me at (516)
389-3028.
Regards,
Bennett

The information transmitted is intended only for the person or entity to
which it is addressed and may contain confidential and/or privileged
material. Any review, retransmission, dissemination or other use of, or
taking of any action in reliance upon, this information by persons or
entities other than the intended recipient is prohibited. If you
received this in error, please immediately contact the sender and delete
the material from any computer.

*Add long ve new*
*entities sub, to 66 2g*

*Marco, Ashl*
*Naples? (out.*

*Shel ⇒ Can't ⇐ No more new stores in to Myrtle Beach? ?*
*open...*
*⇒ 20c⇒ Up to 45K total advert cost*
*Myrtle*
*Beach    Sexual harassing*
*(not in Fla.*
*or y*

1

**MD 00103**
**MARCO/L&L WINGS**

WordPerfect Document Compare Summary

Original document:  C:\WP60\DATA\WINGS\Eli\license agreement - 2-06-00.wpd
Revised document:  C:\WP60\DATA\WINGS\Eli\license agreement - 02-06-00
revisions.doc
Deletions are shown with the following attributes and color:
    ~~Strikeout~~, Blue  RGB(0,0,255).
    Deleted text is shown as full text.
Insertions are shown with the following attributes and color:
    <u>Underline</u>, <u>Redline</u>, (No color code).

The document was marked with 101 Deletions, 131 Insertions, 0 Moves.

MD 00104
MARCO/L&L WINGS

## LICENSING AGREEMENT

THIS AGREEMENT dated for purposes of reference as of the ~~31st~~1st day of ~~December~~November, 1998, is made by and between L & L WINGS, INC. d/b/a Wings, a South Carolina Corporation with an address at 18 East 42nd Street, New York, New York 10017, ("Licensor") and Marco-Destin Inc. (hereinafter, "Marco-Destin"), 1000 Highway 98 East Corp. ("Highway"), Panama Surf & Sport, Inc. ("Surf") and E&T Inc. (hereinafter, "ET"), being Florida and South Carolina corporations, and all having an address at _c/o Marco Destin, Inc., 10400 Pan N.W. 33rd St, Miami, Florida_ (collectively, hereinafter, "Licensee").

WHEREAS, Licensor is the owner of the unregistered servicemark, "Wings" and is the owner of trade dress rights to its distinctive design; and

WHEREAS, ~~Licensor and~~ Licensee have had shared ownership and each is~~utilized~~ the mark "Wings" on retail stores that it owns and has been for many years ~~doing business as~~ "Wings" with the permission and an oral license from Licensor who was a one-half owner of the issued and outstanding shares of stock of Licensee; and

WHEREAS, the ownership ~~of~~by Licensor ~~and~~of the shares of Licensee ~~is~~are being ~~separated~~sold simultaneous with the execution of this Agreement; and

WHEREAS, Licensor and Licensee each adorn some of their retail locations with ~~a~~Licensor's unique wave sculpture design highlighted with a signature colored neon light combination, (hereinafter, Licensor's "Trade Dress"); and

WHEREAS, Licensee recognizes the goodwill, reputation and strong marketing value of using the "Wings" name as a trade/servicemark and trade name and its Trade Dress in the operation of its retail business establishments; and

WHEREAS, Licensee desires to continue do business using the name "Wings" in the "Territory" hereinafter defined after the separation of their respective ownership; and

WHEREAS, ~~the continuing ownership~~Licensee and/or entities and/or principals of Licensee ~~is~~are unwilling to enter into the simultaneous agreements ~~resulting~~purchasing Licensor's interest in ~~the separation of the respective ownership of the parties~~Licensee without this Agreement; and

WHEREAS, Licensor is willing to grant a license to Licensee to use "Wings" and the Trade Dress in the Territory upon the terms and conditions set forth below and other than as set-forth hereinafter has the ~~unrestricted and undivided power~~authority to do so;

NOW, THEREFORE, in consideration of the covenants and agreements hereinafter set forth, and other valuable consideration, the receipt and sufficiency of which hereby are

acknowledged, the parties hereto agree as follows:

1.    Definitions. The following terms as used in this Agreement shall have the meanings set forth below:

221916v2

MD 00106
MARCO/L&L WINGS

"Trade Dress" shall mean the unique wave sculpture design highlighted with a signature colored neon light combination used by Licensor (and also heretofore used by Licensee) in connection with some of their respective business locations.

a. "Territory" shall ~~include~~be defined as the following geographic areas: (i) Within the city limits of Marco Island, Florida, ~~Naples, Florida;~~, St Augustine, Florida;, and Pigeon Forge, Tennessee;, (and ~~in the territory~~ within two miles of each such city limit); (ii) At the individual stores located at 11-A Highway 17 North, North Myrtle Beach, ~~South~~ Carolina and 102 Highway 17 North, North Myrtle Beach, South Carolina (~~and to any location within miles of such locations in the event any such store is relocated~~By way of clarification, Licensor may operate in all other areas of the Myrtle Beach Area except these two individual store locations.); and (iii) In the geographic area from Panama City Beach, Florida west to the Alabama-Mississippi state line and ~~only~~ 10 miles inland from the coast line. All areas not specifically included herein are specifically excluded from the Territory.

*New ↑*

*not mention*

4

Notwithstanding anything to the contrary, Licensor, so long as Licensee operates one or both the stores specified in paragraph 1.2(ii), shall not operate any store in North Myrtle Beach within the area bound by Highway 9 in the North and by 18th Avenue in the South.

a..3. ab "Termination Date" shall be December 31, 2006 or such other date as the license granted hereunder shall be properly terminated pursuant to the terms of this Agreement.

1.Grant of License. (a) So long as Eli Tabib, and upon his death his estate and/or beneficiaries, shall be the owner or owners of not less than ~~51%66⅔~~% of the shares of Licensee, Licensee shall have, and Licensor hereby grants to Licensee, an exclusive license in the Territory to use the name "Wings" and the Trade Dress (hereinafter the "Mark") in connection with Licensee's business establishments ~~located in the Territory only~~, and only for the term (the "Term") commencing from January 1, 1999 until December 31, 2006, unless sooner properly terminated or extended as provided herein (hereinafter, the "Termination Date"); provided, however, that upon the death of Eli Tabib, it shall also be a condition of continuation that Nir ————————Zabari shall continue to be involved in the management of Licensee. ~~This exclusive License shall~~e may not ~~apply~~use ~~to any location~~the Mark outside the Territory. ~~T~~and the License granted hereunder shall be exclusive in the Territory with the exception of the State of South Carolina, where the License shall be ~~non-exclusive and with the further exception that Licensor may use the subject matter of the license at its existing store at ———— in the Territory.~~ limited to the ____ two store specified in paragraph 1.2(ii).

(b) Licensor hereby warrants and represents to Licensee that except as set forth hereinafter it has the ~~full and exclusive power and~~ authority to grant the License to

2.Licensee and that ~~all corporate actions and/or consents from the other parties required in connection herewith have been taken or obtained~~its Board of Directors and shareholders have consented to this License.

(c) Licensor agrees that during the Term and for a period of 10 years immediately thereafter Licensor shall not, nor shall it permit any licensee to, use the name ~~"Wings"~~Mark (or any derivative or similar name~~) or the~~ and/or Trade Dress) in the Territory.

1.Advertising Reimbursement.

(a) If Licensor, in its sole discretion, shall advertise the ~~name "Wings"~~Mark in the Territory, Licensee shall pay to Licensor at its address set forth above, Licensee's pro rata share of all advertising costs incurred for advertising in the Territory. (By way of example, Licensee operates two (2) stores and Licensor operates twenty (20) stores in the Myrtle Beach, South Carolina region. Therefore, if Licensor advertises in that region, Licensee shall pay 1/11 of the advertising costs incurred by Licensor.) Any stores which Licensor licenses to third persons shall be treated as operated by Licensor for the purposes of the calculations required in this Paragraph 3. On or before September 30th of any year, Licensor shall render to Licensee statement of such advertising costs, which statement shall be deemed a conclusive substantiation for such costs unless Licensee shall within 30 days contest the same in writing. Payment of the statement shall be due within thirty (30) days of the date thereof unless contested. At Licensor's option, Licensor may provide statements at shorter intervals but in no event less than once per year.

(b) Notwithstanding the foregoing, Licensee shall not be responsible for advertising costs for any twelve month period in excess of $20,000 in the Territory set forth in paragraph 1.2 (i) &(iii) on a combined basis unless Licensee has consented in writing to the advertising generating such excess cost and Licensor has given notice prior to the advertising in issue that such excess cost would be generated.

4.

(c) Notwithstanding the foregoing , Licensee shall not be responsible for advertising costs for any twelve month period in excess of $25,000 increased annually by the increase in the Consumer Price Index for the Territory set forth in paragraph 1.2(ii). The Consumer Price Index shall mean the Consumer Price Index published by the Bureau of Labor Statistics of the U.S. Department of Labor, All Items, New York, New York -- Northeastern, N.J., for urban wage earners and clerical workers, or any successor or substitute index appropriately adjusted.

1.Termination. Licensor may, at its option, terminate the license and rights granted in this Agreement to Licensee immediately and without prior notice upon the occurrence of any of the following events (but the restriction on Licensor in Paragraph 2(~~b~~c) should continue in effect):

221916v2

a.  If Licensee shall file a voluntary petition in bankruptcy or is adjudicated bankrupt or insolvent or files any petition or answer seeking any reorganization, arrangement, composition, adjustment or readjustment, liquidation, dissolution or similar relief under the present or any future Federal Bankruptcy Act or any present or future applicable United States federal, state or other statute or law, or seeks or consents to, or acquiesces in, the appointment or any trustee, receiver, conservator in, the appointment of ~~neyany~~ trustee, receiver, conservator or liquidator of Licensee, or of all or any substantial part of its properties or of its interests.

a.  If within ninety (90) days after the commencement of any proceeding against Licensee seeking any bankruptcy, reorganization, arrangement, composition, adjustment or readjustment, liquidation, dissolution or similar relief under the present or any future applicable United States federal, state or other statute or law the proceeding is not stayed or dismissed, or if within ninety (90) days after the expiration of any stay, the filing is not vacated.

a.  If Licensee executes an assignment of substantially all of its assets or any other similar agreement for the benefit of creditors.

a.  If Licensee fails to pay any amounts to Licensor properly due pursuant to this Agreement or fails to perform any of the obligations required of it set forth in this Agreement in Paragraphs ~~5,~~ 6, 7, 8, 10 or of any other obligation contained in this Agreement and such default shall continue uncured for ~~(10)~~ 30 days after written notice thereof by Licensor.

~~4.5.~~

4.5                   If licensee initiates any action, proceeding or claim against Licensor challenging any provision or the validity of this Agreement and said action is determined to be either frivolous and/or Licensor's prevails in said action and/or claim.

4.6     If there is any change in ownership of Licensee in violation of Paragraph 2.

1. Obligations and Responsibilities Upon Termination. Upon expiration or termination of the License granted hereunder, by operation of law or otherwise:

a.  All rights of Licensee to use the Mark granted hereunder (other than its rights under Paragraph 2(~~bc~~)), including the right to use the name "Wings" and the Licensor's Trade Dress shall (subject to ~~the six months~~ four months thirty day removal period set forth in Paragraph 5.2) cease.

a.  Licensee, at its own cost and expense, shall within ~~six (6)~~ four months remove and/or cause to be removed, all materials, signs, promotions, bags, and any and all other items, bearing the ~~name and/or m~~ Mark ~~"Wings" and/or the Trade Dress~~ or any evidence of the ~~Trade Dress~~ Mark licensed hereunder. Thereafter, Licensee shall not, in any manner whatsoever, use the name ~~"Wings"~~ Mark, any similar name or any name created by changing, adding or dropping one or more letters from the name "Wings", (hereinafter, collectively, referred to as "Similar Name") nor shall Licensee use Licensor's Trade Dress in any form whatsoever.

a.  Licensee shall pay any and all outstanding proper statements for advertising

MD 00109
MARCO/L&L WINGS

within thirty (30) days of the termination or expiration hereof.

a. In the event Licensee fails to promptly fulfill all of its obligations upon the termination or expiration of this Agreement, Licensor shall have the right to pursue all legal remedies including, but not limited to, an action for trademark and/or servicemark infringement and/or for trade dress infringement, temporary restraining order, preliminary and/or permanent injunction.- Licensee shall have the same rights with respect to Licensor's obligations (including without limitation, under Paragraph 2(b~~c~~)).

1. Infringement.

a. In the event Licensee learns of any infringement or alleged infringement, has notice of any written claim or allegation by a third person of ~~(i) infringement by Licensee of Licensor's mark, "Wings" or of its Trade Dress, or (ii) the mark or Trade Dress are~~of Licensor's Mark or Mark is likely to cause deception or confusion to the public, Licensee shall promptly notify Licensor with the particulars thereof.

a. In the event Licensor decides to pursue any infringement claim against a third party in the Territory, Licensor may request that Licensee join in or assist in any of the steps necessary to enforce the infringement claim. In the event Licensee agrees to assist, then each party shall bear one-half of the costs of any action; provided, however, that Licensee's share shall not exceed for any calendar year the product of (x) one-half of the costs incurred in the year, and (y) a fraction, the numerator of which is the number of years then remaining on the License and denominator of which is eight. In the event Licensee does not agree to assist within a reasonable period, then Licensor may terminate this License Agreement (but subject to Paragraph 2(b~~c~~)). In all events, Licensee shall cooperate with Licensor in the pursuit of any action (but Licensee shall not, except as required by this Paragraph, be obligated to incur material expense in so cooperating).

1. Indemnification.

a. Licensee, jointly and severally, shall hold Licensor harmless and shall indemnify Licensor from any and all liabilities, injuries, damages, claims, suits, attorney's fees, etc., sustained by Licensor by reason of this Agreement which Licensee has, may have or which may hereinafter exist with Licensor or due to Licensee's operation of its business, use of the Licensor's Mark, Trade Dress, and/or use of the name "Wings" (provided, however, that Licensee shall have no indemnification obligation to the extent that any claim, damage, etc. is attributable to any defect or alleged defect in Licensor's ownership or right to license the name "Wings" or the Trade Dress). Licensee will, at all times, act and conduct business in such a manner so as not to adversely affect or otherwise harm the good will and reputation associated with the name "Wings", and will promptly comply with reasonable written notices from Licensor with respect thereto. Licensee will, at all times, maintain general liability, errors and omissions

7
221916v2

MD 00110
MARCO/L&L WINGS

insurance naming Licensor as an additional insured (to the extent permitted by the carrier). Licensee understands that Licensor is or may be bound by and subject to certain Court orders, consent orders, stipulations, agreements and the like and Licensee agrees that, in the conduct of its business, it shall abide by any such Court orders, consent orders, stipulations, agreements and the like of which Licensor shall give it notice, including, in particular, those with Anheuser Busch Incorporated and Two's Company, a Rhode Island Corporation, copies of which are annexed hereto.



~~7.2.~~  Notwithstanding anything herein contained to the contrary, Licensor may terminate this Agreement effective immediately upon written notice to Licensee in the event Licensee shall act or refrain from acting in any way that a reasonable consumer would determine that said action and/or inaction diminished the reputation and/or goodwill of Licensor's Mark. (By way of example and not by way of limitation, actions that may be determined to diminish the reputation of and/or goodwill are trade/servicemark and/or other intellectual property violations, deceptive trade practices, false advertising and/or sexual harassment.)

_____    Licensee shall notify Licensor of any claims to which Paragraph 7.1 may apply within ~~three days~~ from when Licensee ~~knows~~ learns therof.

~~a.~~ _____    *30*    Owners Designation. Licensee shall, at all times, post a placard in a clearly visible and unobstructed location situated at the entranceway to each of its stores doing business as "Wings", which placard shall be at least 12 inches by 18 inches and shall bear the inscription "THIS STORE IS OWNED AND OPERATED BY" and name the appropriate entity. The lettering of the inscription shall be no smaller than one inch high. In addition, promptly upon execution of this Agreement, Licensee shall file a certificate of assumed name with the appropriate governmental agencies, to the extent required thereby.
b.

_____    ~~1.~~Liquidated Damages. Licensee specifically acknowledges that the use of the Mark, the name . "Wings" or any Similar Name and/or the use of Licensor's Trade Dress after the Termination Date will cause Licensor to suffer irreparable harm, damages for which would be extremely difficult to ascertain. Therefore, in addition to all other remedies, including but not limited to injunctive relief, in the event of Licensee's breach of this Agreement to which Licensor shall be entitled, Licensor shall be entitled to injunctive relief, and liquidated damages in the sum of $200.00 per day (subject, however, to the ~~six~~four month period described in Paragraph 5.2) per business establishment utilizing the Mark and/or name "Wings" ~~or~~and/or any Similar Name or Trade Dress until cessation of any improper use, together with all costs and disbursements, including reasonable attorney's fees arising from Licensee's failure promptly to use the name "Wings" or any Similar Name or Trade Dress.

9.____    The calculation of the liquidated damages of $200.00 per day per business establishment shall be calculated without regard to the four month period described in Paragraph 5.2 if Licensee does not comply with the terms and conditions of the removal set-forth herein within said four month period. (By way of example if Licensee complies with the removal of the Mark etc. within the four months then there shall be no liquidated damages but if Licensee removes the Mark etc. four months and

MD 00111
MARCO/L&L WINGS

<u>1 day later then Licensor shall be entitled to $2,420.00 ($200.00 X 121) per store as liquidated damages assuming 30 days per month.)</u>

1.<u>Assignment Prohibited</u>. Except as explicitly stated herein, this Agreement shall not be assignable either in whole or in part. Nothing in this Agreement is intended or shall be construed to confer upon or to give to any person, firm, or corporation, other than the parties hereto, any right, remedy, or claim under or by reason of this Agreement. All terms and conditions in this Agreement shall be for the sole and exclusive benefit of the parties. Nothing contained in this Agreement shall be deemed or construed to create or effectuate the relationship of principal and agent or of franchisor and franchisee or of partnership or joint venture between the parties hereto.

1.<u>Waiver</u>. No failure by Licensor to insist upon the strict performance of any term or condition of this Agreement or to exercise any right or remedy consequent upon the breach, and no acceptance of full or partial payments due under this Agreement during the continuance of any breach, shall constitute a waiver of the breach or the term or condition. No term or condition of this Agreement to be performed or observed by Licensee and no breach shall be waived, altered or modified except by written instrument executed by Licensor. No waiver of any breach shall affect or alter this Agreement but each term and condition of this Agreement shall remain and continue in effect with respect to any other existing or subsequent breach. No delay or failure by either party to exercise any right under this Agreement, and no partial or single exercise of that right, shall constitute a waiver of that or any other right. No waiver, modification or amendment of this Agreement shall be valid unless in writing signed by the party to be charged.

1.<u>Licensor's Paramount Rights</u>.

a.Licensee shall not contest Licensor's exclusive ownership of all rights including trademark and/or servicemark rights to the name "Wings" or copyright rights to any element of the Trade Dress. Licensee shall not at any time apply for a registration for the name "Wings" or any confusingly similar mark or for any other right in the name anywhere in the world nor shall Licensee file any opposition or in any other manner hinder any application for registration of the mark "Wings" that Licensor has, will or may make.

a.Licensee acknowledges and agrees that any and all rights and assets, ~~including, but not limited~~ in ~~to, goodwill,~~ he Mark accruing and/or arising from the use of the ~~m~~Mark "Wings" and/or its Trade Dress, shall belong to and be the property of Licensor free of any and all claims of Licensee ~~(provided, however, that nothing in this Paragraph 11.2 shall be construed to grant (or acknowledge the right of) Licensor to any goodwill of Licensee existing on the date of this Agreement or thereafter to the extent of the general goodwill of Licensee)~~.

<u>12.</u>   —except as state herein.

1.<u>Governing Law</u>. This Agreement shall be governed solely by the laws of the State of

9.
221916v2

MD 00112
MARCO/L&L WINGS

New York without giving effect to any conflict of laws provisions thereof. Any and all matters of dispute between the parties hereunder or in connection herewith shall be resolved in New York County, New York State by arbitration before the American Arbitration Association and shall include the jurisdiction in the federal courts of the Southern District of New York of the state courts and the State of New York in New York County to enforce such arbitration and/or confirm any award thereof. Licensee and Licensor hereby consent to jurisdiction as set forth herein. Notwithstanding the foregoing, either party may apply to a court of competent jurisdiction for a temporary restraining order, preliminary or permanent injunction or any other form of relief to assure that any judgment awarded in arbitration is not rendered ineffective. Furthermore, notwithstanding the foregoing, in the event of a timely objection to arbitration either party may commence a proceeding in Supreme Court of the State of New York and County of New York and/or Federal District Court for the Southern District of New York.

1. Attorneys' Fees. If Licensor or Licensee shall file any action against the other party for any breach of this Agreement and shall successfully recover on the same, such prevailing party shall be entitled to recover from the other party reasonable attorneys' fees incurred in so doing.

1. Notices. Notices required under this Agreement shall be made or given to the parties at the addresses specified at the beginning of this Agreement or at any other address that the parties may, by notice, specify. Copies of all notices shall be sent to the attorney for the party. Notices shall be deemed given 5 days after mailing by certified or registered mail, return receipt requested (unless sent by overnight mail service in which event notice shall be deemed given 1 day after mailing).

1. Binding Effect. This Agreement shall be binding upon the parties and their heirs, agents, executors, administrators, and successors, including, without limitation, successor officers, directors and trustees, if any, of the Licensor or Licensee.

1. Headings. The headings for each paragraph are simply for the convenience of the parties and shall not be used to interpret the meaning of any of the provisions.

1. Entire Agreement. This Agreement contains the entire agreement between the parties and supersedes all agreements and understandings previously made between the parties relating to its subject matter, all of which have been merged herein. There are no other understandings or agreements between them, nor are there any representations made which are not herein contained. This Agreement shall be governed in accordance with the laws of the State of New York, the courts of which (and the Federal District for the Southern District of New York) shall have exclusive jurisdiction (subject to and in accordance with the arbitration clause of Paragraph 13).

18. Time Of The Essence. All dates and obligations in this Agreement which rely upon specific dates or periods of time shall be deemed to be "Time of the Essence" and any failure to timely comply with any such obligations and/or dates shall be deemed a material breach of this agreement.

19. Breach of Related Agreements. Licensor and Licensee are parties to various other agreements. If Licensor, Licensee and/or their assigns and/or successors default and/or fail to comply with terms and/or conditions contained in one or more of the other agreements between the parties and such failure to comply with said terms and/or conditions continue for more than 30 days after written notice to the party against whom compliance is sought then that default shall be deemed a material default hereunder and shall automatically terminate the Licensee subject however, to the party against whom compliance is sought having a right to bring a "Yellowstone Injunction" to toll the time to comply while the parties litigate the issue of default.

IN WITNESS WHEREOF, the parties have set their hands hereto as of the day and date above first appearing.

L & L WINGS, INC.

By:    Shaul Levy, President

MARCO-DESTIN, INC.
PANAMA SURF & SPORT, INC.
1000 HIGHWAY 98 EAST CORP.
E&T, INC.

By:    Eli Tabib, President

21916v2

MD 00114
MARCO/L&L WINGS

*Table*
*06935/101*
*Conf*

# MOSES & SINGER LLP

1301 Avenue of the Americas, New York, NY 10019-6076
Telephone: 212.554.7800        Facsimile: 212.554.7700

# Facsimile Transmission
# Cover Sheet

Date:          February 8, 2000

To                      ·Firm name              Fax number transmitted to

Bennett Krasner, Esq.                            516-432-7016

From:        Steven Glaser, Esq.               Phone:  212-554-7820

Client/Matter:   06935-101

Number of Pages: *31*
(Including cover page)

Comments:

If you do not receive all pages, or have any other problems receiving this transmission, please call 212-554-7800 and ask for the telecopy operator.

**CONFIDENTIALITY NOTE**
This facsimile transmission contains information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, confidential, and/or exempt from disclosure under applicable law.

If you are not the intended recipient (or an employee or agent responsible for delivering this facsimile transmission to the intended recipient), you are hereby notified that any copying, disclosure or distribution of this information may be subject to legal restriction or sanction.  Please notify the sender by telephone to arrange for the return or destruction of the information and all copies.

MD 00115
MARCO/L&L WINGS

## RELEASE

For $1.00 and other good and valuable consideration each of the undersigned hereby releases and discharges any and all obligations, suits, causes of action, debts, or other claims whatsoever (contingent or otherwise), which any of the undersigned has or may have against Eli Tabib or any of the following corporations:

1000 South Highway 98 East Corp.

Marco Destin, Inc.

Panama Surf and Sport Inc.

E&T Inc.

Provided however, that the aforesaid release shall not extend to any obligations, suits, causes of action, debts or other claims (contingent or otherwise) to any of the undersigned of the aforesaid individual or any of the aforesaid corporations under, or contemplated by, any of the following:

1. Licensing Agreement dated as of November 1, 1998 between said entities and L&L Wings, Inc.;
2. Purchase Agreement dated as of December 31, 1998 by and among the undersigned, Eli Tabib and the entities named above;
3. Notes dated as of _____ issued by certain of the entities named above to L&L Wings, Inc.
4. Note dated as of _____ issued by Eli Tabib to Shaul and Meir Levy.


_____
Shaul Levy

_____
Meir Levy

L&L Wings, Inc.

By:_____

Shaul and Meir Levy Partnership

By:_____

Dated:          February _____, 2000


235576

## RESIGNATION

Each of the undersigned hereby resigns any officership or directorship and/or any employment status which the undersigned may have in or with respect to the following corporations, effective as of December 31, 1998:

        1000 Highway 98 East Corp.

        Marco Destin, Inc.

        Panama Surf and Sport Shop Inc.


_____
Shaul Levy


_____
Meir Levy

Dated:      February _____, 2000

235575

MD 00117
MARCO/L&L WINGS

## CONSULTING AGREEMENT
### ~~ELI TABIB~~[MARCO DESTIN, INC.]

This Consulting Agreement dated as of _____ by and between L & L Wings, Inc., a _____ corporation (the "Company"), having its principal office at _____, and ~~Eli Tabib~~[Marco Destin, Inc.] (the "Consultant"), having an address at _____.

## P R E A M B L E

The Company and its affiliates sell at retail clothing and related merchandise in various locations in, inter alia, the Southern United States. The Consultant ~~is chief executive officer of various clothing retailers with operations~~ **and its executives have become expert in the management and operation of the industry** in the Southern United States. ~~In the course of his duties with such retailers, the Consultant has become expert in the management and operation of the industry in the Southern United States~~ area. The Company desires to make available to its officers and those of its affiliates the consulting services of ~~consultant~~ **Consultant and its executives** and Consultant is willing to ~~do so~~ **make the same available** from time to time, all on the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the premises and the mutual covenants contained herein, the parties hereto hereby agree as follows:

1.  Consulting.

The Company hereby retains Consultant and Consultant hereby agrees to **provide its executives to** consult with the Company and its executives (and those of its affiliates) for the period set forth in Section 2 hereof, subject to and upon the other terms and conditions herein provided.

2.  Term of Consulting.

The period of Consultant's consulting under this Agreement shall commence as of the date hereof and shall continue thereafter until _____, 2021 (the "Term"). In the event that the Consultant continues to consult with the Company after the end of the Term, such continued employment shall be subject to such terms and conditions as the Company and the Consultant may then agree.

3.  Responsibilities and Duties.

(a)  During the period of his retention hereunder, Consultant agrees **to provide its executives** to consult with the Company and its executives (and those of its

235983

MD 00118
MARCO/L&L WINGS

affiliates) at their request given to ~~him~~ **it** from time to time and upon reasonable notice (and, in this connection, taking into account the reasonable needs of ~~Consultant's other enterprises and interests for his services). Consultant~~ **the Consultant for the services of its executives in its own business). Consultant and its executives** shall not be required as a condition of ~~his~~ **its** compensation to render any minimum level of consultation during any period , it being understood and agreed that Consultant shall render ~~his~~ **its** services **through its executives** only as requested by the Company and its affiliates hereunder and further that such services shall be rendered by Consultant **and its executives** solely within (or from) the State of Florida and finally that Consultant has in the past furnished other services and other good and sufficient consideration for the obligations of the Company hereunder in addition to ~~his~~ **its** undertakings hereunder. Any travel or other expenses required of Consultant **and its executives** to render services hereof shall be at the sole expense of the Company and shall be payable upon presentation of suitable documentation therefor by Consultant.

(b)    This Agreement shall not be deemed to create any employer-employee relationship **or joint venture**.

4.    <u>Compensation</u>.

(a)  ·    For all services rendered by Consultant **and its executives** during ~~his~~ **its** retention hereunder, the Company shall pay to Consultant the annual amount of $_____ during the Term, payable not less often than annually.

5.    <u>Death or Disability; **Merger etc**.</u>

(a)    In the event that by reason of any **death** disability **of its executives**, Consultant shall be unable to perform ~~his~~ **its** duties hereunder, he **it** shall, nevertheless, be entitled to continue to receive the compensation due hereunder.

~~During any such period Consultant shall endeavor to make available to the Company for consultation other appropriate executives in his organizations without additional compensation.~~

~~(b) In the event of the death of Consultant either during his disability or otherwise during the period of his employment hereunder~~**(b) In the event of any merger, consolidation, sale or liquidation of Consultant during the term**, the Company shall continue to pay to Consultant's ~~beneficiary or beneficiaries~~ **successors or assigns** designated by written notice to the Company ~~or, if there be none, to Consultant's estate, his,~~ **its** annual compensation otherwise due hereunder and such compensation shall not cease until the end of the Term. **If Consultant is a surviving entity in any merger or consolidation or other such transaction it shall continue to make its executives available hereunder.**

6.    <u>Binding Agreement</u>.

This Agreement shall be binding upon, and inure to the benefit of, Consultant and the Company and their respective ~~heirs, personal representatives,~~ successors and assigns.

235983                                      2

MD 00119
MARCO/L&L WINGS

Neither the Company nor the Consultant may assign or otherwise encumber this Agreement or any rights or obligations of such party hereunder without the prior written consent of the other party.

    7.    Modification and Waiver.

    (a)    Amendment of Agreement. This Agreement may not be modified or amended, terminated or cancelled except by a written instrument signed by the parties hereto.

    (b)    Waiver. No term or condition of this Agreement shall be deemed to have been waived, nor shall there be any estoppel against the enforcement of any provision of this Agreement, except by written instrument of the party charged with such waiver or estoppel. No such written waiver shall be deemed a continuing waiver unless specifically stated therein, and each such waiver shall operate only as to the specific term or condition waived and shall not constitute a waiver of such term or condition for the future or as to any act other than that specifically waived.

    8.    Severability.

If, for any reason, any provision of this Agreement is held invalid, such invalidity shall not affect any other provision of this Agreement not held so invalid, and each such other provision shall to the full extent consistent with law continue in full force and effect.

    9.    Headings.

The headings of the Sections herein are included solely for convenience of reference and shall not control the meaning or interpretation of any of the provisions of this Agreement.

    10.    Governing Law.

This Agreement has been executed and delivered in the State of New York, and its validity, interpretation, performance, and enforcement shall be governed by the laws of said State.

    11.    Notices.

Any notices or other communications to be given hereunder shall be deemed to have been given if delivered personally to the party to which directed, or if mailed, then by registered or certified mail, return receipt requested, directed to the address of the party first hereinabove set forth. Any party may change his or its address for purposes of this Section 11 by giving written notice thereof hereunder.

    12.    Due Authorization.

235983

3

MD 00120
MARCO/L&L WINGS