The Company hereby warrants and represents to the Consultant that the execution, delivery and performance hereof by the Company has been duly authorized by all requisite or appropriate corporate and shareholder action.

13.    Attorneys' Fees.

In the event that it shall be necessary for the Consultant to retain legal counsel and/or incur other costs and expenses in connection with the enforcement hereof whether by a judicial action or proceeding or by arbitration, the Consultant shall to the extent he shall prevail (whether by settlement or by judicial or arbitral action or otherwise) be entitled to recover from the Company his reasonable attorneys' fees and costs and expenses in connection with such enforcement.

14.    Arbitration.

Each of the parties hereto shall have the option, exercisable by a writing given to the other party at any time (but in no event later than 45 days after the other party shall have commenced an action or proceeding in court to enforce this Agreement), to demand arbitration of any and all disputes or other controversies arising under, out of or in respect of this Agreement before the American Arbitration Association in the City of New York and before three arbitrators, in accordance with, and subject to, the rules and procedures of said Association. Judgment on any award rendered in any such arbitration proceeding may be entered in any court having jurisdiction over the party sought to be charged. The parties shall each bear such share of the fees and costs of the arbitration as shall be determined by the arbitrators, and if Consultant shall prevail in such arbitration the arbitrators shall award Consultant, in addition, the reasonable fees of his counsel.

IN WITNESS WHEREOF, the Company has **and the Consultant have** caused this Agreement to be executed by its officer **their officers** thereunto duly authorized, and Consultant has signed this Agreement, in the City of New York as of the day and year first above written.

L & L Wings, Inc.

By:_____

ELI TABIB, Individually**[Marco Destin, Inc.]**

_____

This redlined draft, generated by CompareRite (TM) - The Instant Redliner, shows the differences between -
original document  : J:\SGLASER\AGT\50V%03!.DOC
and revised document: J:\SGLASER\AGT\523301!.DOC

CompareRite found   33 change(s) in the text

235983    4

MD 00121
MARCO/L&L WINGS

Deletions appear as Overstrike text
Additions appear as Bold+Dbl Underline text

235983                                    5

MD 00122
MARCO/L&L WINGS

# CONSULTING AGREEMENT
## ELI TABIB

This Consulting Agreement dated as of _____ _____, ~~2000~~ by and between L & L Wings, Inc., a _____ corporation (the "Company"), having its principal office at _____, and Eli Tabib (the "Consultant"), having an address at _____.

## P R E A M B L E

The Company and its affiliates sell at retail clothing and related merchandise in various locations in, inter alia, the Southern United States. The Consultant is chief executive officer of various clothing retailers with operations in the Southern United States. In the course of his duties with such retailers, the Consultant has become expert in the management and operation of the industry in the Southern United States area. The Company desires to make available to its officers and those of its affiliates the consulting services of consultant and Consultant is willing to do so from time to time, all on the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the premises and the mutual covenants contained herein, the parties hereto hereby agree as follows:

1.     Consulting.

The Company hereby retains Consultant and Consultant hereby agrees to consult with the Company and its executives (and those of its affiliates) for the period set forth in Section 2 hereof, subject to and upon the other terms and conditions herein provided.

2.     Term of Consulting.

The period of Consultant's consulting under this Agreement shall commence as of the date hereof and shall continue thereafter ~~for~~ **until** _____, ~~2020~~ **2021** (the "Term"). In the event that the Consultant continues to consult with the Company after the end of the Term, such continued employment shall be subject to such terms and conditions as the Company and the Consultant may then agree.

3.     Responsibilities and Duties.

(a)     During the period of his retention hereunder, Consultant agrees to consult with the Company and its executives (and those of its affiliates) at their request given to him from time to time and upon reasonable notice **(and, in this connection, taking into account the reasonable needs of Consultant's other enterprises and interests for his services)**.

234426v3

MD 00123
MARCO/L&L WINGS

Consultant shall not be required as a condition of his compensation to render any minimum level of consultation during any period , it being understood and agreed that Consultant shall render his services only as requested by the Company and its affiliates and hereunder **and further that such services shall be rendered by Consultant solely within (or from) the State of Florida and finally** that Consultant has in the past furnished other services and **other** good and sufficient consideration for the obligations of the Company hereunder **in addition to his undertakings hereunder**. Any travel or other expenses required of Consultant to render services hereof shall be at the sole expense of the Company and shall be payable upon presentation of suitable documentation therefor by Consultant.

(b)    This Agreement shall not be deemed to create any employer-employee relationship.

4.    Compensation.

(a)    For all services rendered by Consultant during his retention hereunder, the Company shall pay to Consultant the annual amount of $_____ during the Term, payable not less often than annually.

5.    Death or Disability.

(a)    In the event that by reason of any disability, Consultant shall be unable to perform his duties hereunder, he shall, nevertheless, be entitled to continue to receive the compensation due hereunder. During any such period Consultant shall endeavor to make available to the Company for consultation other appropriate executives in his organizations without additional compensation.

(b) In the event of the death of Consultant either during his disability or otherwise during the period of his employment hereunder, the Company shall continue to pay to Consultant's beneficiary or beneficiaries designated by written notice to the Company or, if there be none, to Consultant's estate, his annual compensation otherwise due hereunder and such compensation shall not cease until the end of the Term.

6.    Binding Agreement.

This Agreement shall be binding upon, and inure to the benefit of, Consultant and the Company and their respective heirs, personal representatives, successors and assigns. Neither the Company nor the Consultant may assign or otherwise encumber this Agreement or any rights or obligations of such party hereunder without the prior written consent of the other party.

7.    Modification and Waiver.

(a)    Amendment of Agreement. This Agreement may not be modified or amended, terminated or cancelled except by a written instrument signed by the parties hereto.

234426v3                                    2

**MD 00124**
**MARCO/L&L WINGS**

(b)    Waiver.  No term or condition of this Agreement shall be deemed to have been waived, nor shall there be any estoppel against the enforcement of any provision of this Agreement, except by written instrument of the party charged with such waiver or estoppel. No such written waiver shall be deemed a continuing waiver unless specifically stated therein, and each such waiver shall operate only as to the specific term or condition waived and shall not constitute a waiver of such term or condition for the future or as to any act other than that specifically waived.

8.    Severability.

If, for any reason, any provision of this Agreement is held invalid, such invalidity shall not affect any other provision of this Agreement not held so invalid, and each such other provision shall to the full extent consistent with law continue in full force and effect.

9.    Headings.

The headings of the Sections herein are included solely for convenience of reference and shall not control the meaning or interpretation of any of the provisions of this Agreement.

10.    Governing Law.

This Agreement has been executed and delivered in the State of New York, and its validity, interpretation, performance, and enforcement shall be governed by the laws of said State.

11.    Notices.

Any notices or other communications to be given hereunder shall be deemed to have been given if delivered personally to the party to which directed, or if mailed, then by registered or certified mail, return receipt requested, directed to the address of the party first hereinabove set forth.  Any party may change his or its address for purposes of this Section 11 by giving written notice thereof hereunder.

12.    Due Authorization.

The Company hereby warrants and represents to the Consultant that the execution, delivery and performance hereof by the Company has been duly authorized by all requisite or appropriate corporate and shareholder action.

13.    Attorneys' Fees.

MD 00125
MARCO/L&L WINGS

In the event that it shall be necessary for the Consultant to retain legal counsel and/or incur other costs and expenses in connection with the enforcement hereof whether by a judicial action or proceeding or by arbitration, the Consultant shall to the extent he shall prevail (whether by settlement or by judicial or arbitral action or otherwise) be entitled to recover from the Company his reasonable attorneys' fees and costs and expenses in connection with such enforcement.

14.    Arbitration.

Each of the parties hereto shall have the option, exercisable by a writing given to the other party at any time (but in no event later than 45 days after the other party shall have commenced an action or proceeding in court to enforce this Agreement), to demand arbitration of any and all disputes or other controversies arising under, out of or in respect of this Agreement before the American Arbitration Association in the City of New York and before three arbitrators, in accordance with, and subject to, the rules and procedures of said Association. Judgment on any award rendered in any such arbitration proceeding may be entered in any court having jurisdiction over the party sought to be charged. The parties shall each bear such share of the fees and costs of the arbitration as shall be determined by the arbitrators, and if Consultant shall prevail in such arbitration the arbitrators shall award Consultant, in addition, the reasonable fees of his counsel.

IN WITNESS WHEREOF, the Company has caused this Agreement to be executed by its officer thereunto duly authorized, and Consultant has signed this Agreement, in the City of New York as of the day and year first above written.

L & L Wings, Inc.

By:_____

_____
ELI TABIB, Individually

This redlined draft, generated by CompareRite (TM) - The Instant Redliner, shows the differences between -
original document  : I:\SGLASER\AGT\50V%02!.DOC
and revised document: I:\SGLASER\AGT\50V%03!.DOC

CompareRite found   12 change(s) in the text

Deletions appear as Overstrike text
Additions appear as Bold+Dbl Underline text

MD 00126
MARCO/L&L WINGS

Agreement ~~made this~~ _____ day of _____, ~~2000, and~~ effective as of ~~December~~ **October** 31, 1998, by and between on the one hand, Shaul Levy (hereinafter, "Shaul"), Meir Levy (hereinafter, "Meir"), (both Shaul Levy and Meir Levy are hereinafter collectively referred to as "Levy"), L&L Wings, Inc. (hereinafter, "L&L"), Shaul and Meir Levy Partnership (hereinafter, "SMP"), (Shaul Levy, Meir Levy, L&L and SMP, are all from time to time, hereinafter collectively referred to as "Wings"), and on the other hand, Eli Tabib (hereinafter, "Eli"), 1000 Highway 98 East Corp. (hereinafter, "1000 Highway"), Marco-Destin Inc. (hereinafter, "Marco-Destin"), 100 South Morehead Ave. Corp. (hereinafter, "Morehead"), and Panama City Surf & Sport Inc. (hereinafter, "Panama City").

WHEREAS, Shaul, Meir and Eli are the sole shareholders of Morehead; and

WHEREAS, Shaul, Meir and Eli are the sole shareholders of 1000 Highway; and

WHEREAS, Shaul, Meir and Eli are the sole shareholders of Marco-Destin; and

WHEREAS, Shaul, Meir and Eli are the sole shareholders of Panama City; and

WHEREAS, Shaul and Meir are the sole partners in SMP; and

WHEREAS, all of the parties, in one form or another, are engaged in the business of owning and operating retail stores; and

WHEREAS, all of the stores affected by this agreement are operated under the name "Wings"; and

WHEREAS, Marco-Destin operated various stores leased to L&L without a lease and has since abandoned them; and

221819v3

MD 00127
MARCO/L&L WINGS

WHEREAS, Marco-Destin holds leases on stores operated by L&L and desires to assign such leases to L&L; and

WHEREAS, Shaul and Meir are desirous of acquiring and 1000 Highway desires to sell certain real property; and

WHEREAS, Levy and Eli have determined that it is in their best interests and in the best interests of the various corporate entities named hereinabove to amicably part ways; and

WHEREAS, Levy and Eli have determined that it is in their best interests and in the best interests of the various corporate entities named hereinabove if Levy and Eli cease to own shares of stock in the same entities;

NOW, THEREFORE, in consideration of the covenants and agreements hereinafter set forth, and other valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the parties hereto agree as follows:

1.    Transfers of Shares of Stock

1.1.    100 South Morehead Ave. Corp. Eli hereby sells, transfers and delivers to Shaul and Meir, in equal shares, and Shaul and Meir hereby purchase, upon the terms and conditions hereinafter set forth, all Eli's shares of the capital stock of Morehead, which shares constitute one-half of the authorized and issued shares of Morehead. The purchase price being paid by Shaul and Meir for Eli's said shares is [$65,743_____] payable on the date hereof (the "Closing") by offset against the note to be delivered by Eli pursuant to Paragraph 1.2, 1.3 and 1.4. The sellers warrant that they have good and marketable title to such shares and that the same are subject to no lien, claim or other encumbrance.

221819v3                                2

MD 00128
MARCO/L&L WINGS

1.2.    1000 Highway 98 East Corp. Shaul and Meir each, for himself, agree to sell, transfer and deliver to Eli and Eli hereby purchases, upon the terms and conditions hereinafter set forth, _____ of their shares of the capital stock of 1000 Highway, which shares, together with the shares to be redeemed by 1000 Highway pursuant to Paragraph 2.3 constitute one-half of the authorized and issued shares of 1000 Highway. The purchase price to be paid by Eli for said shares shall be $__, payable at the Closing by the delivery by Eli of a note therefor and for the purchase prices under paragraph 1.3, and 1.4. The sellers warrant that they have good and marketable title to such shares and that the same are subject to no lien, claim or other encumbrance.

1.3.    Marco-Destin Inc. Shaul and Meir each, for himself, hereby sell, transfer and deliver to Eli and Eli hereby purchases, upon the terms and conditions hereinafter set forth, all their shares of the capital stock of Marco-Destin, which shares constitute one-half of the authorized and issued shares of Marco-Destin. The purchase price being paid by Eli for said shares is [$233,772] payable at the Closing by the delivery by Eli of a note therefor and for the purchase price under Paragraph 1.2 and 1.4. The sellers warrant that they have good and marketable title to such shares and that the same are subject to no lien, claim or other encumbrance.

1.4.    Panama City Surf & Sport Inc. Shaul and Meir each for himself, hereby sell, transfer and deliver to Eli and Eli hereby purchases, upon the terms and conditions hereinafter set forth, all their shares of the capital stock of Panama City, which shares constitute one-half of the authorized and issued shares of Panama City. The purchase price being paid by Eli for said shares is $[?], payable at the Closing by delivery of a note therefor and for the purchase prices

MD 00129
MARCO/L&L WINGS

under Paragraph 1.2 and 1.3. The sellers warrant that they have good and marketable title to such shares and that the same are subject to no lien, claim or other encumbrance.

1.5.    E&T, Inc.  Shaul and Meir, each for himself, hereby acknowledges and agrees that Eli is the sole owner of the shares of E&T, Inc. and that neither of them has any claim thereto.

2.    Transfers of Leasehold Interests and Property

2.1.    106A N. New River Drive, Surf City, NC. In consideration of the sum of $1.00, Eli and Marco-Destin shall execute, as soon as practicable after the Closing, a surrender to L&L of any leasehold right, whether oral or written, (and subject to any and all liens or encumbrances consented to by Shaul, Meir or L&L or their affiliates or of which any of them otherwise have knowledge) which he, it or they may have in and to the lease agreement entered into between Coastal Land Ventures, Inc. as Landlord and L&L as Tenant, for the premises known by the parties as store #766 located at 106A N. New River Drive, Surf City, NC. This store was formerly operated by Marco-Destin and since abandoned. The surrender agreement shall be in form and substance reasonably satisfactory to the parties.

2.2.    15 East 1st Street, Ocean Isle, NC. In consideration of the sum of $1.00, Marco-Destin shall assign, as soon as practicable after the Closing, to L & L (subject to any and all liens or encumbrances consented to by Shaul, Meir or their affiliates or of which any of them otherwise have knowledge) the lease between Ralph Shama and Yaron Shama collectively as Landlord and Marco-Destin as Tenant, together with all right, title and interest of the tenant thereunder, for the premises known by the parties as store #767 located at 15 East 1st Street, Ocean Isle, NC. The assignment shall be in form and substance reasonably satisfactory to the

MD 00130
MARCO/L&L WINGS

parties. **Eli and Marco Destin further agree that, if required by Landlord, they and/or either or both of them, shall remain liable for the lease obligations of Tenant.** This store was formerly operated by Marco-Destin and since abandoned.

2.3.   1014 N. Lake Park Road, Carolina Beach, NC (transfer of real property). In consideration of the sum of $_____ payable by delivery to it at the Closing by Shaul and Meir of ____ shares of its capital stock, 1000 Highway shall, as soon as practicable after the Closing sell, transfer and convey to Shaul and Meir and/or ~~their assignees and/or designees~~ **L&L or SMP** (subject to all liens and encumbrances consented to by Shaul, Meir, or their affiliates or of which any of them otherwise have knowledge), the real property, together with the buildings and improvements thereon located, known by the parties as store #765 located at 1014 N. Lake Park Road, Carolina Beach, pursuant to the form of deed reasonably satisfactory to the parties.

2.4.   1014 N. Lake Park Road, Carolina Beach, NC (transfer of leasehold interest). In consideration of the sum of $1.00, Marco-Destin shall, as soon as practicable after the Closing, assign (subject to any liens or encumbrances consented to by Shaul, Meir, L & L or their affiliates or of which any of them otherwise has knowledge) to L & L any right, title or interest it has or may claim to have as Tenant and is surrendering to L & L any claims to the business operated in the premises known by the parties as store #765 located at 1014 N. Lake Park Road, Carolina Beach, NC. Eli, 1000 Highway, pursuant to a form of assignment and surrender agreement reasonably satisfactory to the parties. This store was formerly operated by Marco-Destin and since abandoned.

2.5.   9952 Beach Road, Calabash, NC. In consideration of the sum of $1.00 Eli and 1000 Highway shall assign, as soon as practicable after the Closing (subject to any liens or

MD 00131
MARCO/L&L WINGS

encumbrances consented to by Shaul, Meir, L & L or their affiliates or of which any of them has knowledge), to L & L **and/or Shaul** and **Meir** or ~~its assignees~~ **SMP**, any right, title or interest either or both of them has or may have or may claim to have in and to the land and/or buildings and improvements located thereon and known by the parties as store #605 located at 9952 Beach Road, Calabash, NC, pursuant to an assignment and surrender agreement reasonably satisfactory to the parties. The parties acknowledge and understand that the said real property is owned by SMP; that the building and improvements thereon were paid for by 1000 Highway in repayment of money owed to L & L and carried on the books of 1000 Highway as accounts payable; and that, however, 1000 Highway inadvertently and erroneously booked the building on its books. [The book value of the building and equipment shall be offset by a reduction in certain accounts payable owing to L & L in the amount of $ _____ ]

    2.6.    <u>581 South Collier Boulevard, Marco Island, FL (correction of title)</u>. The parties hereby agree and acknowledge that 1000 Highway is the lawful owner of the land with the buildings and improvements thereon located at 551 South Collier Boulevard, Marco Island, Florida and known by the parties as store #317. Shaul, Meir, Eli and 1000 Highway hereby further acknowledge and agree, each for it, him and themselves, that the deed of conveyance incorrectly reflects that they are the owners of the property while the corporate books of 1000 Highway correctly reflect that it owns the said property. In order to correct this error, Shaul, Meir, Eli and 1000 Highway, shall as soon as practicable after the Closing, for a consideration of $1.00 execute a correction deed **to 1000 Highway** in form reasonably satisfactory to the parties. Said property will be conveyed subject to all existing mortgage(s) and U.C.C. security interests known to and previously consented to by Eli, 1000 Highway and Marco-Destin.

MD 00132
MARCO/L&L WINGS

2.7.    <u>581 South Collier Boulevard, Marco Island, FL (transfer of leasehold interest)</u>. In consideration of the sum of $1.00, Wings shall, as soon as practicable after the Closing, assign to Marco-Destin or ~~its designee~~ <u>**any of its affiliates which are parties hereto**</u>, pursuant to an assignment and surrender agreement in form and substance reasonably satisfactory to the parties, any right, title or interest it has or may claim to have as Tenant and will surrender to Marco-Destin or ~~its designee~~ <u>**any of its affiliates which are parties hereto**</u> any claims to the business operated in the premises known by the parties as store #317 located at 581 South Collier Boulevard, Marco Island, Florida.

2.8.    <u>2673 Parkway, Pigeon Forge, TN</u>. For a consideration of $1.00 Wings shall, as soon as practicable after the Closing, assign to Marco-Destin or ~~its designee~~ <u>**any of its affiliates which are parties hereto**</u> the lease between Michael Shaler as Landlord and L&L as Tenant, together with all right, title and interest of the Tenant thereunder, in and to the premises known by the parties as store #801 located at 2673 Parkway, Pigeon Forge, TN, pursuant to a assignment agreement in form and substance reasonably satisfactory to the parties. Wings further agrees that, if required by Landlord, it shall remain liable for the lease obligations of Tenant.

2.9.    <u>1251 A Miracle Strip Parkway, Ft. Walton Beach, FL</u>. For a consideration of $1.00 Wings shall, as soon as practicable after at the Closing, assign to 1000 Highway or ~~its designee~~ <u>**any of its affiliates which are parties hereto**</u> any interest it has in the lease between Noric, Inc. as Landlord and L&L as Tenant, together with all right, title and interest of the Tenant thereunder, in and to the premises known by the parties as store #748 located at 1251A Miracle Strip Parkway, Ft. Walton Beach, FL pursuant to an assignment agreement in form and substance reasonably satisfactory to the parties, which lease contains a right of assignment so long as Tenant remains liable on the lease. The parties acknowledge and agree that L&L <u>de facto</u>

MD 00133
MARCO/L&L WINGS

assigned the lease to 1000 Highway; that 1000 Highway built the store; and that the store is operated by Marco-Destin pursuant to a de facto sublet from 1000 Highway.

2.10.  1115 S. Highway 98 E., Destin, Fl. (Store #749) Shaul and Meir hereby warrant and represent for themselves, Wings and their other affiliates, that they have not recorded any mortgage or security interest which would affect any rights of 1000 Highway in the leasehold or any renewal or the improvements thereof and none of them has any claim thereto and that all improvements have been recorded on the books of Marco-Destin and/or 1000 Highway.

2.11.  Merrill Lynch Security Interest Release. Shaul, Meir and Wings shall as soon as practicable after the Closing deliver to Eli Tabib all entities controlled after the Closing by Eli releases in form suitable for filing with the appropriate public offices for of all of the security interests held by Merrill Lynch Pierce Fenner & Smith (or its business credit affiliates), for each jurisdiction in which said creditor has filed against any of the inventory, fixtures, equipment or other property of any such entities.

3.    License of Mark.

L&L is at the Closing granting to Marco-Destin a license to use the trademark name "Wings" and certain Trade Dress for all stores currently operated by Marco-Destin in the state of Florida and certain other store and locations subject to a separate licensing agreement.

4.    Execution and Delivery of Documents.

4.1.    At the closing the parties are executing and delivering by, to and among them, as necessary to effectuate the intent of this agreement, the following documents and items:

MD 00134
MARCO/L&L WINGS

4.1.1.  The certificate or certificates for the shares of stock in the respective corporations, duly endorsed so as to effectively transfer ownership of the respective corporations as provided in this agreement, together with all appropriate Federal and State transfer tax stamps affixed.

4.1.2.  Letters of resignation from each director and officer of the respective corporations for which they are transferring shares, effective as of the Closing.

4.1.3.  The Certificate of Incorporation and/or other organizational documents of any corporation for which shares are being transferred pursuant to this agreement, and the bylaws, minute book, stock certificate book, and seal of any such Corporation

4.1.4.  Any bills, vouchers, and/or other records showing the ownership of the furniture, furnishings, equipment, and other property used in the operation of the business of any corporation for which shares are being transferred pursuant to this agreement.

4.1.5.  All other books of account, records and contracts of any corporation for which shares are being transferred pursuant to this agreement.

·4.1.6.  All such other instruments as may be necessary or proper to transfer to a transferee hereunder all other ownership interests in a corporation for which shares are being transferred pursuant to this agreement.

4.1.7.  All business licenses, permits, etc., which may be required for the business operated in a premises subject to this agreement, which licenses, permits, etc., shall be endorsed, assigned and/or otherwise transferred to the transferee of the property hereunder, in such form and manner as to meet the requirements of the issuing authority.

MD 00135
MARCO/L&L WINGS

**4.1.8. Limited releases.**

4.2.    The parties hereto agree after the Closing to execute any and all such other and further documents and take such other actions as may be required by any of them to further complete, evidence or perfect the transfers and conveyances provided for or contemplated by this agreement, including in the case of the assignments, transfers and corrective deeds of real property and leases therefor pursuant to this agreement, all deeds of conveyance, tax returns, affidavits, evidences of debt, assignments, surrenders and any and all other documents which may be necessary or required to complete the transfers of real property and leases provided for or contemplated in this agreement.

4.3.    The parties hereto agree to take all other steps necessary to assure that the documents provided for hereunder shall be valid and binding and effective to transfer property in the State (or States as the case may be) and local jurisdictions to which any property transferred hereunder may be subject.

5.    Assumption of Secured Debt.

5.1.    As soon as practicable after the Closing, the parties shall execute and deliver, between and among them, as necessary to effectuate the intent of this agreement, assignments and assumptions of all existing secured debt covering the property, including the corporations, affected by this Agreement, in form and substance satisfactory to the various Lenders and to the respective attorneys for the parties. The parties acknowledge that the corporations, and property, both real and personal, assigned or otherwise transferred pursuant to this Agreement, is/are encumbered and are assigned or otherwise transferred hereunder subject to any such

MD 00136
MARCO/L&L WINGS

encumbrances, notwithstanding that all the parties know that an assignment, sale and/or transfer may violate the terms and/or conditions of the encumbrances.

5.2.    The parties acknowledge that adequate disclosure of all encumbrances has been made and that they and each of them are fully aware of and familiar with the encumbrances on the property affected by this Agreement.

5.3.    In the event a party (herein, "the defaulting party"), who, pursuant to this agreement, receives real and/or personal property, including any assignment of lease, fails to timely and duly fulfill any and/or all obligations in connection with any such encumbrance and/or other obligations assumed, (including, but not limited to, the payment of any mortgage or note or payment of rent) and such failure continues <u>uncured</u> for more than 5 <u>120</u> days after notice by another party to this Agreement still obligated for the liability (the "non-defaulting party"), (whether such "non-defaulting party" is primarily liable for the obligation, as guarantor or otherwise); then, the said non-defaulting party may satisfy, fulfill and/or discharge the liability, whereupon the non-defaulting party shall be entitled to reimbursement for all payments and costs by the defaulting party <u>and/or shall be entitled to immediate possession of the</u> <u>previously transferred real and/or personal property and/or leasehold interest to which the</u> <u>liability relates, free and clear of any right, title and/or interest of the defaulting party</u> <u>(unless such defaulting party shall cure such default prior to the non-defaulting party's</u> <u>actual taking of possession or such property).</u>

6.    <u>Payment of Consideration.</u>

6.1.    All consideration to be paid hereunder shall be paid at the Closing (as hereinabove defined), it being understood and agreed between the parties that, with the

MD 00137
MARCO/L&L WINGS

agreement of the payee party, an obligated party hereunder may pay any part or all of the consideration by the due execution and issuance of a promissory note in form satisfactory and acceptable to the parties.

7.    Representations and Warranties.

7.1.    The parties represent and warrant, each for it, him, themselves, to the others, as follows:

7.2.    The corporations affected hereby are duly organized and validly existing under the laws of the states in which they were incorporated and are duly qualified to do business in the states in which they operate.

7.3.    The parties have full power and authority to carry out and perform their respective undertakings and obligations as provided herein.

7.4.    The execution and delivery by the parties of this agreement and the consummation of the transactions contemplated hereby have been duly authorized by the Boards of Directors of the affected corporations (and in the case of SMP by the partners of SMP) and will not conflict with or breach any provision of the certificates of incorporation or bylaws of these corporations (or the partnership agreement in the case of SMP).

7.5.    Shaul, Meir and Eli each own and have good and marketable title to the respective shares of stock in the Corporations sold by them hereunder. All of the shares are no par value, are fully paid and non-assessable, and have not been assigned, pledged or hypothecated, and are free of all liens, claims and encumbrances, except as set forth herein.

MD 00138
MARCO/L&L WINGS

7.6.    There are no violations of any law or governmental rule or regulation pending against any of the parties and/or the property and/or the entities transferred hereunder and affecting the entities and/or the property transferred hereunder and affected hereby, to the best of the respective knowledge of the parties. The parties agree to clear all violations against their respective properties to the date of closing.

7.7.    The parties are all fully aware of the financial condition, liens and/or encumbrances and leases affecting the corporations and/or property (both real and personal), transferred pursuant to this Agreement and acknowledge that full disclosure of same has been made to them.

7.8.    The parties acknowledge that they are fully familiar with any written contracts or agreements for the employment of any employee of any business transferred hereby;

7.9.    The entities transferred hereunder have filed all tax returns, including without limitation, all income, excise, property, gain, sales, franchise and license tax returns, required to be filed by them prior to the date hereof. The parties are fully familiar with all such tax filings and the respective transferees hereunder agree to assume liability for the payment of all taxes owed, owing or assessed against the transferred entities. __The grantee or assignee of any interest in property to be conveyed hereunder shall be responsible for any state or local transfer taxes or excises and for any recording charges.__

7.10.    The parties represent each for him, it, themselves and to each other, that all rent, mortgage payments, real estate taxes and arrears, if any, and violations, which may affect any property, whether real or personal property and including any lease interest, transferred

MD 00139
MARCO/L&L WINGS

hereunder or otherwise affected by this Agreement, have been fully paid and will be paid current to the date of the transfer hereunder.

7.11.    The parties acknowledge that they have not made to each other nor has any representative or agent of any of them made any representation or warranty (expressed or implied) regarding any matter or thing affecting or relating to this agreement, except as specifically set forth in this agreement. No party shall be liable or bound in any manner by any oral or written statement, representation, warranty, agreement or information pertaining to this agreement unless specifically set forth in this agreement or in any instrument of transfer executed at the Closing **or otherwise in connection herewith**.

8.    <u>Indemnification</u>.

Each party hereto shall indemnify and hold the other parties harmless from and against all liability, claim, loss, damage or expense, including reasonable attorneys' fees, incurred or required to be paid by such other parties by reason of any breach or failure of observance or performance of any representation, warranty or covenant or other provision of this agreement by such party.

9.    <u>Assignment Prohibited</u>.

No party shall assign this agreement without the prior written consent of the other parties in each instance unless specifically provided hereinabove. Any attempted assignment without consent of all parties shall be null and void.

221819v3                                14

**MD 00140**
**MARCO/L&L WINGS**

10.    Notices.

All notices, demands and other communications required or permitted to be given hereunder shall be in writing and shall be deemed to have been properly given if delivered by hand or by overnight courier or by registered or certified mail, return receipt requested, with postage prepaid, to the party or parties (as the case may be), to be charged, at it, his, their address first above written, or at such other address as he, it, they may designate by notice given hereunder. Copies of all such notices, demands and other communications simultaneously shall be given in the aforesaid manner to Wing's attorney, Bennett D. Krasner, Esq., at 1233 Beech St. No. 49, Atlantic Beach, NY 11509, and to Eli's attorney, Gideon Rothchild, Esq., Moses and Singer LLP at 1301 Avenue of the Americas, New York, NY 10019. The respective attorneys for the parties hereby are authorized to give any notice required or permitted hereunder and to agree to adjournments of the Closing.

11.    Further Actions.

In connection with the transactions contemplated by this agreement, the parties agree to execute and deliver such further instruments, and to take such further actions, as may be reasonably necessary or proper to effectuate and carry out the transactions contemplated in this agreement.

12.    Joint Liability, Guarantees and Sureties.

All the parties acknowledge that, during the course of their long business relationship, they and each of them have, from time to time, guaranteed, cross-guaranteed, become joint and severally liable for various obligations and acted as sureties for each other (all of these obligations are hereinafter referred to as "Potential Obligations"). The extent of the

MD 00141
MARCO/L&L WINGS

parties' liability based upon Potential Obligations is vast and the parties are unable, with any

reasonable certainty, to provide any compendium to each other or even to list the obligees of any

Potential Obligations. Therefore, Wings and Morehead (hereinafter "Wings' Group") on the one

hand, and Eli, 1000 Highway, Marco-Destin and Panama City (hereinafter "Eli's Group"), on the

other hand, agree to indemnify and hold each other harmless from and against all liability, claim,

loss, damage or expense, including reasonable attorneys' fees, incurred or required to be paid by

such other party by reason of any Potential Obligation. <u>Furthermore, if any said claim, loss</u>

<u>damage or expense relates to real and/or personal property including, but not limited to,</u>

<u>any leasehold interest, and such indemnification (or reasonable security therefor) is not</u>

<u>provided with 120 days after notice from the party incurring such payment to the party</u>

<u>from whom (or from which) indemnification is due, such first party shall be entitled to</u>

<u>immediate possession of the subject real and/or personal property, including, but not</u>

<u>limited to any leasehold interest, free and clear of any right, title and/or interest of the</u>

<u>other party (unless the party from whom or from which indemnification is due shall have</u>

<u>provided such indemnification prior to the other party's actual taking of possession). (By</u>

<u>way of example, if Eli's Group or any member thereof, defaults on a mortgage payment on</u>

<u>real property held by 1000 Highway and any party of the Wings' Group is called upon, by</u>

<u>virtue of its guarantee to correct the default (and Eli's Group shall not have indemnified</u>

<u>such payment within the cure period, then such party of Wings' Group shall be entitled to</u>

<u>immediate possession of the real property free and clear of any interest any party of Eli's</u>

<u>Group may have (unless Eli's Group shall have cured the default prior to the taking by</u>

<u>such other party in Wings' Group of such possession))</u>

MD 00142
MARCO/L&L WINGS

13.    Entire Agreement.

This agreement contains all of the terms agreed upon between the parties with respect to the subject matters hereof. This agreement has been entered into after full investigation. All prior oral or written statements, representations, promises, understandings and agreements of the parties are merged into and superseded by this agreement, which alone fully and completely expresses their agreement.

14.    Miscellaneous.

14.1.    No delay or omission by any of the parties in exercising any right shall operate as a waiver of such right or of any other right.

14.2.    This agreement may not be altered, amended, changed, modified, waived or terminated in any respect or particular unless the same shall be in writing signed by the party to be bound.

14.3.    No waiver by any party of any breach hereunder shall be deemed a waiver of any other or subsequent breach.

14.4.    The **Any** Exhibits annexed to this agreement are an integral part of this agreement, and where there is any reference to this agreement it shall be deemed to include **any** said Exhibits.

14.5.    This agreement shall be governed by and construed in accordance with the laws of the State of New York.

14.6.    If any provision of this agreement shall be unenforceable or invalid, such unenforceability or invalidity shall not affect the remaining provisions of this agreement.

MD 00143
MARCO/L&L WINGS

14.7.   Upon such execution and delivery, this agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and permitted assigns.

In witness whereof **IN WITNESS WHEREOF**, the parties hereto have hereunto set their hands and seals as of the date first above written.

| | |
|---|---|
| _____ | _____ |
| Shaul Levy | Meir Levy |
| | |
| _____ | |
| Eli Tabib | |
| | |
| L&L Wings, Inc. | 1000 Highway 98 East Corp. |
| | |
| _____ | _____ |
| By: Shaul Levy, President | By: |
| | |
| Marco-Destin Inc. | 100 South Morehead Ave. Corp. |
| | |
| _____ | _____ |
| By: | By: |
| | |
| Panama City Surf & Sport Inc. | Shaul & Meir Levy Partnership |
| | |
| _____ | _____ |
| By: | By: |
| | |
| [E&T, Inc.] | |
| | |
| _____ | |
| By: | |

This redlined draft, generated by CompareRite (TM) - The Instant Redliner, shows the differences between -

MD 00144
MARCO/L&L WINGS

original document   : J:\SGLASER\AGT\4R5N02!.DOC
and revised document: J:\SGLASER\AGT\4R5N03!.DOC

CompareRite found   29 change(s) in the text

Deletions appear as Overstrike text
Additions appear as Bold+Dbl Underline text

MD 00145
MARCO/L&L WINGS

02/08/00  16:29 FA.  .2  554 7700      MOSES & SINGER LLP                              ☒001

```
                     ********************
                     ***   TX REPORT   ***
                     ********************


        TRANSMISSION OK

        TX/RX NO              3358
        CONNECTION TEL        06935101915184327016
        SUBADDRESS
        CONNECTION ID
        ST. TIME              02/08 16:18
        USAGE T               11'15
        PGS. SENT             31
        RESULT                OK
```

# MOSES & SINGER LLP

1301 Avenue of the Americas, New York, NY 10019-6076
Telephone: 212.554.7800        Facsimile: 212.554.7700

# Facsimile Transmission
# Cover Sheet

Date:          February 8, 2000

To                          Firm name              Fax number transmitted to
Bennett Krasner, Esq.                              516-432-7016

From:          Steven Glaser, Esq.                 Phone:   212-554-7820

Client/Matter:   06935-101

Number of Pages: *31*
(Including cover page)

Comments:

MD 00146
MARCO/L&L WINGS

**Steven J. Glaser**

Tab6
06935/101
Co.

From:          Bennett D. Krasner [bkrasner@optonline.net]
Sent:          Tuesday, February 08, 2000 12.34 PM
To:            sglaser@mosessinger.com; Bennett Krasner
Subject:       (no subject)

    

license Agreement -      license agreement
02-08-00 r...            2-8-00 redl...        Dear Sleve:

    After reviewing, if you need to contact me, beep me at (516) 389-3028.
Regards,
Bennett

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited.  If you received this in error, please immediately contact the sender and delete the material from any computer.

1

MD 00147
MARCO/L&L WINGS

WordPerfect Document Compare Summary

Original document:  C:\WP60\DATA\WINGS\Eli\license agreement - 2-06-00.wpd
Revised document:  C:\WP60\DATA\WINGS\Eli\license agreement - 02-06-00
revisions.doc
Deletions are shown with the following attributes and color:
    ~~Strikeout~~, Blue  RGB(0,0,255).
    Deleted text is shown as full text.
Insertions are shown with the following attributes and color:
    <u>Underline</u>, <u>Redline</u>, (No color code).

The document was marked with 101 Deletions, 131 Insertions, 0 Moves.

MD 00148
MARCO/L&L WINGS

## LICENSING AGREEMENT

THIS AGREEMENT dated for purposes of reference as of the ~~31st~~1st day of ~~December~~November, 1998, is made by and between L & L WINGS, INC. d/b/a Wings, a South Carolina Corporation with an address at 18 East 42nd Street, New York, New York 10017, ("Licensor") and Marco-Destin Inc. (hereinafter, "Marco-Destin"), 1000 Highway 98 East Corp. ("Highway"), Panama Surf & Sport, Inc. ("Surf") and E&T Inc. _(hereinafter, "ET"), being Florida and South Carolina corporations, and _all having an address at _____
(collectively, hereinafter, "Licensee").

WHEREAS, Licensor is the owner of the unregistered servicemark, "Wings" and is the owner of trade dress rights to its distinctive design; and

WHEREAS, ~~Licensor and~~ Licensee ~~have had shared ownership and each is~~utilized the mark "Wings" on retail stores that it owns and has been for many years ~~doing business as "Wings"~~with the permission and an oral license from Licensor who was a one-half owner of the issued and outstanding shares of stock of Licensee; and

WHEREAS, the ownership ~~of~~by Licensor ~~and~~of the shares of Licensee ~~is~~are being ~~separated~~sold simultaneous with the execution of this Agreement; and

WHEREAS, Licensor and Licensee each adorn some of their retail locations with ~~a~~Licensor's unique wave sculpture design highlighted with a signature colored neon light combination, (hereinafter, Licensor's "Trade Dress"); and

WHEREAS, Licensee recognizes the goodwill, reputation and strong marketing value of using the "Wings" name as a trade/servicemark and trade name and its Trade Dress in the operation of its retail business establishments; and

WHEREAS, Licensee desires to continue do business using the name "Wings" in the "Territory" hereinafter defined after the separation of their respective ownership; and

WHEREAS, ~~the continuing ownership~~Licensee and/or entities and/or principals of Licensee ~~is~~are unwilling to enter into the simultaneous agreements ~~resulting~~purchasing Licensor's interest in ~~the separation of the respective ownership of the parties~~Licensee without this Agreement; and

WHEREAS, Licensor is willing to grant a license to Licensee to use "Wings" and the Trade Dress in the Territory upon the terms and conditions set forth below and other than as set-forth hereinafter has the ~~unrestricted and undivided power~~authority to do so;

NOW, THEREFORE, in consideration of the covenants and agreements hereinafter set forth, and other valuable consideration, the receipt and sufficiency of which hereby are

MD 00149
MARCO/L&L WINGS

acknowledged, the parties hereto agree as follows:

1.———Definitions. The following terms as used in this Agreement shall have the meanings set forth below:

MD 00150
MARCO/L&L WINGS

"Trade Dress" shall mean the unique wave sculpture design highlighted with a signature colored neon light combination used by Licensor (and also heretofore used by Licensee) in connection with some of their respective business locations.

a. "Territory" shall ~~include~~be defined as the following geographic areas: (i) Within the city limits of Marco Island, Florida~~, Naples, Florida,~~; St Augustine, Florida~~,~~; and Pigeon Forge, Tennessee~~; (and in the territory~~ within two miles of each such city limit); (ii) At the individual stores located at 11-A Highway 17 North, North Myrtle Beach, South Carolina and 102 Highway 17 North, North Myrtle Beach, South Carolina (~~and to any location within ____ miles of such locations in the event any such store is relocated~~By way of clarification. Licensor may operate in all other areas of the Myrtle Beach Area except these two individual store locations.); and (iii) in the geographic area from Panama City Beach, Florida west to the Alabama-Mississippi state line and only 10 miles inland from the coast line. All areas not specifically included herein are specifically excluded from the Territory.

~~4~~

Notwithstanding anything to the contrary, Licensor, so long as Licensee operates one or both the stores specified in paragraph 1.2(ii), shall not operate any store in North Myrtle Beach within the area bound by Highway 9 in the North and by 18th Avenue in the South.

a..3.    ab    "Termination Date" shall be December 31, 2006 or such other date as the license granted hereunder shall be properly terminated pursuant to the terms of this Agreement.

1.Grant of License. (a) So long as Eli Tabib, and upon his death his estate and/or beneficiaries, shall be the owner or owners of not less than ~~51%~~66⅔% of the shares of Licensee, Licensee shall have, and Licensor hereby grants to Licensee, an exclusive license in the Territory to use the name "Wings" and the Trade Dress (hereinafter the "Mark") in connection with Licensee's business establishments ~~located in the Territory only~~, and only for the term (the "Term") commencing from January 1, 1999 until December 31, 2006, unless sooner properly terminated or extended as provided herein (hereinafter, the "Termination Date"); provided, however, that upon the death of Eli Tabib, it shall also be a condition of continuation that Nir _____Zabari shall continue to be involved in the management of Licensee. ~~This exclusive License shall~~e may not ~~apply~~use ~~to any location~~he Mark outside the Territory. ~~T~~ and the License granted hereunder shall be exclusive in the Territory with the exception of the State of South Carolina, where the License shall be ~~non-exclusive and with the further exception that Licensor may use the subject matter of the license at its existing store at ____ in the Territory.~~limited to the      two      store      specified      in      paragraph      1.2(ii).

(b) Licensor hereby warrants and represents to Licensee that except as set-forth hereinafter it has the ~~full and exclusive power and~~ authority to grant the License                                                                                    to

MD 00151
MARCO/L&L WINGS

2.Licensee and that ~~all corporate actions and/or consents from the other parties required in connection herewith have been taken or obtained~~its Board of Directors and shareholders have consented to this License.

(c) Licensor agrees that during the Term and for a period of 10 years immediately thereafter Licensor shall not, nor shall it permit any licensee to, use the name ~~"Wings"~~Mark (or any derivative or similar name~~) or the~~ and/or Trade Dress) in the Territory.

1.Advertising Reimbursement.

(a) If Licensor, in its sole discretion, shall advertise the ~~name "Wings"~~Mark in the Territory, Licensee shall pay to Licensor at its address set forth above, Licensee's pro rata share of all advertising costs incurred for advertising in the Territory. (By way of example, Licensee operates two (2) stores and Licensor operates twenty (20) stores in the Myrtle Beach, South Carolina region. Therefore, if Licensor advertises in that region, Licensee shall pay 1/11 of the advertising costs incurred by Licensor.) Any stores which Licensor licenses to third persons shall be treated as operated by Licensor for the purposes of the calculations required in this Paragraph 3. On or before September 30th of any year, Licensor shall render to Licensee statement of such advertising costs, which statement shall be deemed a conclusive substantiation for such costs unless Licensee shall within 30 days contest the same in writing. Payment of the statement shall be due within thirty (30) days of the date thereof unless contested. At Licensor's option, Licensor may provide statements at shorter intervals but in no event less than once per year.

(b) Notwithstanding the foregoing, Licensee shall not be responsible for advertising costs for any twelve month period in excess of $20,000 in the Territory set forth in paragraph 1.2 (i) &(iii) on a combined basis unless Licensee has consented in writing to the advertising generating such excess cost and Licensor has given notice prior to the advertising in issue that such excess cost would be generated.

4.

(c) Notwithstanding the foregoing , Licensee shall not be responsible for advertising costs for any twelve month period in excess of $25,000 increased annually by the increase in the Consumer Price Index for the Territory set-forth in paragraph 1.2(ii). The Consumer Price Index shall mean the Consumer Price Index published by the Bureau of Labor Statistics of the U.S. Department of Labor, All Items, New York, New York -- Northeastern, N.J., for urban wage earners and clerical workers, or any successor or substitute index appropriately adjusted.

1.Termination. Licensor may, at its option, terminate the license and rights granted in this Agreement to Licensee immediately and without prior notice upon the occurrence of any of the following events (but the restriction on Licensor in Paragraph 2(bc) should continue in effect):

a. If Licensee shall file a voluntary petition in bankruptcy or is adjudicated bankrupt or insolvent or files any petition or answer seeking any reorganization, arrangement, composition, adjustment or readjustment, liquidation, dissolution or similar relief under the present or any future Federal Bankruptcy Act or any present or future applicable United States

221916v2

MD 00152
MARCO/L&L WINGS

federal, state or other statute or law, or seeks or consents to, or acquiesces in, the appointment or any trustee, receiver, conservator in, the appointment of ~~nay~~any trustee, receiver, conservator or liquidator of Licensee, or of all or any substantial part of its properties or of its interests.

    a. If within ninety (90) days after the commencement of any proceeding against Licensee seeking any bankruptcy, reorganization, arrangement, composition, adjustment or readjustment, liquidation, dissolution or similar relief under the present or any future applicable United States federal, state or other statute or law the proceeding is not stayed or dismissed, or if within ninety (90) days after the expiration of any stay, the filing is not vacated.

    a. If Licensee executes an assignment of substantially all of its assets or any other similar agreement for the benefit of creditors.

    ~~a.~~ If Licensee fails to pay any amounts to Licensor properly due pursuant to this Agreement or fails to perform any of the obligations required of it set forth in this Agreement in Paragraphs ~~5,~~6, 7, 8, 10 or of any other obligation contained in this Agreement and such default shall continue uncured for 10 days after written notice thereof by Licensor.

    ~~4.5.~~

    4.5          If licensee initiates any action, proceeding or claim against Licensor challenging any provision or the validity of this Agreement and said action is determined to be either frivolous and/or Licensor's prevails in said action and/or claim.

    4.6   If there is any change in ownership of Licensee in violation of Paragraph 2.

    1.Obligations and Responsibilities Upon Termination. Upon expiration or termination of the License granted hereunder, by operation of law or otherwise:

    a. All rights of Licensee to use the Mark granted hereunder (other than its rights under Paragraph 2(~~bc~~)), including the right to use the name "Wings" and the Licensor's Trade Dress shall (subject to ~~the six months~~ thirty day removal period set forth in Paragraph 5.2) cease.

    a. Licensee, at its own cost and expense, shall within ~~six (6)~~four months remove and/or cause to be removed, all materials, signs, promotions, bags, and any and all other items, bearing the ~~name and/or m~~Mark ~~"Wings" and/or the Trade Dress~~ or any evidence of the ~~Trade Dress~~Mark licensed hereunder. Thereafter, Licensee shall not, in any manner whatsoever, use the name ~~"Wings"~~Mark, any similar name or any name created by changing, adding or dropping one or more letters from the name "Wings", (hereinafter, collectively, referred to as "Similar Name") nor shall Licensee use Licensor's Trade Dress in any form whatsoever.

    a. Licensee shall pay any and all outstanding proper statements for advertising within thirty (30) days of the termination or expiration hereof.

    a. In the event Licensee fails to promptly fulfill all of its obligations upon the termination or expiration of this Agreement, Licensor shall have the right to pursue all legal

MD 00153
MARCO/L&L WINGS

remedies including, but not limited to, an action for trademark and/or servicemark infringement and/or for trade dress infringement, temporary restraining order, preliminary and/or permanent injunction.- Licensee shall have the same rights with respect to Licensor's obligations (including without limitation, under Paragraph 2(b̶c)).

1.Infringement.

a.    In the event Licensee learns of any infringement or alleged infringement, has notice of any written claim or allegation by a third person of (i) infringement by Licensee of Licensor's mark, "Wings" or of its Trade Dress, or (ii) the mark or Trade Dress are of Licensor's Mark or Mark is likely to cause deception or confusion to the public, Licensee shall promptly notify Licensor with the particulars thereof.

a.    In the event Licensor decides to pursue any infringement claim against a third party in the Territory, Licensor may request that Licensee join in or assist in any of the steps necessary to enforce the infringement claim. In the event Licensee agrees to assist, then each party shall bear one-half of the costs of any action; provided, however, that Licensee's share shall not exceed for any calendar year the product of (x) one-half of the costs incurred in the year, and (y) a fraction, the numerator of which is the number of years then remaining on the License and denominator of which is eight. In the event Licensee does not agree to assist within a reasonable period, then Licensor may terminate this License Agreement (but subject to Paragraph 2(b̶)c). In all events, Licensee shall cooperate with Licensor in the pursuit of any action (but Licensee shall not, except as required by this Paragraph, be obligated to incur material expense in so cooperating).

1.Indemnification.

a.    Licensee, jointly and severally, shall hold Licensor harmless and shall indemnify Licensor from any and all liabilities, injuries, damages, claims, suits, attorney's fees, etc., sustained by Licensor by reason of this Agreement which Licensee has, may have or which may hereinafter exist with Licensor or due to Licensee's operation of its business, use of the Licensor's Mark, Trade Dress, and/or use of the name "Wings" (provided, however, that Licensee shall have no indemnification obligation to the extent that any claim, damage, etc. is attributable to any defect or alleged defect in Licensor's ownership or right to license the name "Wings" or the Trade Dress). Licensee will, at all times. act and conduct business in such a manner so as not to adversely affect or otherwise harm the good will and reputation associated with the name "Wings", and will promptly comply with reasonable written notices from Licensor with respect thereto. Licensee will, at all times, maintain general liability, errors and omissions insurance naming Licensor as an additional insured (to the extent permitted by the carrier). Licensee understands that Licensor is or may be bound by and subject to certain Court orders, consent orders, stipulations. agreements and the like and Licensee agrees that, in the conduct of its business, it shall abide by any such Court orders, consent orders, stipulations, agreements and the like of which Licensor shall give it notice, including, in particular, those with Anheuser Busch Incorporated and Two's Company, a Rhode Island Corporation, copies of which are annexed hereto.

7

MD 00154
MARCO/L&L WINGS



7.2. Notwithstanding anything herein contained to the contrary, Licensor may terminate this Agreement effective immediately upon written notice to Licensee in the event Licensee shall act or refrain from acting in any way that a reasonable consumer would determine that said action and/or inaction diminished the reputation and/or goodwill of Licensor's Mark. (By way of example and not by way of limitation, actions that may be determined to diminish the reputation of and/or goodwill are trade/servicemark and/or other intellectual property violations, deceptive trade practices, false advertising and/or sexual harassment.)

Licensee shall notify Licensor of any claims to which Paragraph 7.1 may apply withing three days from when Licensee knows learns therof.

a. Owners Designation. Licensee shall, at all times, post a placard in a clearly visible and unobstructed location situated at the entranceway to each of its stores doing business as "Wings", which placard shall be at least 12 inches by 18 inches and shall bear the inscription "THIS STORE IS OWNED AND OPERATED BY" and name the appropriate entity. The lettering of the inscription shall be no smaller than one inch high. In addition, promptly upon execution of this Agreement, Licensee shall file a certificate of assumed name with the appropriate governmental agencies, to the extent required thereby.

b.

1. Liquidated Damages. Licensee specifically acknowledges that the use of the Mark, the name "Wings" or any Similar Name and/or the use of Licensor's Trade Dress after the Termination Date will cause Licensor to suffer irreparable harm, damages for which would be extremely difficult to ascertain. Therefore, in addition to all other remedies, including but not limited to injunctive relief, in the event of Licensee's breach of this Agreement to which Licensor shall be entitled, Licensor shall be entitled to injunctive relief, and liquidated damages in the sum of $200.00 per day (subject, however, to the sixfour month period described in Paragraph 5.2) per business establishment utilizing the Mark and/or name "Wings" orand/or any Similar Name or Trade Dress until cessation of any improper use, together with all costs and disbursements, including reasonable attorney's fees arising from Licensee's failure promptly to use the name "Wings" or any Similar Name or Trade Dress.

9. The calculation of the liquidated damages of $200.00 per day per business establishment shall be calculated without regard to the four month period described in Paragraph 5.2 if Licensee does not comply with the terms and conditions of the removal set forth herein within said four month period. (By way of example if Licensee complies with the removal of the Mark etc. within the four months then there shall be no liquidated damages but if Licensee removes the Mark etc. four months and 1 day later then Licensor shall be entitled to $2,420.00 ($200.00 X 121) per store as liquidated damages assuming 30 days per month.)

1. Assignment Prohibited. Except as explicitly stated herein, this Agreement shall not be assignable either in whole or in part. Nothing in this Agreement is intended or shall be construed to confer upon or to give to any person, firm, or corporation, other than the parties hereto, any right, remedy, or claim under or by reason of this Agreement. All terms and conditions in this Agreement shall be for the sole and exclusive benefit of the parties. Nothing contained in this

MD 00155
MARCO/L&L WINGS

Agreement shall be deemed or construed to create or effectuate the relationship of principal and agent or of franchisor and franchisee or of partnership or joint venture between the parties hereto.

1.Waiver. No failure by Licensor to insist upon the strict performance of any term or condition of this Agreement or to exercise any right or remedy consequent upon the breach, and no acceptance of full or partial payments due under this Agreement during the continuance of any breach, shall constitute a waiver of the breach or the term or condition. No term or condition of this Agreement to be performed or observed by Licensee and no breach shall be waived, altered or modified except by written instrument executed by Licensor. No waiver of any breach shall affect or alter this Agreement but each term and condition of this Agreement shall remain and continue in effect with respect to any other existing or subsequent breach. No delay or failure by either party to exercise any right under this Agreement, and no partial or single exercise of that right, shall constitute a waiver of that or any other right. No waiver, modification or amendment of this Agreement shall be valid unless in writing signed by the party to be charged.

1.Licensor's Paramount Rights:

a.Licensee shall not contest Licensor's exclusive ownership of all rights including trademark and/or servicemark rights to the name "Wings" or copyright rights to any element of the Trade Dress. Licensee shall not at any time apply for a registration for the name "Wings" or any confusingly similar mark or for any other right in the name anywhere in the world nor shall Licensee file any opposition or in any other manner hinder any application for registration of the mark "Wings" that Licensor has, will or may make.

a.Licensee acknowledges and agrees that any and all rights and assets, including, but not limited in to, goodwill,he Mark accruing and/or arising from the use of the mMark "Wings" and/or its Trade Dress, shall belong to and be the property of Licensor free of any and all claims of Licensee (provided, however, that nothing in this Paragraph 11.2 shall be construed to grant (or acknowledge the right of) Licensor to any goodwill of Licensee existing on the date of this Agreement or thereafter to the extent of the general goodwill of Licensee).

12.    except as state herein.

1.Governing Law. This Agreement shall be governed solely by the laws of the State of New York without giving effect to any conflict of laws provisions thereof. Any and all matters of dispute between the parties hereunder or in connection herewith shall be resolved in New York County, New York State by arbitration before the American Arbitration Association and shall include the jurisdiction in the federal courts of the Southern District of New York of the state courts and the State of New York in New York County to enforce such arbitration and/or confirm any award thereof. Licensee and Licensor hereby consent to jurisdiction as set forth herein.  Notwithstanding the foregoing, either party may apply to a court of competent jurisdiction for a temporary restraining order, preliminary or permanent injunction or any other form of relief to assure that any judgment awarded in arbitration is not rendered ineffective. Furthermore, notwithstanding the foregoing, in the event of a timely objection to arbitration, either party may commence a proceeding in Supreme Court of the State of New York and County of New York and/or Federal District Court for the Southern District of New York.

9

221916v2

MD 00156
MARCO/L&L WINGS

1.Attorneys' Fees. If Licensor or Licensee shall file any action against the other party for any breach of this Agreement and shall successfully recover on the same, such prevailing party shall be entitled to recover from the other party reasonable attorneys' fees incurred in so doing.

1. Notices. Notices required under this Agreement shall be made or given to the parties at the addresses specified at the beginning of this Agreement or at any other address that the parties may, by notice, specify. Copies of all notices shall be sent to the attorney for the party. Notices shall be deemed given 5 days after mailing by certified or registered mail, return receipt requested (unless sent by overnight mail service in which event notice shall be deemed given 1 day after mailing).

1.Binding Effect. This Agreement shall be binding upon the parties and their heirs, agents, executors, administrators, and successors, including, without limitation, successor officers, directors and trustees, if any, of the Licensor or Licensee.

1.Headings. The headings for each paragraph are simply for the convenience of the parties and shall not be used to interpret the meaning of any of the provisions.

1.Entire Agreement. This Agreement contains the entire agreement between the parties and supersedes all agreements and understandings previously made between the parties relating to its subject matter, all of which have been merged herein. There are no other understandings or agreements between them, nor are there any representations made which are not herein contained. This agreement shall be governed in accordance with the laws of the State of New York, the courts of which (and the Federal District for the Southern District of New York) shall have exclusive jurisdiction (subject to and in accordance with the arbitration clause of Paragraph 13).

MD 00157
MARCO/L&L WINGS

18. Time Of The Essence. All dates and obligations in this Agreement which rely upon specific dates or periods of time shall be deemed to be "Time of the Essence" and any failure to timely comply with any such obligations and/or dates shall be deemed a material breach of this agreement.

19. Breach of Related Agreements. Licensor and Licensee are parties to various other agreements. If Licensor, Licensee and/or their assigns and/or successors default and/or fail to comply with terms and/or conditions contained in one or more of the other agreements between the parties and such failure to comply with said terms and/or conditions continue for more than 30 days after written notice to the party against whom compliance is sought then that default shall be deemed a material default hereunder and shall automatically terminate the Licensee subject however to the party against whom compliance is sought having a right to bring a "Yellowstone Injunction" to toll the time to comply while the parties litigate the issue of default.

IN WITNESS WHEREOF, the parties have set their hands hereto as of the day and date above first appearing.

L & L WINGS, INC.


By:    Shaul Levy, President




MARCO-DESTIN, INC.
PANAMA SURF & SPORT, INC.
1000 HIGHWAY 98 EAST CORP.
E&T, INC.


By:    Eli Tabib, President


11

221916v2

MD 00158
MARCO/L&L WINGS

# MOSES & SINGER LLP

*Tab. b*
*06935/101*
*Ca~*

1301 Avenue of the Americas, New York, NY 10019-6076
Telephone: 212.554.7800          Facsimile: 212.554.7700

# Facsimile Transmission
# Cover Sheet

Date:          February 8, 2000

<u>To</u>                    <u>Firm name</u>                    <u>Fax number transmitted to</u>
Eli Tabib and Nir          Marco Destin                305 471-9398
Tzanani

From:          Steven Glaser, Esq.                Phone:  212 554-7820

Client/Matter:   06935/101

Number of Pages:
(Including cover page)

Comments:  Here is Bennett Krasner's revision of my redraft of the Licensing
Agreement.  Let's discuss his changes.

If you do not receive all pages, or have any other problems receiving this transmission, please call 212-554-7800 and ask for the telecopy operator.

**CONFIDENTIALITY NOTE**
This facsimile transmission contains information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, confidential, and/or exempt from disclosure under applicable law.

If you are not the intended recipient (or an employee or agent responsible for delivering this facsimile transmission to the intended recipient), you are hereby notified that any copying, disclosure or distribution of this information may be subject to legal restriction or sanction. Please notify the sender by telephone to arrange for the return or destruction of the information and all copies.

MD 00159
MARCO/L&L WINGS

## LICENSING AGREEMENT

THIS AGREEMENT dated for purposes of reference as of the ~~31st~~1st day of ~~December~~November, 1998, is made by and between L & L WINGS, INC. d/b/a Wings, a South Carolina Corporation with an address at 18 East 42nd Street, New York, New York 10017, ("Licensor") and Marco-Destin Inc. (hereinafter, "Marco-Destin"), 1000 Highway 98 East Corp. ("Highway"), Panama Surf & Sport, Inc. ("Surf") and E&T Inc. (hereinafter, "ET"), being Florida and South Carolina corporations, and all having an address at _____  __ ___ ____ ___ (collectively, hereinafter, "Licensee").

WHEREAS, Licensor is the owner of the unregistered servicemark, "Wings" and is the owner of trade dress rights to its distinctive design; and

WHEREAS, ~~Licensor and~~ Licensee ~~have had shared ownership and each is~~utilized the mark "Wings" on retail stores that it owns and has been for many years ~~doing business as "Wings"~~with the permission and an oral license from Licensor who was a one-half owner of the issued and outstanding shares of stock of Licensee; and

WHEREAS, the ownership ~~of~~by Licensor ~~and~~of the shares of Licensee ~~is~~are being ~~separated~~sold simultaneous with the execution of this Agreement; and

WHEREAS, Licensor and Licensee each adorn some of their retail locations with ~~a~~Licensor's _ unique wave sculpture design highlighted with a signature colored neon light combination, (hereinafter, Licensor's "Trade Dress"); and

WHEREAS, Licensee recognizes the goodwill, reputation and strong marketing value of using the "Wings" name as a trade/servicemark and trade name and its Trade Dress in the operation of its retail business establishments; and

WHEREAS, Licensee desires to continue do business using the name "Wings" in the "Territory" hereinafter defined after the separation of their respective ownership; and

WHEREAS, ~~the continuing ownership~~Licensee and/or entities and/or principals of Licensee ~~is~~are unwilling to enter into the simultaneous agreements ~~resulting~~purchasing Licensor's interest in ~~the separation of the respective ownership of the parties~~Licensee without this Agreement; and

WHEREAS, Licensor is willing to grant a license to Licensee to use "Wings" and the Trade Dress in the Territory upon the terms and conditions set forth below and other than as set forth hereinafter has the ~~unrestricted and undivided power~~authority to do so;

NOW, THEREFORE, in consideration of the covenants and agreements hereinafter set forth, and other valuable consideration, the receipt and sufficiency of which hereby are

MD 00160
MARCO/L&L WINGS