Sep-03-99 11:55A    NNF T D. KRASNER ESQ.    516 432 7016

*Tabib*
*06935/101*
*Cov*

THE LAW OFFICES OF
# BENNETT DAVID KRASNER
1233 Beech Street, No. #9
Atlantic Beach, N.Y. 11509
(516) 889-0353   Fax (516) 432-7016
New York Office
747 Third Avenue
New York, New York 10017
(212) 588-0330   Fax (212) 588-0440

Of Counsel
Bonnie Ellen Krasner

Reply To: **Long Island Office**

September 3, 1999

## FAX Transmission Sheet

From:      Bennett D. Krasner, Esq.

To:        Steven J. Glaser, Esq. / Gideon Rothchild, Esq.

Company:   Moses & Singer, Llp

Subject:   Eli Tabib

Fax No.:   1(212) 554-7700

You should receive 8 page(s) including this cover sheet. If you do not receive all pages, please call (516) 889-9353.

## COMMENTS:

Dear Steve and Gideon:
    In reviewing the file, I noticed that this may not have been sent back on August 12th when I spoke with you and told you it was ready. If you have a copy in your file then just discard it otherwise review it and call me with your comments to both this and the entire agreement sent to you on August 4th.
Regards,
*Bennett D. Krasner*

### CONFIDENTIALITY NOTE:

THE INFORMATION CONTAINED IN THIS TELECOPY (FAX) MESSAGE IS BEING TRANSMITTED TO AND IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY ADVISED THAT ANY DISSEMINATION, DISTRIBUTION OR COPY THIS TELECOPY (FAX) IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TELECOPY (FAX) IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND DESTROY THIS TELECOPY (FAX) MESSAGE.

MD 00237
MARCO/L&L WINGS

## LICENSING AGREEMENT

**THIS AGREEMENT** dated for purposes of reference as of the 1st day of November, 1998, is made by and between L & L WINGS, INC. d/b/a Wings, a South Carolina Corporation with an address at 18 East 42nd Street, New York, New York 10017, ("Licensor") and Marco-Destin Inc. (hereinafter, "Marco-Destin") and E&T Inc. (hereinafter, "ET"), being Florida and South Carolina corporations respectively, and both having an address at
(collectively, hereinafter, "Licensee").

**WHEREAS**, Licensor is the owner of the unregistered servicemark, "Wings" and is the owner of trade dress rights to its distinctive design; and

**WHEREAS**, Licensor is and has been for many years doing business as "Wings"; and

**WHEREAS**, Licensor adorns some of its retail locations with a unique wave sculpture design highlighted with a signature colored neon light combination, (hereinafter, Licensor's "Trade Dress"); and

**WHEREAS**, Licensee recognizes the goodwill, reputation and strong marketing value of using the "Wings" name as a trade/servicemark and trade name and its Trade Dress in the operation of its retail business establishments; and

**WHEREAS**, Licensee desires to do business using the name "Wings" in the "Territory" hereinafter defined; and

**WHEREAS**, Licensor desires to grant a license to Licensee to use the name "Wings" and the Trade Dress in the Territory upon the terms and conditions set forth below.

**NOW, THEREFORE**, in consideration of the covenants and agreements hereinafter set forth, and other valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the parties hereto agree as follows:

1. **Definitions.** The following terms as used in this Agreement shall have the meanings set forth below:

1.1 "Trade Dress" shall mean the unique wave sculpture design highlighted with a signature colored neon light combination used by Licensor in connection with some of its business locations.

1.2 "Territory" shall include the following geographic areas: (i) Within the city limits of Marco Island, Florida, St. Augustine, Florida, and Pigeon Forge, Tennessee; (ii)

MD 00238
MARCO/L&L WINGS

At the individual stores located at 11-A Highway 17 North, North Myrtle Beach, South Carolina and 102 Highway 17 North, North Myrtle Beach, South Carolina; and (iii) in the geographic area from Panama City Beach, Florida west to the Alabama-Mississippi state line and only 10 miles inland from the coast line. All areas not specifically included herein are specifically excluded from the Territory.

1.3 "Termination Date" shall be October 31, 2003 or such other date as the license granted hereunder may be terminated pursuant to the terms of this Agreement.

2. **Grant of License.** So long as Eli Tabib shall be the sole (100%) shareholder of Licensee (and Licensee operates the location without any partnership, joint venture or other interested parties), Licensee shall have a license to use the name "Wings" and the Licensor's Trade Dress in connection with Licensee's business establishments located in the Territory only, and only for the term commencing from the date hereof until October 31, 2003, unless sooner terminated or extended as provided herein (hereinafter, the "Termination Date"). This License shall not apply to any location outside the Territory. The License granted hereunder shall be exclusive in the Territory with the exception of the State of South Carolina, where the License shall be non-exclusive.

3. **Advertising Reimbursement.** If Licensor, in its sole discretion, shall advertise the name "Wings" in the Territory, Licensee shall pay to Licensor at its address set forth above, Licensee's pro rata share of all advertising costs incurred for advertising in the Territory. (By way of example, Licensee operates two (2) stores and Licensor operates twenty (20) stores in the Myrtle Beach, South Carolina region. Therefore, if Licensor advertises in that region, Licensee shall pay 1/11 of the advertising costs incurred by Licensor.) On or before September 30th of any year, Licensor shall render to Licensee a statement of such advertising costs, which statement shall be deemed conclusive substantiation for such costs. Payment of the statement shall be due within fifteen (15) days of the date thereof. At Licensor's option, Licensor may provide statements at shorter intervals but in no event less than once per year.

4. **Termination.** Licensor may, at its option, terminate the license and rights granted in this Agreement to Licensee immediately and without prior notice upon the occurrence of any of the following events:

4.1. If Licensee files a voluntary petition in bankruptcy or is adjudicated bankrupt or insolvent or files any petition or answer seeking any reorganization, arrangement, composition, adjustment or readjustment, liquidation, dissolution or similar relief under the present or any future Federal Bankruptcy Act or any present or future application United States federal, state or other statute or law, or seeks or consents to, or acquiesces in, the appointment or any trustee, receiver, conservator in, the appointment of nay trustee, receiver, conservator or liquidator of Licensee, or of all or any substantial part of its properties or of its interests.

Page -2-

MD 00239
MARCO/L&L WINGS

4.2. If within ninety (90) days after the commencement of any proceeding against Licensee seeking any bankruptcy, reorganization, arrangement, compostiion , adjustment or readjustment, liquidation, dissolution or similar relief under the present or any future applicable United States federal, state or other statute or law the proceeding is not dismissed, or if within ninety (90) days after the expiration of any stay, the appointment is not vacated.

4.3. If Licensee executes an assignment of substantially all of its assets or any other similar agreement for the benefit of creditors.

4.4. If Licensee fails to pay any amounts to Licensor pursuant to this Agreement or fails to meet any of the obligations set forth in this Agreement in ¶¶6,7, 8, 9, 11 or of any other obligation contained in this Agreement.

4.5. If Licensee initiates any action, proceeding or claim against Licensor challenging any provision or the validity of this Agreement.

4.6. If there is any change in ownership of Licensee. Notwithstanding the foregoing, Licensee's shareholder may transfer ownership to family members upon death whereupon this Agreement shall terminate within six months of the date of death of the principal shareholder.

**5. Obligations and Responsibilities Upon Termination.** Upon expiration or termination of the License granted hereunder, by operation of law or otherwise:

5.1. All rights of Licensee granted hereunder, including the right to use the name "Wings" and the Licensor's Trade Dress shall cease.

5.2. Licensee, at its own cost and expense, shall remove and/or cause to be removed, all materials, signs, promotions, bags, and any and all other items, bearing the name and/or mark "Wings" and/or the Trade Dress or any evidence of the Trade Dress licensed hereunder. Thereafter, Licensee shall not, in any manner whatsoever, use the name "Wings", any similar name or any name created by changing, adding or dropping one or more letters from the name "Wings", (hereinafter, collectively, referred to as "Similar Name") nor shall Licensee use Licensor's Trade Dress in any form whatsoever. Without limiting any of Licensee's obligations herein contained, after the Termination Date Licensee hereby gives Licensor the right to enter upon its business locations and to remove any and all materials, signs, promotions, bags, other items, etc. bearing the name "Wings" or any other Similar Name and any evidence of Licensor's Trade Dress. Licensee agrees to cooperate with such efforts and shall not interfere therewith.

5.3. Licensee shall pay any and all outstanding statements for advertising within ten (10) days of the termination or expiration hereof.

Page -3-

MD 00240
MARCO/L&L WINGS

5.4. In the event Licensee fails to promptly fulfill all of its obligations upon the termination or expiration of this Agreement, Licensor shall have the right to pursue all legal remedies including, but not limited to, an action for trademark and/or servicemark infringement and/or for trade dress infringement.

## 6. Infringement.

6.1. In the event Licensee learns of any infringement or alleged infringement of Licensor's mark, "Wings" or of its Trade Dress, or that any third party alleges or claims that the mark or Trade Dress are likely to cause deception or confusion to the public, Licensee shall promptly notify Licensor with the particulars thereof.

6.2. In the event Licensor decides to pursue any infringement claim against a third party in the Territory, Licensor may request that Licensee join in or assist in any of the steps necessary to enforce the infringement claim. In the event Licensee agrees to assist, then each party shall bear one-half of the costs of any action. In the event Licensee does not agree to assist, then Licensor may terminate this License Agreement. In all events, Licensee shall cooperate with Licensor in the pursuit of any action.

## 7. Indemnification.

7.1. Licensee, jointly and severally, shall hold Licensor harmless and shall indemnify Licensor from any and all liabilities, injuries, damages, claims, suits, attorney's fees, etc., sustained by Licensor by reason of this or any other agreement which Licensee has, may have or which may hereinafter exist with Licensor or due to Licensee's operation of its business, use of the Licensor's Trade Dress, and/or use of the name "Wings". Licensee will, at all times, act and conduct business in such a manner so as not to adversely affect or otherwise harm the good will and reputation associated with the name "Wings", and will immediately comply with all notices from Licensor with respect thereto. Licensee will, at all times, maintain general liability, errors and omissions (including sexual harassment) insurance naming Licensor as an additional Insured. Notwithstanding anything herein contained to the contrary, Licensor may terminate this Agreement effective immediately upon written notice to Licensee in the event that Licensee shall be investigated by any governmental agency or sued by any entity or individual concerning any matter which would diminish the reputation and/or good will of the name "Wings", including, but not limited to, trade/servicemark and or other intellectual property violations, discrimination, sexual harassment, deceptive business practices, wage and hour, employment practices, and the like. Licensee understands that Licensor is or may be bound by and subject to certain Court orders, consent orders, stipulations, agreements and the like and Licensee agrees that, in the conduct of its business, it shall abide by any such Court orders, consent orders, stipulations, agreements and the like, including, in particular, those with Anheuser Busch Incorporated and Two's Company, a Rhode Island Corporation. Licensee acknowledges that it has had ample opportunity to review the existing Court orders,

Page -4-

MD 00241
MARCO/L&L WINGS

during the continuance of any breach, shall constitute a waiver of the breach or the term or condition. No term or condition of this Agreement to be performed or observed by Licensee and no breach shall be waived, altered or modified except by written instrument executed by Licensor. No waiver of any breach shall affect or alter this Agreement but each term and condition of this Agreement shall remain and continue in effect with respect to any other existing or subsequent breach. No delay or failure by either party to exercise any right under this Agreement, and no partial or single exercise of that right, shall constitute a waiver of that or any other right. No waiver, modification or amendment of this Agreement shall be valid unless in writing signed by the party to be charged.

### 13. Licensor's Paramount Rights.

13.1. Licensee shall not contest Licensor's exclusive ownership of all rights including trademark and/or servicemark rights to the name "Wings" or copyright rights to any element of the Trade Dress. Licensee shall not at any time apply for a registration for the name "Wings" or any confusingly similar mark or for any other right in the name anywhere in the world nor shall Licensee file any opposition or in any other manner hinder any application for registration of the mark "Wings" that Licensor has, will or may make.

13.2. Licensee acknowledges and agrees that any and all rights and assets, including, but not limited to, goodwill, accruing and/or arising from the use of the mark "Wings" and/or its Trade Dress, shall belong to and be the property of Licensor free of any and all claims of Licensee.

### 14. Governing Law. This Agreement shall be governed solely by the laws of the State of New York without giving effect to any conflict of laws provisions thereof. Any and all matters of dispute between the parties which are to be settled by litigation, negotiations or arbitration at any time by reason of this Agreement, shall be negotiated, tried, litigated, conducted and/or arbitrated in New York County, New York State and shall include jurisdiction in the federal courts of the Southern District of New York. Licensee hereby consents to jurisdiction as set forth herein.

### 15. Attorneys' Fees. If Licensor files any action against Licensee for any breach of this Agreement, Licensor shall be entitled to recover from Licensee reasonable attorneys' fees incurred in so doing.

### 16. Notices. Notices required under this Agreement shall be made or given to the parties at the addresses specified at the beginning of this Agreement or at any other address that the parties may, by notice, specify. Copies of all notices shall be sent to the attorney for the party. Notices shall be deemed given 5 days after mailing by certified or registered mail, return receipt requested (unless sent by overnight mail service in which event notice shall be deemed given 1 day after mailing).

MD 00242
MARCO/L&L WINGS

Sep-03-99 11:57    JENNETT D. KRASNER ESQ.    5    432 701    P.08

**17. Binding Effect.** This Agreement shall be binding upon the parties and their heirs, agents, executors, administrators, and successors, including, without limitation, successor officers, directors and trustees, if any, of the Licensor or Licensee.

**18. Headings.** The headings for each paragraph are simply for the convenience of the parties and shall not be used to interpret the meaning of any of the provisions.

**19. Time of the Essence.** All dates and obligations contained in this agreement which rely upon specific dates or periods of time shall be deemed to be "time of the essence" and any failure to timely comply with any such obligations and/or dates shall be deemed a material breach of this Agreement.

**20. Entire Agreement.** This Agreement contains the entire agreement between the parties and supersedes all agreements and understandings previously made between the parties relating to its subject matter, all of which have been merged herein. There are no other understandings or agreements between them, nor are there any representations made which are not herein contained. This agreement shall be governed in accordance with the laws of the State of New York, the courts of which shall have exclusive jurisdiction.

IN WITNESS WHEREOF, the parties have set their hands hereto as of the day and date above first appearing.

L & L WINGS, INC.:


By: Shaul Levy, President

Marco-Destin, Inc.


By: Eli Tabib, President

E&T Inc.


By: Eli Tabib, President

Page -7-

MD 00243
MARCO/L&L WINGS

Aug-04-99 06:12P  BENNF T D. KRASNER ESQ.  516 43 7960

THE LAW OFFICES OF
# BENNETT DAVID KRASNER
1233 Beech Street, No. 49
Atlantic Beach, N.Y. 11509
(516) 889-9353  Fax (516) 432-7016
New York Office
747 Third Avenue
New York, New York 10017
(212) 588-0330  Fax (212) 588-0440

*Tobib/Estate*
*06935/101*
*Corr.*

Of Counsel
Bonnie Ellen Krasner

Reply To: **Long Island Office**

August 4, 1999

## FAX Transmission Sheet

From:    Bennett D. Krasner, Esq.

To:      Steven J. Glaser, Esq.

Subject: Eli Tabib with Levy

Fax No.: 212-554-7700

You should receive 19 page(s) including this cover sheet. If you do not receive all pages, please call (516) 889-9353.

## COMMENTS:

Proposed agreement follows. Please call me if there are any questions or comments. I will be in my office all day Thursday. Thank you.

### CONFIDENTIALITY NOTE:

THE INFORMATION CONTAINED IN THIS TELECOPY (FAX) MESSAGE IS BEING TRANSMITTED TO AND IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY ADVISED THAT ANY DISSEMINATION, DISTRIBUTION OR COPY THIS TELECOPY (FAX) IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TELECOPY (FAX) IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND DESTROY THIS TELECOPY (FAX) MESSAGE.

08/04/99  WED 18:18  [TX/RX NO 5664]

**MD 00244**
**MARCO/L&L WINGS**

Agreement made this **DRAFT** day of July, 1999, and effective as of December 31, 1998, by and between on the one hand, Shaul Levy (hereinafter, "Shaul"), Meir Levy (hereinafter, "Meir"), (both Shaul Levy and Meir Levy are hereinafter collectively referred to as "Levy"), L&L Wings, Inc. (hereinafter, "L&L"), Shaul and Meir Levy Partnership (hereinafter, "SMP"), (Shaul Levy, Meir Levy, L&L and SMP, are all from time to time, hereinafter collectively referred to as "Wings"), and on the other hand, Eli Tabib (hereinafter, "Eli"), 1000 Highway 98 East Corp. (hereinafter, "1000 Highway"), Marco-Destin Inc. (hereinafter, "Marco-Destin"), 100 South Morehead Ave. Corp. (hereinafter, "Morehead"), and Panama City Surf & Sport Inc. (hereinafter, "Panama City").

**WHEREAS**, Shaul, Meir and Eli are the sole shareholders of Morehead; and

**WHEREAS**, Shaul, Meir and Eli are the sole shareholders of 1000 Highway; and

**WHEREAS**, Shaul, Meir and Eli are the sole shareholders of Marco-Destin; and

**WHEREAS**, Shaul, Meir and Eli are the sole shareholders of Panama City; and

**WHEREAS**, Shaul and Meir are the sole partners in SMP; and

**WHEREAS**, all of the parties, in one form or another, are engaged in the business of owning and operating retail stores; and

**WHEREAS**, all of the stores affected by this agreement are operated under the name "Wings"; and

**WHEREAS**, Marco-Destin operated various stores leased to L&L without a lease and has since abandoned them; and

**WHEREAS**, Marco-Destin holds leases on stores operated by L&L and desires to assign such leases to L&L; and

# DRAFT

MD 00245
MARCO/L&L WINGS

WHEREAS, Shaul and Meir are desirous of acquiring and 1000 Highway desires to sell certain real property; and

WHEREAS, Levy and Eli have determined that it is in their best interests and in the best interests of the various corporate entities named hereinabove to amicably part ways; and

WHEREAS, Levy and Eli have determined that it is in their best interests and in the best interests of the various corporate entities named hereinabove if Levy and Eli cease to own shares of stock in the same entities;

NOW, THEREFORE, in consideration of the covenants and agreements hereinafter set forth, and other valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the parties hereto agree as follows:

### 1. Transfers of Shares of Stock.

1.1. <u>100 South Morehead Ave. Corp.</u> Eli agrees to sell, transfer and deliver to Shaul and Meir, in equal shares, and Shaul and Meir agree to purchase, upon the terms and conditions hereinafter set forth, all Eli's shares of the capital stock of Morehead, which shares constitute one-half of the authorized and issued shares of Morehead. The purchase price to be paid by Shaul and Meir for Eli's said shares shall be $_____, payable at the "Closing" (hereinafter defined).

1.2. <u>1000 Highway 98 East Corp.</u> Shaul and Meir each, for himself, agree to sell, transfer and deliver to Eli and Eli agrees to purchase, upon the terms and conditions hereinafter set forth, all their shares of the capital stock of 1000 Highway, which shares constitute one-half of the authorized and issued shares of 1000 Highway.

Page -2-

# DRAFT

MD 00246
MARCO/L&L WINGS

Aug-04-99 06:12P    ENNE   D. KRASNER ESQ.    516 032 701    P.04

The purchase price to be paid by Eli for said shares shall be $_____, payable at the Closing.

1.3. <u>Marco-Destin Inc.</u> Shaul and Meir each, for himself, agree to sell, transfer and deliver to Eli and Eli agrees to purchase, upon the terms and conditions hereinafter set forth, all their shares of the capital stock of Marco-Destin, which shares constitute one-half of the authorized and issued shares of Marco-Destin. The purchase price to be paid by Eli for said shares shall be $_____, payable at the Closing.

1.4. <u>Panama City Surf & Sport Inc.</u> Shaul and Meir each for himself, agree to sell, transfer and deliver to Eli and Eli agrees to purchase, upon the terms and conditions hereinafter set forth, all their shares of the capital stock of Panama City, which shares constitute one-half of the authorized and issued shares of Panama City. The purchase price to be paid by Eli for said shares shall be $_____, payable at the Closing.

## 2. Transfers of Leasehold Interests and Property.

2.1. <u>106A N. New River Drive, Surf City, NC.</u> Eli and Marco-Destin shall execute a surrender of any leasehold right, whether oral or written, which he, it or they may have in and to the lease agreement entered into between Coastal Land Ventures, Inc. as Landlord and L&L as Tenant, for the premises known by the parties as store #766 located at 106A N. New River Drive, Surf City, NC. This store was formerly operated by Marco-Destin and since abandoned. The proposed surrender agreement is annexed hereto as Exhibit A.

# DRAFT

MD 00247
MARCO/L&L WINGS

2.2. 15 East 1st Street, Ocean Isle, NC. In consideration of the sum of

$_____, Marco-Destin shall assign to L & L the lease between Ralph

Shama and Yaron Shama collectively as Landlord and Marco-Destin as Tenant,

together with all right, title and interest of the tenant thereunder, for the premises known

by the parties as store #767 located at 15 East 1st Street, Ocean Isle, NC. Eli and

Marco-Destin further agree to execute any and all documents which may be required to

effectuate the assignment and further agree that, if required by Landlord, they and/or

either or both of them, shall remain liable for the lease obligations of Tenant. This store

was formerly operated by Marco-Destin and since abandoned.

2.3. 1014 N. Lake Park Road, Carolina Beach, NC (transfer of real property). In

consideration of the sum of $_____, 1000 Highway shall sell, transfer and

convey to Shaul and Meir and/or their assignees and/or designees, the real property,

together with the buildings and improvements thereon located, known by the parties as

store #765 located at 1014 N. Lake Park Road, Carolina Beach, NC.

2.3.1. To effectuate the transfer of the property, 1000 Highway shall deliver to

Shaul and Meir and/or their assignees and/or designees, a warranty deed in proper

statutory form for recording so as to transfer full ownership (fee simple title) to the real

property, together with the buildings and improvements located therein subject to the

existing mortgage(s) and U.C.C. security interests known to and previously consented

to by Shaul & Meir. 1000 Highway represents and warrants, in connection with the

conveyance, that all taxes, including, but not limited to, real estate taxes and arrears, if

any, and mortgage payments will be current to the date of transfer and that there are no

Page -4-

DRAFT

MD 00248
MARCO/L&L WINGS

known condemnation proceedings and/or building code or other violations affecting the real property and/or buildings and improvements located therein.

2.4. 1014 N. Lake Park Road, Carolina Beach, NC (transfer of leasehold interest). In consideration of the sum of $1.00, Marco-Destin shall assign to L & L any right, title or interest it has or may claim to have as Tenant and shall surrender to L & L any claims to the business operated in the premises known by the parties as store #765 located at 1014 N. Lake Park Road, Carolina Beach, NC. Eli, 1000 Highway and Marco-Destin further agree to execute any and all documents which may be required to effectuate the assignment. This store was formerly operated by Marco-Destin and since abandoned. The proposed assignment and surrender agreement is annexed hereto as Exhibit B.

2.5. 9952 Beach Road, Calabash, NC. In consideration of _____, Eli and 1000 Highway shall assign to L & L and or its assignees, any right, title or interest either or both of them has or may have or may claim to have in and to the land and/or buildings and improvements located thereon and known by the parties as store #605 located at 9952 Beach Road, Calabash, NC. The parties acknowledge and understand that the said real property is owned by SMP; that the building and improvements thereon were paid for by 1000 Highway in repayment of money owed to L & L and carried on the books of 1000 Highway as accounts payable; and that, however, 1000 Highway inadvertently and erroneously booked the building on its books. The book value of the building and equipment shall be offset by the accounts payable owing to L & L in the amount of $ _____.

Page -5-

# DRAFT

MD 00249
MARCO/L&L WINGS

Aug-04-99 06:13P  \ENNETT D. KRASNER ESQ.    51o 432 /01

2.6. <u>581 South Collier Boulevard, Marco Island, FL. (correction of title).</u> The parties acknowledge that 1000 Highway is the lawful owner of the land with the buildings and improvements thereon located at 581 South Collier Boulevard, Marco Island, Florida and known by the parties as store #317. Shaul, Meir, Eli and 1000 Highway acknowledge, each for it, him and themselves, that the deed of conveyance incorrectly reflects that they are the owners of the property while the corporate books of 1000 Highway correctly reflect that it owns the said property. In order to correct this error, Shaul, Meir, Eli and 1000 Highway, agree that they and each of them shall execute a correction deed and any and all documents necessary to correct title to the property. Said property is conveyed subject to all existing mortgage(s) and U.C.C. security interests known to and previously consented to by Eli, 1000 Highway and Marco-Destin.

2.7. <u>581 South Collier Boulevard, Marco Island, FL (transfer of leasehold interest).</u> In consideration of the sum of $1.00, Wings shall assign to Marco-Destin any right, title or interest it has or may claim to have as Tenant and shall surrender to Marco-Destin any claims to the business operated in the premises known by the parties as store #317 located at 581 South Collier Boulevard, Marco Island, Florida. Wings further agrees to execute any and all documents which may be required to effectuate the assignment. This store was formerly operated by L & L and since abandoned. The proposed assignment and surrender agreement is annexed hereto as Exhibit C.

2.8. <u>2673 Parkway, Pigeon Forge, TN.</u> Wings shall assign to Marco-Destin the lease between Michael Shaler as Landlord and L&L as Tenant, together with all right, title and interest of the Tenant thereunder, in and to the premises known by the parties

# DRAFT

08/04/99  WED 18:16  [TX/RX NO 5664]

MD 00250
MARCO/L&L WINGS

Aug-04-99 06:13P    ENNETT D. KRASNER ESQ.    516 432 701

as store #801 located at 2673 Parkway, Pigeon Forge, TN. Wings further agrees to execute any and all documents which may be required to effectuate the assignment and further agrees that, if required by Landlord, it shall remain liable for the lease obligations of Tenant.

2.9. <u>1251 A Miracle Strip Parkway, Ft. Walton Beach, FL.</u>  Wings shall assign to 1000 Highway the lease between Noric, Inc. as Landlord and L&L as Tenant, together with all right, title and interest of the Tenant thereunder, in and to the premises known by the parties as store #748 located at 1251A Miracle Strip Parkway, Ft. Walton Beach, FL. The lease contains a right of assignment so long as Tenant remains liable on the lease. The parties acknowledge and agree that L&L <u>de facto</u> assigned the lease to 1000 Highway; that 1000 Highway built the store; and that the store is operated by Marco-Destin pursuant to a <u>de facto</u> sublet from 1000 Highway.

## 3. License of Mark.

L&L shall grant to Marco-Destin a non-exclusive license to use the trademark name "Wings" for all stores currently operated by Marco-Destin in the state of Florida subject to a separate licensing agreement. The proposed agreement is annexed hereto as Exhibit D.

## 4. Execution and Delivery of Documents.

4.1.  At the closing the parties shall execute and deliver by, to and among them, as necessary to effectuate the intent of this agreement, the following documents and items:

Page -7-

# DRAFT

MD 00251
MARCO/L&L WINGS

4.1.1. The certificate or certificates for the shares of stock in the respective corporations, duly endorsed so as to effectively transfer ownership of the respective corporations as provided in this agreement, together with all appropriate Federal and State transfer tax stamps affixed.

4.1.2. Letters of resignation from each director and officer of the respective corporations, effective as of the closing hereunder.

4.1.3. The Certificate of Incorporation and/or other organizational documents of any corporation transferred pursuant to this agreement, and the bylaws, minute book, stock certificate book, and seal of any such corporation.

4.1.4. Any bills, vouchers, and/or other records showing the ownership of the furniture, furnishings, equipment, and other property used in the operation of the business of any corporation transferred pursuant to this agreement.

4.1.5. All other books of account, records and contracts of any corporation transferred pursuant to this agreement.

4.1.6. All such other instruments as may be necessary or proper to transfer to a transferee hereunder all other ownership interests in the Corporation transferred pursuant to this agreement.

4.1.7. In the case of the transfer of real property pursuant to this agreement, all deeds of conveyance, tax returns, affidavits, evidences of debt, assignments, and any and all other documents which may be

Page -8-

# DRAFT

MD 00252
MARCO/L&L WINGS

necessary or required to complete the transfer of real property provided for in this agreement.

4.1.8. All business licenses, permits, etc., which may be required for the business operated in a premises subject to this agreement, which licenses, permits, etc., shall be endorsed, assigned and/or otherwise transferred to the transferee of the property hereunder, in such form and manner as to meet the requirements of the issuing authority.

4.2. The Parties hereto agree to execute any and all such other and further documents as may be required to complete the transfers and conveyances provided for in this agreement.

4.3. The Parties hereto agree to take all steps necessary to assure that the documents provided for hereunder shall be valid and binding and effective to transfer property in the State (or States as the case may be) and local jurisdictions to which any property transferred hereunder may be subject.

## 5. Assumption of Secured Debt.

5.1. At the closing parties shall execute and deliver to, between and among them, as necessary to effectuate the intent of this agreement, assignments and assumptions of all existing Secured Debt covering the property, including the Corporations, affected by this Agreement, in form and substance satisfactory to the various Lenders and to the respective attorneys for the parties. The parties acknowledge that the corporations, and property, both real and personal, assigned or otherwise transferred pursuant to this Agreement, is/are encumbered and are assigned

Page -9-

# DRAFT

MD 00253
MARCO/L&L WINGS

or otherwise transferred hereunder subject to any such encumbrances, notwithstanding that all the parties know that an assignment, sale and/or transfer may violate the terms and/or conditions of the encumbrances.

5.2. The parties acknowledge that adequate disclosure of all encumbrances has been made and that they and each of them are fully aware of and familiar with the encumbrances on the property affected by this Agreement.

5.3 In the event a party (herein, "the defaulting party"), who, pursuant to this agreement, receives real and/or personal property, including any assignment of lease, fails to timely and duly fulfill any and/or all obligations in connection with any such encumbrance and/or other obligations assumed, (including, but not limited to, the payment of any mortgage or note or payment of rent) and such failure continues for more than 5 days after notice by another party to this Agreement still obligated for the liability (the "non-defaulting party"), (whether such "non-defaulting party" is primarily liable for the obligation, as guarantor or otherwise); then, the said non-defaulting party may satisfy, fulfill and/or discharge the liability whereupon the non-defaulting party shall be entitled to reimbursement for all payments and costs by the defaulting party and/or shall be entitled to immediate possession of the previously transferred real and/or personal property and/or leasehold interest to which the liability relates, free and clear of any right, title and/or interest of the defaulting party.

## 6. The Closing and Payment of Consideration.

6.1. All consideration to be paid hereunder shall be paid at the Closing (as hereinafter defined), it being understood and agreed between the parties that, with the

# DRAFT

08/04/99  WED 18:18  [TX/RX NO 5664]

MD 00254
MARCO/L&L WINGS

agreement of the payee party, an obligated party hereunder may pay any part or all of the consideration by the due execution and issuance of a promissary note in form satisfactory and acceptable to the payee party.

6.2. The "Closing" means the settlement of the obligations of the parties to each other pursuant to this agreement, including the payment of any and all consideration provided for herein and the delivery by the parties of all documents (including the Exhibits hereto), necessary to complete the transfers of property and other actions provided for in this agreement.

### 7. Representations and Warranties.

7.1. The parties represent and warrant, each for it, him, themselves, to the others, as follows:

7.2. The corporations affected hereby are duly organized and validly existing under the laws of the states in which they were incorporated and are duly qualified to do business in the states in which they operate.

7.3. The parties have full power and authority to carry out and perform their respective undertakings and obligations as provided herein.

7.4. The execution and delivery by the parties of this agreement and the consummation of the transactions contemplated hereby have been duly authorized by the Boards of Directors of the affected corporations and will not conflict with or breach any provision of the certificates of incorporation or bylaws of these corporations.

7.5. Shaul, Meir and Eli each own the respective shares of stock in the Corporations sold by them hereunder. All of the shares are no par value, are fully paid

Page -11-

# DRAFT

MD 00255
MARCO/L&L WINGS

and non-assessable, and have not been assigned, pledged or hypothecated, and are free of all liens, claims and encumbrances, except as set forth herein.

7.6. There are no violations of any law or governmental rule or regulation pending against any of the parties and/or the property and/or the entities transferred hereunder and affecting the entities and/or the property transferred hereunder and affected hereby, to the best of the respective knowledge of the parties. The parties agree to clear all violations against their respective properties to the date of closing.

7.7. The parties are all fully aware of the financial condition, liens and/or encumbrances and leases affecting the corporations and/or property (both real and personal). transferred pursuant to this Agreement and acknowledge that full disclosure of same has been made to them.

7.8. The parties acknowledge that they are fully familiar with any written contracts or agreements for the employment of any employee of any business transferred hereby;

7.9. The entities transferred hereunder have filed all tax returns, including without limitation, all income, excise, property, gain, sales, franchise and license tax returns, required to be filed by them prior to the date hereof. The parties are fully familiar with all such tax filings and the respective transferees hereunder agree to assume liability for the payment of all taxes owed, owing or assessed against the transferred entities.

7.10. The parties represent each for him, it, themselves and to each other, that all rent, mortgage payments, real estate taxes and arrears, if any, and violations, which may affect any property, whether real or personal property and including any lease

Page -12-

# DRAFT

MD 00256
MARCO/L&L WINGS

interest, transferred hereunder or otherwise affected by this Agreement, have been fully paid and will be paid current to the date of the transfer hereunder.

7.11. The parties acknowledge that they have not made to each other nor has any representative or agent of any of them made any representation or warranty (expressed or implied) regarding any matter or thing affecting or relating to this agreement, except as specifically set forth in this agreement. No party shall be liable or bound in any manner by any oral or written statement, representation, warranty, agreement or information pertaining to this agreement unless specifically set forth in this agreement.

## 8. Indemnification.

Each party hereto shall indemnify and hold the other parties harmless from and against all liability, claim, loss, damage or expense, including reasonable attorneys' fees, incurred or required to be paid by such other parties by reason of any breach or failure of observance or performance of any representation, warranty or covenant or other provision of this agreement by such party.

## 9. Assignment Prohibited.

No party shall assign this agreement without the prior written consent of the other parties in each instance unless specifically provided hereinabove. Any attempted assignment without consent of all parties shall be null and void.

Page -13-

# DRAFT

MD 00257
MARCO/L&L WINGS

## 10. Notices.

All notices, demands and other communications required or permitted to be given hereunder shall be in writing and shall be deemed to have been properly given if delivered by hand or by overnight courier or by registered or certified mail, return receipt requested, with postage prepaid, to the party or parties (as the case may be), to be charged, at it, his, their address first above written, or at such other address as he, it, they may designate by notice given hereunder. Copies of all such notices, demands and other communications simultaneously shall be given in the aforesaid manner to Wing's attorney, Bennett D. Krasner, Esq., at 1233 Beech St. No. 49, Atlantic Beach, NY 11509, and to Eli's attorney, Gideon Rothchild, Esq., Moses and Singer LLP at 1301 Avenue of the Americas, New York, NY 10019. The respective attorneys for the parties hereby are authorized to give any notice required or permitted hereunder and to agree to adjournments of the Closing.

## 11. Further Actions.

In connection with the transactions contemplated by this agreement, the parties agree to execute and deliver such further instruments, and to take such further actions, as may be reasonably necessary or proper to effectuate and carry out the transactions contemplated in this agreement.

## 12. Joint Liability, Guarantees and Sureties.

All the parties acknowledge that, during the course of their long business relationship, they and each of them have, from time to time, guaranteed, cross-

Page -14-

# DRAFT

MD 00258
MARCO/L&L WINGS

guaranteed, become joint and severally liable for various obligations and acted as sureties for each other (all of these obligations are hereinafter referred to as "Potential Obligations"). The extent of the parties' liability based upon Potential Obligations is vast and the parties are unable, with any reasonable certainty, to provide any compendium to each other or even to list the obligees of any Potential Obligations. Therefore, Wings and Morehead (hereinafter "Wings' Group") on the one hand, and Eli, 1000 Highway, Marco-Destin and Panama City (hereinafter "Eli's Group"), on the other hand, agree to indemnify and hold each other harmless from and against all liability, claim, loss, damage or expense, including reasonable attorneys' fees, incurred or required to be paid by such other party by reason of any Potential Obligation. Furthermore, if said claim, loss, damage or expense relates to real and/or personal property, including, but not limited to, any leasehold interest, the party incurring such payment shall be entitled to immediate possession of the subject real and/or personal property, including, but not limited to, any leasehold interest, free and clear of any right, title and/or interest of the other party. (By way of example, if Eli's Group or any member thereof, defaults on a mortgage payment on real property held by 1000 Highway and any party of Wings' Group is called upon, by virtue of it's guarantee, to correct the default, then such party of Wings' Group shall be entitled to immediate possession of the real property free and clear of any interest any party of Eli's Group may have.)

### 13. Entire Agreement.

This agreement contains all of the terms agreed upon between the parties with respect to the subject matters hereof. This agreement has been entered into after full

Page -15-

# DRAFT

MD 00259
MARCO/L&L WINGS

investigation. All prior oral or written statements, representations, promises, understandings and agreements of the parties are merged into and superseded by this agreement, which alone fully and completely expresses their agreement.

**14. Miscellaneous.**

14.1. No delay or omission by any of the parties in exercising any right shall operate as a waiver of such right or of any other right.

14.2. This agreement may not be altered, amended, changed, modified, waived or terminated in any respect or particular unless the same shall be in writing signed by the party to be bound.

14.3. No waiver by any party of any breach hereunder shall be deemed a waiver of any other or subsequent breach.

14.4. The Exhibits annexed to this agreement are an integral part of this agreement, and where there is any reference to this agreement it shall be deemed to include said Exhibits.

14.5. This agreement shall be governed by and construed in accordance with the laws of the State of New York.

14.6. If any provision of this agreement shall be unenforceable or invalid, such unenforceability or invalidity shall not affect the remaining provisions of this agreement.

14.7. This agreement shall not be considered an offer or an acceptance of an offer by any party, and shall not be binding upon any party until executed and delivered by that party.

Page -16-

# DRAFT

MD 00260
MARCO/L&L WINGS

Aug-04-99 08:16P SENREY

14.8. Upon such execution and delivery, this agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and permitted assigns.

DRAFT

Page -17-

# DRAFT

08/04/99  WED 18:16  [TX/RX NO 5664]

MD 00261
MARCO/L&L WINGS

Aug-04-99 06:18P BENNETT D. KRASNER ESQ.

In witness whereof, the parties hereto have hereunto set their hands and seals

as of the date first above written.

_____          _____
Shaul Levy                       Meir Levy

_____
Eli Tabib

L&L Wings, Inc.                  1000 Highway 98 East Corp.

_____          _____
By: Shaul Levy, President        By:

Marco-Destin Inc.                100 South Morehead Ave. Corp.

_____          _____
By:                              By:

Panama City Surf & Sport Inc.    Shaul & Meir Levy Partnership

_____          _____
By:                              By:

# DRAFT

Page -18-

MD 00262
MARCO/L&L WINGS

Aug-04-99 06:1.    BEN TT D. KRASNER ESQ.    5J 432 70    P.01

*El. Tab.b/estate*
*Planning*
*06935/10*
*Corr.*

THE LAW OFFICES OF
# BENNETT DAVID KRASNER
1233 Beech Street, No. 49
Atlantic Beach, N.Y. 11509
(516) 889-9353   Fax (516) 432-7016
New York Office
747 Third Avenue
New York, New York 10017
(212) 588-0330   Fax (212) 588-0440

Of Counsel
Bonnie Ellen Krasner

Reply To: **Long Island Office**

August 4, 1999

## FAX Transmission Sheet

From:      Bennett D. Krasner, Esq.

To:        Steven J. Glaser, Esq.

Subject:   Eli Tabib with Levy

Fax No.:   212-554-7700

You should receive 19 page(s) **including this cover sheet.** If you do not receive all pages, please call (516) 889-9353.

## COMMENTS:

Proposed agreement follows. Please call me if there are any questions or comments. I will be in my office all day Thursday. Thank you.

### CONFIDENTIALITY NOTE:

THE INFORMATION CONTAINED IN THIS TELECOPY (FAX) MESSAGE IS BEING TRANSMITTED TO AND IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY ADVISED THAT ANY DISSEMINATION, DISTRIBUTION OR COPY THIS TELECOPY (FAX) IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TELECOPY (FAX) IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND DESTROY THIS TELECOPY (FAX) MESSAGE.

08/04/99  WED 18:16  [TX/RX NO 5664]

MD 00263
MARCO/L&L WINGS

Aug-04-99  06:1    BEN ETT D. KRASNER ESQ.    5   432 7C    P.02

Agreement made this **DRAFT** of July, 1999, and effective as of December 31, 1998, by and between on the one hand, Shaul Levy (hereinafter, "Shaul"), Meir Levy (hereinafter, "Meir"), (both Shaul Levy and Meir Levy are hereinafter collectively referred to as "Levy"), L&L Wings, Inc. (hereinafter, "L&L"), Shaul and Meir Levy Partnership (hereinafter, "SMP"). (Shaul Levy, Meir Levy, L&L and SMP, are all from time to time, hereinafter collectively referred to as "Wings"), and on the other hand, Eli Tabib (hereinafter, "Eli"), 1000 Highway 98 East Corp. (hereinafter, "1000 Highway"), Marco-Destin Inc. (hereinafter, "Marco-Destin"), 100 South Morehead Ave. Corp. (hereinafter, "Morehead"), and Panama City Surf & Sport Inc. (hereinafter, "Panama City").

WHEREAS, Shaul, Meir and Eli are the sole shareholders of Morehead; and

WHEREAS, Shaul, Meir and Eli are the sole shareholders of 1000 Highway; and

WHEREAS, Shaul, Meir and Eli are the sole shareholders of Marco-Destin; and

WHEREAS, Shaul, Meir and Eli are the sole shareholders of Panama City; and

WHEREAS, Shaul and Meir are the sole partners in SMP; and

WHEREAS, all of the parties, in one form or another, are engaged in the business of owning and operating retail stores; and

WHEREAS, all of the stores affected by this agreement are operated under the name "Wings"; and

WHEREAS, Marco-Destin operated various stores leased to L&L without a lease and has since abandoned them; and

WHEREAS, Marco-Destin holds leases on stores operated by L&L and desires to assign such leases to L&L; and

# DRAFT

08/04/99  WED 18:16  [TX/RX NO 5664]

MD 00264
MARCO/L&L WINGS

Aug-04-99 06:1.    BEN'ETT D. KRASNER ESQ.    5?< 432 70                    P.03

WHEREAS, Shaul and Meir are desirous of acquiring and 1000 Highway desires to sell certain real property; and

WHEREAS, Levy and Eli have determined that it is in their best interests and in the best interests of the various corporate entities named hereinabove to amicably part ways; and

WHEREAS, Levy and Eli have determined that it is in their best interests and in the best interests of the various corporate entities named hereinabove if Levy and Eli cease to own shares of stock in the same entities;

NOW, THEREFORE, in consideration of the covenants and agreements hereinafter set forth, and other valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the parties hereto agree as follows:

## 1. Transfers of Shares of Stock.

1.1. <u>100 South Morehead Ave. Corp.</u> Eli agrees to sell, transfer and deliver to Shaul and Meir, in equal shares, and Shaul and Meir agree to purchase, upon the terms and conditions hereinafter set forth, all Eli's shares of the capital stock of Morehead, which shares constitute one-half of the authorized and issued shares of Morehead. The purchase price to be paid by Shaul and Meir for Eli's said shares shall be $_____, payable at the "Closing" (hereinafter defined).

1.2. <u>1000 Highway 98 East Corp.</u> Shaul and Meir each, for himself, agree to sell, transfer and deliver to Eli and Eli agrees to purchase, upon the terms and conditions hereinafter set forth, all their shares of the capital stock of 1000 Highway, which shares constitute one-half of the authorized and issued shares of 1000 Highway.

Page -2-

# DRAFT

08/04/99  WED 18:16  [TX/RX NO 5684]

MD 00265
MARCO/L&L WINGS

The purchase price to be paid by Eli for said shares shall be $_____, payable at the Closing.

1.3. <u>Marco-Destin Inc.</u>  Shaul and Meir each, for himself, agree to sell, transfer and deliver to Eli and Eli agrees to purchase, upon the terms and conditions hereinafter set forth, all their shares of the capital stock of Marco-Destin, which shares constitute one-half of the authorized and issued shares of Marco-Destin. The purchase price to be paid by Eli for said shares shall be $_____, payable at the Closing.

1.4. <u>Panama City Surf & Sport Inc.</u>  Shaul and Meir each for himself, agree to sell, transfer and deliver to Eli and Eli agrees to purchase, upon the terms and conditions hereinafter set forth, all their shares of the capital stock of Panama City, which shares constitute one-half of the authorized and issued shares of Panama City. The purchase price to be paid by Eli for said shares shall be $_____, payable at the Closing.

**2. Transfers of Leasehold Interests and Property.**

2.1. <u>106A N. New River Drive, Surf City, NC.</u>  Eli and Marco-Destin shall execute a surrender of any leasehold right, whether oral or written, which he, it or they may have in and to the lease agreement entered into between Coastal Land Ventures, Inc. as Landlord and L&L as Tenant, for the premises known by the parties as store #766 located at 106A N. New River Drive, Surf City, NC. This store was formerly operated by Marco-Destin and since abandoned. The proposed surrender agreement is annexed hereto as Exhibit A.

Page -3-

# DRAFT

MD 00266
MARCO/L&L WINGS

2.2. <u>15 East 1st Street, Ocean Isle, NC.</u>  In consideration of the sum of

$_____, Marco-Destin shall assign to L & L the lease between Ralph

Shama and Yaron Shama collectively as Landlord and Marco-Destin as Tenant,

together with all right, title and interest of the tenant thereunder, for the premises known

by the parties as store #767 located at 15 East 1st Street, Ocean Isle, NC. Ell and

Marco-Destin further agree to execute any and all documents which may be required to

effectuate the assignment and further agree that, if required by Landlord, they and/or

either or both of them, shall remain liable for the lease obligations of Tenant. This store

was formerly operated by Marco-Destin and since abandoned.

2.3. <u>1014 N. Lake Park Road, Carolina Beach, NC (transfer of real property).</u>  In

consideration of the sum of $_____, 1000 Highway shall sell, transfer and

convey to Shaul and Meir and/or their assignees and/or designees, the real property,

together with the buildings and improvements thereon located, known by the parties as

store #765 located at 1014 N. Lake Park Road, Carolina Beach, NC.

2.3.1. To effectuate the transfer of the property, 1000 Highway shall deliver to

Shaul and Meir and/or their assignees and/or designees, a warranty deed in proper

statutory form for recording so as to transfer full ownership (fee simple title) to the real

property, together with the buildings and improvements located therein subject to the

existing mortgage(s) and U.C.C. security interests known to and previously consented

to by Shaul & Meir.  1000 Highway represents and warrants, in connection with the

conveyance, that all taxes, including, but not limited to, real estate taxes and arrears, if

any, and mortgage payments will be current to the date of transfer and that there are no

Page -4-

DRAFT

MD 00267
MARCO/L&L WINGS

known condemnation proceedings and/or building code or other violations affecting the real property and/or buildings and improvements located therein.

2.4. 1014 N. Lake Park Road, Carolina Beach, NC (transfer of leasehold interest). In consideration of the sum of $1.00, Marco-Destin shall assign to L & L any right, title or interest it has or may claim to have as Tenant and shall surrender to L & L any claims to the business operated in the premises known by the parties as store #765 located at 1014 N. Lake Park Road, Carolina Beach, NC. Eli, 1000 Highway and Marco-Destin further agree to execute any and all documents which may be required to effectuate the assignment. This store was formerly operated by Marco-Destin and since abandoned. The proposed assignment and surrender agreement is annexed hereto as Exhibit B.

2.5. 9952 Beach Road, Calabash, NC. In consideration of _____, Eli and 1000 Highway shall assign to L & L and or its assignees, any right, title or interest either or both of them has or may have or may claim to have in and to the land and/or buildings and improvements located thereon and known by the parties as store #605 located at 9952 Beach Road, Calabash, NC. The parties acknowledge and understand that the said real property is owned by SMP; that the building and improvements thereon were paid for by 1000 Highway in repayment of money owed to L & L and carried on the books of 1000 Highway as accounts payable; and that, however, 1000 Highway inadvertently and erroneously booked the building on its books. The book value of the building and equipment shall be offset by the accounts payable owing to L & L in the amount of $ _____.

Page -5-

# DRAFT

MD 00268
MARCO/L&L WINGS

2.6. <u>581 South Collier Boulevard, Marco Island, FL. (correction of title).</u> The parties acknowledge that 1000 Highway is the lawful owner of the land with the buildings and improvements thereon located at 581 South Collier Boulevard, Marco Island, Florida and known by the parties as store #317. Shaul, Meir, Eli and 1000 Highway acknowledge, each for it, him and themselves, that the deed of conveyance incorrectly reflects that they are the owners of the property while the corporate books of 1000 Highway correctly reflect that it owns the said property. In order to correct this error, Shaul, Meir, Eli and 1000 Highway, agree that they and each of them shall execute a correction deed and any and all documents necessary to correct title to the property. Said property is conveyed subject to all existing mortgage(s) and U.C.C. security interests known to and previously consented to by Eli, 1000 Highway and Marco-Destin.

2.7. <u>581 South Collier Boulevard, Marco Island, FL (transfer of leasehold interest).</u> In consideration of the sum of $1.00, Wings shall assign to Marco-Destin any right, title or interest it has or may claim to have as Tenant and shall surrender to Marco-Destin any claims to the business operated in the premises known by the parties as store #317 located at 581 South Collier Boulevard, Marco Island, Florida. Wings further agrees to execute any and all documents which may be required to effectuate the assignment. This store was formerly operated by L & L and since abandoned. The proposed assignment and surrender agreement is annexed hereto as Exhibit C.

2.8. <u>2673 Parkway, Pigeon Forge, TN.</u> Wings shall assign to Marco-Destin the lease between Michael Shaler as Landlord and L&L as Tenant, together with all right, title and interest of the Tenant thereunder, in and to the premises known by the parties

Page -6-

# DRAFT

MD 00269
MARCO/L&L WINGS

as store #801 located at 2673 Parkway, Pigeon Forge, TN. Wings further agrees to execute any and all documents which may be required to effectuate the assignment and further agrees that, if required by Landlord, it shall remain liable for the lease obligations of Tenant.

2.9. 1251 A Miracle Strip Parkway, Ft. Walton Beach, FL. Wings shall assign to 1000 Highway the lease between Noric, Inc. as Landlord and L&L as Tenant, together with all right, title and interest of the Tenant thereunder, in and to the premises known by the parties as store #748 located at 1251A Miracle Strip Parkway, Ft. Walton Beach, FL. The lease contains a right of assignment so long as Tenant remains liable on the lease. The parties acknowledge and agree that L&L de facto assigned the lease to 1000 Highway; that 1000 Highway built the store; and that the store is operated by Marco-Destin pursuant to a de facto sublet from 1000 Highway.

**3. License of Mark.**

L&L shall grant to Marco-Destin a non-exclusive license to use the trademark name "Wings" for all stores currently operated by Marco-Destin in the state of Florida subject to a separate licensing agreement. The proposed agreement is annexed hereto as Exhibit D.

**4. Execution and Delivery of Documents.**

4.1. At the closing the parties shall execute and deliver by, to and among them, as necessary to effectuate the intent of this agreement, the following documents and items:

Page -7-

# DRAFT

MD 00270
MARCO/L&L WINGS

4.1.1. The certificate or certificates for the shares of stock in the respective corporations, duly endorsed so as to effectively transfer ownership of the respective corporations as provided in this agreement, together with all appropriate Federal and State transfer tax stamps affixed.

4.1.2. Letters of resignation from each director and officer of the respective corporations, effective as of the closing hereunder.

4.1.3. The Certificate of Incorporation and/or other organizational documents of any corporation transferred pursuant to this agreement, and the bylaws, minute book, stock certificate book, and seal of any such corporation.

4.1.4. Any bills, vouchers, and/or other records showing the ownership of the furniture, furnishings, equipment, and other property used in the operation of the business of any corporation transferred pursuant to this agreement.

4.1.5. All other books of account, records and contracts of any corporation transferred pursuant to this agreement.

4.1.6. All such other instruments as may be necessary or proper to transfer to a transferee hereunder all other ownership interests in the Corporation transferred pursuant to this agreement.

4.1.7. In the case of the transfer of real property pursuant to this agreement, all deeds of conveyance, tax returns, affidavits, evidences of debt, assignments, and any and all other documents which may be

Page -8-

# DRAFT

MD 00271
MARCO/L&L WINGS

necessary or required to complete the transfer of real property provided for in this agreement.

4.1.8. All business licenses, permits, etc., which may be required for the business operated in a premises subject to this agreement, which licenses, permits, etc., shall be endorsed, assigned and/or otherwise transferred to the transferee of the property hereunder, in such form and manner as to meet the requirements of the issuing authority.

4.2. The Parties hereto agree to execute any and all such other and further documents as may be required to complete the transfers and conveyances provided for in this agreement.

4.3. The Parties hereto agree to take all steps necessary to assure that the documents provided for hereunder shall be valid and binding and effective to transfer property in the State (or States as the case may be) and local jurisdictions to which any property transferred hereunder may be subject.

## 5. Assumption of Secured Debt.

5.1. At the closing parties shall execute and deliver to, between and among them, as necessary to effectuate the intent of this agreement, assignments and assumptions of all existing Secured Debt covering the property, including the Corporations, affected by this Agreement, in form and substance satisfactory to the various Lenders and to the respective attorneys for the parties. The parties acknowledge that the corporations, and property, both real and personal, assigned or otherwise transferred pursuant to this Agreement, is/are encumbered and are assigned

Page -9-

# DRAFT

MD 00272
MARCO/L&L WINGS

Aug-04-99 06:1'    BENNETT D. KRASNER ESQ.    516 432 70    P.11

or otherwise transferred hereunder subject to any such encumbrances, notwithstanding that all the parties know that an assignment, sale and/or transfer may violate the terms and/or conditions of the encumbrances.

5.2. The parties acknowledge that adequate disclosure of all encumbrances has been made and that they and each of them are fully aware of and familiar with the encumbrances on the property affected by this Agreement.

5.3 In the event a party (herein, "the defaulting party"), who, pursuant to this agreement, receives real and/or personal property, including any assignment of lease, fails to timely and duly fulfill any and/or all obligations in connection with any such encumbrance and/or other obligations assumed, (including, but not limited to, the payment of any mortgage or note or payment of rent) and such failure continues for more than 5 days after notice by another party to this Agreement still obligated for the liability (the "non-defaulting party"), (whether such "non-defaulting party" is primarily liable for the obligation, as guarantor or otherwise); then, the said non-defaulting party may satisfy, fulfill and/or discharge the liability whereupon the non-defaulting party shall be entitled to reimbursement for all payments and costs by the defaulting party and/or shall be entitled to immediate possession of the previously transferred real and/or personal property and/or leasehold interest to which the liability relates, free and clear of any right, title and/or interest of the defaulting party.

## 6. The Closing and Payment of Consideration.

6.1. All consideration to be paid hereunder shall be paid at the Closing (as hereinafter defined), it being understood and agreed between the parties that, with the

Page -10-

# DRAFT

08/04/99  WED 18:16  [TX/RX NO 5664]

MD 00273
MARCO/L&L WINGS

Aug-04-99 06:1    BENNETT D. KRASNER ESQ.    516 432 70    P.12

agreement of the payee party, an obligated party hereunder may pay any part or all of the consideration by the due execution and issuance of a promissory note in form satisfactory and acceptable to the payee party.

6.2. The "Closing" means the settlement of the obligations of the parties to each other pursuant to this agreement, including the payment of any and all consideration provided for herein and the delivery by the parties of all documents (including the Exhibits hereto), necessary to complete the transfers of property and other actions provided for in this agreement.

## 7. Representations and Warranties.

7.1. The parties represent and warrant, each for it, him, themselves, to the others, as follows:

7.2. The corporations affected hereby are duly organized and validly existing under the laws of the states in which they were incorporated and are duly qualified to do business in the states in which they operate.

7.3. The parties have full power and authority to carry out and perform their respective undertakings and obligations as provided herein.

7.4. The execution and delivery by the parties of this agreement and the consummation of the transactions contemplated hereby have been duly authorized by the Boards of Directors of the affected corporations and will not conflict with or breach any provision of the certificates of incorporation or bylaws of these corporations.

7.5. Shaul, Meir and Eli each own the respective shares of stock in the Corporations sold by them hereunder. All of the shares are no par value, are fully paid

Page -11-

# DRAFT

08/04/99  WED 18:16  [TX/RX NO 5664]

MD 00274
MARCO/L&L WINGS

Aug-04-99 06:1    BENNETT D. KRASNER ESQ.    516 432 70    P.13

and non-assessable, and have not been assigned, pledged or hypothecated, and are free of all liens, claims and encumbrances, except as set forth herein.

7.6. There are no violations of any law or governmental rule or regulation pending against any of the parties and/or the property and/or the entities transferred hereunder and affecting the entities and/or the property transferred hereunder and affected hereby, to the best of the respective knowledge of the parties. The parties agree to clear all violations against their respective properties to the date of closing.

7.7. The parties are all fully aware of the financial condition, liens and/or encumbrances and leases affecting the corporations and/or property (both real and personal), transferred pursuant to this Agreement and acknowledge that full disclosure of same has been made to them.

7.8. The parties acknowledge that they are fully familiar with any written contracts or agreements for the employment of any employee of any business transferred hereby;

7.9. The entities transferred hereunder have filed all tax returns, including without limitation, all income, excise, property, gain, sales, franchise and license tax returns, required to be filed by them prior to the date hereof. The parties are fully familiar with all such tax filings and the respective transferees hereunder agree to assume liability for the payment of all taxes owed, owing or assessed against the transferred entities.

7.10. The parties represent each for him, it, themselves and to each other, that all rent, mortgage payments, real estate taxes and arrears, if any, and violations, which may affect any property, whether real or personal property and including any lease

Page -12-

# DRAFT

MD 00275
MARCO/L&L WINGS

interest, transferred hereunder or otherwise affected by this Agreement, have been fully paid and will be paid current to the date of the transfer hereunder.

7.11. The parties acknowledge that they have not made to each other nor has any representative or agent of any of them made any representation or warranty (expressed or implied) regarding any matter or thing affecting or relating to this agreement, except as specifically set forth in this agreement. No party shall be liable or bound in any manner by any oral or written statement, representation, warranty, agreement or information pertaining to this agreement unless specifically set forth in this agreement.

## 8. Indemnification.

Each party hereto shall indemnify and hold the other parties harmless from and against all liability, claim, loss, damage or expense, including reasonable attorneys' fees, incurred or required to be paid by such other parties by reason of any breach or failure of observance or performance of any representation, warranty or covenant or other provision of this agreement by such party.

## 9. Assignment Prohibited.

No party shall assign this agreement without the prior written consent of the other parties in each instance unless specifically provided hereinabove. Any attempted assignment without consent of all parties shall be null and void.

Page -13-

# DRAFT

MD 00276
MARCO/L&L WINGS

Aug-04-99 08:1?    BENNETT D. KRASNER ESQ.    516 432 70       P.15

## 10. Notices.

All notices, demands and other communications required or permitted to be given hereunder shall be in writing and shall be deemed to have been properly given if delivered by hand or by overnight courier or by registered or certified mail, return receipt requested, with postage prepaid, to the party or parties (as the case may be), to be charged, at it, his, their address first above written, or at such other address as he, it, they may designate by notice given hereunder. Copies of all such notices, demands and other communications simultaneously shall be given in the aforesaid manner to Wing's attorney, Bennett D. Krasner, Esq., at 1233 Beech St. No. 49, Atlantic Beach, NY 11509, and to Eli's attorney, Gideon Rothchild, Esq., Moses and Singer LLP at 1301 Avenue of the Americas, New York, NY 10019. The respective attorneys for the parties hereby are authorized to give any notice required or permitted hereunder and to agree to adjournments of the Closing.

## 11. Further Actions.

In connection with the transactions contemplated by this agreement, the parties agree to execute and deliver such further instruments, and to take such further actions, as may be reasonably necessary or proper to effectuate and carry out the transactions contemplated in this agreement.

## 12. Joint Liability, Guarantees and Sureties.

All the parties acknowledge that, during the course of their long business relationship, they and each of them have, from time to time, guaranteed, cross-

Page -14-

# DRAFT

08/04/99  WED 18:16  [TX/RX NO 5684]

MD 00277
MARCO/L&L WINGS