**GORENSTEIN**

Bennett D. Krasner, Esq. (bk-8375)
1233 Beech Street #49
Atlantic Beach, New York 11509
Attorney for Plaintiff



07 CV 4137

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| L&L WINGS, INC., | ) |
| Plaintiff, | ) Civil Action No. |
| v. | ) |
| MARCO-DESTIN INC., 1000 HIGHWAY 98 EAST CORP., PANAMA SURF & SPORT, INC., and E&T INC., | ) |
| Defendants. | ) |

MAY 29 2007

CASHIER

## COMPLAINT

Plaintiff, L&L WINGS, INC., (herein, "Wings"), complaining of Defendants, MARCO-DESTIN INC. (herein, "Marco Destin"), 1000 HIGHWAY 98 EAST CORP. (herein, "Highway 98 East"), PANAMA SURF & SPORT, INC. (herein, "Panama"), and E&T INC. (herein, "ET"), (also, herein, collectively, "Defendants"), respectfully alleges upon information and belief as follows:

### NATURE OF ACTION

This is an action for service mark and trademark infringement and unfair competition under the Trademark Act of 1946, as amended (The Lanham Act, 15 U.S.C. §1051 et seq.), and related causes of action under the laws of the State of New York arising from the use by Defendants of Plaintiff's trade name and common law service mark "Wings" (herein, "the Mark") and Plaintiff's distinctive trade dress in violation of Plaintiff's rights in the Mark and in its trade dress, as hereinafter more fully appears.

## JURISDICTION AND VENUE

This Court has jurisdiction under 28 U.S.C. §§1338 (a) and (b). This Court also has supplementary jurisdiction pursuant to 28 U.S.C. §1367. Venue in this judicial district is proper under 28 U.S.C. §§1391 in that Defendants are subject to personal jurisdiction in this district.

This action is based upon an agreement between the parties (described *infra*), which provides that the law of the State of New York shall govern and that any disputes shall be resolved in New York County, New York and that jurisdiction shall be with the federal courts of this district and the courts of the State of New York, New York County.

## PARTIES

1. Plaintiff, Wings, is a South Carolina corporation authorized to do business in the State of New York and having its principal place of business at 8 East 41st Street, in the City, County and State of New York.

2. Upon information and belief, Defendant, Marco Destin is a Florida corporation having a place of business located at 10400 Northwest 33rd Street, Miami, Florida.

3. Upon information and belief, Defendant, Highway 98 East, is a Florida corporation having a place of business located at 10400 Northwest 33rd Street, Miami, Florida.

4. Upon information and belief, Defendant, Panama, is a Florida corporation having a place of business located at 10400 Northwest 33rd Street, Miami, Florida.

5. Upon information and belief, Defendant, ET, is a South Carolina corporation having a place of business located at 10400 Northwest 33rd Street, Miami, Florida.

## BACKGROUND

6. Plaintiff, Wings, is and has been since as early as March, 1978, using the Mark "Wings" in connection with the ownership, operation and management of retail stores specializing in the sale of beachwear, souvenirs, beach toys, chairs, bathing suits, shorts, tee shirts, sunglasses, and other related items.

7. The Mark is not yet registered on the Principal Register of Trademarks with the United States' Patent and Trademark Office.

8. Plaintiff, Wings, currently has 27 retail stores in the contiguous United States, as follows: 8 stores in Florida, 8 stores in North Carolina, 7 stores in South Carolina; 2 stores in California; 2 stores in Texas; 1 store in Massachusetts. Additionally, Plaintiff has, at various times, owned, operated and managed retail stores in New York, Tennessee and Alabama.

9. For nearly *30* years Plaintiff has expended considerable time and effort and expense to advertise, promote and build the goodwill of the Mark. Consequently, the Mark has been, is and continues to be recognized by consumers as representing Plaintiff's retail stores and business operations.

10. For over *20* years Plaintiff has used and claims proprietary rights to, a distinctive Trade Dress in connection with its retail stores, which Trade Dress is decorative and not functional and consists of Plaintiff's unique wave sculpture design highlighted with a signature colored neon light combination (herein, the "Trade Dress").

11. As a result of years of use and the nationwide operation of retail stores bearing the Mark and the Trade Dress, the name "Wings" ("the Mark") has come to be recognized by the beachwear retail industry and by the consuming public as exclusively identifying Plaintiff's retail

store services originating from Plaintiff.

12. Moreover, as a result of years of use and the nationwide operation of retail stores bearing the Trade Dress, the Trade Dress has acquired a secondary meaning and become distinctive in the minds of the consuming public.

13. Prior to November 1, 1998 the principals of Plaintiff, Wings, namely; Shaul Levy and Meir Levy, possessed ownership rights in the Defendant corporations (with the exception of Defendant, ET) with the current principal of Defendant corporations, Eliezer Tabib. The Defendant corporations historically owned, operated and managed retail stores located in Florida, Alabama and Tennessee, bearing the Mark and Plaintiff's unique Trade Dress. Defendant, ET, was wholly owned by Eleizer Tabib and, with Plaintiff's permission, operated under the name "Wings".

14. Prior to November 1, 1998, Plaintiff, Wings, and/or its principals, Shaul Levy and Meir Levy, agreed to transfer to Defendants and/or to Defendants' principal, Eliezer Tabib, interest in and to the stock owned in Defendant corporations.

15. On or about November 1, 1998, Wings, as Licensor, entered into an agreement with Defendants, collectively as Licensee, entitled "License Agreement" (and herein referred to as "the License Agreement") whereby Defendants were given a license to use the proprietary property of Plaintiff, namely; the Mark and the Trade Dress in a defined territory and for a definite term. The locations of Defendants' stores where the Mark and Trade Dress are presently used, are as follows:

581 S Collier Blvd, Marco Island, FL 34145
1000 Hwy 98 E, Destin, FL 32541
12208 Front Beach Road, Panama City Beach, FL 32407

Page -4-

    102 Old Highway 17 N, North Myrtle Beach, SC 29582
    1251 Miracle Strip Pkwy SE, Fort Walton Beach, FL 32548
    1115 Hwy 98 E, Destin, FL 32541
    34888 Emerald Coast Pkwy, Destin, FL 32541
    3848 State Road A1A, St. Augustine Beach, FL 32080
    632 Scenic Gulf Dr, Miramar Beach, FL 32550
    3 Via De Luna Drive, Pensacola Beach, FL 32583
    2673 Parkway, Pigeon Forge, TN 37863

A copy of the License Agreement is annexed hereto as Exhibit A.

16. As part of the License Agreement, Defendants recognized and acknowledged Plaintiff's ownership of the Mark and Trade Dress. Paragraph 11 of the License Agreement (Exhibit A hereto) states as follows:

> 11. Licensor's Paramount Rights.
>
> 11.1. Licensee shall not contest Licensor's exclusive ownership of all rights including trademark and/or servicemark rights to the name "Wings" or copyright rights to any element of the Trade Dress. Licensee shall not at any time apply for a registration for the name "Wings" or any confusingly similar mark or for any other right in the name anywhere in the world nor shall Licensee file any opposition or in any other manner hinder any application for registration of the mark "Wings" that Licensor has, will or may make.
>
> 11.2. Licensee acknowledges and agrees that any and all rights and assets in the Mark accruing and/or arising from the use of the Mark "Wings" and/or its Trade Dress, shall belong to and be the property of Licensor free of any and all claims of Licensee except as stated herein.

17. The term of the License Agreement ended on October 31, 2006.

18. As part of the License Agreement (Exhibit A hereto at ¶5) Defendants agreed to cease using the Mark and the Trade Dress upon termination as follows:

> 5. Obligations and Responsibilities Upon Termination. Upon expiration or termination of the License granted hereunder, by operation of law or otherwise:

Page -5-

      5.1. All rights of Licensee to use the Mark granted hereunder (other than its rights under Paragraph 2 (c)), including the right to use the name "Wings" and the Licensor's Trade Dress shall (subject to the four month removal period set forth in Paragraph 5.2) cease.

      5.2. Licensee, at its own cost and expense, shall within four months remove and/or cause to be removed, all materials, signs, promotions, bags, and any and all other items, bearing the Mark or any evidence of the Mark licensed hereunder. Thereafter, Licensee shall not, in any manner whatsoever, use the name Mark, any similar name or any name created by changing, adding or dropping one or more letters from the name "Wings", (hereinafter, collectively, referred to as "Similar Name") nor shall Licensee use Licensor's Trade Dress in any form whatsoever.

      5.3. Licensee shall pay any and all outstanding proper statements for advertising within thirty (30) days of the termination or expiration thereof.

      5.4. In the event Licensee fails to promptly fulfill all of its obligations upon the termination or expiration of this Agreement, Licensor shall have the right to pursue all legal remedies including, but not limited to, an action for trademark and/or servicemark infringement and/or for trade dress infringement, temporary restraining order, preliminary and/or permanent injunction. Licensee shall have the same rights with respect to Licensor's obligations (including without limitation, under Paragraph 2 (c)).

19. The four month period ended on February 28, 2007.

20. The License Agreement (Exhibit A hereto at ¶8) provides in pertinent part as follows:

      8. <u>Liquidated Damages</u>. Licensee specifically acknowledges that the use of the Mark, the name "Wings" or any Similar Name and/or the use of Licensor's Trade Dress after the Termination Date will cause Licensor to suffer irreparable harm, damages for which would be extremely difficult to ascertain. Therefore, in addition to all other remedies, including but not limited to injunctive relief, in the event of Licensee's breach of this Agreement to which Licensor shall be entitled, Licensor shall be entitled to injunctive relief, and liquidated damages in the sum of $200.00 per day (subject, however, to the four month period described in Paragraph 5.2) per business establishment utilizing the Mark and/or name "Wings" and/or any Similar Name or Trade Dress until

> cessation of any improper use, together with all costs and disbursements, including reasonable attorneys' fees arising from Licensee's failure promptly to use the name "Wings" or any Similar Name or Trade Dress. The calculation of the liquidated damages of $200.00 per day per business establishment shall be calculated without regard to the four month period described in Paragraph 5.2 if Licensee does not comply with the terms and conditions of the removal set forth herein within said four month period...

21. Despite the end of the term of the License Agreement and the four month "grace period" contained therein and in violation of the provisions thereof and in violation of the trademark laws of the United States and without Plaintiff's authorization, Defendants used and continue to use the Mark and the Trade Dress in connection with the ownership, operation and/or management of their retail stores, including, but not limited to, using the Mark "Wings" on labels, receipts, hang tags, merchandise, shopping bags and store displays; and including, but not limited to, using the Trade Dress for their retail stores.

22. The use by Defendants of the Mark and the Trade Dress in violation of Plaintiff's proprietary rights is likely to cause confusion or mistake or deception to the consuming public regarding any affiliation of Defendants' retail stores with Plaintiff.

23. Following the termination of the contractual relationship between Plaintiff and Defendants, Plaintiff has no control over the business practices of Defendants.

24. Plaintiff's good will in the Mark and the Trade Dress are of enormous value gained over nearly thirty and twenty, respectively, years of use and promotion.

25. Plaintiff has suffered and will continue to suffer irreparable harm should Defendants' infringing activities be allowed to continue to the detriment of Plaintiff's trade reputation and good will.

26. Plaintiffs have notified Defendants and Defendants' counsel in writing that Defendants' infringing activities must cease.

27. Despite notice the infringement by Defendants will continue unless enjoined by this Court.

28. Pursuant to the License Agreement, Plaintiff is entitled to injunctive relief.

## COUNT I

### False Designation of Origin under §43 (a) of the Lanham Act

### as to use of the Mark

29. Plaintiff repeats and realleges the allegations contained in ¶¶1 through and including 28 as if fully set forth at length herein.

30. This Count is for false designation of origin and unfair competition pursuant to §43 (a) of the Lanham Act, 15 U.S.C. §1125 (a) with respect to Defendants' unauthorized use of the Mark.

31. As set forth herein above, Defendants have violated 15 U.S.C. §1125 (a) by continuing to use in commerce in connection with their retail stores, a false designation of origin, namely, the Mark, in several states of the United States, without Plaintiff's authorization and with the intent of passing off and confusing the public into believing that Defendants' retail stores are related to and affiliated with those of Plaintiff.

32. Defendants' use of the Mark constitutes a false designation of origin which is likely to deceive and has deceived the consuming public into believing that Defendants' retail establishments are related to and affiliated with those of Plaintiff.

33. Plaintiff has no control over the nature and quality of Defendants' retail business

establishments. Any failure, neglect or default by Defendants in providing the services to the consuming public will reflect adversely on Plaintiff as the believed source of origin thereof, hampering efforts by Plaintiff to protect its reputation, resulting in loss of sales and loss of the considerable expenditure of time and assets to promote the Mark, all to the irreparable injury of Plaintiff.

34. In the License Agreement, Defendants expressly acknowledged the injury to Plaintiff complained of herein as described herein above.

35. The afore-described activities of Defendants constitute unfair competition.

36. Defendants willfully intended to trade on Plaintiff's reputation and to cause dilution of the Mark.

37. Defendants' false designation of origin will continue unless enjoined by this Court.

38. Plaintiff has no adequate remedy at law.

## COUNT II

### False Designation of Origin under §43 (a) of the Lanham Act

### by virtue of use of Trade Dress

39. Plaintiff repeats and realleges the allegations contained in ¶¶1 through and including 38 as if fully set forth at length herein.

40. This Count is for false designation of origin and unfair competition pursuant to §43 (a) of the Lanham Act, 15 U.S.C. §1125 (a) with respect to Defendants' unauthorized use of Plaintiff's distinctive Trade Dress.

41. As set forth herein above, Defendants have violated 15 U.S.C. §1125 (a) by continuing to use in commerce in connection with their retail stores, a false designation of origin,

namely the Trade Dress, in several states of the United States, without Plaintiff's authorization and with the intent of passing off and confusing the public into believing that Defendants' retail stores are related to and affiliated with those of Plaintiff.

42. Defendants' use of the Trade Dress constitutes a false designation of origin which is likely to deceive and has deceived the consuming public into believing that Defendants' retail stores are related to and affiliated with those of Plaintiff.

43. Plaintiff has no control over the nature and quality of Defendants' retail stores. Any failure, neglect or default by Defendants in providing the services to the consuming public will reflect adversely on Plaintiff as the believed source of origin thereof, hampering efforts by Plaintiff to protect its reputation, resulting in loss of sales and in loss of considerable expenditure in time and assets to promote Plaintiff's services, all to the irreparable injury of Plaintiff.

44. In the License Agreement, Defendants expressly acknowledged the injury to Plaintiff complained of herein as described herein above.

45. The afore-described activities of Defendants constitute unfair competition.

46. Defendants willfully intended to trade on Plaintiff's reputation and to cause dilution of the Mark by using Plaintiff's Trade Dress.

47. Defendants' false designation of origin will continue unless enjoined by this Court.

48. Plaintiff has no adequate remedy at law.

## COUNT III

### Injury to Reputation and Dilution of the Mark

49. Plaintiff repeats and realleges the allegations contained in ¶¶1 through and including 48 as if fully set forth at length herein.

50. This Count arises under §§360-I (Injury to Business Reputation and Dilution) and 133 (Use of Name or Address with Intent to Deceive) of the New York General Business Law.

51. Defendants' use of the Mark in connection with their retail stores as afore-described has injured and likely will, unless enjoined by this Court, continue to cause injury to Plaintiff's business reputation and to dilute the distinctive nature of the Mark in violation of §§360-I and 133 of the New York General Business Law, all to Plaintiff's irreparable harm.

52. Plaintiff has no adequate remedy at law.

## COUNT IV

### Common Law Service Mark Infringement

53. Plaintiff repeats and realleges the allegations contained in ¶¶1 through and including 52 as if fully set forth at length herein.

54. Plaintiff owns and claims common law rights to the unregistered Mark.

55. As described herein above, the Mark has gained extensive public recognition and is associated with Plaintiff's retail stores.

56. Defendants' afore-described activities constitute unfair competition and an infringement of the Mark.

57. The use of the Mark by Defendants in connection with their retail stores is likely to cause and has caused confusion as to Defendants' source in that the consuming public will be likely to associate or has associated Defendants' business establishments with and as originating with Plaintiff, all to the detriment of Plaintiff.

58. Defendants' infringement will continue unless enjoined by this Court.

59. Plaintiff has no adequate remedy at law.

## COUNT V

### Unfair Competition under Common Law

60. Plaintiff repeats and realleges the allegations contained in ¶¶1 through and including 59 as if fully set forth at length herein.

61. This Count arises under the New York common law of unfair competition.

62. By committing the acts alleged herein, Defendants are guilty of unfair competition, deceptive advertising and unfair trade practices, in violation of the New York common law of unfair competition causing Plaintiff damages and loss of profits.

63. Defendants' unlawful conduct will continue to damage Plaintiff unless enjoined by the Court and Plaintiff has no adequate remedy at law.

## COUNT VI

### Breach of Contract

64. Plaintiff repeats and realleges the allegations contained in ¶¶1 through and including 63 as if fully set forth at length herein.

65. The License Agreement constitutes a valid and binding contract between Plaintiff and the Defendants.

66. Plaintiff duly fulfilled its obligations under the License Agreement.

67. In the License Agreement, Defendants acknowledge that their afore-described activities constitute infringement entitling Plaintiff to all remedies, including but not limited to, injunction and liquidated damages.

68. Defendants breached the terms of the License Agreement by failing to cease using the Mark and the Trade Dress pursuant to its terms.

69. Defendants failed and refused and still fail and refuse to cure the breach and cease using the Mark and the Trade Dress despite due demand therefor.

70. The License Agreement provides for, in addition to all other remedies which may be available to Plaintiff herein for Defendants' breach, liquidated damages in the sum of $200.00 per day per store calculated from November 1, 2006 to the date the breach is cured. The damage is calculated to May 31, 2007 at $466,400.00 continues to accrue.

71. Defendants failed and refused and still fail and refuse to pay the liquidated damage sum to Plaintiff despite due demand therefor.

72. The License Agreement provides for, in addition to all remedies which may be available to Plaintiff herein for Defendants' breach, an award of attorneys' fees to Plaintiff.

73. By reason of the foregoing, Plaintiff has been damaged in a sum which is not readily ascertainable at this time but which is at least $466,400.00 and which shall be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays:

A. That the Court find that Defendants have willfully and intentionally infringed upon Plaintiff's Mark "Wings"; and

B. That the Court find that Defendants have willfully and intentionally infringed upon Plaintiff's Trade Dress; and

C. That Defendants, their officers, directors, employees, agents, and any person and/or entity claiming by, under and/or through Defendants, be enjoined from infringing upon Plaintiff's Mark "Wings" or any mark confusingly similar thereto by using and adopting the Mark "Wings" in connection with Defendants' retail stores; and

D. That Defendants, their officers, directors, employees, agents, and any person and/or entity claiming by, under and/or through Defendants, be enjoined from infringing upon Plaintiff's Mark "Wings" or any mark confusingly similar thereto by using and adopting Plaintiff's Trade Dress in connection with Defendants' retail stores; and

E. That Defendants be ordered to surrender for destruction all products, labels, brochures, advertisements, hang tags, shopping bags, paper and any other materials constituting a false designation of origin of Defendants' business; and

F. That Defendants be required to pay to Plaintiff the Defendants' profits and the actual damages suffered by Plaintiff as a result of Defendants' acts; and

G. That Plaintiff have judgment against Defendants and against each of them in an amount based upon the liquidated damages provision of the License Agreement at the rate of $200.00 per day per store calculated from November1, 2006; and

H. That Defendants be compelled to pay Plaintiff's attorneys' fees, together with the costs and disbursements of this action; and

I. That the Court award to Plaintiff interest, including pre-judgment interest, on the foregoing sums; and

J. That the Court grant such other and further relief as may be just and proper under the circumstances.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all issues.

Dated: Atlantic Beach, New York
May 23, 2007

Respectfully submitted,

Bennett D. Krasner, Esq. (bk-8375)
Attorney for Plaintiff
1233 Beech Street #49
Atlantic Beach, New York 11509
Tel. (516) 889-9353

UNITED STATES DISTRICT COURT

for the

SOUTHERN DISTRICT OF NEW YORK

---

L&L WINGS, INC.,

               Plaintiff,               Civil Action No.

v.

MARCO-DESTIN INC., 1000 HIGHWAY 98
EAST CORP., PANAMA SURF & SPORT, INC.,
and E&T INC.,

               Defendants.

---

**COMPLAINT**

---

Counsel for Plaintiff:

*/s/ Bennett D. Krasner*

Bennett D. Krasner, Esq. (bk 8375)
1233 Beech Street #49
Atlantic Beach, New York 11509
Tel. 516-889-9353