## LICENSING AGREEMENT

THIS AGREEMENT dated for purposes of reference as of the 1st day of November, 1998, is made by and between L & L WINGS, INC. d/b/a Wings, a South Carolina Corporation with an address at 18 East 42nd Street, New York, New York 10017, ("Licensor") and Marco-Destin Inc. (hereinafter, "Marco-Destin"), 1000 Highway 98 East Corp. ("Highway"), Panama Surf & Sport, Inc. ("Surf") and E&T Inc. (hereinafter, "ET"), being Florida and South Carolina corporations, and all having an address all c/o Marco Destin 10400 Northwest 33rd Street, Miami, Florida (collectively, hereinafter, "Licensee").

WHEREAS, Licensor is the owner of the unregistered servicemark, "Wings" and is the owner of trade dress rights to its distinctive design; and

WHEREAS, Licensee utilized the mark "Wings" on retail stores that it owns and has been for many years with the permission and an oral license from Licensor who was a one-half owner of the issued and outstanding shares of stock of Licensee (except shares in ET); and

WHEREAS, the ownership by Licensor of the shares of Licensee are being sold simultaneous with the execution of this Agreement; and

WHEREAS, Licensor and Licensee each adorn some of their retail locations with Licensor's unique wave sculpture design highlighted with a signature colored neon light combination, (hereinafter, Licensor's "Trade Dress"); and

WHEREAS, Licensee recognizes the goodwill, reputation and strong marketing value of using the "Wings" name as a trade/servicemark and trade name and its Trade Dress in the operation of its retail business establishments; and

WHEREAS, Licensee desires to continue do business using the name "Wings" in the "Territory" hereinafter defined after the separation of their respective ownership; and

WHEREAS, Licensee and/or entities and/or principals of Licensee are unwilling to enter into the simultaneous agreements purchasing the interest of Licensor and/or its principals interest in Licensee (except any interest in ET) without this Agreement; and

WHEREAS, Licensor is willing to grant a license to Licensee to use "Wings" and the Trade Dress in the Territory upon the terms and conditions set forth below and other than as set-forth hereinafter has the authority to do so;

NOW, THEREFORE, in consideration of the covenants and agreements hereinafter set forth, one dollar ($1.00) and other valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the parties hereto agree as follows:

1. Definitions. The following terms as used in this Agreement shall have the meanings set forth below:

221916v2

1.1. "Trade Dress" shall mean the unique wave sculpture design highlighted with a signature colored neon light combination used by Licensor (and also heretofore used by Licensee) in connection with some of their respective business locations.

1.2. "Territory" shall be defined as the following geographic areas: (i) Within the city limits of Marco Island, Florida; St Augustine, Florida; and Pigeon Forge, Tennessee; (and within two miles of each such city limit); (ii) in North Myrtle Beach within the area bound by from the south side of 1639 Highway 17S in North Myrtle Beach, SC to the intersection of Highway 9 and Highway 17S which is just north of North Myrtle Beach SC and the boundaries shall include the coast line and two miles inland between such points. (By way of clarification, Licensor may operate in all other areas of the Myrtle Beach Area except the area described hereinabove); and (iii) in the geographic area from Panama City Beach, Florida west to the Alabama-Mississippi state line and not more than 10 miles inland from the coast line. All areas not specifically included herein are specifically excluded from the Territory.

1.3. "Termination Date" shall be October 31, 2006 or such other date as the license granted hereunder shall be properly terminated pursuant to the terms of this Agreement.

2. Grant of License. (a) So long as Eli Tabib, and upon his death his estate, heirs and/or beneficiaries, shall be the owner or owners of not less than 66⅔% of the shares of Licensee, Licensee shall have, and Licensor hereby grants to Licensee, an exclusive license in the Territory to use the name "Wings" and the Trade Dress (hereinafter the "Mark") in connection with Licensee's business establishments, and only for the term (the "Term") commencing from November 1, 1998 until October 31, 2006, unless sooner properly terminated or extended as provided herein (hereinafter, the "Termination Date"); provided, however, that upon the death of Eli Tabib, it shall also be a condition of continuation that either Nir Tzanani or Raffi Zabari shall continue to be involved in the management of Licensee. Licensee may not use the Mark outside the Territory and the License granted hereunder shall be exclusive in the Territory with the exception of the State of South Carolina, where the License shall be limited to area specified in paragraph 1.2(ii). The License granted hereby shall extend to any entity hereafter acquired or created by Eli Tabib so long as his ownership interest therein shall comply with this paragraph 2 (a) and such entity shall notify Licensor in writing and become a party to this Agreement pursuant to a suitable instrument.

(b) Licensor hereby warrants and represents to Licensee that except as set-forth hereinafter it has the authority to grant the License to Licensee and that its Board of Directors and shareholders have consented to this License.

(c) Licensor agrees that during the Term and for a period of 10 years immediately thereafter Licensor shall not, nor shall it permit any licensee to, use the name Mark (or any derivative or similar name and/or Trade Dress) in the Territory.

3. Advertising Reimbursement.

(a) Licensor is under no obligation to advertise the Mark in the Territory.

(b) In Licensor's sole discretion, Licensor may shall advertise the Mark in the Territory. Should Licensor advertise in the Territory set forth in paragraph 1.2(ii), Licensee shall pay to Licensor at its address set forth above, Licensee's pro rata share of all advertising costs incurred for advertising in the Myrtle Beach Area. (By way of example, Licensee operates two (2) stores and Licensor operates twenty (20) stores in the Myrtle Beach, South Carolina region. Therefore, if Licensor advertises in that region, Licensee shall pay 1/11 of the advertising costs incurred by Licensor.) Any stores which Licensor licenses to third persons shall be treated as operated by Licensor for the purposes of the calculations required in this Paragraph 3. On or before September 30th of any year, Licensor shall render to Licensee statement of such advertising costs, which statement shall be deemed a conclusive substantiation for such costs unless Licensee shall within 30 days contest the same in writing. Payment of the statement shall be due within thirty (30) days of the date thereof unless contested. At Licensor's option, Licensor may provide statements at shorter intervals but in no event less than once per year.

(c) Notwithstanding the foregoing, for the Territory set forth paragraph 1.2(ii), Licensee shall not be responsible for advertising costs for any twelve month period in excess of $10,000.00 per store increased annually by the increase in the Consumer Price Index. The Consumer Price Index shall mean the Consumer Price Index published by the Bureau of Labor Statistics of the U.S. Department of Labor, All Items, New York, New York -- Northeastern, N.J., for urban wage earners and clerical workers, or any successor or substitute index appropriately adjusted.

4. Termination. Licensor may, at its option, terminate the license and rights granted in this Agreement to Licensee immediately and without prior notice upon the occurrence of any of the following events (but the restriction on Licensor in Paragraph 2(c) shall continue in effect):

4.1. If Licensee shall file a voluntary petition in bankruptcy or is adjudicated bankrupt or insolvent or files any petition or answer seeking any reorganization, arrangement, composition, adjustment or readjustment, liquidation, dissolution or similar relief under the present or any future Federal Bankruptcy Act or any present or future applicable United States federal, state or other statute or law, or seeks or consents to, or acquiesces in, the appointment or any trustee, receiver, conservator in, the appointment of any trustee, receiver, conservator or liquidator of Licensee, or of all or any substantial part of its properties or of its interests.

4.2. If within ninety (90) days after the commencement of any proceeding against Licensee seeking any bankruptcy, reorganization, arrangement, composition, adjustment or readjustment, liquidation, dissolution or similar relief under the present or any future applicable United States federal, state or other statute or law the proceeding is not stayed or dismissed, or if within ninety (90) days after the expiration of any stay, the filing is not vacated.

4.3. If Licensee executes an assignment of substantially all of its assets or any other similar agreement for the benefit of creditors.

4.4. If Licensee fails to pay any amounts to Licensor properly due pursuant to this Agreement or fails to perform any of the obligations required of it set forth in this Agreement

in Paragraphs 6, 7, 8, 10 or of any other obligation contained in this Agreement and such default shall continue uncured for 30 days after written notice thereof by Licensor.

4.5     If Licensee initiates any action, proceeding or claim against Licensor challenging any provision or the validity of this Agreement and said action is determined to be either frivolous and/or Licensor's prevails in said action and/or claim except as set forth in paragraph 19 hereinafter. (Claim does not include any counterclaims by Licensee in response to a claim initiated by Licensor against Licensee.)

4.6     If there is any change in ownership of Licensee in violation of Paragraph 2.

5. Obligations and Responsibilities Upon Termination. Upon expiration or termination of the License granted hereunder, by operation of law or otherwise:

5.1.    All rights of Licensee to use the Mark granted hereunder (other than its rights under Paragraph 2(c)), including the right to use the name "Wings" and the Licensor's Trade Dress shall (subject to the four month removal period set forth in Paragraph 5.2) cease.

5.2.    Licensee, at its own cost and expense, shall within four months remove and/or cause to be removed, all materials, signs, promotions, bags, and any and all other items, bearing the Mark or any evidence of the Mark licensed hereunder. Thereafter, Licensee shall not, in any manner whatsoever, use the name Mark, any similar name or any name created by changing, adding or dropping one or more letters from the name "Wings", (hereinafter, collectively, referred to as "Similar Name") nor shall Licensee use Licensor's Trade Dress in any form whatsoever.

5.3.    Licensee shall pay any and all outstanding proper statements for advertising within thirty (30) days of the termination or expiration hereof.

5.4.    In the event Licensee fails to promptly fulfill all of its obligations upon the termination or expiration of this Agreement, Licensor shall have the right to pursue all legal remedies including, but not limited to, an action for trademark and/or servicemark infringement and/or for trade dress infringement, temporary restraining order, preliminary and/or permanent injunction. Licensee shall have the same rights with respect to Licensor's obligations (including without limitation, under Paragraph 2(c)).

6. Infringement.

6.1.    In the event Licensee learns of any infringement or alleged infringement, has notice of any written claim or allegation by a third person of infringement of Licensor's Mark, Licensee shall promptly notify Licensor with the particulars thereof.

6.2.    In the event Licensor decides to pursue any infringement claim against a third party in the Territory, Licensor may request that Licensee join in or assist in any of the steps necessary to enforce the infringement claim. In the event Licensee agrees to assist, then each party shall bear one-half of the costs of any action; provided, however, that Licensee's share shall not

exceed for any calendar year the product of (x) one-half of the costs incurred in the year, and (y) a fraction, the numerator of which is the number of years then remaining on the License and denominator of which is eight. In the event Licensee does not agree to assist within a reasonable period, then Licensor may terminate this License Agreement (but subject to Paragraph 2(c)). In all events, Licensee shall cooperate with Licensor in the pursuit of any action (but Licensee shall not, except as required by this Paragraph, be obligated to incur material expense in so cooperating).

7. Indemnification.

7.1. Licensee, jointly and severally, shall hold Licensor harmless and shall indemnify Licensor from any and all liabilities, injuries, damages, claims, suits, attorney's fees, etc., sustained by Licensor by reason of this Agreement which Licensee has, may have or which may hereinafter exist or due to Licensee's operation of its business, use of the Licensor's Mark, Trade Dress, and/or use of the name "Wings" (provided, however, that Licensee shall have no indemnification obligation to the extent that any claim, damage, etc. is attributable to any defect or alleged defect in Licensor's ownership or right to license the name "Wings" or the Trade Dress). Licensee will, at all times. act and conduct business in such a manner so as not to adversely affect or otherwise harm the good will and reputation associated with the name "Wings", and will promptly comply with reasonable written notices from Licensor with respect thereto. Licensee will, at all times, maintain general liability, errors and omissions insurance naming Licensor as an additional insured (to the extent permitted by the carrier). Licensee understands that Licensor is or may be bound by and subject to certain Court orders, consent orders, stipulations. agreements and the like and Licensee agrees that, in the conduct of its business, it shall abide by any such Court orders, consent orders, stipulations, agreements and the like of which Licensor shall give it notice, including, in particular, those with Anheuser Busch Incorporated and Two's Company, a Rhode Island Corporation, copies of which are annexed hereto. Notwithstanding anything herein contained to the contrary, Licensor may terminate this Agreement effective immediately, subject to Licensee's right to a 30 day period to cure, upon written notice to Licensee in the event Licensee shall act or refrain from acting in any way that a reasonable consumer would determine that said action and/or inaction materially diminished the reputation and/or goodwill of Licensor's Mark. (By way of example and not by way of limitation, actions that may be determined to diminish the reputation of and/or goodwill are trade/servicemark and/or other intellectual property violations, deceptive trade practices or false advertising.)

7.2. Licensee shall notify Licensor of any claims to which Paragraph 7.1 may apply withing thirty days from when Licensee learns therof.

7.3. Owners Designation. Licensee shall, at all times, post a placard in a clearly visible and unobstructed location situated at the entranceway to each of its stores doing business as "Wings", which placard shall be at least 12 inches by 18 inches and shall bear the inscription "THIS STORE IS OWNED AND OPERATED BY" and name the appropriate entity. The lettering of the inscription shall be no smaller than one inch high. In addition, promptly upon execution of this Agreement, Licensee shall file a certificate of assumed name with the appropriate governmental agencies, to the extent required thereby.

8. <u>Liquidated Damages</u>. Licensee specifically acknowledges that the use of the Mark, the name "Wings" or any Similar Name and/or the use of Licensor's Trade Dress after the Termination Date will cause Licensor to suffer irreparable harm, damages for which would be extremely difficult to ascertain. Therefore, in addition to all other remedies, including but not limited to injunctive relief, in the event of Licensee's breach of this Agreement to which Licensor shall be entitled, Licensor shall be entitled to injunctive relief, and liquidated damages in the sum of $200.00 per day (subject, however, to the four month period described in Paragraph 5.2) per business establishment utilizing the Mark and/or name "Wings" and/or any Similar Name or Trade Dress until cessation of any improper use, together with all costs and disbursements, including reasonable attorney's fees arising from Licensee's failure promptly to use the name "Wings" or any Similar Name or Trade Dress. The calculation of the liquidated damages of $200.00 per day per business establishment shall be calculated without regard to the four month period described in Paragraph 5.2 if Licensee does not comply with the terms and conditions of the removal set-forth herein within said four month period. (By way of example if Licensee complies with the removal of the Mark etc. within the four months then there shall be no liquidated damages but if Licensee removes the Mark etc. four months and 1 day later then Licensor shall be entitled to $2,420.00 ($200.00 X 121) per store as liquidated damages assuming 30 days per month.)

9. <u>Assignment Prohibited</u>. Except as explicitly stated herein, this Agreement shall not be assignable either in whole or in part. Nothing in this Agreement is intended or shall be construed to confer upon or to give to any person, firm, or corporation, other than the parties hereto, any right, remedy, or claim under or by reason of this Agreement. All terms and conditions in this Agreement shall be for the sole and exclusive benefit of the parties. Nothing contained in this Agreement shall be deemed or construed to create or effectuate the relationship of principal and agent or of franchisor and franchisee or of partnership or joint venture between the parties hereto.

10. <u>Waiver</u>. No failure by Licensor and/or Licensee to insist upon the strict performance of any term or condition of this Agreement or to exercise any right or remedy consequent upon the breach, and no acceptance of full or partial payments due under this Agreement during the continuance of any breach, shall constitute a waiver of the breach or the term or condition. No term or condition of this Agreement to be performed or observed by Licensor and/or Licensee and no breach shall be waived, altered or modified except by written instrument executed by the parties. No waiver of any breach shall affect or alter this Agreement but each term and condition of this Agreement shall remain and continue in effect with respect to any other existing or subsequent breach. No delay or failure by either party to exercise any right under this Agreement, and no partial or single exercise of that right, shall constitute a waiver of that or any other right. No waiver, modification or amendment of this Agreement shall be valid unless in writing signed by the party to be charged.

11. <u>Licensor's Paramount Rights</u>.

11.1. Licensee shall not contest Licensor's exclusive ownership of all rights including trademark and/or servicemark rights to the name "Wings" or copyright rights to any

element of the Trade Dress. Licensee shall not at any time apply for a registration for the name "Wings" or any confusingly similar mark or for any other right in the name anywhere in the world nor shall Licensee file any opposition or in any other manner hinder any application for registration of the mark "Wings" that Licensor has, will or may make.

      11.2.   Licensee acknowledges and agrees that any and all rights and assets in the Mark accruing and/or arising from the use of the Mark "Wings" and/or its Trade Dress, shall belong to and be the property of Licensor free of any and all claims of Licensee except as state herein.

      11.3   Licensee acknowledges that Licensor informed him that there are one or more individuals and/or entities that have registered trademarks and/or servicemarks to the mark "Wings" and can and/or may claim a paramount right to the use of said mark "Wings". Licensor does not warrant or give any other assurances and/or indemnification to Licensee's use of said mark "Wings" and or the Mark. Notwithstanding anything to the contrary, if any claim is made against Licensor and/or Licensee for infringement related to the use of the Mark and/or "Wings", neither shall indemnify the other for any loss and/or expense including an award for infringement and/or legal fees.

12. Governing Law. This Agreement shall be governed solely by the laws of the State of New York without giving effect to any conflict of laws provisions thereof. Any and all matters of dispute between the parties hereunder or in connection herewith shall be resolved in New York County, New York State by arbitration before the American Arbitration Association and shall include the jurisdiction in the federal courts of the Southern District of New York of the state courts and the State of New York in New York County to enforce such arbitration and/or confirm any award thereof. Licensee and Licensor hereby consent to jurisdiction as set forth herein. Notwithstanding the foregoing, either party may apply to a court of competent jurisdiction for a temporary restraining order, preliminary or permanent injunction or any other form of relief to assure that any judgment awarded in arbitration is not rendered ineffective and/or prevent termination of the License prior to an opportunity to cure in the event of dispute hereunder as to a party's rights and/or obligations. Furthermore, notwithstanding the foregoing, in the event of a timely objection to arbitration, either party may commence a proceeding in Supreme Court of the State of New York and County of New York and/or Federal District Court for the Southern District of New York.

13. Attorneys' Fees. If Licensor or Licensee shall file any action against the other party for any breach of this Agreement and shall successfully recover on the same, such prevailing party shall be entitled to recover from the other party reasonable attorneys' fees incurred in so doing.

14. Notices. Notices required under this Agreement shall be made or given to the parties at the addresses specified at the beginning of this Agreement or at any other address that the parties may, by notice, specify. Copies of all notices shall be sent to the attorney for the party. Notices shall be deemed given 5 days after mailing by certified or registered mail, return receipt requested (unless sent by overnight mail service in which event notice shall be deemed given 1 day after mailing).

15. Binding Effect. This Agreement shall be binding upon the parties and their agents, and successors, including, without limitation, successor officers, directors and trustees, if any, of the Licensor or Licensee.

16. Headings. The headings for each paragraph are simply for the convenience of the parties and shall not be used to interpret the meaning of any of the provisions.

17. Entire Agreement. This Agreement contains the entire agreement between the parties and supersedes all agreements and understandings previously made between the parties relating to its subject matter, all of which have been merged herein. There are no other understandings or agreements between them, nor are there any representations made which are not herein contained. This agreement shall be governed in accordance with the laws of the State of New York, the courts of which (and the Federal District for the Southern District of New York) shall have exclusive jurisdiction (subject to and in accordance with the arbitration clause of Paragraph 13).

18. Time Of The Essence. All dates and obligations in this Agreement which rely upon specific dates or periods of time shall be deemed to be "Time of the Essence" and any failure to timely comply with any such obligations and/or dates shall, subject to any notice requirements and period to cure, be deemed a material breach of this agreement.

19. Breach of Related Agreements. Licensor and Licensee are parties to various other agreements. If Licensee and/or their assigns and/or successors default and/or fail to comply with terms and/or conditions contained in one or more of the other agreements between the parties and such failure to comply with said terms and/or conditions continue for more than 30 days after written notice to the party against whom compliance is sought then that default shall be deemed a material default hereunder and shall automatically terminate the Licensee subject however to the party against whom compliance is sought having a right to bring a "Yellowstone Injunction" or similar remedy to toll the time to comply while the parties litigate the issue of default or their respective rights and/or obligations.

20. Breach of This Agreement. If Licensor and/or Licensee and/or their assigns and/or successors default and/or fail to comply with terms and/or conditions contained herein and such failure to comply with said terms and/or conditions continue for more than 30 after written notice to the party against whom compliance is sought or such greater time if provided for hereinabove then that default shall be deemed a material default hereunder and shall automatically terminate the Licensee subject however to the party against whom compliance is sought having a right to bring a "Yellowstone Injunction" or similar remedy to toll the time to comply while the parties litigate the issue of default or their respective rights and/or obligations.

21. Compliance. Neither party is aware of any breach by either party prior to the execution of this Agreement.

IN WITNESS WHEREOF, the parties have set their hands hereto as of the day and date above first appearing.

L & L WINGS, INC.

By: ~~Shaul Levy, President~~
    METR LEVY, V- President

MARCO-DESTIN, INC.
PANAMA SURF & SPORT, INC.
1000 HIGHWAY 98 EAST CORP.
E&T, INC.


By: Eli Tabib, President



Eli Tabib


221916v2                                9

Case 1:07-cv-04137-BSJ-GWG   Document 20-3   Filed 12/14/2007   Page 10 of 10
02/17/2000 17:57   13056727959   WINGS:307   PAGE 21
02/17/00 16:52 FAX 212 554 7700   MOSES & SINGER LLP   @021/033

IN WITNESS WHEREOF, the parties have set their hands hereto as of the day and date above first appearing.

L & L WINGS, INC.

_____
By: Shaul Levy, President


MARCO-DESTIN, INC.
PANAMA SURF & SPORT, INC.
1000 HIGHWAY 98 EAST CORP.
E&T, INC.

_____
By: Eli Tabib, President


_____
Eli Tabib

221916v2

9