Westlaw.

Slip Copy                                                                 Page 1
Slip Copy, 2007 WL 3130562 (S.D.N.Y.)
**(Cite as: Slip Copy)**

C

Vysovsky v. Glassman
S.D.N.Y.,2007.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Pavel VYSOVSKY, Milan Petrilak, Jaroslav Kroshnyi, Stanislav Teleky, Peter Redaj, Radomir Maler, Jana Bulikova, Stanislav Bulik, Robert Ondusko, Keith McFarland, Andrzej Szycowski, Jacob Imas, and Stefan Holesa, Plaintiffs,
v.
Peter GLASSMAN "aka" Peter Glazman; U.S. Transportation Services, Inc.; U.S. Pack Courier Services, Inc.; U.S. Pack Express, Ltd.; and U.S. Pack Network Corp., Defendants.
**No. 01 Civ. 2531(LMM).**

Oct. 23, 2007.

*MEMORANDUM AND ORDER*

McKENNA, D.J.

**\*1** Plaintiffs are a group of thirteen individuals who have worked for various periods of time as drivers and deliverers for U.S. Pack Network Corp. ("Network") and U.S. Pack Courier Services, Inc. ("Courier"). (Defendants' Statement Pursuant to Local rule 56.1 ("Defs.' Rule 56.1 Stmt") ¶ 5.) Defendants Network and Courier are corporations that during all relevant times have jointly operated in the business of picking up and delivering packages. (Defs.' Rule 56.1 Stmt ¶¶ 4, 6.) (Network and Courier will hereinafter be referred to jointly and severally as "U.S. Pack.") Defendants U.S. Transportation Services, Inc. and U.S. Pack Express, Ltd. have not been in existence as active businesses at any relevant period of time. (Defs.' Rule 56.1 Stmt ¶ 8.) Defendant Peter Glazman is the president of Network and Courier, as well as the sole officer, director, and shareholder of both corporations. (Defs.' Rule 56.1 Stmt ¶ 3; Statement Pursuant to Local Rule 56.1 in Opposition to Defendant's Motion for Summary Judgment ("Pls.' Rule 56.1 Stmt.") ¶ 4.)

Plaintiffs bring the present action to recover damages from Defendants, alleging fourteen causes of action in their complaint. Defendants here move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and for permission to amend their answer.

**I. BACKGROUND**

**a. Factual Background**

Plaintiffs in this action seek recovery on various claims stemming from alleged oral contracts with Defendants for higher pay; claims for unpaid overtime wages under the Fair Labor Standards Act; claims under the Federal Insurance Contributions Act; claims for numerous alleged violations of the Franchise Sales Act; and claims for unpaid overtime wages and unlawful deductions under the New York Labor Law.

U.S. Pack has operated at all relevant times as a package delivery business, headquartered in New York, and operating throughout the New York metropolitan area as well as parts of New Jersey and Delaware. As noted above, Defendant Peter Glazman is the president of Network and Courier (the companies comprising "U.S. Pack"), and is a director and shareholder of each. The depositions of Milan Cuba, a U.S. Pack supervisor, as well as those of Plaintiffs and Defendant Glazman indicate that Glazman had considerable day-to-day control over the employment and operational decisions at U.S. Pack.

According to the Offering Prospectus, the document containing the terms of the U.S. Pack franchise agreement, U.S. Pack was incorporated in New York on October 27, 1988. At that time, the company entered into oral arrangements with certain individuals, "pursuant to which such Initial Subscribers acquired the right to participate in U.S. Pack's radio dispatch system on substantially the terms set forth in the Operating Prospectus."(Defs.' Rule 56.1 Stmt Exhibit 1 at 00015.) Pursuant to the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 3130562 (S.D.N.Y.)
**(Cite as: Slip Copy)**

oral arrangements, U.S. Pack withheld money from the Initial Subscribers' paychecks in payment of a franchise fee. On July 3, 1995, U.S. Pack sent a letter to each Initial Subscriber offering them the right either to rescind their arrangement with U.S. Pack and be paid an amount equal to the franchise fees paid minus income earned through work with U.S. Pack or to acquire a new franchise with U.S. Pack pursuant to the terms of the Offering Prospectus. *Id.*

**\*2** In July of 1996, U.S. Pack filed the Offering Prospectus with the New York State Law Department. (Defs.' Rule 56.1 Stmt. Exhibit 1.) U.S. Pack withdrew its franchise registration sometime in 1997, 1998, or 1999, a decision that Defendant Glazman does not explain beyond stating that it was made on advice of counsel. (Pls.' Rule 56.1 Stmt. ¶ 57.) Plaintiffs allege that following the withdrawal of U.S. Pack's franchise registration, U.S. Pack continued to operate as a franchise, circulating materials entitled "Rules and Regulations of U.S. Pack" and "Addendum to Rules and Regulations of U.S. Pack," which maintained the franchise structure of operations. (Pls.' Rule 56.1 Stmt. ¶ 59, Exhibit 8.) Plaintiffs also allege that franchise fees continued to be withheld from Plaintiffs' paychecks after U.S. Pack's withdrawal of its franchise registration. (2nd Aff. of Peter Glazman ("Glazman 2") at 6-15.)

Under the terms of the Offering Prospectus, U.S. Pack's franchise gave fee-paying franchisees a license to use U.S. Pack's two-way radio system, equipment and trade name in the business of picking up and delivering packages, and to receive a commission for the pick-ups and deliveries. (Defs.' Rule 56.1 Stmt. Exhibit 1, 00009, 00015-29.) The Offering Prospectus contains a section entitled "Rules and Regulations," which sets forth requirements for U.S. Pack drivers, including requirements to wear uniforms, drive white vans with U.S. Pack logos, and attend training programs. (*Id.*)

Most of the thirteen Plaintiffs acknowledge signing a written document while working as drivers for U.S. Pack, but many dispute that the documents they signed were the "Franchise Book"

and "Subscription Agreement" that were part of the Offering Prospectus registered with the state Law Department, and which Plaintiffs were shown at their depositions. (Pls.' Rule 56.1 Stmt. ¶ 21; Defendants' Analysis of the Parties' Statements Pursuant to Local Rule 56.1 ("Defs.' Rule 56.1 Anal.") ¶ 21; Aff. of Peter Redaj ("Redaj") at 26; Aff. of Stephen Holesa ("Holesa") at 12-17; Aff. of Radomir Maler ("Maler") at 17, 25-29, 37; Aff. of Andrzej Szycowski ("Szycowski") at 15-16, 39-40, 44; Aff. of Keith McFarland ("McFarland") at 19, 77, 82; Aff. of Robert Ondusko ("Ondusko") at 40-41, 62; 1st Aff. of Pavol Vysovsky ("Vysovsky 1") at 89-94, 100; Aff. of Jaroslav Kroshnyi ("Kroshnyi") at 60-63; Aff. of Milan Petrilak ("Petrilak") at 24-25; Aff. of Stanislav Bulik ("Bulik") at 62-65; Aff. of Jacob Imas ("Imas") at 30-32.) Defendants have produced signature pages bearing the signatures of only six of the thirteen plaintiffs (Defs.' Rule 56.1 Anal. Exhibit A.)

Many of the Plaintiffs assert that they were not allowed time to read the agreement or accompanying materials prior to signing. Plaintiffs also assert that they were refused their own copy of the materials, despite having expressed concern about their lack of clarity regarding the agreement terms, in some cases due to their inability to speak and read English proficiently. (Holesa at 14-19; Vysovsky 1 at 53-54, 59-62; Bulik at 66-67; Szycowski at 16-19; Kroshnyi at 60-64.) The majority of Plaintiffs are immigrants to the United States, many of whom are limited in their ability to speak and read English.

**\*3** Both parties agree that U.S. Pack later implemented a schedule of commission rates that differed from the rates quoted in the Offering Prospectus (in the Driver Payouts document), and that Defendant Glazman and his employees sometimes negotiated different rates orally with individual drivers. (Pls.' Rule 56.1 Stmt. ¶ 46; Defs .' Rule 56.1 Anal. ¶ 46.) Plaintiffs additionally allege that they were orally guaranteed commission rates of 60 to 65 percent. (Defs.' Rule 56.1 Stmt. ¶¶ 13-14.)

Plaintiff Radomir Maler executed a Release of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 3130562 (S.D.N.Y.)
**(Cite as: Slip Copy)**

Claims in favor of U.S. Pack on June 1, 2000 and received $12,000 in consideration for this release. (Defs.' Rule 56.1 Anal. ¶¶ 28-29.)

**b. Procedural History**

The original complaint in this action was filed in this court on March 26, 2001. Plaintiffs filed an amended complaint on June 21, 2004, and Defendants filed an answer on August 11, 2004. Since the filing of the original complaint, additional plaintiffs have been joined in the action and the action has been dismissed as to plaintiffs Jozef Stofa and Ireneusz Sawczyszyn. There are currently thirteen plaintiffs who are party to the action.

Defendants' motion to dismiss the complaint in its entirety was denied on October 19, 2004, and discovery was completed as of July 11, 2005.

On November 15, 2005, Defendants filed this motion for summary judgment to dismiss the action in its entirety and to amend their answer.

## II. DISCUSSION

**a. Defendants' Motion to Amend their Answer**

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading more than 20 days after the initial pleading is within the court's discretion, and "shall be freely given when justice so requires."Fed.R.Civ.P. 15(a). Denial of leave to amend must be based on some substantial reason, such as undue delay in seeking leave to amend, bad faith, or prejudice to the opposing party. *See State Teachers Ret. Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir.1981). Mere delay, absent a showing of bad faith or undue prejudice, does not generally justify a denial of leave to amend. *See Middle Atlantic Utilities Co. v. S.M.W. Dev. Co.,* 392 F.2d 380, 384 (2d Cir.1968).

Here Defendants seek to amend their answer to include the affirmative defenses of estoppel, release, Statute of Frauds, and waiver. The court does not find that Defendants' addition of these defenses at this stage in the litigation is so unreasonable or burdensome to the Plaintiffs that the request should be denied. Nor is there evidence of bad faith on the part of Defendants. While Defendants' motion to amend their answer comes after the close of discovery, the additional affirmative defenses do not raise new areas of inquiry such that Plaintiffs are likely to be prejudiced by not having known of Defendants' intention to raise these affirmative defenses prior to the close of discovery. Extensive discovery was conducted on the circumstances surrounding the oral and written agreements addressed by Defendants' affirmative defenses, and we find that it is unlikely that prior notice of these affirmative defenses would have substantially altered Plaintiffs' strategy in the discovery phase.

**\*4** Defendants' motion to amend their answer to include the affirmative defenses of estoppel, release, Statute of Frauds, and waiver is therefore GRANTED.

**b. Defendants' Motion for Summary Judgment**

**i. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."Fed.R.Civ.P. 56(c)."A dispute is not 'genuine' unless 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Nabisco, Inc. v. Warner-Lambert Co.,* 220 F.3d 43, 45 (2d Cir.2000) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.' " *Overton v. N.Y. State Div. of Military & Naval Affairs,* 373 F.3d 83, 89 (2d Cir.2004) (quoting *Anderson,* 477 U.S. at 248).

In weighing a motion for summary judgment,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 3130562 (S.D.N.Y.)
**(Cite as: Slip Copy)**

ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion. *See Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990). However, "the non-moving party must come forward with specific facts showing that there is a genuine issue for trial."*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citing Fed.R.Civ.P. 56) (emphasis omitted)."[C]onclusory statements, conjecture or speculation by the party resisting the motion will not defeat summary judgment."*Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir.1996) (citations omitted).

### ii. Plaintiffs' Federal Claims

Plaintiffs do not oppose the portions of Defendants' motion for summary judgment that seek the dismissal of claims for unpaid overtime wages pursuant to the Fair Labor Standards Act ("FLSA") and for failure to withhold and pay Social Security and Medicare taxes pursuant to 26 U.S.C. § 3102 ("ICA").

Plaintiffs have failed to demonstrate the existence of a genuine issue of material fact with regard to their claims under FLSA and FICA, and Defendants' motion for summary judgment is GRANTED as to the overtime wages claims under the FLSA and NYLL. The Court will address these claims briefly.

### 1. The FLSA Claims

Plaintiffs bring a claim for unpaid overtime wages pursuant to the FLSA. The FLSA confers upon employees not exempted from coverage the right to be paid one and one-half times the regular hourly rate for overtime work. 29 U.S.C.A. § 207 (West 1998). Under the Motor Carrier Exemption to the FLSA, the following types of employees are exempted from entitlement to overtime wages:

[T]hose employees ... whose work involves engagement in activities consisting wholly or in part of a class of work which is defined: (i) as that of a driver, ... and (ii) as directly affecting the safety of operation of motor vehicles on the public highways in transportation in interstate or foreign commerce.

**\*5** 29 C.F.R. § 782.2 (2007).*See also*49 U.S.C.A. § 31502(b)(2) (West 2007) (Motor Carrier Act).

Plaintiffs qualify as drivers within the meaning of section (i) above, as the exemption applies to "partialduty drivers ... who drive in interstate or foreign commerce as part of a job in which they are required also to engage in other types of driving or nondriving work."29 C.F.R. § 782.3 (2007). Plaintiffs also meet the criteria of section (ii) because under the language of the statute, the work of a qualifying driver "directly affects 'safety of operation' " in the meaning of the Motor Carrier Act "whenever he drives a motor vehicle in interstate or foreign commerce within the meaning of that Act." 29 C.F.R. § 782.3 (2007).

Even a modest amount of interstate driving may exempt a driver from the FLSA. *See Cariani v. D.L.C. Limousine Service, Inc.,* 363 F.Supp.2d 637, 645-49 (S.D.N.Y.2005). Plaintiffs' deposition testimonies indicate that they all regularly made deliveries across state lines; Plaintiffs therefore fit squarely within the statutory language of the Motor Carrier Exemption. Moreover, in their brief in opposition to Defendants' summary judgment motion, Plaintiffs do not contest Defendants' arguments regarding the FLSA claims. For these reasons, the Court finds that there is no lingering ambiguity with regard to Plaintiff's FLSA claim, and Defendants' motion is GRANTED as to the FLSA claim.

### 2. Plaintiffs' Claim under 26 U.S.C. § 3102

Plaintiffs bring a claim for relief under 26 U.S.C. § 3102, the Federal Insurance Contributions Act, alleging that Plaintiffs were employees of Defendants, and that Defendants failed to make certain payments on Plaintiffs' behalf to the Social Security Administration in violation of 26 U.S.C. § 3102. The Court agrees with Defendants that the tax statutes in question are revenue-producing in nature and do not give rise to a private right of action. *See*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 3130562 (S.D.N.Y.)
**(Cite as: Slip Copy)**

*Deleu v. Scaife,* 775 F.Supp. 712, 716-17 (S.D.N.Y.1991); *McDonald v. S. Farm Bureau Life,* 291 F.3d 718, 722-26 (11th Cir.2002). Defendant's motion for summary judgment as to this claim is therefore GRANTED.

### iii. Supplemental Jurisdiction over State Law Claims

Plaintiffs filed this lawsuit invoking the Court's federal question jurisdiction with regard to their claims under the FLSA and FICA, and the Court retained supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 (2000). A federal court may exercise supplemental jurisdiction over state law claims whenever a federal law claim confers subject matter jurisdiction on the court and both claims "derive from a common nucleus of operative fact."*Raucci v. Town of Rotterdam,* 902 F .2d 1050, 1054 (2d Cir.1990), quoting *United Mine Workers of Am. v.. Gibbs,* 383 U.S. 715, 725 (1966). Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise jurisdiction over a claim that would otherwise fall under its supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction."In providing that a district court "may" decline to exercise such jurisdiction, this subsection indicates that it is permissive rather than mandatory. *Valencia v. Lee,* 316 F.3d 299, 305 (2d Cir.2003). Factors a court should consider in determining whether to refrain from exercising supplemental jurisdiction when all claims over which that court has original jurisdiction have been dismissed include: (1) the length of time the matter has been before the court; (2) the proximity to the trial date; and (3) the predominance of issues of federal, as opposed to local, concern.*Drexel Burnham Lambert, Inc. v. Saxony Heights Realty Assoc.,* 777 F.Supp. 228, 240 (S.D.N.Y.1991), *citing McLearn v. Cowen & Co.,* 660 F.2d 845 (2d Cir.1981).

**\*6** While the dismissal of all of Plaintiffs' federal claims would ordinarily weigh in favor of the Court's declining to exercise supplemental jurisdic-

tion over the remaining state claims, numerous factors in the present case weigh in favor of exercising jurisdiction over these claims. This case has been before the Court since 2001, and the parties have engaged in extensive motion practice before the Court. Discovery has been completed. The advanced stage of the litigation and the Court's long familiarity with the issues in the case, combined with the likely hardship to both parties should plaintiff be forced to re-file in state court, constitute circumstances sufficiently compelling that the Court elects to retain jurisdiction over the case.

The claims at issue do not appear to present particularly novel questions of state law, providing further support for this court's exercise of supplemental jurisdiction over Plaintiffs' state law claims. The claims also do not invoke state law issues so fundamental or proprietary to state governance that they may not be evaluated by a federal court. Plaintiffs' state claims are brought under the Franchise Sales Act, the New York Labor Law, and contract law; all are areas of law that have been addressed fairly extensively by New York state courts. This Court is competent to consider claims under the Franchise Sales Act, the New York Labor Law, and contract law, drawing on the substantial body of New York state law in these areas.

### iv. Plaintiffs' abandoned state claims

Plaintiffs have not contested Defendants' arguments in favor of summary judgment for certain state claims, including Plaintiffs' claims for unpaid overtime wages under the NYLL, the claims for recovery under tort and quasi-contract theories, and the contract claims regarding contracts to purchase motor vehicles and contract claims against Peter Glazman in his individual capacity. Defendants' arguments against these claims are uncontested, and as such, the Court finds that Plaintiffs have failed to establish the existence of a genuine issue of material fact with respect to these claims. Defendants' motion for summary judgment is therefore GRANTED as to these claims.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 3130562 (S.D.N.Y.)
**(Cite as: Slip Copy)**

**v. Plaintiffs' Remaining State Law Claims**

**1. Contract Claims**

Plaintiffs claim that Defendants are liable under contract law for failing to honor oral agreements regarding specific commission rates negotiated with individual Plaintiffs. Defendants contend that Plaintiffs' allegations of breach of oral contract are barred by the integration clause contained in the Subscription Agreement and by the Statute of Frauds.

Defendants argue that the integration clause contained in the Subscription Agreement invalidates any prior or subsequent oral agreements that Plaintiffs may seek to enforce. Plaintiffs argue that the integration clause does not bar enforcement of the oral contracts because Defendants' violations of the Franchise Sales Act render the contracts in question unenforceable. However, violations of the Franchise Sales Act do not render the underlying contract unenforceable by the violating party. *TKO Fleet Enter., Inc. v. Elite Limousine Plus,* 708 N.Y.S.2d 593, 596 (Sup.Ct.2000), *aff'd*286 N.Y.S.2d 436 (2d Dep't 2001). The Franchise Sales Act also does not prohibit or purport to regulate negotiations of terms different from those contained in the Offering Prospectus subsequent to the registration of the Offering Prospectus with the state law department. *Southland Corp. v. Abrams,* 560 N.Y.S.2d 253, 256-58 (Sup.Ct.1990). The Franchise Sales Act therefore does not operate to nullify the integration clause at issue; neither does it bar the negotiation of terms different from those contained in the Offering Prospectus.

**\*7** However, an integration clause, where enforceable, applies only to oral agreements made prior to the signing of the contract containing the integration clause, and not to those made subsequent to the written contract. *See Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.P.A.,* 2007 WL 1988144 (S.D.N.Y.2007). The integration clause in the Subscription Agreement therefore does not operate to bar the enforcement of oral contracts negotiated after the signing of the agreement.

Defendants also argue that the oral contracts are unenforceable under the Statute of Frauds. New York's Statute of Frauds provides in relevant part that:

Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking: [ ... ] By its terms is not to be performed within one year from the making thereof [ ... ]

Gen. Oblig. Law § 5-701(a). New York courts narrowly interpret the Statute of Frauds' application to agreements not to be performed within one year, holding that an agreement is outside the reach of the Statute of Frauds if it is capable, by its terms, of being performed within one year. *N. Shore Bottling Co. v. Schmidt & Sons, Inc.,* 239 N.E.2d 189, 191-93 (N.Y.Sup.Ct.1968); *See also Majestic Farms Supply Ltd. v. Serv. Riding Apparel, Ltd.,* 137 A.D.2d 501, 524 (N.Y.App. Div.2d Dep't 1988). Courts have emphasized that for a contract to be capable of being performed within one year under the meaning of the Statute of Frauds, the express terms of the oral contract must provide for the possibility of performance within one year. Implied termination terms are not sufficient to take an oral contract out of the statute. *Burke v. Bevona,* 866 F.2d 532, 538 (2d Cir.1989), citing *Zupan v. Lumberg,* 2 N.Y.2d 547, 550 (1957).

The oral contracts that Plaintiffs seek to enforce include no specific terms beyond the guarantee of a commission rate of between 60 and 65 percent of the customer payout for each delivery. Plaintiffs have not alleged that these oral contracts included additional terms regarding the duration of the agreements or the ability of either party to terminate the agreements. Plaintiffs have also not alleged that the oral contracts regarding commission rates implicitly incorporated the terms of the agreement contained in the Offering Prospectus, which does contain provisions regarding the term of the agreement and possible termination of the agreement. Even if Plaintiffs had advanced this argument, however, under the standards established in

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 3130562 (S.D.N.Y.)
(Cite as: Slip Copy)

New York case law, the implied incorporation of provisions making the oral contracts capable of being performed within one year would be insufficient to exempt the agreements from the reach of the Statute of Frauds.

The Second Circuit explains in *Burke* that the requirement that an oral contract by its express terms be capable of performance within one year in order to be exempted from the Statute of Frauds protects contracting parties from being held indefinitely by the terms of oral agreements, which are, by their nature, susceptible to fraud and distortion. 866 F.2d at 538. In the instant case, Plaintiffs allege that they were promised the higher commission rates on an ongoing basis, implicitly for an indefinite period, while Defendants argue that some such guarantees were made on a per-delivery basis, but not as part of an ongoing arrangement. The terms of the oral agreements as represented by Plaintiffs do not contain express terms that would potentially limit them to performance within one year.

**\*8** Therefore, interpreting all ambiguities in the light most favorable to the Plaintiffs, the Court finds that the Statute of Frauds applies to bar enforcement of the oral agreements in question, and Defendants' motion for summary judgment is GRANTED as to Plaintiffs' contract claims.

**2. Franchise Sales Act Claims**

Plaintiffs allege that Defendants' sales of franchises to the Plaintiffs violated numerous provisions of the New York Franchise Sales Act, N.Y. Gen. Bus. Law § 680 (2007). The Franchise Sales Act regulates the registration of franchises in New York State and enumerates detailed requirements for companies establishing, advertising, and selling franchises. These requirements are designed to provide prospective franchisees with accurate information regarding a given franchise offering and to prevent fraud in the sale of franchises.*Id.* at § 680. Given the Franchise Sales Act's remedial goals, courts have held that its anti-fraud provisions should be interpreted liberally. *See A.J. Temple Marble & Tile, Inc. v. Union Carbide Marble Care,*

*Inc.,* 162 Misc.2d 941, 941-42 (Sup.Ct. N.Y. County 1994), *affirmed*625 N.Y.S.2d 904 (App.Div.1995), *leave to appeal granted,*628 N.Y.S.2d 478 (App.Div.1995), *affirmed as modified,*87 N.Y.2d 574 (1996).

**a. Timeliness**

Section 691(4) of the Franchise Sales Act provides that "[a]n action shall not be maintained to enforce a liability created under this section unless brought before the expiration of three years after the act or transaction constituting the violation."The violations at issue here, discussed *infra,* include violations of the Franchise Sales Act's registration provisions, § 683 of the Act, and the fraud provisions in § 687 of the Act.

As discussed in greater detail *infra,* Plaintiffs point to evidence in the record supporting multiple possible violations by Defendants of the Franchise Sales Act's registration provisions, § 683 of the Act. For the alleged violations involving Defendants' failure to provide Plaintiffs with copies of the Offering Prospectus, § 683(8), the act constituting the violation would have occurred at the beginning of each Plaintiff's employment with U.S. Pack. For the alleged violation involving Defendants' continuation of franchise operations following their withdrawal of the registered franchise, the act constituting the violation would have occurred sometime between 1997 and 1999 when, in violation of § 683(1), Defendants began to operate the franchise without the benefit of registration.

The original complaint in this action was filed on March 26, 2001. Because we find that a genuine issue of material fact exists with regard to both of the above bases for violations of the Franchise Sales Act, the claims are timely for all Plaintiffs: (1) who were employed by U.S. Pack as of March 26, 1998, as the withdrawal occurred sometime between 1997 and 1999; or (2) who began their employment with U.S. Pack on or after March 26, 1998.

**\*9** Plaintiffs also allege that Defendants viol-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 3130562 (S.D.N.Y.)
**(Cite as: Slip Copy)**

ated the Franchise Sales Act's fraud provisions by misleading Plaintiffs as to the terms of their employment with U.S. Pack at the initiation of each Plaintiff's employment. As with the acts in potential violation of § 683(8), *supra,* the relevant act for the purposes of the fraud allegations would have occurred at the initiation of each Plaintiff's employment with U.S. Pack, leaving the analysis for evaluating timeliness unchanged.

Plaintiffs Stanislav Bulik, Stanislav Teleky and Jana Bulikova were not employed by U.S. Pack on or after March 26, 1998, making their Franchise Sales Act claims untimely under § 691(4), as the acts giving rise to their claims could not have occurred after the cessation of their employment with U.S. Pack. Plaintiff Stanislav Bulik stopped working for U.S. Pack in April of 1997. (Bulik at 45.) Stanislav Teleky stopped working for U.S. Pack in October of 1997. (Teleky at 12.) Jana Bulikova last worked for U.S. Pack in December of 1996 or January of 1997. (Bulikova at 13.) U.S. Pack payment records indicate that all other plaintiffs were employed by U.S. Pack on or after March 28, 1998. (Defs.' Rule 56.1 Stmt. ¶ 19.) Because Plaintiffs Bulik, Teleky and Bulikova have failed to bring an action in accordance with the timeliness provisions set by § 691(4), Defendants' motion for summary judgment is GRANTED as to these Plaintiffs' claims under the Franchise Sales Act.

**b. Plaintiffs' Claims Regarding the Franchise Sales Act's Registration Requirements, § 683**

The Franchise Sales Act's provisions regulating registration of franchise prospectuses require a company to register an offering prospectus with the New York Department of Law prior to the negotiation or sale of a franchise, and to submit amendments whenever the prospectus is modified. N.Y. Gen. Bus. Law § 683(1), (9) (2007). The Act details specific information that must be included in an offering prospectus, and includes a requirement that the prospective franchisee be provided:

[A] copy of the offering prospectus, together with a copy of all proposed agreements relating to

the sale of the franchise at the earlier of (a) the first personal meeting between the franchisor or its agent and the prospective franchisee, (b) at least ten business days prior to the execution of a binding franchise or other agreement, or (c) at least ten days prior to the receipt of any consideration in connection with the sale or proposed sale of a franchise.

*Id.* at § 683(8). The Act also requires that the franchisor maintain complete and accurate records that may be subject to inspection by members of the law department. *Id.* at § 683(9).

Plaintiffs point to several areas in the record as demonstrating Defendants' failure to provide franchisees with copies of the Offering Prospectus (or Franchise Book) in violation of the Franchise Sales Act's registration requirements in § 683(8). Defendants have produced signature pages for only six of the thirteen plaintiffs. (Defs.' Rule 56.1 Anal. Exhibit A.) Plaintiffs testify generally that the documents they signed were thinner or otherwise different from the Franchise Book shown to them at their depositions. Most Plaintiffs testify that they were not provided with copies of the Franchise Book, and that they were permitted to look at the documents given to them only for a very short time before or after signing the required form. Milan Cuba, who met with all Plaintiffs at the start of their employment with U.S. Pack, states that he did not provide franchisees with a copy of the Offering Prospectus at their initial meetings. (Aff. of Milan Cuba ("Cuba") at 53, 57.) The record therefore establishes a triable issue of fact with respect to Defendants' violation of § 683(8).

**\*10** Plaintiffs also claim that U.S. Pack's unilateral "withdrawal" of their registered franchise around 1997, 1998 or 1999 presents a further basis for liability on the part of the Defendants under the Franchise Sales Act. Testimony from Plaintiffs and Defendants indicates that the franchise was "withdrawn" sometime during this three-year period, and that new materials were circulated to employees, essentially continuing U.S. Pack's operation as a franchise, with franchise fee payments continuing to be required from franchisees. (1st

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 3130562 (S.D.N.Y.)
**(Cite as: Slip Copy)**

Aff. of Peter Glazman ("Glazman 1") at 63-64; Glazman 2 at 3.) The Court presumes that Defendants' references to a "withdrawal" of the franchise refer to the withdrawal of their franchise registration with the New York State Law Department.

The evidence presented strongly suggests that U.S. Pack has continued to operate as a franchise, notwithstanding the withdrawal.[FN1] Plaintiffs claim, and Defendants do not dispute, that Plaintiffs continued to be charged a franchise fee following the withdrawal. Deposition testimony from Peter Glazman and Milan Cuba, as well as Plaintiffs, indicates that U.S. Pack continued to operate as before. The documents entitled "Rules and Regulations of U.S. Pack" and "Driver Payouts," apparently circulated during or after the withdrawal, describe rules and practices substantially equivalent to those contained in the Offering Prospectus previously registered with the New York Law Department. (Defs.' Rule 56.1 Analysis § 46.) Plaintiffs continued to perform delivery services under the U.S. Pack brand, regulated by U.S. Pack rules, in exchange for a franchise fee, thereby meeting the definition of a franchise under § 681(3) of the Franchise Sales Act.

> FN1. According to § 681(3) of the Franchise Sales Act, a franchise is:
>
> a contract or agreement, either expressed or implied, whether oral or written, between two or more persons by which:
>
> a) A franchisee is granted the right to engage in the business of offering, selling or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor, and the franchisee is required to pay, directly or indirectly, a franchise fee, or
>
> b) A franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services substantially associated with the franchisor's trademark ... and the franchisee is required to pay, directly or indirectly, a franchise fee.

Defendants' continued operation of a franchise in the absence of a formal registration with the New York Law Department constitutes an additional basis for violation of the registration requirements in § 683 of the Franchise Sales Act. Alternatively, if the previously filed Offering Prospectus were found still to be in effect, Defendants' withdrawal and circulation of the "Driver Payouts" document would appear to violate § 683(9), which requires written notification in the case of any amendments to registration materials filed with the law department.

**c. Plaintiffs' Claims Regarding the Franchise Sales Act Fraud Provisions, § 687**

Plaintiffs additionally allege that Defendants violated the Franchise Sales Act's fraud provisions, § 687, by misleading potential franchisees regarding the terms of the franchise agreement .[FN2] Central to Plaintiffs' allegations are their claims that Milan Cuba and Defendant Peter Glazman orally guaranteed them commission rates above those guaranteed in the U.S. Pack Offering Prospectus, or in the "Driver Payouts" document circulated among employees.[FN3] Defendants argue that Plaintiffs' claims regarding these oral guarantees are barred from consideration by the parol evidence rule and by the doctrine of waiver.

> FN2. 687(2) provides:
>
> It is unlawful for a person, in connection with the offer, sale or purchase of any franchise, to directly or indirectly:
>
> (a) Employ any device, scheme, or artifice to defraud.
>
> (b) Make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading. It is an affirmative defense to one accused of omitting to state such a material fact that said omission was not an intentional act.
>
> (c) Engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

> > FN3. Ten plaintiffs claim they were promised a 60% commission on all deliveries; two plaintiffs claim they were promised a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2007 WL 3130562 (S.D.N.Y.)

**(Cite as: Slip Copy)**

65% commission; one plaintiff, Jana Bulikova, does not claim to have been promised a fixed commission rate. (Defs.' Rule 56.1 Stmt. ¶¶ 13-14).

**\*11** Under New York law, the parol evidence rule bars claims based on an oral modification of a contract where the contract contains an integration clause and the terms of the contract are unambiguous. *See Leung v. Lotus Ride, Inc.,* 198 A.D.2d 155, 156 (App.Div.1993) (holding that Plaintiffs' fraud claims based on oral misrepresentations regarding the number of franchises to be sold were barred by the parol evidence rule where the franchise agreement contained an express provision stating that the number would be unlimited). Furthermore, the Franchise Sales Act itself does not regulate the terms of a Franchise Agreement, and therefore has no authority to regulate additional negotiations between the franchisor and franchisee subsequent to the registration of a Franchise Agreement. *Southland Corp. v. Abrams,* 148 Misc.2d 390, 396-97 (N.Y.Sup.Ct.1990). However, the parol evidence rule may not be applied to frustrate the purposes of the Franchise Sales Act. *Mon-Shore Mgmt., Inc. v. Family Media, Inc.,* 584 F.Supp. 186, 195 (S.D.N.Y.1984) (holding that the parol evidence rule did not bar proof of omissions from the prospectus, part of the franchise sales contract).

The Offering Prospectus registered by U.S. Pack contains unambiguous terms regarding compensation for U.S. Pack drivers. Evidence of Plaintiffs' oral negotiations with Defendants, where Plaintiffs had signed an agreement with unambiguous terms and this agreement had been previously filed with the state law department, would ordinarily be barred as proof of fraud on the part of Defendants. However, Plaintiffs dispute that the agreement they signed was the registered Offering Prospectus shown to them at their depositions. Many Plaintiffs additionally claim that they were unable to ascertain the terms of the agreement due to Defendants' refusal to allow them time to read the agreement prior to signing and Defendants' failure to provide them with a copy of the agreement. Defendants have produced signed signature pages for

only six of the thirteen Plaintiffs. These facts call into question the completeness of the written contract terms, standing alone, as a representation of Plaintiffs' understanding of the contract. Further, Defendants' withdrawal of the franchise calls into question whether the terms of this agreement continued to be binding on Plaintiffs subsequent to the withdrawal.

We find the evidence of Defendants' procedural failings to be of particular concern given the unequal bargaining power between the parties; Plaintiffs are not sophisticated business negotiators, and many had severely limited knowledge of English at the time that they entered into the franchise agreement with U.S. Pack. The Franchise Sales Act's expressed goal of protecting potential franchisees from fraud or deceptive practices on the part of franchisors makes this a particularly relevant concern in evaluating liability under the Act. Together with evidence of Defendants' violations of the Franchise Sales Act's registration provisions, the questions surrounding Defendants' withdrawal of the franchise registration and Plaintiffs' clear disadvantage in the bargaining process are factors that compel consideration of Plaintiffs' evidence of oral agreements with respect to Defendants' alleged commission of fraud in violation of § 687(2) of the Act.

**\*12** Defendants also argue that Plaintiffs are barred from presenting evidence of oral agreements for higher pay rates because Plaintiffs waived any rights under these agreements by continuing to work at lower pay rates. This argument is inapplicable here. Because the oral agreements are relevant to Plaintiffs' fraud claims under the Franchise Sales Act solely as evidence of Defendants' alleged fraud in connection with the offering and sales of franchises, Plaintiffs' subsequent behavior with respect to the alleged agreements has no bearing on their admissibility. Triable issues of fact therefore exist with respect to Defendants' possible violations of the registration and fraud provisions of the FSA, §§ 683 and 687.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 3130562 (S.D.N.Y.)
**(Cite as: Slip Copy)**

**d. Damages**

For violations of the Franchise Sales Act's disclosure requirements and fraud provisions, the Act authorizes civil money damages, providing for rescission with interest at six percent per year from the date of purchase, and reasonable attorneys fees and court costs for willful and material violations. N.Y. Gen. Bus. Law § 691(1) (2007).

Defendants argue that Plaintiffs cannot claim damages from Defendants' failure to formally rescind the franchise because Plaintiffs continued to earn fees in connection with U.S. Pack's operation and therefore can claim no material injury. However, the amount of damages due to individual plaintiffs under the FSA is inconclusive based on the facts currently before the Court. Plaintiffs were employed by U.S. Pack for differing lengths of time, and neither party has produced comprehensive records of the franchise fees paid by Plaintiffs to U.S. Pack.

The Franchise Sales Act additionally provides for attorneys' fees and court costs when the violations are "willful." For purposes of the Franchise Sales Act, "willful" means no more than voluntary or intentional, as opposed to inadvertent. *Reed v. Oakley,* 172 Misc.2d 655, 658 (N.Y.Sup.Ct.1996) ( "Requiring the franchisee to prove the higher standard of malice in failing to comply with the Act would apply a restrictive, not liberal, construction of the Act, and limit its effectiveness.") Defendants have not claimed that any of their actions with respect to the franchise agreements at issue were inadvertent or unintentional. Clearly material issues of fact exist regarding Plaintiffs' entitlement to damages under the Franchise Sales Act.

**e. Radomir Maler's Release and Waiver of Claims**

Defendants argue that the Release and Waiver signed by Plaintiff Radomir Maler operates to defeat Maler's claims under the Franchise Sales Act, in addition to his claims under the New York Labor Law. However, the plain language of the Franchise

Sales Act prohibits a waiver of rights under the Act: "It is unlawful to require a franchisee to assent to a release, assignment, novation, waiver or estoppel which would relieve a person from any duty or liability imposed by this article."N.Y. Gen. Bus. Law. § 687(5) (2007).*See also Reed v. Oakley,* 172 Misc.2d 659, 661-62 (N.Y.Sup.Ct.1996) (holding that the plain language of § 687(5) and the public policy behind the Franchise Sales Act prohibit the use of equitable defenses to escape liability under the Act).

**\*13** Section 691 of the Franchise Sales Act provides that a person may not file suit under the Act if he received a written offer "at a time when he owned the franchise, to refund the consideration paid together with interest at six percent per year from the date of payment, less the amount of income earned by the franchisee from the franchise [ ... ]"N.Y. Gen. Bus. Law, § 691 (2007). Under this section, had Plaintiff Maler received such an offer prior to the settlement and release, he would be barred from bringing suit under the Act. However, Defendants do not allege that any such offer was made, and Maler testifies that the negotiations surrounding the settlement pertained exclusively to Maler's expenditures on the van he leased from the company. (Maler at 65-67.)

Plaintiff Maler's release therefore does not bar his claims under the Franchise Sales Act.

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED as to Franchise Sales Act claims brought by Plaintiffs Bulikova, Bulik, and Teleky, and DENIED as to claims brought by Plaintiffs Vysovsky, Petrilak, Kroshnyi, Redaj, Maler, Ondusko, McFarland, Szycowski, Imas and Holesa.

**f. Peter Glazman's Individual Liability**

Peter Glazman's individual liability under the Franchise Sales Act will be discussed fully *infra,* together with a discussion of his liability under the New York Labor Law.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 3130562 (S.D.N.Y.)
**(Cite as: Slip Copy)**

**3. New York Labor Law Claims**

Plaintiffs additionally state claims for unpaid promised wages and unlawful deductions from wages in violation of Article 6 of the New York Labor Law, N.Y. Lab. Law (§§ 193 and 198) (2007).

Sections 193 and 198 of the New York Labor Law expressly apply to employers and employees. Section 193 states in relevant part:

No employer shall make any deduction from the wages of an employee, except deductions which [ ... ] are expressly authorized in writing by the employee and are for the benefit of the employee; provided that such authorization is kept on file on the employer's premises.

N.Y. Lab. Law § 193(1) (2007).Section 198 provides for the award of ordinary costs and attorneys' fees when an employer prevails on a wage claim brought under Article 6 of the Labor Law. Section 198 additionally provides for liquidated damages in the amount of 25 percent of the total amount of wages due upon a finding of "willful" violation on the part of the employer. Id. at § 198(1).

**a. Plaintiffs' Claim for Unpaid Promised Wages**

Plaintiffs seek damages for unpaid promised wages under § 198 of the Labor Law. The oral contracts on which Plaintiffs base this claim are the same oral contracts that served as the basis for their contract claims, discussed *supra.*Though Plaintiffs argue that the Statute of Frauds is not a defense to a claim for unpaid promised wages under the Labor Law, this statement is conclusory and without basis in the text of the Labor Law or in case law. We find that the claim for unpaid promised wages is untenable for the reasons discussed *supra,* with respect to Plaintiffs' contract claims. "The plaintiff cannot assert a statutory claim for wages under the Labor Law if he has no enforceable contractual right to those wages."*Tierney v. Capricorn Investors, L.P.,* 592 N.Y.S.2d 700, 703 (1st Dep't 1993), *appeal denied,*81 N.Y.2d 710 (1993). Plaintiffs fail to present evidence of a contract that will satisfy the Statute of Frauds, and they therefore fail to show the existence of a genuine issue of material fact with regard to their Labor Law Claim for unpaid wages.

**b. Plaintiffs' Claim for Unlawful Deductions**

**i. "Employees" under § 193**

**\*14** Plaintiffs additionally assert a claim under § 193 of the Labor Law for unlawful deductions from wages.

Defendants dispute that Plaintiffs are "employees" within the meaning of the labor law. Under Article 6 of the New York Labor Law, the term employee means "any person employed for hire by an employer in any employment."N.Y. Lab. Law § 190(2) (1986).Section 193 of the Labor Law applies broadly to all "employees" within the meaning of the Labor Law. *See Pachter v. Bernard Hodes Group, Inc.,* 2007 WL 2963876, \*2 (2d Cir.2007). The New York Court of Appeals, applying the common law test to determine employment status under Article 6 of the Labor Law, stated that "the critical inquiry in determining whether an employment relationship exists pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results."*Bynog v. Cipriani Group, Inc.,* 1 N.Y.3d 193, 198 (2003); *See also E. Coast Indus., Inc. v. Becconsall,* 301 N.Y.S.2d 778, 779-780 (N.Y.Dist.Ct.1969) (finding that important considerations for evaluating control in the employment status inquiry included the employer's authority to decide the timing and selection of each job and the employer's right to discharge or fire the employee). The *Bynog* court listed factors relevant to assessing control, including "whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule."1 N.Y.3d at 198. The Court in *NLRB v. Fugazy Continental Corp.,* 603 F.2d 214 (2d Cir.1979), found that franchisee drivers qualified as employees under the National Labor Relations Act where drivers' commissions were set by

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 3130562 (S.D.N.Y.)
**(Cite as: Slip Copy)**

the franchisor, the dress, conduct and type of vehicle were regulated by the franchisor, and the franchisor retained broad termination power over franchisees.

According to the terms of the Offering Prospectus, the document establishing and regulating the franchise agreements between Plaintiffs and Defendants, U.S. Pack required all drivers to wear a uniform, drive a white van bearing the U.S. Pack logo, and attend trainings. The Offering Prospectus additionally set a schedule of commissions and regulated the terms under which drivers could assign their franchises. U.S. Pack also retained broad authority under the Offering Prospectus to hire additional franchisees and terminate franchisees; during the initial six month "probationary period," any franchisee could be terminated at U.S. Pack's complete discretion. (Defs.' Rule 56.1 Stmt. Exhibit 1 at 000025-26.) Plaintiffs received all assignments through a centralized dispatch system. (Glazman 1 at 124; 137-38.)

Peter Glazman disputes that drivers were required to wear uniforms, testifying that they were only obligated to wear uniforms for certain customers, and drivers had the option of refusing work with these particular customers. (Glazman 1 at 150.) Even if Plaintiffs had the choice of refusing assignments requiring them to wear uniforms, the centralized dispatch system placed control of the distribution of assignments out of the hands of Plaintiffs. Interpreting all ambiguities in the light most favorable to the Plaintiffs, the Court finds that the issue, whether Defendants exercised a degree of control over Plaintiffs consistent with a finding that Plaintiffs were "employees" of U.S. Pack under the terms of the New York Labor Law, is one of fact.

**ii. Deductions "authorized by" and "for the benefit" of Employees under § 193**

**\*15** Defendants also assert that any deductions made from Plaintiffs' wages were "expressly authorized in writing" by the employees and "for the benefit" of the employees, in accordance with § 193(1) of the Labor Law. Defendants do not dispute

deductions made from Plaintiffs' wages of fees associated with vehicle leases for those Plaintiffs leasing vehicles and of franchise fees for all Plaintiffs. Plaintiffs also contend, and Defendants apparently do not dispute, that franchise fees continued to be deducted from Plaintiffs' wages after the withdrawal of the franchise. The provisions of § 193 require that deductions from employees' wages be *both* authorized by employees and for the employees' benefit. N.Y. Lab. Law § 193(1) (2007).Section 193 additionally requires that employers keep copies of employees' authorization on file at the employer's premises. *Id.*

Defendants have produced Subscription Agreement signature pages and signed sheets acknowledging receipt of the Offering Prospectus for six Plaintiffs.FN4 The terms of the Subscription Agreement authorize U.S. Pack to deduct from employees' paychecks payments on vehicles leased from U.S. Pack and franchise fees up to a total of $15,000. These signed forms therefore constitute a valid authorization by plaintiffs of the deductions in question. However, Defendants have failed to produce authorizations from the remaining seven Plaintiffs. Although virtually all Plaintiffs acknowledge having signed something at the start of their employment with U.S. Pack, and it is certainly possible that some or all of them signed authorizations comparable to those signed by the other six, the statute explicitly requires Defendants to keep such an authorization on file at their place of employment. Interpreting all ambiguities in the light most favorable to the Plaintiffs, the Court finds that there is a genuine issue of material fact as to whether the deductions from Plaintiffs' paychecks were properly authorized in accordance with the statute with respect to Plaintiffs Redaj, Maler, McFarland, Ondusko, Petrilak, Teleky and Bulikova.

> FN4. Defendants have produced copies of these two forms signed by Plaintiffs Holesa, Vysovsky, Bulik, Szycowski, Kroshnyi, and Imas. (Defs.' Rule 56.1 Anal. Exhibit A.)

In addition to requiring authorization by em-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 3130562 (S.D.N.Y.)
**(Cite as: Slip Copy)**

ployees, § 193 requires that the deductions from employees' wages be made "for the benefit of the employee."A deduction made to enable an employee to furnish one of the prerequisites of his employment is made "for the benefit of the employee" in accordance with § 193. *See Rownd v. N.Y. State Guernsey Breeders' Coop.,* 87 N.Y.S.2d 272, 273 (N.Y.Mun.Ct.1949) (Deductions from wages to purchase a bond required by the employer did not violate the Labor Law prohibitions against deductions from wages for the benefit of the employer.) Deductions made for the benefit of a union, rather than for the benefit of the employer, have also been held not to violate the Labor Law. *See Greenwald v. Chiarella,* 63 N.Y.S.2d 49, 51-52 (App. Div. 1st Dep't 1946).

There is a strong case that, in conjunction with a franchise agreement, deductions made in payment of a franchise fee and vehicle lease were "for the benefit of the employee."According to the terms of the Offering Prospectus, the franchise fee constituted the employee's required payment towards the eventual purchase of a franchise, and the system of deducting the fee from an employee's monthly paycheck rather than requiring an up-front payment in total made the purchase of a franchise feasible for those employees who could not finance the purchase of the franchise in a single payment. The vehicle lease was not required of employees who chose to provide their own vehicle and, like the franchise fee deduction, provided a system of payment for those employees who preferred a payroll deduction to the outright purchase of a vehicle. Defendants contend, and Plaintiffs do not dispute, that in all cases U.S. Pack provided full ownership of leased vehicles to employees once they had leased the vehicles for a total of four full years. (Defs.' Rule 56.1 Stmt. Glazman Affidavit ¶ 18.)

**\*16** Plaintiffs also claim, however, that U.S. Pack continued to deduct franchise fee payments from their paychecks following the withdrawal of the franchise between 1997 and 1999. Defendants do not address this claim, and the facts are inconclusive on this issue. As discussed, *supra,* with regard to Plaintiffs' Franchise Sales Act claims, ma-

terial issues of fact remain as to the effect of Defendants' withdrawal of the franchise. For the purposes of analyzing Plaintiffs' Franchise Sales Act claims, the Court found that, interpreting the factual ambiguities in the light most favorable to the Plaintiffs, the continued operation of U.S. Pack in the manner of a franchise following the withdrawal could potentially have resulted in an effective continuation of the franchise under the Franchise Sales Act's definition. Analyzing Plaintiffs' Labor Law claims, all ambiguities of fact must similarly be interpreted in the light most favorable to the Plaintiffs' claims. Given Defendants' obvious intent to discontinue the franchise, in combination with the factual ambiguities surrounding their withdrawal of the franchise, The Court finds that there is a material issue of fact surrounding the question of whether the franchise payment deductions continued to go towards the purchase of a franchise following the withdrawal, and therefore, whether the deductions were "for the benefit of the employee" in accordance with § 193 of the Labor Law.

**c. Plaintiff Radomir Maler's Release of Claims**

The Release of Claims executed by Plaintiff Maler, for which he received $12,000 in consideration, states in clear language that Maler waives all claims against U.S. Pack and its officers, shareholders and directors. (Defs.' Rule 56.1 Stmt. Exhibit 2.) Though the Franchise Sales Act expressly prohibits a waiver of rights under the Act, the New York Labor Law contains no such provision. In the absence of an express public policy against release or ambiguities in the language of the release, we find that such a release is binding. Where "the language of a release is clear and unambiguous, the signing of a release is a 'jural act' binding on the parties."*Booth v. 3669 Delaware, Inc.,* 92 N.Y.2d 934, 935 (1998). Furthermore, as noted in Defendants' brief, New York has a "public policy favoring enforcement of settlements."*Id. Accord Krumme v. Westpoint Stevens, Inc.,* 238 F.3d 133, 144 (2d Cir.2000).

Defendants' motion for summary judgment is

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 3130562 (S.D.N.Y.)
**(Cite as: Slip Copy)**

therefore GRANTED as to Plaintiff Radomir Maler.

**4. Peter Glazman's Individual Liability under the New York Labor Law and the Franchise Sales Act**

**a. Glazman's Individual Liability under the New York Labor Law**

Defendants argue that even if Plaintiffs were able to recover under the New York Labor Law, they would be barred under New York law from recovering against Defendant Peter Glazman as an individual. Defendants cite *Stoganovic v. Dinolfo,* 461 N.Y.S.2d 121 (App. Div. 4th Dep't 1983), for the proposition that no private civil cause of action arises under the New York Labor Law for recovery of unpaid wages.

**\*17** *Stoganovic* expresses the concern that should courts hold corporate officers personally liable for the unpaid wages of corporate employees, the officers could have unlimited liability. *Id.* at 123.However, the court in *Chung v. New Silver Palace Rest.,* 272 F.Supp.2d 314, 318 (S.D.N.Y.2003), argued persuasively that the *Stoganovic* holding was limited to the case of a claim for unpaid wages under 198-a and 198-c brought against corporate officers and directors *who did not qualify as employers.*The *Chung* court found a private right of action to exist against individual restaurant owners under § 196-d (prohibiting employers from sharing in employees' tips) and § 198-b (proscribing any demand by employers for kickback of an agreed rate of wages), where defendants met the Labor Law's definition of "employer" in § 190, applying the *Cort v. Ash* test to find that a private civil right of action may be implied under Article VI generally. *Id.* at 318, citing *Cort v. Ash,* 422 U.S. 66, 78 (1975) (holding that a private right of action may be implied where (1) plaintiffs are within the class for whose special benefit a statute was enacted; (2) there is indication of a legislative intent, explicit or implicit, to create a remedy for the plaintiffs; and (3) implying a remedy is consistent with the underlying purposes of the legislative scheme).

We find that the *Chung* court's application of the *Cort v. Ash* test convincingly establishes the existence of a private right of action under Article VI. As in *Chung,* Plaintiffs in the instant case qualify as "employees" of U.S. Pack under the New York Labor Law, *supra* iv(3)(a), and are therefore within the class for whose benefit the statute was enacted.

Further, the remedies provided under Article VI of the Labor Law suggest a legislative intention in favor of a civil remedy. As articulated by the *Chung* court, Section 198 provides for costs and remedies in the case of substantive violations of Article VI, and therefore cannot be understood except in connection with a private civil remedy against employers.[FN5]272 F.Supp.2d at 317. The plain language of § 198 assumes that employees have the ability to institute actions pursuant to the provisions of Article VI, providing that they may recover their expenses where they sue upon a wage claim,[FN6] that they may recover reasonable attorneys' fees where they bring such a suit,[FN7] and that there is a six-year statute of limitation for such suits.[FN8]Thus, § 198 assumes that employees have the ability to institute actions pursuant to the provisions of Article VI. *Id.*

FN5.Section 198 provides in relevant part:
1. In any action instituted upon a wage claim by an employee or the commissioner in which the employee prevails, the court may allow such employee in addition to ordinary costs, a reasonable sum, not exceeding fifty dollars for expenses which may be taxed as costs. No assignee of a wage claim, except the commissioner, shall be benefited by this provision.
1-a. In any action instituted upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee reasonable attorney's fees and, upon a finding that the employer's failure to pay the wage required by this article was willful, an additional amount as liquidated damages equal to twenty-five percent of the total amount of the wages found to be due.
2. The remedies provided by this article may be enforced simultaneously or consecutively so far as

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 3130562 (S.D.N.Y.)
**(Cite as: Slip Copy)**

not inconsistent with each other.

3. Notwithstanding any other provision of law, an action to recover upon a liability imposed by this article must be commenced within six years. All employees shall have the right to recover full wages, benefits and wage supplements accrued during the six years previous to the commencing of such action, whether such action is instituted by the employee or by the commissioner.

FN6.N.Y. Lab. Law § 198(1) (2007).

FN7.*Id.* at § 198(1-a).

FN8.*Id.* at § 198(3).

Finally, "the New York Labor Law reflects 'a strong legislative policy aimed at redressing the power imbalance between employer and employee.' " *Id.* at 317, quoting *Saunders v. Big Bros., Inc.,* 454 N.Y.S.2d 787, 787 (N.Y.Civ.Ct.1982).*See also P & L Group, Inc. v. Garfinkel,* 541 N.Y.S.2d 535, 537 (2d Dep't 1989) ("Labor Law §§ 197 and 198 reflect a strong legislative policy aimed at protecting an employee's right to wages earned."). Implying a right of action under Article VI is therefore consistent with the policies underlying the Labor Law.

**\*18** Section 190 of the Labor Law defines an "employer" as "any person, corporation or association employing any individual in any occupation, industry, trade, business, or service."The *Chung* court describes the Appellate Division's decision in *Wong v. Yee,* 693 N.Y.S.2d 536 (1st Dep't 1999), as standing for the proposition that, even if defendants are shareholders of a company, they can be sued under the New York Labor Law so long as they are also employers within the definition of § 190. *Chung,* 272 F.Supp.2d 314, 319.[FN9]In order to show that a defendant is an employer, a plaintiff must prove that the defendant had the power to hire and fire employees, that he supervised and controlled the conditions of employment, and that he determined rates and methods of payment. *Herman v. RSR Sec. Serv., Ltd.,* 172 F.3d 132, 139 (2d Cir.1999) ("[T]he overarching concern is whether the alleged employer possessed the power to con-

trol the workers in question, with an eye to the "economic realities" presented by the facts of each case.") (citations omitted).[FN10] The question of whether an individual entity qualifies as an "employer" is governed by the "economic reality" of the relationship. *Zheng v. Liberty Apparel Co.,* 355 F.3d 61, 66 (2d Cir.2003) (explaining that " 'economic reality' rather than 'technical concepts' is ... the test of employment" under the Fair Labor Standards Act (quoting *Goldberg v. Whitaker House Coop., Inc.,* 366 U.S. 28, 33 (1961))).

FN9. The court in *Wong v. Yee* held that a plaintiff could not proceed against shareholders of a company pursuant to BCL § 630, and also overturned the trial court's dismissal of plaintiff's cause of action under the New York Labor Law, since there was an issue of fact as to whether defendants, who were shareholders of the company, could be held liable for their violations as employers. 693 N.Y.S.2d 536 (1st Dep't 1999).

FN10. Most courts agree that the test for determining whether an entity or person is an "employer" under the New York Labor Law is the same as the test set forth in *Herman* for analyzing employer status under the Fair Labor Standards Act. *See Chung,* 272 F.Supp.2d 314, 319;*Lopez v. Silverman,* 14 F.Supp.2d 405, 411 n. 4 (S.D.N.Y.1998).

Plaintiffs offer substantial evidence that Defendant Peter Glazman exercises the type of operational and economic control over U.S. Pack employees necessary to qualify him as an employer under the Labor Law. Glazman is the sole shareholder, director and president of U.S. Pack. (Defs.' Rule 56.1 Anal. ¶¶ 2-4.) Glazman has ultimate authority to sign "Subscription Agreements" with new employees and to negotiate and set commission rates and rates of pay for drivers. (Defs.' Rule 56.1 Anal. ¶ 74.) Glazman is regarded as the "boss" and "owner" of U.S. Pack by franchisees and the managerial staff, and both supervises and sets the salar-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 17

Slip Copy
Slip Copy, 2007 WL 3130562 (S.D.N.Y.)
**(Cite as: Slip Copy)**

ies of Milan Cuba, manager Greg Kellman, and bookkeeper Dawn Rocks. (*Id.* ¶ 73.)

Glazman testified that though payments to the drivers were typically handled by the company bookkeepers, Glazman himself sometimes authorized higher payments based on individual negotiations. (Glazman 1 at 116.) Glazman also has authority to unilaterally make decisions regarding the structure and organization of U.S. Pack under the tax and franchise laws. He testified that he split U.S. Pack's New York and New Jersey customers between Network and Courier Services for tax purposes, and he withdrew U.S. Pack's franchise designation on the advice of his attorney. (Glazman 1 at 46-47, 57-58, 63-64.) Plaintiffs' testimony indicates that Glazman was frequently present at their initial employment meetings at U.S. Pack and that Glazman routinely convened meetings to notify employees of new developments in company policy, such as the issuance of new pay rates. (Maler at 15, 18-20, 79-80; Imas at 12, 20; Ondusko at 22-24; McFarland at 17-20; Teleky at 23-25.)

**\*19** Defendant Glazman exercises ultimate control over the business and personnel decisions at U.S. Pack and substantial control over its routine operations; under the economic reality test of control discussed above, Glazman therefore qualifies as an "employer" for the purposes of liability under the Labor Law. His status as a corporate officer of the U.S. Pack companies is not a bar to his liability under the Labor Law, under the logic of *Chung,* as he qualifies as an employer. Plaintiffs have therefore demonstrated the existence of a genuine issue of material fact with regard to Peter Glazman's liability under the New York Labor Law. Defendants' motion for summary judgment with respect to Plaintiffs' claims under the New York Labor Law is therefore GRANTED as to Plaintiff Maler and DENIED as to Plaintiffs Vysovsky, Petrilak, Kroshnyi, Teleky, Redaj, Bulikova, Bulik, Ondusko, McFarland, Szycowski, and Imas.

**b. Glazman's Individual Liability under the Franchise Sales Act**

The Franchise Sales Act imposes joint and several liability on:
A person who directly or indirectly controls a person liable under this article, a partner in a firm so liable, a principal executive officer or director of a corporation so liable, a person occupying a similar status or performing similar functions, and an employee of a person so liable, who materially aids in the act or transaction constituting the violation [ ... ]

N.Y. Gen. Bus. Law § 691 (2007).Section 691(3) effectively dissolves the corporate veil by making corporate officers and directors jointly and severally liable under the FSA if they "materially aid[ ] in the act [or] transaction constituting the violation."*Retail Software Serv., Inc. v. Lashlee,* 854 F.2d 18, 21 (2d Cir.1988). New York courts have found that § 691 imposes liability on executive officers, directors and controlling persons of the franchisor only when their actions "materially aid" the statutory violation. *A.J. Temple Marble & Tile, Inc. v. Union Carbide Marble Care, Inc.,* 87 N.Y.2d 574, 579 (1996) (finding that a defendant, the president of the corporation's board of directors, "materially aided" in the violation of the Franchise Sales Act where he developed the corporation's business plan, directly participated in the unlawful franchise sales, and was responsible for misrepresentations in the solicitation materials).

The facts cited above with respect to Peter Glazman's control over the company operations for purposes of establishing his liability under the Labor Law are equally relevant to the current analysis. As discussed above, Glazman's control over the employees and business operations of U.S. Pack, qualifying him as an "employer" under the Labor Law, is evidenced by multiple factors: his exclusive decision-making authority with respect to U.S. Pack's business and tax strategy; his exclusive control over the employment contracts of the management staff; his ultimate control over franchisees' employment contracts (evidenced by his signing of Subscription Agreements); and his hands-on involvement in franchisee hiring decisions and payment negotiations. The Franchise Sales Act viola-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 3130562 (S.D.N.Y.)
**(Cite as: Slip Copy)**

tions alleged by Plaintiffs involve Defendants' failure to provide Plaintiffs with copies of the Offering Prospectus at the initial employment meetings, at which Peter Glazman was described as often being present, and conduct surrounding the withdrawal of the registered franchise, which Glazman asserts was pursuant to his decision, made on advice from his counsel. Due to Glazman's ultimate authority over the conduct constituting the alleged violations of the Franchise Sales Act and his active participation in the meetings and decisions at issue, the Court finds that Glazman, like the defendant found liable in *Union Carbide,* "materially aided" in the alleged violations of the Franchise Sales Act. A genuine issue of material fact therefore exists as to Peter Glazman's liability under the Franchise Sales Act. Defendants' motion for summary judgment as to Plaintiffs' claims under the Franchise Sales Act against Peter Glazman is therefore GRANTED as to Plaintiffs Bulik, Teleky and Bulikova and DENIED as to Plaintiffs Vysovsky, Petrilak, Kroshnyi, Redaj, Maler, Ondusko, McFarland, Szycowski, Imas and Holesa.

### III. CONCLUSION

*20 For the foregoing reasons, Defendants' motion to amend their answer is GRANTED; their motion for summary judgment is GRANTED in part and DENIED in part. Defendants' motion for summary judgment is GRANTED as to Plaintiffs' claims under the Federal Insurance Contributions Act, their claims for unpaid overtime wages under the New York Labor Law and FLSA, their claims under tort and quasi-contract theories, and their contract claims. Defendants' motion for summary judgment is also GRANTED as to Plaintiffs' claims under the Franchise Sales Act with respect to Plaintiffs Bulik, Teleky and Bulikova, and Plaintiffs' claims under the New York Labor Law with respect to Plaintiff Radomir Maler. Defendants' motion for summary judgment is DENIED as to Plaintiffs' claims under the Franchise Sales Act for Plaintiffs Vysovsky, Petrilak, Kroshnyi, Redaj, Maler, Ondusko, McFarland, Szycowski, Imas and Holesa, and as to Plaintiffs' claims under the New

York Labor Law for all Plaintiffs excluding Radomir Maler.

* * *

The parties are to submit a proposed joint pretrial order not later than December 31, 2007.

If the parties agree to do so, the Court will refer this case to the Court's ADR (mediation) program, which may assist in a consensual resolution. (Should the parties op for ADR, the Court will appropriately extend the time for submission of a proposed joint pretrial order.)

SO ORDERED.

S.D.N.Y.,2007.
Vysovsky v. Glassman
Slip Copy, 2007 WL 3130562 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.