**EXHIBIT B**

# MOSES & SINGER LLP

1301 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6076

———

WRITER'S DIRECT DIAL
(212) 554- 7861

(212) 554-7800

FACSIMILE
(212) 554-7700

email: cleschack@mosessinger.com

March 8, 2000

Mr. Eli Tabib
Marco Destin, Inc.
10400 NW 33rd Street
Miami, Florida 33172

Re: Purchase Agreement with Wings et al.

Dear Mr. Tabib:

Please find enclosed pursuant to the above referenced transaction, a velobound set of photocopies of the closing documents.

If we can be of further assistance, please do not hesitate to contact either Steve Glaser at (212) 554-7820 or me at (212) 554-7861.

Sincerely yours,

MOSES & SINGER LLP

Charles M. LeSchaek
Legal Assistant

Enclosure

cc:     Morty Etgar, CPA (w/enclosure)
        Bennett D. Krasner, Esq. (w/enclosure)
        Steven Glaser, Esq. (w/o enclosure)
        Gideon Rothschild, Esq. (w/o enclosure)

243455

Purchase By Eli Tabib of the Interests
of the Levys in Marco Destin, Inc, 1000 Highway 98 East Corp.
and Panama Surf & Sport Inc. and Purchase By the Levys
of the Interest of Eli Tabib in 100 South Morehead Avenue Corp.

### Closed on February 17, 2000

For Eli Tabib:      Moses & Singer LLP by Steven Glaser, Esq.
For the Levys:      Bennett Krasner, Esq.

The closing took place at the offices of Moses & Singer LLP by facsimile transmissions, certain of the principals being situated in the State of Florida and another being in the State of New York.

Item:

1. Purchase Agreement by and among Shaul Levy ("Shaul"), Meir Levy ("Meir"), (Shaul and Meir, collectively, the "Levys"), Shaul and Meir Levy Partnership ("SML"), 100 South Morehead Avenue Corp. ("Morehead Ave. Corp."), L&L Wings, Inc. ("Wings"), Eli Tabib ("Eli"), Marco Destin, Inc. ("MDI"), Panama Surf & Sport Inc. ("Panama"), 1000 Highway 98 East Corp. ("1000 Highway"), and E&T, Inc. ("ETI").
2. Stock certificates from the Levys for their shares in MDI, 1000 Highway, and Panama, with blank stock powers.
3. Affidavit of Lost Stock Certificate from Eli for his shares in Morehead Ave. Corp., with blank stock power.
4. Resignation of the Levys as officers, directors and/or employees of MDI, Panama and 1000 Highway.
5. Resignation of Eli as officer, director and/or employee of Morehead Ave. Corp.
6. Assignment/Surrender and Assumption of Leases made by the Levys, Wings and SMP to MDI.
7. Assignment/Surrender and Assumption of Leases made by Eli, MDI and 1000 Highway to Wings and SMP.
8. Non-negotiable promissory note of Eli made to the Levys for their shares in MDI, Panama and 1000 Highway (reduced by the amount owed by the Levys to Eli for his shares in Morehead Ave. Corp.)
9. Consulting Agreement between Eli and the Levys.
10. Non-negotiable promissory notes made by each of MDI, Panama, 1000 Highway and E&T to Wings.
11. Consulting agreements between each of MDI, Panama, 1000 Highway, E&T and Wings.
12. Licensing Agreement between Wings and MDI, 1000 Highway, Panama and E&T.

Purchase Agreement effective as of November 1, 1998 by and between, on the one hand, Shaul Levy (hereinafter, "Shaul"), Meir Levy (hereinafter, "Meir"), (both Shaul Levy and Meir Levy are hereinafter collectively referred to as "Levy"), L&L Wings, Inc. (hereinafter, "L&L"), Shaul and Meir Levy Partnership (hereinafter, "SMP"), (Shaul Levy, Meir Levy, L&L and SMP, are all from time to time, hereinafter collectively referred to as "Wings"), and, on the other hand, Eli Tabib (hereinafter, "Eli"), 1000 Highway 98 East Corp. (hereinafter, "1000 Highway"), Marco-Destin Inc. (hereinafter, "Marco-Destin"), 100 South Morehead Ave. Corp. (hereinafter, "Morehead"), and Panama City Surf & Sport Inc. (hereinafter, "Panama City").

WHEREAS, Shaul, Meir and Eli are the sole shareholders of Morehead; and

WHEREAS, Shaul, Meir and Eli are the sole shareholders of 1000 Highway; and

WHEREAS, Shaul, Meir and Eli are the sole shareholders of Marco-Destin; and

WHEREAS, Shaul, Meir and Eli are the sole shareholders of Panama City; and

WHEREAS, Shaul and Meir are the sole partners in SMP; and

WHEREAS, all of the parties, in one form or another, are engaged in the business of owning and operating retail stores; and

WHEREAS, certain of the stores affected by this agreement are operated under the name "Wings"; and

WHEREAS, Marco-Destin operated various stores leased to L&L without a lease and has since abandoned them; and

WHEREAS, Marco-Destin holds leases on stores operated by L&L and desires to assign such leases to L&L; and

WHEREAS, Shaul and Meir are desirous of acquiring and 1000 Highway desires to sell certain real property; and

WHEREAS, Levy and Eli have determined that it is in their best interests and in the best interests of the various corporate entities named hereinabove to amicably part ways; and

WHEREAS, Levy and Eli have determined that it is in their best interests and in the best interests of the various corporate entities named hereinabove if Levy and Eli cease to own shares of stock in the same entities;

NOW, THEREFORE, in consideration of the covenants and agreements hereinafter set forth, and other valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the parties hereto agree as follows:

1.    Transfers of Shares of Stock

1.1.    100 South Morehead Ave. Corp. Eli hereby sells, transfers and delivers to Shaul and Meir, in equal shares, and Shaul and Meir hereby purchase, upon the terms and conditions hereinafter set forth, all Eli's shares of the capital stock of Morehead, which shares constitute one-half of the authorized and issued shares of Morehead. The purchase price being paid by Shaul and Meir for Eli's said shares is $65,743 payable by offset against the note being delivered by Eli pursuant to Paragraph 1.2, 1.3 and 1.4. The seller warrants that he has good and marketable title to such shares and that the same are subject to no lien, claim or other encumbrance.

1.2.    1000 Highway 98 East Corp. Shaul and Meir each, for himself, agree to sell, transfer and deliver to Eli and Eli hereby purchases, upon the terms and conditions hereinafter set forth, all of their shares of the capital stock of 1000 Highway, which shares constitute one-half of the authorized and issued shares of 1000 Highway. The purchase price to be paid by Eli for said shares shall be $568,107, payable by the delivery by Eli of a note therefor and for the purchase prices under paragraph 1.3, and 1.4. The sellers warrant that they have good and marketable title to such shares and that the same are subject to no lien, claim or other encumbrance.

1.3.    Marco-Destin Inc. Shaul and Meir each, for himself, hereby sell, transfer and deliver to Eli and Eli hereby purchases, upon the terms and conditions hereinafter set forth, all their shares of the capital stock of Marco-Destin, which shares constitute one-half of the authorized and issued shares of Marco-Destin. The purchase price being paid by Eli for said shares is $207,341 payable by the delivery by Eli of a note therefor and for the purchase price under Paragraph 1.2 and 1.4. The sellers warrant that they have good and marketable title to such shares and that the same are subject to no lien, claim or other encumbrance.

1.4.    Panama City Surf & Sport Inc. Shaul and Meir each for himself, hereby sell, transfer and deliver to Eli and Eli hereby purchases, upon the terms and conditions hereinafter set forth, all their shares of the capital stock of Panama City, which shares constitute one-half of the authorized and issued shares of Panama City. The purchase price being paid by Eli for said shares is $149,860, by the delivery by Eli of a note therefor and for the purchase prices under Paragraph 1.2 and 1.3. The sellers warrant that they have good and marketable title to such shares and that the same are subject to no lien, claim or other encumbrance.

1.5.     E&T, Inc.  Shaul and Meir, each for himself, hereby acknowledges and agrees that Eli is the sole owner of the shares of E&T, Inc. and that neither of them has any claim thereto.

1.6.     Wings.  Eli hereby acknowledges and agrees that he does not have any ownership interest in L&L or SMP.

2.     Transfers of Leasehold Interests and Property

2.1.     106A N. New River Drive, Surf City, NC. In consideration of the sum of $1.00, Eli and Marco-Destin shall execute, as soon as practicable after the Closing, a surrender to L&L of any leasehold right, whether oral or written, (and subject to any and all liens or encumbrances consented to by Shaul, Meir or L&L or their affiliates or of which any of them otherwise have knowledge) which he, it or they may have in and to the lease agreement entered into between Coastal Land Ventures, Inc. as Landlord and L&L as Tenant, for the premises known by the parties as store #766 located at 106A N. New River Drive, Surf City, NC. This store was formerly operated by Marco-Destin and since abandoned. The surrender agreement shall be in form and substance reasonably satisfactory to the parties.

2.2.     15 East 1st Street, Ocean Isle, NC. In consideration of the sum of $1.00, Marco-Destin shall assign, as soon as practicable after the Closing, to L&L (subject to any and all liens or encumbrances consented to by Shaul, Meir or their affiliates or of which any of them otherwise have knowledge) the lease between Ralph Shama and Yaron Shama collectively as Landlord and Marco-Destin as Tenant, together with all right, title and interest of the tenant thereunder, for the premises known by the parties as store #767 located at 15 East 1st Street,

221819v6                                                        4

Ocean Isle, NC. The assignment shall be in form and substance reasonably satisfactory to the parties. This store was formerly operated by Marco-Destin and since abandoned.

2.3.    1014 N. Lake Park Road, Carolina Beach, NC (transfer of real property). In consideration of $1.00 and a certain sum heretofore paid by it by Shaul and Meir, 1000 Highway shall, as soon as practicable after the Closing sell, transfer and convey to Shaul and Meir and/or L&L or SMP (subject to all liens and encumbrances consented to by Shaul, Meir, or their affiliates or of which any of them otherwise have knowledge), the real property, together with the buildings and improvements thereon located, known by the parties as store #765 located at 1014 N. Lake Park Road, Carolina Beach, pursuant to the form of deed reasonably satisfactory to the parties.

2.4.    1014 N. Lake Park Road, Carolina Beach, NC (transfer of leasehold interest). In consideration of the sum of $1.00, Marco-Destin shall, as soon as practicable after the Closing, assign (subject to any liens or encumbrances consented to by Shaul, Meir, L&L or their affiliates or of which any of them otherwise has knowledge) to L&L any right, title or interest it has or may claim to have as Tenant and is surrendering to L&L any claims to the business operated in the premises known by the parties as store #765 located at 1014 N. Lake Park Road, Carolina Beach, NC. Eli, 1000 Highway, pursuant to a form of assignment and surrender agreement reasonably satisfactory to the parties. This store was formerly operated by Marco-Destin and since abandoned.

2.5.    9952 Beach Road, Calabash, NC. In consideration of the sum of $1.00 and a certain sum heretofore paid by Shaul and Meir to 1000 Highway, Eli and 1000 Highway shall assign, as soon as practicable after the Closing (subject to any liens or encumbrances consented

to by Shaul, Meir, L&L or their affiliates or of which any of them has knowledge), to L&L and/or Shaul and Meir or SMP, any right, title or interest either or both of them has or may have or may claim to have in and to the land and/or buildings and improvements located thereon and known by the parties as store #605 located at 9952 Beach Road, Calabash, NC, pursuant to an assignment and surrender agreement reasonably satisfactory to the parties.

2.6.    581 South Collier Boulevard, Marco Island, FL (correction of title). The parties hereby agree and acknowledge that 1000 Highway is the lawful owner of the land with the buildings and improvements thereon located at 551 South Collier Boulevard, Marco Island, Florida and known by the parties as store #317. Shaul, Meir, Eli and 1000 Highway hereby further acknowledge and agree, each for it, him and themselves, that the deed of conveyance incorrectly reflects that they are the owners of the property while the corporate books of 1000 Highway correctly reflect that it owns the said property. In order to correct this error, Shaul, Meir, Eli and 1000 Highway, shall as soon as practicable after the Closing, for a consideration of $1.00 execute a correction deed to 1000 Highway in form reasonably satisfactory to the parties. Said property will be conveyed subject to all existing mortgage(s) and U.C.C. security interests known to and previously consented to by Eli, 1000 Highway and Marco-Destin.

2.7.    581 South Collier Boulevard, Marco Island, FL (transfer of leasehold interest). In consideration of the sum of $1.00, Wings shall, as soon as practicable after the Closing, assign to Marco-Destin or any of its affiliates which are parties hereto, pursuant to an assignment and surrender agreement in form and substance reasonably satisfactory to the parties, any right, title or interest it has or may claim to have as Tenant and will surrender to Marco-Destin or any of its affiliates which are parties hereto any claims to the business operated in the premises known by the parties as store #317 located at 581 South Collier Boulevard, Marco Island, Florida.

6

2.8.    2673 Parkway, Pigeon Forge, TN. For a consideration of $1.00 Wings shall, as soon as practicable after the Closing, assign to Marco-Destin or any of its affiliates which are parties hereto the lease between Michael Shaler as Landlord and L&L as Tenant, together with all right, title and interest of the Tenant thereunder, in and to the premises known by the parties as store #801 located at 2673 Parkway, Pigeon Forge, TN, pursuant to a assignment agreement in form and substance reasonably satisfactory to the parties.

2.9.    1251 A Miracle Strip Parkway, Ft. Walton Beach, FL. For a consideration of $1.00 Wings shall, as soon as practicable after at the Closing, assign to 1000 Highway or any of its affiliates which are parties hereto any interest it has in the lease between Noric, Inc. as Landlord and L&L as Tenant, together with all right, title and interest of the Tenant thereunder, in and to the premises known by the parties as store #748 located at 1251A Miracle Strip Parkway, Ft. Walton Beach, FL pursuant to an assignment agreement in form and substance reasonably satisfactory to the parties, which lease contains a right of assignment so long as Tenant remains liable on the lease. The parties acknowledge and agree that L&L de facto assigned the lease to 1000 Highway; that 1000 Highway built the store; and that the store is operated by Marco-Destin pursuant to a de facto sublet from 1000 Highway.

2.10.    1115 S. Highway 98 E., Destin, Fl. (Store #749) Shaul and Meir hereby warrant and represent for themselves, Wings and their other affiliates, that they have not recorded any mortgage or security interest which would affect any rights of 1000 Highway in the leasehold for store # 749 or any renewal or the improvements thereof and none of them has any claim thereto and that all improvements have been recorded on the books of Marco-Destin and/or 1000 Highway.

7

2.11.    Merrill Lynch Security Interest Release. Shaul, Meir and Wings shall as soon as practicable after the Closing (but in no event later than December 31, 2000) deliver to Eli Tabib and/or the entities controlled after the Closing by Eli releases in form suitable for filing with the appropriate public offices for any and all of the security interests held by (i) Merrill Lynch Pierce Fenner & Smith (or its business credit affiliates), or (ii) any other creditor (including but not limited to Charter)(excluding any mortgagee on a real property mortgage), for each jurisdiction in which any said creditor has filed a lien or security interest against any of the inventory, fixtures, or other personal property of any stores operated by any of such entities controlled by Eli after the Closing (including but not limited to Marco Destin). Shaul, Meir and Wings hereby agree and acknowledge that time is of the essence in respect of such final release date of December 31, 2000 and that Eli, Marco Destin and the other entities Eli controls will suffer substantial injuries if the covenant set forth in this Section 2.11 is not fully performed by such date so that any such liens or security interests are fully released against any of Eli's entities and their stores by such date.

3.    License of Mark.

L&L is at the Closing granting to Marco-Destin and certain other entities controlled by Eli after the Closing a license to use the trademark name "Wings" and certain Trade Dress for all stores currently operated by Marco-Destin and/or such other entity in the state of Florida and certain other store and locations subject to a separate licensing agreement.

4.    Execution and Delivery of Documents.

4.1.    At the closing the parties are executing and delivering by, to and among them, as necessary to effectuate the intent of this agreement, the following documents and items:

4.1.1. The certificate or certificates for the shares of stock in the respective corporations, duly endorsed so as to effectively transfer ownership of the respective corporations as provided in this agreement, together with all appropriate Federal and State transfer tax stamps affixed.

4.1.2. Letters of resignation from each director and officer of the respective corporations for which they are transferring shares, effective as of the Closing.

4.1.3. The Certificate of Incorporation and/or other organizational documents of any corporation for which shares are being transferred pursuant to this agreement, and the bylaws, minute book, stock certificate book, and seal of any such Corporation

4.1.4. Any bills, vouchers, and/or other records showing the ownership of the furniture, furnishings, equipment, and other property used in the operation of the business of any corporation for which shares are being transferred pursuant to this agreement.

4.1.5. All other books of account, records and contracts of any corporation for which shares are being transferred pursuant to this agreement.

4.1.6. All such other instruments as may be necessary or proper to transfer to a transferee hereunder all other ownership interests in a corporation for which shares are being transferred pursuant to this agreement.

4.1.7. All business licenses, permits, etc., which may be required for the business operated in a premises subject to this agreement, which licenses, permits, etc., shall be endorsed, assigned and/or otherwise transferred to the transferee of the property hereunder, in such form and manner as to meet the requirements of the issuing authority.

4.1.8.  Limited releases.

4.2.    The parties hereto agree after the Closing to execute any and all such other and further documents and take such other actions as may be required by any of them to further complete, evidence or perfect the transfers and conveyances provided for or contemplated by this agreement, including in the case of the assignments, transfers and corrective deeds of real property and leases therefor pursuant to this agreement, all deeds of conveyance, tax returns, affidavits, evidences of debt, assignments, surrenders and any and all other documents which may be necessary or required to complete the transfers of real property and leases provided for or contemplated in this agreement.

4.3.    The parties hereto agree to take all other steps necessary to assure that the documents provided for hereunder shall be valid and binding and effective to transfer property in the State (or States as the case may be) and local jurisdictions to which any property transferred hereunder may be subject.

4.4.    The parties agree to procure releases of guarantees, and/or lessee liability and or the like in respect of parties who, or which, as a result of the consummation of the transactions contemplated hereby no longer have any beneficial or equitable interest in a relevant entity lessee or borrower which is a party hereto when the relevant lease, loan agreement or the like has matured by its terms and is being renewed.

5.      Secured Debt.

5.1.    The parties acknowledge that adequate disclosure of all encumbrances has been made and that they and each of them are fully aware of and familiar with the encumbrances on the property affected by this Agreement.

5.2.    In the event a party (herein, "the defaulting party"), who, pursuant to this agreement, receives real and/or personal property, including any assignment of lease, fails to timely and duly fulfill any and/or all obligations in connection with any such encumbrance and/or other obligations assumed, (including, but not limited to, the payment of any mortgage or note or payment of rent) and such failure continues uncured for more than 120 days after notice by another party to this Agreement still obligated for the liability (the "non-defaulting party"), (whether such "non-defaulting party" is primarily liable for the obligation, as guarantor or otherwise); then, the said non-defaulting party may satisfy, fulfill and/or discharge the liability, whereupon the non-defaulting party shall be entitled to reimbursement for all payments and costs by the defaulting party and/or shall be entitled to immediate possession of the previously transferred real and/or personal property and/or leasehold interest to which the liability relates, free and clear of any right, title and/or interest of the defaulting party (unless such defaulting party shall cure such default prior to the non-defaulting party's actual taking of possession or such property).

6.    <u>Payment of Consideration</u>.

6.1.    All consideration to be paid hereunder shall be paid at the Closing (as hereinabove defined), it being understood and agreed between the parties that, with the agreement of the payee party, an obligated party hereunder may pay any part or all of the consideration by the due execution and issuance of a promissory note in form satisfactory and acceptable to the parties.

7.     Representations and Warranties.

7.1.     The parties represent and warrant, each for it, him, themselves, to the others, as follows:

7.2.     The corporations affected hereby are duly organized and validly existing under the laws of the states in which they were incorporated and are duly qualified to do business in the states in which they operate.

7.3.     The parties have full power and authority to carry out and perform their respective undertakings and obligations as provided herein.

7.4.     The execution and delivery by the parties of this agreement and the consummation of the transactions contemplated hereby have been duly authorized by the Boards of Directors of the affected corporations (and in the case of SMP by the partners of SMP) and will not conflict with or breach any provision of the certificates of incorporation or bylaws of these corporations (or the partnership agreement in the case of SMP).

7.5.     Shaul, Meir and Eli each own and have good and marketable title to the respective shares of stock in the Corporations sold by them hereunder. All of the shares are no par value, are fully paid and non-assessable, and have not been assigned, pledged or hypothecated, and are free of all liens, claims and encumbrances, except as set forth herein.

7.6.     The parties are all fully aware of the financial condition, liens and/or encumbrances and leases affecting the corporations and/or property (both real and personal), transferred pursuant to this Agreement and acknowledge that full disclosure of same has been made to them and they take subject to same, except as otherwise set forth hereinabove (including

but not limited to Section 2.11) and this provision shall not eliminate any express warranty or representation of a party set forth herein relating to the status of any leases, liens or encumbrances.

7.7.    The parties acknowledge that they are fully familiar with any written contracts or agreements for the employment of any employee of any business transferred hereby;

7.8.    The entities transferred hereunder have filed all tax returns, including without limitation, all income, excise, property, gain, sales, franchise and license tax returns, required to be filed by them prior to the date hereof. The parties are fully familiar with all such tax filings and the respective transferees hereunder agree to assume liability for the payment of all taxes owed, owing or assessed against the transferred entities. The grantee or assignee of any interest in property to be conveyed hereunder shall be responsible for any state or local transfer taxes or excises and for any recording charges.

7.9.    The parties represent each for him, it, themselves and to each other, that all rent, mortgage payments, real estate taxes and arrears, if any, and violations, which may affect any property, whether real or personal property and including any lease interest, transferred hereunder or otherwise affected by this Agreement, have been fully paid and will be paid current to the date of the transfer hereunder.

7.10.    The parties acknowledge that they have not made to each other nor has any representative or agent of any of them made any representation or warranty (expressed or implied) regarding any matter or thing affecting or relating to this agreement, except as specifically set forth in this agreement. No party shall be liable or bound in any manner by any oral or written statement, representation, warranty, agreement or information pertaining to this

agreement unless specifically set forth in this agreement or in any instrument of transfer executed at the Closing or otherwise in connection herewith.

8.    Indemnification.

Each party hereto shall indemnify and hold the other parties harmless from and against all liability, claim, loss, damage or expense, including reasonable attorneys' fees, incurred or required to be paid by such other parties by reason of any breach or failure of observance or performance of any representation, warranty or covenant or other provision of this agreement by such party.

9.    Assignment Prohibited.

No party shall assign this agreement without the prior written consent of the other parties in each instance unless specifically provided hereinabove. Any attempted assignment without consent of all parties shall be null and void.

10.    Notices.

All notices, demands and other communications required or permitted to be given hereunder shall be in writing and shall be deemed to have been properly given if delivered by hand or by overnight courier or by registered or certified mail, return receipt requested, with postage prepaid, to the party or parties (as the case may be), to be charged, at it, his, their address first above written, or at such other address as he, it, they may designate by notice given hereunder. Copies of all such notices, demands and other communications simultaneously shall be given in the aforesaid manner to Wing's attorney, Bennett D. Krasner, Esq., at 1233 Beech St. No. 49, Atlantic Beach, NY 11509, and to Eli's attorney, Gideon Rothchild, Esq., Moses and Singer LLP at 1301 Avenue of the Americas, New York, NY 10019. The respective attorneys for

the parties hereby are authorized to give any notice required or permitted hereunder and to agree to adjournments of the Closing.

11.    Further Actions.

In connection with the transactions contemplated by this agreement, the parties agree to execute and deliver such further instruments, and to take such further actions, as may be reasonably necessary or proper to effectuate and carry out the transactions contemplated in this agreement.

12.    Joint Liability, Guarantees and Sureties.

All the parties acknowledge that, during the course of their long business relationship, they and each of them have, from time to time, guaranteed, cross-guaranteed, become joint and severally liable for various obligations and acted as sureties for each other (all of these obligations are hereinafter referred to as "Potential Obligations"). The extent of the parties' liability based upon Potential Obligations is vast and the parties are unable, with any reasonable certainty, to provide any compendium to each other or even to list the obligees of any Potential Obligations. Therefore, Wings and Morehead (hereinafter "Wings' Group") on the one hand, and Eli, 1000 Highway, Marco-Destin and Panama City (hereinafter "Eli's Group"), on the other hand, agree to indemnify and hold each other harmless from and against all liability, claim, loss, damage or expense, including reasonable attorneys' fees, incurred or required to be paid by such other party by reason of any Potential Obligation. Furthermore, if any said claim, loss damage or expense relates to real and/or personal property including, but not limited to, any leasehold interest, and such indemnification (or reasonable security therefor) is not provided with 120 days after notice from the party incurring such payment to the party from whom (or from

which) indemnification is due, such first party shall be entitled, in addition to its other rights and remedies, to immediate possession of the subject real and/or personal property, including, but not limited to any leasehold interest, free and clear of any right, title and/or interest of the other party (unless the party from whom or from which indemnification is due shall have provided such indemnification prior to the other party's actual taking of possession). (By way of example, if Eli's Group or any member thereof, defaults on a mortgage payment on real property held by 1000 Highway and any party of the Wings' Group is called upon, by virtue of its guarantee to correct the default (and Eli's Group shall not have indemnified such payment within the cure period), then such party of Wings' Group shall be entitled to immediate possession of the real property free and clear of any interest any party of Eli's Group may have (unless Eli's Group shall have cured the default prior to the taking by such other party in Wings' Group of such possession))

13.   Entire Agreement.

This agreement contains all of the terms agreed upon between the parties with respect to the subject matters hereof. This agreement has been entered into after full investigation. All prior oral or written statements, representations, promises, understandings and agreements of the parties are merged into and superseded by this agreement, which alone fully and completely expresses their agreement.

14.   Miscellaneous.

14.1.   No delay or omission by any of the parties in exercising any right shall operate as a waiver of such right or of any other right.

14.2.  This agreement may not be altered, amended, changed, modified, waived or terminated in any respect or particular unless the same shall be in writing signed by the party to be bound.

14.3.  No waiver by any party of any breach hereunder shall be deemed a waiver of any other or subsequent breach.

14.4.  Any Exhibits annexed to this agreement are an integral part of this agreement, and where there is any reference to this agreement it shall be deemed to include any said Exhibits.

14.5.  This agreement shall be governed solely by the laws of the State of New York without giving effect to any conflict of laws provisions thereof.  Any and all matters of dispute between the parties hereunder or in connection herewith shall be resolved in New York County, New York State by arbitration before the American Arbitration Association and shall include the jurisdiction in the federal courts of the Southern District of New York and of the state courts of the State of New York in New York County to enforce such arbitration and/or confirm any award thereof.  The parties hereby consent to jurisdiction as set forth herein.  Notwithstanding the foregoing, any party may apply to a court of competent jurisdiction for a temporary restraining order, preliminary or permanent injunction or any other form of relief to assure that any judgment awarded in arbitration is not rendered ineffective and/or prevent termination of possession or other loss of a right or property interest prior to an opportunity to cure in the event of dispute hereunder as to a party's rights and/or obligations.  Furthermore, notwithstanding the foregoing, in the event of a timely objection to arbitration, either party may commence a proceeding in Supreme Court of the State of New York and County of New York and/or Federal District Court for the Southern District of New York.

14.6.  If any provision of this agreement shall be unenforceable or invalid, such unenforceability or invalidity shall not affect the remaining provisions of this agreement.

14.7.  Upon such execution and delivery, this agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and permitted assigns.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals as of the date first above written.

_____        _____
Shaul Levy, individually                Meir Levy, individually

_____
Eli Tabib, individually


L&L Wings, Inc.                          1000 Highway 98 East Corp.


_____        _____
By:                                     By:


Marco-Destin Inc.                       100 South Morehead Ave. Corp.


_____        _____
By:                                     By:


Panama City Surf & Sport Inc.           Shaul & Meir Levy Partnership


_____        _____
By:                                     By:

E&T, Inc.
            \
_____
By:


221819v6                       18

14.6.  If any provision of this agreement shall be unenforceable or invalid, such unenforceability or invalidity shall not affect the remaining provisions of this agreement.

14.7.  Upon such execution and delivery, this agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and permitted assigns.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals as of the date first above written.

_____          _____
Shaul Levy, individually             Meir Levy, individually

_____
Eli Tabib, individually

L&L Wings, Inc.                      1000 Highway 98 East Corp.

By: _____          By: _____

Marco-Destin Inc.                   100 South Morehead Ave. Corp.

By: _____          By: _____

Panama City Surf & Sport Inc.       Shaul & Meir Levy Partnership

By: _____          By: _____

E&T, Inc.

By: _____

221819v6                              18



INCORPORATED UNDER THE LAWS OF THE STATE OF FLORIDA

# MARCO DESTIN, INC.

The Corporation is authorized to issue 1000 Common Shares - No Par Value

**This Certifies that** ***SHAUL LEVY***

is the owner of

****TWENTY-FIVE****

fully paid and non-assessable Shares of the above Corporation transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed.

In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and to be sealed with the Seal of the Corporation.

Dated  FEBRUARY 15, 1995

Stock Power
Marco Destin Inc.

For Value Received, each of Shaul Levy and Meir Levy does hereby sell, assign and transfer
unto Eli Tabib (SS#_____/_____), their respective shares, aggregating
one-half of all the authorized and issued shares of the common stock of Marco Destin, Inc. (the
"Corporation"), standing in their respective names on the books of said Corporation, represented
by Certificate Number(s) _____ and each does hereby irrevocably constitute and appoint
Eli Tabib, attorney to transfer the said stock belonging to him on the books of the Corporation
with full power of substitution in the premises.

Dated:_____

_____
Shaul Levy

_____
Meir Levy

In presence of:

_____
Witness

Document #: 237168



INCORPORATED UNDER THE LAWS OF THE STATE OF FLORIDA

# MARCO DESTIN, INC.

The Corporation is authorized to issue 1000 Common Shares — No Par Value

**This Certifies That**

***MEIR LEVY***

is the owner of

***TWENTY-FIVE****

***fully paid and
non-assessable Shares of the above Corporation transferable only on the
books of the Corporation by the holder hereof in person or by duly authorized
Attorney upon surrender of this Certificate properly endorsed.

*In Witness Whereof, the said Corporation has caused this Certificate to be signed
by its duly authorized officers and to be sealed with the Seal of the Corporation.*

Dated, FEBRUARY 15, 1995

Stock Power
Marco Destin Inc.

For Value Received, each of Shaul Levy and Meir Levy does hereby sell, assign and transfer
unto Eli Tabib (SS#_____ _____/_____), their respective shares, aggregating
one-half of all the authorized and issued shares of the common stock of Marco Destin, Inc. (the
"Corporation"), standing n their respective names on the books of said Corporation, represented
by Certificate Number(s) _____ and each does hereby irrevocably constitute and appoint
Eli Tabib, attorney to trarsfer the said stock belonging to him on the books of the Corporation
with full power of substit ation in the premises.

Dated:_____ ___

_____
Shaul Levy

_____
Meir Levy

In presence of:

_____
Witness



1000 HIGHWAY 98 EAST CORP.

INCORPORATED UNDER THE LAWS OF THE STATE OF FLORIDA

The Corporation is authorized to issue 200 Common Shares, No Par Value

This Certifies that

***TWENTY-FIVE***

***SHAUL LEVY***

is the owner of

***Twenty-Five*** fully paid and
non-assessable Shares of the above Corporation transferable only on the
books of the Corporation by the holder hereof in person or by duly authorized
Attorney upon surrender of this Certificate properly endorsed.

In Witness Whereof, the said Corporation has caused this Certificate to be signed
by its duly authorized officers and to be sealed with the Seal of the Corporation.

Dated    JANUARY 5, 1995

## Stock Power
### 1000 Highway 98 East Corp.

For Value Received, each of Shaul Levy and Meir Levy does hereby sell, assign and transfer unto Eli Tabib (SS#_____ / _____), their respective shares, aggregating one-half of all the authorized and issued shares of the common stock of 1000 Highway 98 East Corp. (the "Corporation"), standing in their respective names on the books of said Corporation, represented by Certificate Number(s) _____ and each does hereby irrevocably constitute and appoint Eli Tabib, attorney to transfer the said stock belonging to him on the books of the Corporation with full power of substitution in the premises.

Dated:_____

_____
Shaul Levy

_____
Meir Levy

In presence of:

_____
Witness

Document #: 237170



NUMBER 2

1000 HIGHWAY 98 EAST CORP.

INCORPORATED UNDER THE LAWS OF THE STATE OF FLORIDA

The Corporation is authorized to issue 200 Common Shares — No Par Value.

This Certifies that ***MEIR LEVY*** is the owner of

***TWENTY-FIVE*** fully paid and

non-assessable Shares of the above Corporation transferable only on the

books of the Corporation by the holder hereof in person or by duly authorized

Attorney upon surrender of this Certificate properly endorsed.

In Witness Whereof, the said Corporation has caused this Certificate to be signed

by its duly authorized officers and to be sealed with the Seal of the Corporation.

Dated    JANUARY 5, 1995

Stock Power
1000 Highway 98 East Corp.

For Value Received, each of Shaul Levy and Meir Levy does hereby sell, assign and transfer
unto Eli Tabib (SS#_____/_____), their respective shares, aggregating
one-half of all the authorized and issued shares of the common stock of 1000 Highway 98 East
Corp. (the "Corporation"), standing in their respective names on the books of said Corporation,
represented by Certificate Number(s) _____ and each does hereby irrevocably constitute
and appoint Eli Tabib, attorney to transfer the said stock belonging to him on the books of the
Corporation with full power of substitution in the premises.

Dated:_____

_____
Shaul Levy

_____
Meir Levy

In presence of:

_____
Witness



PANAMA SURF & SPORT, INC.

TOTAL AUTHORIZED ISSUE
1,000 SHARES PAR VALUE $1.00 EACH

COMMON STOCK

See Reverse for
Certain Definitions

This is to Certify that _____ is the owner of

**ONE HUNDRED**

fully paid and non-assessable shares of the above Corporation transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed.

**Witness**, the seal of the Corporation and the signatures of its duly authorized officers.

**Dated** this 5th day of February, 1998.

SHAUL LEVI

SECRETARY

PRESIDENT

Stock Power
Panama Surf & Sport, Inc.

For Value Received, each of Shaul Levy and Meir Levy does hereby sell, assign and transfer
unto Eli Tabib (SS#_____/_____), their respective shares, aggregating
one-half of all the authorized and issued shares of the common stock of Panama Surf & Sport,
Inc. (the "Corporation"), standing in their respective names on the books of said Corporation,
represented by Certificate Number(s) _____ and each does hereby irrevocably constitute
and appoint Eli Tabib, attorney to transfer the said stock belonging to him on the books of the
Corporation with full power of substitution in the premises.

Dated:_____

_____
Shaul Levy

_____
Meir Levy

In presence of:

_____
Witness

Document #: 237169



PANAMA SURF & SPORT, INC.

TOTAL AUTHORIZED ISSUE
1,000 SHARES PAR VALUE $1.00 EACH
COMMON STOCK

**This is to Certify that**

**MEIR LEVY**

is the owner of

****ONE HUNDRED****

fully paid and non-assessable shares of the above Corporation transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed.

**Witness,** the seal of the Corporation and the signatures of its duly authorized officers.

**Dated** this 5th day of February, 1998.

SECRETARY

PRESIDENT

See Reverse for
Certain Definitions

Stock Power
Panama Surf & Sport, Inc.

For Value Received, each of Shaul Levy and Meir Levy does hereby sell, assign and transfer
unto Eli Tabib (SS#_____ / _____ ), their respective shares, aggregating
one-half of all the authorized and issued shares of the common stock of Panama Surf & Sport,
Inc. (the "Corporation"), standing in their respective names on the books of said Corporation,
represented by Certificate Number(s) _____ and each does hereby irrevocably constitute
and appoint Eli Tabib, attorney to transfer the said stock belonging to him on the books of the
Corporation with full power of substitution in the premises.

Dated:_____

Shaul Levy _____

Meir Levy _____

In presence of:

_____

Witness

Document #: 237169

## AFFIDAVIT OF LOST STOCK CERTIFICATE

STATE OF _____

COUNTY OF _____ ss:

Eli Tabib, being duly sworn, deposes and says:

I am the owner of one-half of all the authorized and issued shares of the common no par value stock of 100 South Morehead Ave. Corp. and make this affidavit in connection with the sale of my shares of stock to Shaul Levy and Meir Levy.

The stock certificate or certificates representing the one-half of all the authorized and issued shares have been lost. I hereby certify that I have neither otherwise sold, transferred, conveyed, pledged, hypothecated or otherwise encumbered my one-half of all the authorized and issued shares of stock.

I further represent that in the event the said certificate or certificates are located I will promptly endorse same to Shaul and Meir Levy in connection with the sale.

_____
Eli Tabib

Sworn to before me this _____ day of
_____, 2000.


_____
Notary Public
My commission expires on _____.

Stock Power

For Value Received, Eli Tabib, does hereby sell, assign and transfer unto Shaul and Meir Levy (SS#_____/_____)) one-half of all the authorized and issued shares of the common no par value stock of 100 South Morehead Ave. Corp. (the "Corporation") standing in his name on the books of said Corporation, represented by Certificate Number (s)_____ and does hereby irrevocably constitute and appoint Shaul Levy and/or Meir Levy, attorney to transfer the said stock on the books of the Corporation with full power of substitution in the premises.

Dated: _____

_____
Eli Tabib

In presence of:

_____
Witness

## RESIGNATION

Each of the undersigned hereby resigns any officership or directorship and/or any employment status which the undersigned may have in or with respect to the following corporations, effective as of November 1, 1998:

> 1000 Highway 98 East Corp.
>
> Marco Destin, Inc.
>
> Panama Surf and Sport Shop Inc.

_____
Shaul Levy

_____
Meir Levy

Dated:      February __17, 2000

<u>RESIGNATION</u>

Each of the undersigned hereby resigns any officership or directorship and/or any employment status which the undersigned may have in or with respect to the following corporations, effective as of November 1, 1998:

        1000 Highway 98 East Corp.

        Marco Destin, Inc.

        Panama Surf and Sport Shop Inc.


                                      Shaul Levy

                                        Meir Levy

Dated:        February _17_, 2000

## RESIGNATION

The undersigned hereby resigns any officership or directorship and/or any employment status which the undersigned may have in or with respect to the following corporations, effective as of November 1, 1998:

L&L Wings, Inc.

100 S. Morehead Ave. Corp.

Eli Tabib

Dated:        February 12 , 2000

237136

## ASSIGNMENT / SURRENDER AND ASSUMPTION OF LEASES

**KNOW THAT**, one dollar ($1.00) and other valuable consideration, Shaul Levy, Meir Levy, L & L Wings, Inc., a South Carolina corporation and/or Shaul & Meir Levy Partnership, a South Carolina partnership, each having an address at 18 East 42nd Street, New York, NY 10017, (collectively hereinafter referred to as "Assignors") hereby assign and/or surrender unto Marco Destin, Inc., a Florida corporation, having an address at 10400 Northwest 33rd Street, Miami, Florida (hereinafter referred to as "Assignee"), all right, title and interest of the lessees and/or leasehold interests under those certain Leases more particularly described in Exhibit A hereto,

**TO HAVE AND TO HOLD** the same unto Assignee and the heirs, executors, administrators, legal representatives, successors and assigns of Assignee from the date hereof for the rest of the terms of said Leases, as said Leases may be modified or extended.

This Assignment/Surrender and Assumption of Leases is given without representation or warranty by Assignors, whether express or implied, and without recourse against Assignors in any possible event.

Assignee hereby assume and agree to pay and perform all of the obligations of the lessees under the Leases. Assignee hereby agree to indemnify and hold Assignors harmless from and against any and all liability, claim, loss, damage or expense, including reasonable attorneys' fees, incurred in connection with, or arising or asserted with respect to the Leases or this Assignment.

**IN WITNESS WHEREOF**, Assignors and Assignee have duly executed this Assignment and Assumption of Leases as of November 1, 1998.

_____

Shaul Levy

_____

Meir Levy

L & L WINGS, INC.

By _____
Shaul Levy, President

SHAUL & MEIR LEVY PARTNERSHIP

By _____
Shaul Levy, General Partner

MARCO DESTIN, INC.

By _____
Eli Tabib, President

2

**IN WITNESS WHEREOF**, Assignors and Assignee have duly executed this Assignment and Assumption of Leases as of November 1, 1998.

_____
Shaul Levy

_____
Meir Levy

L & L WINGS, INC.

By _____
Shaul Levy, President

SHAUL & MEIR LEVY PARTNERSHIP

By _____
Shaul Levy, General Partner

MARCO DESTIN, INC.

By _____
Eli Tabib, President

2

## EXHIBIT A

The following leased property:

1.   581 South Collier Boulevard, Marco Island, Florida, commonly known as Store #317.

2.   2673 Parkway, Pigeon Forge, Tennessee, commonly known as Store #801.

3.   1251 A Miracle Strip Parkway, Ft. Walton Beach, Florida, commonly known as Store #748.

3

## ASSIGNMENT / SURRENDER AND ASSUMPTION OF LEASES

**KNOW THAT**, one dollar ($1.00) and other valuable consideration, Eli Tabib, Marco Destin, Inc., a Florida corporation and 1000 Highway 98 East Corp., a Florida corporation, each having an address at 10400 Northwest 33rd Street, Miami, Florida, (collectively hereinafter referred to as "Assignors"), hereby assign and/or surrender unto L & L Wings, Inc., a South Carolina corporation and/or Shaul & Meir Levy Partnership, a South Carolina partnership, each having an address at 18 East 42nd Street, New York, NY 10017 (collectively hereinafter referred to as "Assignees"), all right, title and interest of the lessees and/or leasehold interests under those certain Leases more particularly described in Exhibit A hereto,

**TO HAVE AND TO HOLD** the same unto Assignees and the heirs, executors, administrators, legal representatives, successors and assigns of Assignees from the date hereof for the rest of the terms of said Leases, as said Leases may be modified or extended.

This Assignment/Surrender and Assumption of Leases is given without representation or warranty by Assignors, whether express or implied, and without recourse against Assignors in any possible event.

Assignees hereby assume and agree to pay and perform all of the obligations of the lessees under the Leases. Assignees hereby agree to indemnify and hold Assignors harmless from and against any and all liability, claim, loss, damage or expense, including reasonable attorneys' fees, incurred in connection with, or arising or asserted with respect to the Leases or this Assignment.

02/11/00  16:54 FAX 212  584 7700    MOSES & SINGER LLP    PAGE    28
@028/033

**IN WITNESS WHEREOF**, Assignors and Assignees have duly executed this Assignment and Assumption of Leases as of November 1, 1998.

Eli Tabib

MARCO DESTIN, INC.

By
Eli Tabib, President

1000 HIGHWAY 98 EAST CORP.

By
Eli Tabib, President

L & L WINGS, INC.

By
Shaul Levy, President

SHAUL & MEIR LEVY PARTNERSHIP

By
Shaul Levy, General Partner

2

## EXHIBIT A

The following leased property:

1.  106A N. New River Drive, Surf City, North Carolina, commonly known as Store #766.

2.  15 East 1st Street, Ocean Isle, North Carolina, commonly known as Store #767.

3.  1014 N. Lake Park Road, Carolina, Beach, North Carolina, commonly known as Store #765.

4.  9952 Beach Road, Calabash, North Carolina, commonly known as Store #605.

3

# NON-NEGOTIABLE NOTE

New York, New York
As of October 31, 1999

FOR VALUE RECEIVED, Eli Tabib ("Maker"), having an address c/o Marco-Destin Inc., at 10400 N.W. 33rd St., Miami, Florida hereby promises to pay to Shaul Levy and Meir Levy ("Payee"), having an address at c/o L&L Wings, Inc., 18 E. 42nd St., New York, N.Y., or such other address as may be designated by Payee by written notice to Maker, the sum of $859,565, with interest at the per annum rate of 6.31 percent.

The Note shall be payable in ten equal annual installments of principal and interest in the amount of $118,508.62, commencing October 31, 2000, and continuing on each anniversary of such date thereafter until October 31, 2009, when the remaining unpaid amount of the Note and accrued interest shall be due and payable.

This Note may be prepaid in whole or in part, at any time.

This Note shall be governed by and be enforceable in accordance with the laws of the State of New York applicable to contracts made and to be performed wholly within such State.

This Note may not be modified, orally or otherwise, except by a writing duly executed by the Payee and the Maker.

_____
Eli Tabib

234425v3

## CONSULTING AGREEMENT
### (ELI TABIB)

This Consulting Agreement dated as of October 31, 1999 by and between Shaul Levy and Meir Levy, (collectively, the "Shareholders"), having an address c/o L&L Wings Inc., a South Carolina corporation (the "Company"), 18 E. 42nd Street, New York, New York, and Eli Tabib (the "Consultant"), having an address c/o Marco-Destin Inc., 10400 N.W. 33rd St., Miami, Florida.

## P R E A M B L E

The Company and its affiliates sell at retail clothing and related merchandise in various locations in, inter alia, the Southern United States. The Shareholders control the Company. The Consultant is chief executive officer of various clothing retailers with operations in the Southern United States. In the course of his duties with such retailers, the Consultant has become expert in the management and operation of the industry in the Southern United States area. The Shareholders desire to make available to themselves and to the officers of the Company and those of its affiliates the consulting services of Consultant and Consultant is willing to do so from time to time, all on the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the premises and the mutual covenants contained herein and for other good and valuable consideration heretofore or simultaneously with the execution hereof furnished by each party to the other, the sufficiency of which the parties hereby acknowledge, the parties hereto hereby agree as follows:

1.   Consulting.

The Shareholders hereby retain Consultant and Consultant hereby agrees to consult with the Shareholders and the Company and its executives (and those of its affiliates) for the period set forth in Section 2 hereof, subject to and upon the other terms and conditions herein provided.

2.   Term of Consulting.

The period of Consultant's consulting under this Agreement shall commence as of the date hereof and shall continue thereafter until October 31, 2009 (the "Term"). In the event that the Consultant continues to consult with the Shareholders and/or the Company and its affiliates after the end of the Term, such continued employment shall be subject to such terms and conditions as the Shareholders and the Consultant may then agree.

3.      Responsibilities and Duties.

(a)      During the period of his retention hereunder, Consultant agrees to consult with the Shareholders and the Company and its executives (and those of its affiliates) at the request of the Shareholders given to him from time to time and upon reasonable notice (and, in this connection, taking into account the reasonable needs of Consultant's other enterprises and interests for his services). Consultant shall not be required as a condition of his compensation to render any minimum level of consultation during any period , it being understood and agreed that Consultant shall render his services only as requested by the Shareholders hereunder and further that such services shall be rendered by Consultant solely within (or from) the State of Florida and finally that Consultant has in the past furnished other services and other good and sufficient consideration for the obligations of the Company hereunder in addition to his undertakings hereunder. Any travel or other expenses required of Consultant (for example to the Company's North and South Carolina stores) to render services hereof shall be at the sole expense of the Shareholders and shall be payable upon presentation of suitable documentation therefor by Consultant.

(b)      This Agreement shall not be deemed to create any employer-employee relationship.

4.      Compensation.

(a)      For all services rendered by Consultant during his retention hereunder, the Shareholders shall pay to Consultant the annual amount of $118,508.62 during the Term, payable in arrears annually on each anniversary date hereof, the final payment to be due on October 31, 2009.  The Shareholders shall be jointly and severally liable therefor.

5.      Death or Disability.

(a)      In the event that by reason of any disability, Consultant shall be unable to perform his duties hereunder, he shall, nevertheless, be entitled to continue to receive the compensation due hereunder until the end of the Term on October 31, 2009.  During any such period Consultant shall endeavor to make available to the Shareholders for consultation other appropriate executives in his organizations without additional compensation.

(b) In the event of the death of Consultant either during his disability or otherwise during the period of his employment hereunder, the Shareholders shall continue to pay to Consultant's beneficiary or beneficiaries designated by written notice to the Company or, if there be none, to Consultant's estate, his annual compensation otherwise due hereunder and such compensation shall in no event cease until the end of the Term on October 31, 2009.

6.      Binding Agreement.

This Agreement shall be binding upon, and inure to the benefit of, Consultant and the Shareholders and their respective heirs, personal representatives, successors and assigns. Neither the Shareholders nor the Consultant may assign or otherwise encumber this Agreement

or any rights or obligations of such party hereunder without the prior written consent of the other party.

7.    Modification and Waiver.

(a)    Amendment of Agreement. This Agreement may not be modified or amended, terminated or cancelled except by a written instrument signed by the parties hereto.

(b)    Waiver. No term or condition of this Agreement shall be deemed to have been waived, nor shall there be any estoppel against the enforcement of any provision of this Agreement, except by written instrument of the party charged with such waiver or estoppel. No such written waiver shall be deemed a continuing waiver unless specifically stated therein, and each such waiver shall operate only as to the specific term or condition waived and shall not constitute a waiver of such term or condition for the future or as to any act other than that specifically waived.

8.    Severability.

If, for any reason, any provision of this Agreement is held invalid, such invalidity shall not affect any other provision of this Agreement not held so invalid, and each such other provision shall to the full extent consistent with law continue in full force and effect.

9.    Headings.

The headings of the Sections herein are included solely for convenience of reference and shall not control the meaning or interpretation of any of the provisions of this Agreement.

10.    Governing Law.

This Agreement shall be governed solely by the laws of the State of New York without giving effect to any conflict of laws provisions thereof. Any and all matters of dispute between the parties hereunder or in connection herewith shall be resolved in New York County, New York State by arbitration before the American Arbitration Association and shall include the jurisdiction in the federal courts of the Southern District of New York and of the state courts of the State of New York in New York County to enforce such arbitration and/or confirm any award thereof. Licensee and Licensor hereby consent to jurisdiction as set forth herein. Furthermore, notwithstanding the foregoing, in the event of a timely objection to arbitration, either party may commence a proceeding in Supreme Court of the State of New York and County of New York and/or Federal District Court for the Southern District of New York.

11.    Notices.

Any notices or other communications to be given hereunder shall be deemed to have been given if delivered personally to the party to which directed, or if mailed, then by registered or certified mail, return receipt requested, directed to the address of the party first

hereinabove set forth.  Any party may change his or its address for purposes of this Section 11 by giving written notice thereof hereunder.

      12.    Due Capacity.

      The Shareholders hereby warrant and represent to the Consultant that they have the full capacity and power to delivery and perform this Agreement.

      13.    Attorneys' Fees.

      In the event that it shall be necessary for either party hereto to retain legal counsel and/or incur other costs and expenses in connection with the enforcement hereof whether by a judicial action or proceeding or by arbitration, such party shall to the extent it shall prevail (whether by settlement or by judicial or arbitral action or otherwise) be entitled to recover from the other party such first party's reasonable attorneys' fees and costs and expenses in connection with such enforcement.

      IN WITNESS WHEREOF, the parties have signed this Agreement, in the City of New York as of the day and year first above written.

 

_____
SHAUL LEVY, individually

_____
MEIR LEVY, individually

_____
ELI TABIB, individually

hereinabove set forth. Any party may change his or its address for purposes of this Section 11 by giving written notice thereof hereunder.

12.    Due Capacity.

The Shareholders hereby warrant and represent to the Consultant that they have the full capacity and power to delivery and perform this Agreement.

13.    Attorneys' Fees.

In the event that it shall be necessary for either party hereto to retain legal counsel and/or incur other costs and expenses in connection with the enforcement hereof whether by a judicial action or proceeding or by arbitration, such party shall to the extent it shall prevail (whether by settlement or by judicial or arbitral action or otherwise) be entitled to recover from the other party such first party's reasonable attorneys' fees and costs and expenses in connection with such enforcement.

IN WITNESS WHEREOF, the parties have signed this Agreement, in the City of New York as of the day and year first above written.

_____
SHAUL LEVY, individually


_____
MEIR LEVY, individually


_____
ELI TABIB, individually

234426v5                                             4

## NON-NEGOTIABLE NOTE

New York, New York
As of October 31, 1999

FOR VALUE RECEIVED, Marco Destin, Inc. ("Maker"), having an address at 10400 N.W. 33rd St., Miami, Florida hereby promises to pay to L&L Wings, Inc. ("Payee"), having an address at 18 E. 42nd St., New York, N.Y., or such other address as may be designated by Payee by written notice to Maker, the sum of $2,322,310, with interest at the per annum rate of 6.31 per cent.

The Note shall be payable in ten equal annual installments of principal and interest in the amount of $320,177.94, commencing October 31, 2000, and continuing on each anniversary of such date thereafter until October 31, 2009, when the remaining unpaid amount of the Note and accrued interest shall be due and payable.

This Note may be prepaid in whole or in part, at any time.

This Note shall be governed by and be enforceable in accordance with the laws of the State of New York applicable to contracts made and to be performed wholly within such State.

This Note may not be modified, orally or otherwise, except by a writing duly executed by the Payee and the Maker.

Marco Destin, Inc.

By

136033v3

NON-NEGOTIABLE NOTE

New York, New York
As of October 31, 1999

FOR VALUE RECEIVED, Panama Surf & Sport Inc. ("Maker"), having an address at 10400 N.W. 33rd St., Miami, Florida hereby promises to pay to L&L Wings, Inc. ("Payee"), having an address at 18 E. 42nd St., New York, N.Y., or such other address as may be designated by Payee by written notice to Maker, the sum of $24,000, with interest at the per annum rate of 6.31 per cent.

The Note shall be payable in ten equal annual installments of principal and interest in the amount of $3,308.89, commencing October 31, 2000, and continuing on each anniversary of such date thereafter until October 31, 2009, when the remaining unpaid amount of the Note and accrued interest shall be due and payable.

This Note may be prepaid in whole or in part, at any time.

This Note shall be governed by and be enforceable in accordance with the laws of the State of New York applicable to contracts made and to be performed wholly within such State.

This Note may not be modified, orally or otherwise, except by a writing duly executed by the Payee and the Maker.

Panama Surf & Sport, Inc.

By: _____

236037v3

## NON-NEGOTIABLE NOTE

New York, New York
As of October 31, 1999

FOR VALUE RECEIVED, 1000 Highway 98 East Corp. ("Maker"), having an address at 10400 N.W. 33rd St., Miami, Florida hereby promises to pay to L&L Wings, Inc. ("Payee"), having an address at 18 E. 42nd St., New York, N.Y., or such other address as may be designated by Payee by written notice to Maker, the sum of $1,355,988, with interest at the per annum rate of 6.31 per cent.

The Note shall be payable in ten equal annual installments of principal and interest in the amount of $186,950.68, commencing October 31, 2000, and continuing on each anniversary of such date thereafter until October 31, 2009, when the remaining unpaid amount of the Note and accrued interest shall be due and payable.

This Note may be prepaid in whole or in part, at any time.

This Note shall be governed by and be enforceable in accordance with the laws of the State of New York applicable to contracts made and to be performed wholly within such State.

This Note may not be modified, orally or otherwise, except by a writing duly executed by the Payee and the Maker.

1000 Highway 98 East Corp.

By: _____

236935v2

## NON-NEGOTIABLE NOTE

New York, New York
As of October 31, 1999

FOR VALUE RECEIVED, E&T Inc. ("Maker") having an address at 10400 N.W. 33rd St., Miami, Florida hereby promises to pay to L&L Wings, Inc. ("Payee"), having an address at 18 E. 42nd St., New York, N.Y., or such other address as may be designated by Payee by written notice to Maker, the sum of $341,702, with interest at the per annum rate of 6.31 per cent.

The Note shall be payable in ten equal annual installments of principal and interest in the amount of $47,110.61, commencing October 31, 2000, and continuing on each anniversary of such date thereafter until October 31, 2009, when the remaining unpaid amount of the Note and accrued interest shall be due and payable.

This Note may be prepaid in whole or in part, at any time.

This Note shall be governed by and be enforceable in accordance with the laws of the State of New York applicable to contracts made and to be performed wholly within such State.

This Note may not be modified, orally or otherwise, except by a writing duly executed by the Payee and the Maker.

E&T Inc.

By:

236016v3

## CONSULTING AGREEMENT
### (MARCO DESTIN, INC.)

This Consulting Agreement dated as of October 31, 1999 by and between L & L Wings, Inc., a South Carolina corporation (the "Company"), having its principal office at 18 E. 42nd Street, New York, N.Y., and Marco Destin, Inc. (the "Consultant"), having an address at 10400 N.W. 33rd St., Miami, Florida.

## P R E A M B L E

The Company and its affiliates sell at retail clothing and related merchandise in various locations in, inter alia, the Southern United States. The Consultant and its executives have become expert in the management and operation of the industry in the Southern United States area. The Company desires to make available to its officers and those of its affiliates the consulting services of Consultant and its executives and Consultant is willing to make the same available from time to time, all on the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the premises and the mutual covenants contained herein and for other good and valuable consideration heretofore or simultaneously with the execution hereof furnished by each party to the other, the sufficiency of which the parties hereby acknowledge, the parties hereto hereby agree as follows:

1.  Consulting.

The Company hereby retains Consultant and Consultant hereby agrees to provide its executives to consult with the Company and its executives (and those of its affiliates) for the period set forth in Section 2 hereof, subject to and upon the other terms and conditions herein provided.

2.  Term of Consulting.

The period of Consultant's consulting under this Agreement shall commence as of the date hereof and shall continue thereafter until October 31, 2009 (the "Term"). In the event that the Consultant continues to consult with the Company after the end of the Term, such continued employment shall be subject to such terms and conditions as the Company and the Consultant may then agree.

3.  Responsibilities and Duties.

(a)  During the period of his retention hereunder, Consultant agrees to provide its executives to consult with the Company and its executives (and those of its affiliates) at their request given to it from time to time and upon reasonable notice (and, in this connection,

taking into account the reasonable needs of the Consultant for the services of its executives in its own business). Consultant and its executives shall not be required as a condition of its compensation to render any minimum level of consultation during any period , it being understood and agreed that Consultant shall render its services through its executives only as requested by the Company and its affiliates hereunder and further that such services shall be rendered by Consultant and its executives solely within (or from) the State of Florida and finally that Consultant has in the past furnished other services and other good and sufficient consideration for the obligations of the Company hereunder in addition to its undertakings hereunder. Any travel or other expenses required of Consultant and its executives (for example, for travel to the Company's stores in North and South Carolina) to render services hereof shall be at the sole expense of the Company and shall be payable upon presentation of suitable documentation therefor by Consultant.

(b)    This Agreement shall not be deemed to create any employer-employee relationship or joint venture.

4.    Compensation.

(a)    For all services rendered by Consultant and its executives during its retention hereunder, the Company shall pay to Consultant the annual amount of $320,177.94 during the Term, payable in arrears annually on each anniversary date hereof, the final payment to be due on October 31, 2009.

5.    Death or Disability; Merger etc.

(a)    In the event that by reason of any death or disability of its executives, Consultant shall be unable to perform its duties hereunder, it shall, nevertheless, be entitled to continue to receive the compensation due hereunder until the end of the Term on October 31, 2009.

(b) In the event of any merger, consolidation, sale or liquidation of Consultant during the term, the Company shall continue to pay to Consultant's successors or assigns (including but not limited to its shareholders) designated by written notice to the Company, its annual compensation otherwise due hereunder and such compensation shall not cease until the end of the Term on October 31, 2009. If Consultant is a surviving entity in any merger or consolidation or other such transaction it shall endeavor to continue to make its executives available hereunder but its compensation hereunder shall in no event cease until the end of the Term on October 31, 2009.

6.    Binding Agreement.

This Agreement shall be binding upon, and inure to the benefit of, Consultant and the Company and their respective, successors and assigns. Neither the Company nor the Consultant may assign or otherwise encumber this Agreement or any rights or obligations of such party hereunder without the prior written consent of the other party.

7.    Modification and Waiver.

(a)    Amendment of Agreement.  This Agreement may not be modified or amended, terminated or cancelled except by a written instrument signed by the parties hereto.

(b)    Waiver.  No term or condition of this Agreement shall be deemed to have been waived, nor shall there be any estoppel against the enforcement of any provision of this Agreement, except by written instrument of the party charged with such waiver or estoppel. No such written waiver shall be deemed a continuing waiver unless specifically stated therein, and each such waiver shall operate only as to the specific term or condition waived and shall not constitute a waiver of such term or condition for the future or as to any act other than that specifically waived.

8.    Severability.

If, for any reason, any provision of this Agreement is held invalid, such invalidity shall not affect any other provision of this Agreement not held so invalid, and each such other provision shall to the full extent consistent with law continue in full force and effect.

9.    Headings.

The headings of the Sections herein are included solely for convenience of reference and shall not control the meaning or interpretation of any of the provisions of this Agreement.

10.    Governing Law.

This Agreement shall be governed solely by the laws of the State of New York without giving effect to any conflict of laws provisions thereof. Any and all matters of dispute between the parties hereunder or in connection herewith shall be resolved in New York County, New York State by arbitration before the American Arbitration Association and shall include the jurisdiction in the federal courts of the Southern District of New York and of the state courts of the State of New York in New York County to enforce such arbitration and/or confirm any award thereof. The parties hereby consent to jurisdiction as set forth herein. Furthermore, notwithstanding the foregoing, in the event of a timely objection to arbitration, either party may commence a proceeding in Supreme Court of the State of New York and County of New York and/or Federal District Court for the Southern District of New York.

11.    Notices.

Any notices or other communications to be given hereunder shall be deemed to have been given if delivered personally to the party to which directed, or if mailed, then by registered or certified mail, return receipt requested, directed to the address of the party first hereinabove set forth. Any party may change his or its address for purposes of this Section 11 by giving written notice thereof hereunder.

12. Due Authorization.

The Company hereby warrants and represents to the Consultant that the execution, delivery and performance hereof by the Company has been duly authorized by all requisite or appropriate corporate and shareholder action.

13. Attorneys' Fees.

In the event that it shall be necessary for either party hereto to retain legal counsel and/or incur other costs and expenses in connection with the enforcement hereof whether by a judicial action or proceeding or by arbitration, such party shall to the extent it shall prevail (whether by settlement or by judicial or arbitral action or otherwise) be entitled to recover from the other party such first party's reasonable attorneys' fees and costs and expenses in connection with such enforcement.

IN WITNESS WHEREOF, the Company and the Consultant have caused this Agreement to be executed by their officers thereunto duly authorized, in the City of New York as of the day and year first above written.

L & L Wings, Inc.

By: _____

Marco Destin, Inc.

By: _____

CONSULTING AGREEMENT
(PANAMA SURF & SPORT, INC.)

This Consulting Agreement dated as of October 31, 1999 by and between L & L Wings, Inc., a South Carolina corporation (the "Company"), having its principal office at 18 E. 42nd Street, New York, N.Y., and Panama Surf & Sport, Inc. (the "Consultant"), having an address c/o Marco Destin, Inc. at 10400 N.W. 33rd St., Miami, Florida.

## P R E A M B L E

The Company and its affiliates sell at retail clothing and related merchandise in various locations in, inter alia, the Southern United States. The Consultant and its executives have become expert in the management and operation of the industry in the Southern United States area. The Company desires to make available to its officers and those of its affiliates the consulting services of Consultant and its executives and Consultant is willing to make the same available from time to time, all on the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the premises and the mutual covenants contained herein and for other good and valuable consideration heretofore or simultaneously with the execution hereof furnished by each party to the other, the sufficiency of which the parties hereby acknowledge, the parties hereto hereby agree as follows:

1.    Consulting.

The Company hereby retains Consultant and Consultant hereby agrees to provide its executives to consult with the Company and its executives (and those of its affiliates) for the period set forth in Section 2 hereof, subject to and upon the other terms and conditions herein provided.

2.    Term of Consulting.

The period of Consultant's consulting under this Agreement shall commence as of the date hereof and shall continue thereafter until October 31, 2009 (the "Term"). In the event that the Consultant continues to consult with the Company after the end of the Term, such continued employment shall be subject to such terms and conditions as the Company and the Consultant may then agree.

3.    Responsibilities and Duties.

(a)    During the period of his retention hereunder, Consultant agrees to provide its executives to consult with the Company and its executives (and those of its affiliates) at their request given to it from time to time and upon reasonable notice (and, in this connection,

236093v2

taking into account the reasonable needs of the Consultant for the services of its executives in its own business). Consultant and its executives shall not be required as a condition of its compensation to render any minimum level of consultation during any period , it being understood and agreed that Consultant shall render its services through its executives only as requested by the Company and its affiliates hereunder and further that such services shall be rendered by Consultant and its executives solely within (or from) the State of Florida and finally that Consultant has in the past furnished other services and other good and sufficient consideration for the obligations of the Company hereunder in addition to its undertakings hereunder. Any travel or other expenses required of Consultant and its executives (for example, for travel to the Company's North and South Carolina stores) to render services hereof shall be at the sole expense of the Company and shall be payable upon presentation of suitable documentation therefor by Consultant.

   (b) This Agreement shall not be deemed to create any employer-employee relationship or joint venture.

   4. Compensation.

   (a) For all services rendered by Consultant and its executives during its retention hereunder, the Company shall pay to Consultant the annual amount of $3,308.89 during the Term, payable in arrears annually on each anniversary date hereof, the final payment to be due on October 31, 2009.

   5. Death or Disability; Merger etc.

   (a) In the event that by reason of any death or disability of its executives, Consultant shall be unable to perform its duties hereunder, it shall, nevertheless, be entitled to continue to receive the compensation due hereunder until the end of the Term on October 31, 2009.

   (b) In the event of any merger, consolidation, sale or liquidation of Consultant during the term, the Company shall continue to pay to Consultant's successors or assigns (including but not limited to its shareholders) designated by written notice to the Company, its annual compensation otherwise due hereunder and such compensation shall not cease until the end of the Term on October 31, 2009. If Consultant is a surviving entity in any merger or consolidation or other such transaction it shall endeavor to continue to make its executives available hereunder but its compensation hereunder shall in no event cease until the end of the Term on October 31, 2009.

   6. Binding Agreement.

   This Agreement shall be binding upon, and inure to the benefit of, Consultant and the Company and their respective, successors and assigns. Neither the Company nor the Consultant may assign or otherwise encumber this Agreement or any rights or obligations of such party hereunder without the prior written consent of the other party.

7.    Modification and Waiver.

(a)    Amendment of Agreement. This Agreement may not be modified or amended, terminated or cancelled except by a written instrument signed by the parties hereto.

(b)    Waiver. No term or condition of this Agreement shall be deemed to have been waived, nor shall there be any estoppel against the enforcement of any provision of this Agreement, except by written instrument of the party charged with such waiver or estoppel. No such written waiver shall be deemed a continuing waiver unless specifically stated therein, and each such waiver shall operate only as to the specific term or condition waived and shall not constitute a waiver of such term or condition for the future or as to any act other than that specifically waived.

8.    Severability.

If, for any reason, any provision of this Agreement is held invalid, such invalidity shall not affect any other provision of this Agreement not held so invalid, and each such other provision shall to the full extent consistent with law continue in full force and effect.

9.    Headings.

The headings of the Sections herein are included solely for convenience of reference and shall not control the meaning or interpretation of any of the provisions of this Agreement.

10.    Governing Law.

This Agreement shall be governed solely by the laws of the State of New York without giving effect to any conflict of laws provisions thereof. Any and all matters of dispute between the parties hereunder or in connection herewith shall be resolved in New York County, New York State by arbitration before the American Arbitration Association and shall include the jurisdiction in the federal courts of the Southern District of New York and of the state courts of the State of New York in New York County to enforce such arbitration and/or confirm any award thereof. The parties hereby consent to jurisdiction as set forth herein. Furthermore, notwithstanding the foregoing, in the event of a timely objection to arbitration, either party may commence a proceeding in Supreme Court of the State of New York and County of New York and/or Federal District Court for the Southern District of New York.

11.    Notices.

Any notices or other communications to be given hereunder shall be deemed to have been given if delivered personally to the party to which directed, or if mailed, then by registered or certified mail, return receipt requested, directed to the address of the party first hereinabove set forth. Any party may change his or its address for purposes of this Section 11 by giving written notice thereof hereunder.

12.    Due Authorization.

The Company hereby warrants and represents to the Consultant that the execution, delivery and performance hereof by the Company has been duly authorized by all requisite or appropriate corporate and shareholder action.

13.    Attorneys' Fees.

In the event that it shall be necessary for either party to retain legal counsel and/or incur other costs and expenses in connection with the enforcement hereof whether by a judicial action or proceeding or by arbitration, such party shall to the extent it shall prevail (whether by settlement or by judicial or arbitral action or otherwise) be entitled to recover from the other party such first party's reasonable attorneys' fees and costs and expenses in connection with such enforcement.

IN WITNESS WHEREOF, the Company and the Consultant have caused this Agreement to be executed by their officers thereunto duly authorized, in the City of New York as of the day and year first above written.

L & L Wings, Inc.

By: _____

Panama Surf & Sport, Inc.

By: _____

236093v2                                          4

CONSULTING AGREEMENT
(1000 HIGHWAY 98 EAST CORP.)


This Consulting Agreement dated as of October 31, 1999 by and between L & L Wings, Inc., a South Carolina corporation (the "Company"), having its principal office at 18 E. 42nd Street, New York, N.Y., and 1000 Highway 98 East Corp. (the "Consultant"), having an address c/o Marco Destin, Inc. at 10400 N.W. 33rd St., Miami, Florida.


## P R E A M B L E


The Company is engaged in real estate operations for its affiliates which sell at retail clothing and related merchandise in various locations in, inter alia, the Southern United States. The Consultant and its executives have become expert in the management and operation of real estate for the retail clothing industry in the Southern United States area. The Company desires to make available to its officers and those of its affiliates the consulting services of Consultant and its executives and Consultant is willing to make the same available from time to time, all on the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the premises and the mutual covenants contained herein and for other good and valuable consideration heretofore or simultaneously with the execution hereof furnished by each party to the other, the sufficiency of which the parties hereby acknowledge, the parties hereto hereby agree as follows:

1.    Consulting.

The Company hereby retains Consultant and Consultant hereby agrees to provide its executives to consult with the Company and its executives (and those of its affiliates) for the period set forth in Section 2 hereof, subject to and upon the other terms and conditions herein provided.

2.    Term of Consulting.

The period of Consultant's consulting under this Agreement shall commence as of the date hereof and shall continue thereafter until October 31, 2009 (the "Term"). In the event that the Consultant continues to consult with the Company after the end of the Term, such continued employment shall be subject to such terms and conditions as the Company and the Consultant may then agree.

3.    Responsibilities and Duties.

(a)    During the period of his retention hereunder, Consultant agrees to provide its executives to consult with the Company and its executives (and those of its affiliates)

236094v3

at their request given to it from time to time and upon reasonable notice (and, in this connection, taking into account the reasonable needs of the Consultant for the services of its executives in its own business). Consultant and its executives shall not be required as a condition of its compensation to render any minimum level of consultation during any period , it being understood and agreed that Consultant shall render its services through its executives only as requested by the Company and its affiliates hereunder and further that such services shall be rendered by Consultant and its executives solely within (or from) the State of Florida and finally that Consultant has in the past furnished other services and other good and sufficient consideration for the obligations of the Company hereunder in addition to its undertakings hereunder. Any travel or other expenses required of Consultant and its executives (for example, for travel to the Company's North and South Carolina stores) to render services hereof shall be at the sole expense of the Company and shall be payable upon presentation of suitable documentation therefor by Consultant.

(b)    This Agreement shall not be deemed to create any employer-employee relationship or joint venture.

4.    Compensation.

(a)    For all services rendered by Consultant and its executives during its retention hereunder, the Company shall pay to Consultant the annual amount of $186,950.68 during the Term, payable in arrears annually on each anniversary date hereof, the final payment to be due on October 31, 2009.

5.    Death or Disability; Merger etc.

(a)    In the event that by reason of any death or disability of its executives, Consultant shall be unable to perform its duties hereunder, it shall, nevertheless, be entitled to continue to receive the compensation due hereunder until the end of the Term on October 31, 2009.

(b) In the event of any merger, consolidation, sale or liquidation of Consultant during the term, the Company shall continue to pay to Consultant's successors or assigns (including but not limited to its shareholders) designated by written notice to the Company, its annual compensation otherwise due hereunder and such compensation shall not cease until the end of the Term on October 31, 2009. If Consultant is a surviving entity in any merger or consolidation or other such transaction it shall endeavor to continue to make its executives available hereunder but its compensation hereunder shall in no event cease until the end of the Term on October 31, 2009.

6.    Binding Agreement.

This Agreement shall be binding upon, and inure to the benefit of, Consultant and the Company and their respective, successors and assigns. Neither the Company nor the Consultant may assign or otherwise encumber this Agreement or any rights or obligations of such party hereunder without the prior written consent of the other party.

236094v3                                         2

7.    Modification and Waiver.

(a)    Amendment of Agreement. This Agreement may not be modified or amended, terminated or cancelled except by a written instrument signed by the parties hereto.

(b)    Waiver. No term or condition of this Agreement shall be deemed to have been waived, nor shall there be any estoppel against the enforcement of any provision of this Agreement, except by written instrument of the party charged with such waiver or estoppel. No such written waiver shall be deemed a continuing waiver unless specifically stated therein, and each such waiver shall operate only as to the specific term or condition waived and shall not constitute a waiver of such term or condition for the future or as to any act other than that specifically waived.

8.    Severability.

If, for any reason, any provision of this Agreement is held invalid, such invalidity shall not affect any other provision of this Agreement not held so invalid, and each such other provision shall to the full extent consistent with law continue in full force and effect.

9.    Headings.

The headings of the Sections herein are included solely for convenience of reference and shall not control the meaning or interpretation of any of the provisions of this Agreement.

10.    Governing Law.

This Agreement shall be governed solely by the laws of the State of New York without giving effect to any conflict of laws provisions thereof. Any and all matters of dispute between the parties hereunder or in connection herewith shall be resolved in New York County, New York State by arbitration before the American Arbitration Association and shall include the jurisdiction in the federal courts of the Southern District of New York and of the state courts of the State of New York in New York County to enforce such arbitration and/or confirm any award thereof. The parties hereby consent to jurisdiction as set forth herein. Furthermore, notwithstanding the foregoing, in the event of a timely objection to arbitration, either party may commence a proceeding in Supreme Court of the State of New York and County of New York and/or Federal District Court for the Southern District of New York.

11.    Notices.

Any notices or other communications to be given hereunder shall be deemed to have been given if delivered personally to the party to which directed, or if mailed, then by registered or certified mail, return receipt requested, directed to the address of the party first hereinabove set forth. Any party may change his or its address for purposes of this Section 11 by giving written notice thereof hereunder.

12.    Due Authorization.

The Company hereby warrants and represents to the Consultant that the execution, delivery and performance hereof by the Company has been duly authorized by all requisite or appropriate corporate and shareholder action.

13.    Attorneys' Fees.

In the event that it shall be necessary for either party to retain legal counsel and/or incur other costs and expenses in connection with the enforcement hereof whether by a judicial action or proceeding or by arbitration, such party shall to the extent it shall prevail (whether by settlement or by judicial or arbitral action or otherwise) be entitled to recover from the other party such first party's reasonable attorneys' fees and costs and expenses in connection with such enforcement.

IN WITNESS WHEREOF, the Company and the Consultant have caused this Agreement to be executed by their officers thereunto duly authorized, in the City of New York as of the day and year first above written.

L & L Wings, Inc.

By: _____

1000 Highway 98 East Corp.

By: _____

236094v3                                    4

CONSULTING AGREEMENT
(E&T, INC.)

This Consulting Agreement dated as of October 31, 1999 by and between L & L Wings, Inc., a South Carolina corporation (the "Company"), having its principal office at 18 E. 42nd Street, and E&T, Inc. (the "Consultant"), having an address c/o Marco Destin, Inc. at 10400 N.W. 33rd St., Miami, Florida.

## P R E A M B L E

The Company and its affiliates sell at retail clothing and related merchandise in various locations in, inter alia, the Southern United States. The Consultant and its executives have become expert in the management and operation of the industry in the Southern United States area. The Company desires to make available to its officers and those of its affiliates the consulting services of Consultant and its executives and Consultant is willing to make the same available from time to time, all on the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the premises and the mutual covenants contained herein and for other good and valuable consideration heretofore or simultaneously with the execution hereof furnished by each party to the other, the sufficiency of which the parties hereby acknowledge, the parties hereto hereby agree as follows:

1.    Consulting.

The Company hereby retains Consultant and Consultant hereby agrees to provide its executives to consult with the Company and its executives (and those of its affiliates) for the period set forth in Section 2 hereof, subject to and upon the other terms and conditions herein provided.

2.    Term of Consulting.

The period of Consultant's consulting under this Agreement shall commence as of the date hereof and shall continue thereafter until October 31, 2009 (the "Term"). In the event that the Consultant continues to consult with the Company after the end of the Term, such continued employment shall be subject to such terms and conditions as the Company and the Consultant may then agree.

3.    Responsibilities and Duties.

(a)    During the period of his retention hereunder, Consultant agrees to provide its executives to consult with the Company and its executives (and those of its affiliates) at their request given to it from time to time and upon reasonable notice (and, in this connection,

236091v3

taking into account the reasonable needs of the Consultant for the services of its executives in its own business). Consultant and its executives shall not be required as a condition of its compensation to render any minimum level of consultation during any period , it being understood and agreed that Consultant shall render its services through its executives only as requested by the Company and its affiliates hereunder and further that such services shall be rendered by Consultant and its executives solely within (or from) the State of Florida and finally that Consultant has in the past furnished other services and other good and sufficient consideration for the obligations of the Company hereunder in addition to its undertakings hereunder. Any travel or other expenses required of Consultant and its executives (for example, for travel to the Company's stores in North and South Carolina) to render services hereof shall be at the sole expense of the Company and shall be payable upon presentation of suitable documentation therefor by Consultant.

(b)     This Agreement shall not be deemed to create any employer-employee relationship or joint venture.

4.     Compensation.

(a)     For all services rendered by Consultant and its executives during its retention hereunder, the Company shall pay to Consultant the annual amount of $47,110.61 during the Term, payable in arrears annually on each anniversary date hereof, the final payment to be due on October 31, 2009.

5.     Death or Disability; Merger etc.

(a)     In the event that by reason of any death or disability of its executives, Consultant shall be unable to perform its duties hereunder, it shall, nevertheless, be entitled to continue to receive the compensation due hereunder until the end of the Term on October 31, 2009.

(b) In the event of any merger, consolidation, sale or liquidation of Consultant during the term, the Company shall continue to pay to Consultant's successors or assigns (including but not limited to its shareholders) designated by written notice to the Company, its annual compensation otherwise due hereunder and such compensation shall not cease until the end of the Term on October 31, 2009. If Consultant is a surviving entity in any merger or consolidation or other such transaction it shall endeavor to continue to make its executives available hereunder but its compensation hereunder shall in no event cease until the end of the Term on October 31, 2009.

6.     Binding Agreement.

This Agreement shall be binding upon, and inure to the benefit of, Consultant and the Company and their respective, successors and assigns. Neither the Company nor the Consultant may assign or otherwise encumber this Agreement or any rights or obligations of such party hereunder without the prior written consent of the other party.

7.    Modification and Waiver.

(a)    Amendment of Agreement. This Agreement may not be modified or amended, terminated or cancelled except by a written instrument signed by the parties hereto.

(b)    Waiver. No term or condition of this Agreement shall be deemed to have been waived, nor shall there be any estoppel against the enforcement of any provision of this Agreement, except by written instrument of the party charged with such waiver or estoppel. No such written waiver shall be deemed a continuing waiver unless specifically stated therein, and each such waiver shall operate only as to the specific term or condition waived and shall not constitute a waiver of such term or condition for the future or as to any act other than that speeifically waived.

8.    Severability.

If, for any reason, any provision of this Agreement is held invalid, such invalidity shall not affect any other provision of this Agreement not held so invalid, and each such other provision shall to the full extent consistent with law continue in full force and effect.

9.    Headings.

The headings of the Sections herein are included solely for convenience of reference and shall not control the meaning or interpretation of any of the provisions of this Agreement.

10.    Governing Law.

This Agreement shall be governed solely by the laws of the State of New York without giving effect to any conflict of laws provisions thereof. Any and all matters of dispute between the parties hereunder or in connection herewith shall be resolved in New York County, New York State by arbitration before the American Arbitration Association and shall include the jurisdiction in the federal courts of the Southern District of New York and of the state courts of the State of New York in New York County to enforce such arbitration and/or confirm any award thereof. The parties hereby consent to jurisdiction as set forth herein. Furthermore, notwithstanding the foregoing, in the event of a timely objection to arbitration, either party may commence a proceeding in Supreme Court of the State of New York and County of New York and/or Federal District Court for the Southern District of New York.

11.    Notices.

Any notices or other communications to be given hereunder shall be deemed to have been given if delivered personally to the party to which directed, or if mailed, then by registered or certified mail, return receipt requested, directed to the address of the party first hereinabove set forth. Any party may change his or its address for purposes of this Section 11 by giving written notice thereof hereunder.

02/17/00  16:51 FAX 212  354 7700      MOSES & SINGER LLP      WINGS
PAGE  15
☎ 015/033

12.    Due Authorization.

The Company hereby warrants and represents to the Consultant that the execution, delivery and performance hereof by the Company has been duly authorized by all requisite or appropriate corporate and shareholder action.

13.    Attorneys' Fees.

In the event that it shall be necessary for either party to retain legal counsel and/or incur other costs and expenses in connection with the enforcement hereof whether by a judicial action or proceeding or by arbitration, such party shall to the extent it shall prevail (whether by settlement or by judicial or arbitral action or otherwise) be entitled to recover from the other party such first party's reasonable attorneys' fees and costs and expenses in connection with such enforcement.

IN WITNESS WHEREOF, the Company and the Consultant have caused this Agreement to be executed by their officers thereunto duly authorized, in the City of New York as of the day and year first above written.

L & L Wings, Inc.

By: _____

E&T, Inc.

By: _____

# LICENSING AGREEMENT

**THIS AGREEMENT** dated for purposes of reference as of the 1st day of November, 1998, is made by and between **L & L WINGS, INC.** d/b/a Wings, a South Carolina Corporation with an address at 18 East 42nd Street, New York, New York 10017, ("Licensor") and Marco-Destin Inc. (hereinafter, "Marco-Destin"), 1000 Highway 98 East Corp. ("Highway"), Panama Surf & Sport, Inc. ("Surf") and E&T Inc. (hereinafter, "ET"), being Florida and South Carolina corporations, and all having an address all c/o Marco Destin 10400 Northwest 33rd Street, Miami, Florida (collectively, hereinafter, "Licensee").

**WHEREAS**, Licensor is the owner of the unregistered servicemark, "Wings" and is the owner of trade dress rights to its distinctive design; and

**WHEREAS**, Licensee utilized the mark "Wings" on retail stores that it owns and has been for many years with the permission and an oral license from Licensor who was a one-half owner of the issued and outstanding shares of stock of Licensee (except shares in ET); and

**WHEREAS**, the ownership by Licensor of the shares of Licensee are being sold simultaneous with the execution of this Agreement; and

**WHEREAS**, Licensor and Licensee each adorn some of their retail locations with Licensor's unique wave sculpture design highlighted with a signature colored neon light combination, (hereinafter, Licensor's "Trade Dress"); and

**WHEREAS**, Licensee recognizes the goodwill, reputation and strong marketing value of using the "Wings" name as a trade/servicemark and trade name and its Trade Dress in the operation of its retail business establishments; and

**WHEREAS**, Licensee desires to continue do business using the name "Wings" in the "Territory" hereinafter defined after the separation of their respective ownership; and

**WHEREAS**, Licensee and/or entities and/or principals of Licensee are unwilling to enter into the simultaneous agreements purchasing the interest of Licensor and/or its principals interest in Licensee (except any interest in ET) without this Agreement; and

**WHEREAS**, Licensor is willing to grant a license to Licensee to use "Wings" and the Trade Dress in the Territory upon the terms and conditions set forth below and other than as set-forth hereinafter has the authority to do so;

**NOW, THEREFORE**, in consideration of the covenants and agreements hereinafter set forth, one dollar ($1.00) and other valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the parties hereto agree as follows:

1. <u>Definitions</u>. The following terms as used in this Agreement shall have the meanings set forth below:

221916v2

1.1.          "Trade Dress" shall mean the unique wave sculpture design highlighted with a signature colored neon light combination used by Licensor (and also heretofore used by Licensee) in connection with some of their respective business locations.

1.2.          "Territory" shall be defined as the following geographic areas: (i) Within the city limits of Marco Island, Florida; St Augustine, Florida; and Pigeon Forge, Tennessee; (and within two miles of each such city limit); (ii) in North Myrtle Beach within the area bound by from the south side of 1639 Highway 17S in North Myrtle Beach, SC to the intersection of Highway 9 and Highway 17S which is just north of North Myrtle Beach SC and the boundaries shall include the coast line and two miles inland between such points. (By way of clarification, Licensor may operate in all other areas of the Myrtle Beach Area except the area described hereinabove); and (iii) in the geographic area from Panama City Beach, Florida west to the Alabama-Mississippi state line and not more than 10 miles inland from the coast line. All areas not specifically included herein are specifically excluded from the Territory.

1.3.          "Termination Date" shall be October 31, 2006 or such other date as the license granted hereunder shall be properly terminated pursuant to the terms of this Agreement.

2.  Grant of License. (a) So long as Eli Tabib, and upon his death his estate, heirs and/or beneficiaries, shall be the owner or owners of not less than 66⅔% of the shares of Licensee, Licensee shall have, and Licensor hereby grants to Licensee, an exclusive license in the Territory to use the name "Wings" and the Trade Dress (hereinafter the "Mark") in connection with Licensee's business establishments, and only for the term (the "Term") commencing from November 1, 1998 until October 31, 2006, unless sooner properly terminated or extended as provided herein (hereinafter, the "Termination Date"); provided, however, that upon the death of Eli Tabib, it shall also be a condition of continuation that either Nir Tzanani or Raffi Zabari shall continue to be involved in the management of Licensee. Licensee may not use the Mark outside the Territory and the License granted hereunder shall be exclusive in the Territory with the exception of the State of South Carolina, where the License shall be limited to area specified in paragraph 1.2(ii). The License granted hereby shall extend to any entity hereafter acquired or created by Eli Tabib so long as his ownership interest therein shall comply with this paragraph 2 (a) and such entity shall notify Licensor in writing and become a party to this Agreement pursuant to a suitable instrument.

(b) Licensor hereby warrants and represents to Licensee that except as set-forth hereinafter it has the authority to grant the License to Licensee and that its Board of Directors and shareholders have consented to this License.

(c) Licensor agrees that during the Term and for a period of 10 years immediately thereafter Licensor shall not, nor shall it permit any licensee to, use the name Mark (or any derivative or similar name and/or Trade Dress) in the Territory.

3.  Advertising Reimbursement.

(a) Licensor is under no obligation to advertise the Mark in the Territory.

(b) In Licensor's sole discretion, Licensor may shall advertise the Mark in the Territory. Should Licensor advertise in the Territory set forth in paragraph 1.2(ii), Licensee shall pay to Licensor at its address set forth above, Licensee's pro rata share of all advertising costs incurred for advertising in the Myrtle Beach Area. (By way of example, Licensee operates two (2) stores and Licensor operates twenty (20) stores in the Myrtle Beach, South Carolina region. Therefore, if Licensor advertises in that region, Licensee shall pay 1/11 of the advertising costs incurred by Licensor.) Any stores which Licensor licenses to third persons shall be treated as operated by Licensor for the purposes of the calculations required in this Paragraph 3. On or before September 30th of any year, Licensor shall render to Licensee statement of such advertising costs, which statement shall be deemed a conclusive substantiation for such costs unless Licensee shall within 30 days contest the same in writing. Payment of the statement shall be due within thirty (30) days of the date thereof unless contested. At Licensor's option, Licensor may provide statements at shorter intervals but in no event less than once per year.

(c)     Notwithstanding the foregoing , for the Territory set forth paragraph 1.2(ii), Licensee shall not be responsible for advertising costs for any twelve month period in excess of $10,000.00 per store increased annually by the increase in the Consumer Price Index. The Consumer Price Index shall mean the Consumer Price Index published by the Bureau of Labor Statistics of the U.S. Department of Labor, All Items, New York, New York -- Northeastern, N.J., for urban wage earners and clerical workers, or any successor or substitute index appropriately adjusted.

4.  Termination. Licensor may, at its option, terminate the license and rights granted in this Agreement to Licensee immediately and without prior notice upon the occurrence of any of the following events (but the restriction on Licensor in Paragraph 2(c) shall continue in effect):

4.1.     If Licensee shall file a voluntary petition in bankruptcy or is adjudicated bankrupt or insolvent or files any petition or answer seeking any reorganization, arrangement, composition, adjustment or readjustment, liquidation, dissolution or similar relief under the present or any future Federal Bankruptcy Act or any present or future applicable United States federal, state or other statute or law, or seeks or consents to, or acquiesces in, the appointment or any trustee, receiver, conservator in, the appointment of any trustee, receiver, conservator or liquidator of Licensee, or of all or any substantial part of its properties or of its interests.

4.2.     If within ninety (90) days after the commencement of any proceeding against Licensee seeking any bankruptcy, reorganization, arrangement, composition, adjustment or readjustment, liquidation, dissolution or similar relief under the present or any future applicable United States federal, state or other statute or law the proceeding is not stayed or dismissed, or if within ninety (90) days after the expiration of any stay, the filing is not vacated.

4.3.     If Licensee executes an assignment of substantially all of its assets or any other similar agreement for the benefit of creditors.

4.4.     If Licensee fails to pay any amounts to Licensor properly due pursuant to this Agreement or fails to perform any of the obligations required of it set forth in this Agreement

in Paragraphs 6, 7, 8, 10 or of any other obligation contained in this Agreement and such default shall continue uncured for 30 days after written notice thereof by Licensor.

4.5    If Licensee initiates any action, proceeding or claim against Licensor challenging any provision or the validity of this Agreement and said action is determined to be either frivolous and/or Licensor's prevails in said action and/or claim except as set forth in paragraph 19 hereinafter. (Claim does not include any counterclaims by Licensee in response to a claim initiated by Licensor against Licensee.)

4.6    If there is any change in ownership of Licensee in violation of Paragraph 2.

5.  Obligations and Responsibilities Upon Termination. Upon expiration or termination of the License granted hereunder, by operation of law or otherwise:

5.1.    All rights of Licensee to use the Mark granted hereunder (other than its rights under Paragraph 2(c)), including the right to use the name "Wings" and the Licensor's Trade Dress shall (subject to the four month removal period set forth in Paragraph 5.2) cease.

5.2.    Licensee, at its own cost and expense, shall within four months remove and/or cause to be removed, all materials, signs, promotions, bags, and any and all other items, bearing the Mark or any evidence of the Mark licensed hereunder. Thereafter, Licensee shall not, in any manner whatsoever, use the name Mark, any similar name or any name created by changing, adding or dropping one or more letters from the name "Wings", (hereinafter, collectively, referred to as "Similar Name") nor shall Licensee use Licensor's Trade Dress in any form whatsoever.

5.3.    Licensee shall pay any and all outstanding proper statements for advertising within thirty (30) days of the termination or expiration hereof.

5.4.    In the event Licensee fails to promptly fulfill all of its obligations upon the termination or expiration of this Agreement, Licensor shall have the right to pursue all legal remedies including, but not limited to, an action for trademark and/or servicemark infringement and/or for trade dress infringement, temporary restraining order, preliminary and/or permanent injunction. Licensee shall have the same rights with respect to Licensor's obligations (including without limitation, under Paragraph 2(c)).

6.  Infringement.

6.1.    In the event Licensee learns of any infringement or alleged infringement, has notice of any written claim or allegation by a third person of infringement of Licensor's Mark, Licensee shall promptly notify Licensor with the particulars thereof.

6.2.    In the event Licensor decides to pursue any infringement claim against a third party in the Territory, Licensor may request that Licensee join in or assist in any of the steps necessary to enforce the infringement claim. In the event Licensee agrees to assist, then each party shall bear one-half of the costs of any action; provided, however, that Licensee's share shall not

exceed for any calendar year the product of (x) one-half of the costs incurred in the year, and (y) a fraction, the numerator of which is the number of years then remaining on the License and denominator of which is eight. In the event Licensee does not agree to assist within a reasonable period, then Licensor may terminate this License Agreement (but subject to Paragraph 2(c)). In all events, Licensee shall cooperate with Licensor in the pursuit of any action (but Licensee shall not, except as required by this Paragraph, be obligated to incur material expense in so cooperating).

### 7. Indemnification.

7.1.        Licensee, jointly and severally, shall hold Licensor harmless and shall indemnify Licensor from any and all liabilities, injuries, damages, claims, suits, attorney's fees, etc., sustained by Licensor by reason of this Agreement which Licensee has, may have or which may hereinafter exist or due to Licensee's operation of its business, use of the Licensor's Mark, Trade Dress, and/or use of the name "Wings" (provided, however, that Licensee shall have no indemnification obligation to the extent that any claim, damage, etc. is attributable to any defect or alleged defect in Licensor's ownership or right to license the name "Wings" or the Trade Dress). Licensee will, at all times. act and conduct business in such a manner so as not to adversely affect or otherwise harm the good will and reputation associated with the name "Wings", and will promptly comply with reasonable written notices from Licensor with respect thereto. Licensee will, at all times, maintain general liability, errors and omissions insurance naming Licensor as an additional insured (to the extent permitted by the carrier). Licensee understands that Licensor is or may be bound by and subject to certain Court orders, consent orders, stipulations. agreements and the like and Licensee agrees that, in the conduct of its business, it shall abide by any such Court orders, consent orders, stipulations, agreements and the like of which Licensor shall give it notice, including, in particular, those with Anheuser Busch Incorporated and Two's Company, a Rhode Island Corporation, copies of which are annexed hereto. Notwithstanding anything herein contained to the contrary, Licensor may terminate this Agreement effective immediately, subject to Licensee's right to a 30 day period to cure, upon written notice to Licensee in the event Licensee shall act or refrain from acting in any way that a reasonable consumer would determine that said action and/or inaction materially diminished the reputation and/or goodwill of Licensor's Mark. (By way of example and not by way of limitation, actions that may be determined to diminish the reputation of and/or goodwill are trade/servicemark and/or other intellectual property violations, deceptive trade practices or false advertising.)

7.2. Licensee shall notify Licensor of any claims to which Paragraph 7.1 may apply withing thirty days from when Licensee learns therof.

7.3.        Owners Designation. Licensee shall, at all times, post a placard in a clearly visible and unobstructed location situated at the entranceway to each of its stores doing business as "Wings", which placard shall be at least 12 inches by 18 inches and shall bear the inscription "THIS STORE IS OWNED AND OPERATED BY" and name the appropriate entity. The lettering of the inscription shall be no smaller than one inch high. In addition, promptly upon execution of this Agreement, Licensee shall file a certificate of assumed name with the appropriate governmental agencies, to the extent required thereby.

8. Liquidated Damages. Licensee specifically acknowledges that the use of the Mark, the name "Wings" or any Similar Name and/or the use of Licensor's Trade Dress after the Termination Date will cause Licensor to suffer irreparable harm, damages for which would be extremely difficult to ascertain. Therefore, in addition to all other remedies, including but not limited to injunctive relief, in the event of Licensee's breach of this Agreement to which Licensor shall be entitled, Licensor shall be entitled to injunctive relief, and liquidated damages in the sum of $200.00 per day (subject, however, to the four month period described in Paragraph 5.2) per business establishment utilizing the Mark and/or name "Wings" and/or any Similar Name or Trade Dress until cessation of any improper use, together with all costs and disbursements, including reasonable attorney's fees arising from Licensee's failure promptly to use the name "Wings" or any Similar Name or Trade Dress. The calculation of the liquidated damages of $200.00 per day per business establishment shall be calculated without regard to the four month period described in Paragraph 5.2 if Licensee does not comply with the terms and conditions of the removal set-forth herein within said four month period. (By way of example if Licensee complies with the removal of the Mark etc. within the four months then there shall be no liquidated damages but if Licensee removes the Mark etc. four months and 1 day later then Licensor shall be entitled to $2,420.00 ($200.00 X 121) per store as liquidated damages assuming 30 days per month.)

9. Assignment Prohibited. Except as explicitly stated herein, this Agreement shall not be assignable either in whole or in part. Nothing in this Agreement is intended or shall be construed to confer upon or to give to any person, firm, or corporation, other than the parties hereto, any right, remedy, or claim under or by reason of this Agreement. All terms and conditions in this Agreement shall be for the sole and exclusive benefit of the parties. Nothing contained in this Agreement shall be deemed or construed to create or effectuate the relationship of principal and agent or of franchisor and franchisee or of partnership or joint venture between the parties hereto.

10. Waiver. No failure by Licensor and/or Licensee to insist upon the strict performance of any term or condition of this Agreement or to exercise any right or remedy consequent upon the breach, and no acceptance of full or partial payments due under this Agreement during the continuance of any breach, shall constitute a waiver of the breach or the term or condition. No term or condition of this Agreement to be performed or observed by Licensor and/or Licensee and no breach shall be waived, altered or modified except by written instrument executed by the parties. No waiver of any breach shall affect or alter this Agreement but each term and condition of this Agreement shall remain and continue in effect with respect to any other existing or subsequent breach. No delay or failure by either party to exercise any right under this Agreement, and no partial or single exercise of that right, shall constitute a waiver of that or any other right. No waiver, modification or amendment of this Agreement shall be valid unless in writing signed by the party to be charged.

11. Licensor's Paramount Rights.

11.1. Licensee shall not contest Licensor's exclusive ownership of all rights including trademark and/or servicemark rights to the name "Wings" or copyright rights to any

element of the Trade Dress. Licensee shall not at any time apply for a registration for the name "Wings" or any confusingly similar mark or for any other right in the name anywhere in the world nor shall Licensee file any opposition or in any other manner hinder any application for registration of the mark "Wings" that Licensor has, will or may make.

11.2.    Licensee acknowledges and agrees that any and all rights and assets in the Mark accruing and/or arising from the use of the Mark "Wings" and/or its Trade Dress, shall belong to and be the property of Licensor free of any and all claims of Liecensee except as state herein.

11.3  Licensee acknowledges that Licensor informed him that there are one or more individuals and/or entities that have registered trademarks and/or servicemarks to the mark "Wings" and can and/or may claim a paramount right to the use of said mark "Wings".  Licensor does not warrant or give any other assurances and/or indemnification to Licensee's use of said mark "Wings" and or the Mark.  Notwithstanding anything to the contrary, if any claim is made against Licensor and/or Licensee for infringement related to the use of the Mark and/or "Wings", neither shall indemnify the other for any loss and/or expense including an award for infringement and/or legal fees.

12.  Governing Law. This Agreement shall be governed solely by the laws of the State of New York without giving effect to any conflict of laws provisions thereof. Any and all matters of dispute between the parties hereunder or in connection herewith shall be resolved in New York County, New York State by arbitration before the American Arbitration Association and shall include the jurisdiction in the federal courts of the Southern District of New York of the state courts and the State of New York in New York County to enforce such arbitration and/or confirm any award thereof. Liecensee and Licensor hereby consent to jurisdiction as set forth herein.  Notwithstanding the foregoing, either party may apply to a court of competent jurisdiction for a temporary restraining order, preliminary or permanent injunction or any other form of relief to assure that any judgment awarded in arbitration is not rendered ineffective and/or prevent termination of the License prior to an opportunity to cure in the event of dispute hereunder as to a party's rights and/or obligations. Furthermore, notwithstanding the foregoing, in the event of a timely objection to arbitration, either party may commence a proceeding in Supreme Court of the State of New York and County of New York and/or Federal District Court for the Southern District of New York.

13.  Attorneys' Fees. If Licensor or Licensee shall file any action against the other party for any breach of this Agreement and shall successfully recover on the same, such prevailing party shall be entitled to recover from the other party reasonable attorneys' fees incurred in so doing.

14.  Notices.  Notices required under this Agreement shall be made or given to the parties at the addresses specified at the beginning of this Agreement or at any other address that the parties may, by notice, specify. Copies of all notices shall be sent to the attorney for the party. Notices shall be deemed given 5 days after mailing by certified or registered mail, return receipt requested (unless sent by overnight mail service in which event notice shall be deemed given 1 day after mailing).

15.  Binding Effect. This Agreement shall be binding upon the parties and their agents,  and successors, including, without limitation, successor officers, directors and trustees, if any, of the Licensor or Licensee.

16. Headings. The headings for each paragraph are simply for the convenience of the parties and shall not be used to interpret the meaning of any of the provisions.

17. Entire Agreement. This Agreement contains the entire agreement between the parties and supersedes all agreements and understandings previously made between the parties relating to its subject matter, all of which have been merged herein. There are no other understandings or agreements between them, nor are there any representations made which are not herein contained. This agreement shall be governed in accordance with the laws of the State of New York, the courts of which (and the Federal District for the Southern District of New York) shall have exclusive jurisdiction (subject to and in accordance with the arbitration clause of Paragraph 13).

18. Time Of The Essence. All dates and obligations in this Agreement which rely upon specific dates or periods of time shall be deemed to be "Time of the Essence" and any failure to timely comply with any such obligations and/or dates shall, subject to any notice requirements and period to cure, be deemed a material breach of this agreement.

19. Breach of Related Agreements. Licensor and Licensee are parties to various other agreements. If Licensee and/or their assigns and/or successors default and/or fail to comply with terms and/or conditions contained in one or more of the other agreements between the parties and such failure to comply with said terms and/or conditions continue for more than 30 days after written notice to the party against whom compliance is sought then that default shall be deemed a material default hereunder and shall automatically terminate the Licensee subject however to the party against whom compliance is sought having a right to bring a "Yellowstone Injunction" or similar remedy to toll the time to comply while the parties litigate the issue of default or their respective rights and/or obligations.

20. Breach of This Agreement. If Licensor and/or Licensee and/or their assigns and/or successors default and/or fail to comply with terms and/or conditions contained herein and such failure to comply with said terms and/or conditions continue for more than 30 after written notice to the party against whom compliance is sought or such greater time if provided for hereinabove then that default shall be deemed a material default hereunder and shall automatically terminate the Licensee subject however to the party against whom compliance is sought having a right to bring a "Yellowstone Injunction" or similar remedy to toll the time to comply while the parties litigate the issue of default or their respective rights and/or obligations.

21. Compliance. Neither party is aware of any breach by either party prior to the execution of this Agreement.

IN WITNESS WHEREOF, the parties have set their hands hereto as of the day and date above first appearing.

L & L WINGS, INC.

By: ~~Shaul Levy, President~~
        METR LEVY, V. President

MARCO-DESTIN, INC.
PANAMA SURF & SPORT, INC.
1000 HIGHWAY 98 EAST CORP.
E&T, INC.

By: Eli Tabib, President:

Eli Tabib

02/17/2008 10:57 FAX 212 554 7700
02/17/00  16:52 FAX 212  554 7700    MOSES & SINGER LLP    PAGE  21
Ø021/033

IN WITNESS WHEREOF, the parties have set their hands hereto as of the day and date above first appearing.

L & L WINGS, INC.

_____

By: Shaul Levy, President

MARCO-DESTIN, INC.
PANAMA SURF & SPORT, INC.
1000 HIGHWAY 98 EAST CORP.
E&T, INC.

By: Eli Tabib, President

Eli Tabib

221916v2                              9