Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 43125 (S.D.N.Y.)

Page 1

MTB Bank v. Federal Armored Exp., Inc.
S.D.N.Y.,1998.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
MTB Bank, Plaintiff,
v.
FEDERAL ARMORED EXPRESS, INC. Defendant.
FEDERAL ARMORED EXPRESS, INC., Third-Party Plaintiff,
v.
MGH ENTERPRISES, a Texas general partnership; and Moses Goldberg, individually, and d/b/a MGH Enterprises, and d/b/a House of Money, Third-Party Defendants.
**No. 93 CIV. 5594(LBS).**

Feb. 2, 1998.

Winston & Strawn, Attorneys for Plaintiff, MTB Bank, New York, NY, Joseph Dibenedetto, Esq., Robert M. Buschmann, Esq., Amy B. Wagner, Esq., Of Counsel.
Clausen Miller, P.C., Attorneys for Defendant, Federal Armored Express, New York, NY, Andrew C. Jacobson, Esq., Susan Condon, Esq., Melissa A. Murphy-Petros, Esq., Of Counsel.

OPINION

SAND, District J.

**\*1** The Plaintiff, MTB Bank ("MTB"), brought suit against the Defendant, Federal Armored Express ("Federal"), for damages arising from the alleged misdelivery of two shipments of gold. After granting the Plaintiff's motion for summary judgment on the issue of liability,[FN1] the Court awarded damages in the amount of $1.4 million.[FN2] The Defendant now moves for relief from judgment pursuant to Fed.R.Civ.P. 60(b)(1), 60(b)(2) and 60(b)(6). For the reasons stated below, the Defendant's motion is denied.

FN1. *MTB Bank v. Federal Armored Express,* No. 93 Civ. 5594, 1996 WL 445358, at \*9 (S.D.N.Y. Aug.6, 1996) ("*MTB Bank II*").

FN2. *MTB Bank v. Federal Armored Express,* 949 F.Supp. 226, 231 (S.D.N.Y.1997) ("*MTB Bank III*").

BACKGROUND

A. *History*

This opinion represents the latest stage in the protracted litigation between MTB and Federal, whose legal disputes have resided in this Court since 1993. Familiarity with the facts is assumed,[FN3] and details are set forth below only insofar as they are relevant to the present motion.

FN3. *See MTB Bank,* 949 F.Supp. at 227-28; *MTB Bank,* 1996 WL 445358, at \*1-\*4; *MTB Bank v. Federal Armored Express,* No. 93 Civ. 5594, 1996 WL 255382, at \*1-\*3 (S.D.N.Y. May 15, 1996) (mem.) ("*MTB Bank I*").

MTB is a commercial bank which engages in the sale of precious metals. In 1982, MTB began selling gold bullion and coins to MGH Enterprises ("MGH"), a gold brokerage firm located in Laredo, Texas. At the outset of their relationship, the terms of delivery were simple-upon receipt of an order from MGH, MTB would ship the gold directly to MGH via armored carrier. In 1990, however, Moses Goldberg, the sole proprietor of MGH, requested that MTB ship the gold orders to MGH's bank-the Laredo, Texas branch of the International Bank of Commerce ("IBC"). Pursuant to this latter arrangement, the gold would remain with IBC pending a wire transfer of MGH's funds in an amount equal to the purchase price of the gold.

For several years prior to the shipments in question,

Case 1:07-cv-04137-BSJ-GWG    Document 87-6    Filed 09/09/2008    Page 2 of 10

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 43125 (S.D.N.Y.)

Page 2

MTB had used Loomis Armored ("Loomis") as its insured armored carrier to deliver gold shipments to MGH and other customers. The terms of the MTB-Loomis relationship are outlined in a contract dated April 21, 1989 ("MTB-Loomis Contract"). Approximately two years later, on May 29, 1991, Federal acquired various of Loomis' delivery routes pursuant to an Asset Purchase Agreement ("APA"), including the route relevant to this litigation.

At issue here are two orders for gold placed by MGH in May 1993.[FN4] Consistent with its practice at the time, MTB employed Federal as its armored carrier for both of these transactions. Neither party disputes that in the pertinent shipping receipts, MTB identified IBC as the shipment destination.[FN5] Federal, however, released the gold directly to MGH's agents in San Antonio-Juan and Javier Guardiola-rather than delivering the gold to IBC. In both cases, the gold was relinquished without an accompanying transfer of funds from IBC.[FN6]

> FN4. MGH placed the first order, worth $949,997.50, on May 14, 1993. The second order was placed on May 18, 1993, and had a purchase price of $929,378. Accordingly, the total price for the two shipments was $1,879,375.50. See *MTB III,* 949 F.Supp. at 228.

> FN5. Both shipping receipts were addressed to:
>
> MGH Enterprises
>
> c/o Int'l Bank of Commerce
>
> 1200 San Bernardo
>
> Laredo, TX 78040
>
> *MTB Bank II,* 1996 WL 445359, at *2.

> FN6. MGH never paid the full purchase price for the shipments. In June 1993, MTB commenced an action in Texas state court against MGH and its general partner, Moses Goldberg, seeking to recover payment for the two shipments. That action was settled, and Goldberg filed for bankruptcy shortly thereafter. See *MTB Bank III,* 949 F.Supp. at 230-31.

On August 11, 1993, MTB commenced this action against Federal. The Plaintiff contended that by releasing the gold shipments to the Guardiola brothers-rather than delivering them to IBC in Laredo-Federal ignored the express terms of the shipping receipts, which the Plaintiff claimed were the controlling legal documents regarding delivery. Federal countered that the operative legal document was the original MTB-Loomis Contract, and that under this contract the armored carrier was entitled to disregard the specific address designated on the shipping receipts so long as MGH (or its agents) ultimately received the gold, since MGH was the "intended party" or "consignee" in these transactions.

**\*2** A key issue on summary judgment, then, became whether the MTB-Loomis Contract had indeed been assigned to Federal by Loomis pursuant to an "Assignment and Assumption Agreement," as Federal alleged. Ultimately, the Court found that there had been no such assignment. At the time, we wrote:

Federal has the burden of proof on the issue of whether the MTB-Loomis Contract was legally assigned. *Notwithstanding the fact that MTB has repeatedly requested a copy of the assignment and assumption agreement, no copy has been turned over.* In the absence of any legal documentation specifying that an assignment took place, this Court concludes that Federal has failed to meet its burden. It is the Court's opinion that rather than assigning to Federal its rights and obligations under the MTB-Loomis Contract, Loomis merely sold [to] Federal its shipping route. Therefore, the provisions of the MTB-Loomis Contract are inapplicable to the May 1993 shipments. The liability of Federal will thus be determined by reference to the shipping receipts.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:07-cv-04137-BSJ-GWG   Document 87-6   Filed 09/09/2008   Page 3 of 10

Not Reported in F.Supp. Page 3
Not Reported in F.Supp., 1998 WL 43125 (S.D.N.Y.)

*MTB Bank II,* 1996 WL 445358, at *6 (emphasis added).

Pursuant to this finding, the Court granted summary judgment to MTB on the issue of Federal's liability, and ordered that damages be offset by the amount already paid to MTB by MGH in light of the earlier proceedings in Texas state court. *See supra* note 6. Subsequently, on January 6, 1997, we granted to the Plaintiff damages in the amount of $1.4 million. See *MTB Bank III,* 949 F.Supp. at 228. Following the Court's resolution of liability for attorney's fees, Federal filed a notice of appeal on May 21, 1997.

B. *Recent Developments*

During the pendency of the appeal, the Defendant notified this Court that it had "discovered" the Assignment and Assumption Agreement for the Loomis-MTB Contract to Federal. (Letter from Jacobson to Court of 9/2/97, at 1.) At the Defendant's request, the Court held a pre-trial conference on September 18, 1997, at which time the Defendant's proposed Fed.R.Civ.P. 60(b) motion was initially discussed.

The Defendant now reveals that three actors played significant roles in the recent "discovery" of the alleged assignment agreement-Russell Daniels, Frederick Aus and John Vuono. Daniels is Federal's Vice President for administration, and the individual who was responsible for document production during discovery; Aus is Federal's Executive Vice President, in whose office copies of all records pertinent to the alleged assignment were supposed to have been maintained; and Vuono is Federal's corporate counsel. As the Defendant explains:

In July 1997-while Federal's appeal was pending-Daniels furnished copies of this Court's opinions to Mr. John Vuono of the law firm of Vuono & Gray (the "Vuono Firm") for his evaluation and input in connection with prosecution of the appeal. Vuono and the Vuono firm represented Federal in the Loomis acquisition. In mid-August, 1997, Vuono advised Daniels that he thought the missing Assignment and Assumption Agreement might be in his files.

**\*3** At the end of August, 1997, Daniels was advised that the Assignment and Assumption Agreement had been located in the Vuono Firm files. Daniels again searched the Loomis Acquisition file maintained in Aus's office and confirmed that the Assignment were [sic] not located therein. *Daniels did not contact Vuono earlier because of his belief that Federal's Loomis Acquisition file contained a complete set of all closing documents related to the Loomis acquisition.* On August 29, 1997, Federal's litigation counsel received copies of the Assignment and Assumption Agreement, and copies of computer lists of the Loomis customer contracts from the Vuono Firm, and immediately forwarded them to counsel for MTB Bank.

(Def.'s Mem. at 6-7 (citations omitted) (emphasis added).)

Subsequent to this revelation, the Court of Appeals for the Second Circuit granted the Defendant's request for leave to withdraw the appeal without prejudice to reinstatement. On November 25, the Defendant moved for an order for relief from judgment pursuant to Fed.R.Civ.P. 60(b)(1), 60(b)(2) and 60(b)(6). The parties declined the opportunity for oral argument, and the motion became fully submitted on January 8, 1998.

DISCUSSION

A. *Fed.R.Civ.P. 60(b)(2)*

1. *Legal Standard*

Under Fed.R.Civ.P. 60(b)(2), the district court may relieve a party from a final judgment upon newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b). *See, e.g., United States v.*

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:07-cv-04137-BSJ-GWG   Document 87-6   Filed 09/09/2008   Page 4 of 10

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 43125 (S.D.N.Y.)

Page 4

*Potamkin Cadillac Corp.,* 697 F.2d 491, 492 (2d Cir.), *cert. denied,* 462 U.S. 1144, 103 S.Ct. 3128, 77 L.Ed.2d 1379 (1983); *Westerly Elec. Corp. v. Walter Kidde & Co.,* 367 F.2d 269, 270 (2d Cir.1966). Prior to granting such a motion:

[T]he Court must be satisfied that the [evidence] (1) is in fact newly discovered, i.e., discovered since the trial; (2) could not with due diligence have been discovered earlier; (3) is not merely cumulative or impeaching; (4) is material to the issues; and (5) is such that upon a retrial it would probably produce a different result.

*Gemveto Jewelry Co. v. Jeff Cooper, Inc.,* 613 F.Supp. 1052, 1058 (S.D.N.Y.1985) (Weinfeld, J.) (collecting cases), *vacated on other grounds,* 800 F.2d 256 (Fed.Cir.1986).

The requirements of this rule "must be strictly met" and courts may grant such relief only under "extraordinary" circumstances. *United States v. 710 Main Street,* 753 F.Supp. 121, 126 (S.D.N.Y.1990). As one authority explains:

[T]he evidence must have been in existence at the time of trial, but if it was in possession of the party before the judgment was rendered [then] it is *not* newly discovered and does not entitle the party to relief. The rule speaks of "due diligence," and the moving party must show why he did not have the evidence at the time of the trial or in time to move under Rule 59(b).

11 Charles Alan Wright *et al., Federal Practice and Procedure* § 2859, at 302-03 (2d ed.1995) (citations omitted) (emphasis added); *see, e.g., Collins Dev. Corp. v. Marsh & McLennan, Inc.,* No. 90 Civ. 4675, 1991 WL 135605, at *3 (S.D.N.Y. July 18, 1991) (mem.). Bearing these principles in mind, the Court now turns to the facts of this case.

2. *Application of Law to Facts*

**\*4** Although the Vuono Firm was not the counsel of record during the summary judgment proceedings before this Court, this firm has represented Federal in connection with "numerous acquisitions of armored car companies ... as well as other legal matters" since approximately 1977. (Vuono Aff. ¶ 2.) With regard to the Federal-Loomis transaction, John Vuono states that he had "primary and personal responsibility for all legal work provided for Federal," including the preparation of the alleged Assignment and Assumption Agreement. (*Id.*) Vuono also confirms that:

After the execution of the closing documents on or about July 12, 1991, I retained an executed original of the Assignment and Assumption Agreement in the Firm's file at 2310 Grant Building, Pittsburgh, PA, *in accordance with our usual practice,* and that original has been maintained in the Firm's files continuously since the closing of the Loomis acquisition [in 1991].

(*Id.* ¶ 7 (emphasis added).)

a. *Possession*

As discussed *supra,*[FN7] in order for a document to be considered "newly discovered" under Fed.R.Civ.P. 60(b), that document must not have been in the party's possession. The central question for the Court, then, is whether the Assignment and Assumption Agreement was in the "possession" of the Defendant insofar as an executed original of such documentation was located in the files of the Defendant's outside corporate counsel at the time of the Plaintiff's motion for summary judgment. The answer, the Court finds, is an unequivocal "yes."

FN7. *See supra* Section A.1.

Under Fed.R.Civ.P. 34, which governs the production of documents during discovery, the clear rule is that documents in the possession of a party's *current or former* counsel are deemed to be within that party's "possession, **custody** and **control**." *See, e .g., Variable-Parameter Fix. Dev. Corp. v. Morpheus Lights, Inc.,* No. 90 Civ. 5593, 1994 WL

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:07-cv-04137-BSJ-GWG   Document 87-6   Filed 09/09/2008   Page 5 of 10

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 43125 (S.D.N.Y.)

Page 5

419830, at *6 (S.D.N.Y. Aug. 10, 1994) (finding that party had right of access to documents in possession of former counsel); *cf. Martini v. A. Finkl & Sons Co.,* 955 F.Supp. 905, 907 (N.D.Ill.1997) (ruling that letters from doctor, who was plaintiff's physician throughout the litigation, were not newly discovered evidence where such letters could have been obtained from medical files during course of litigation); *Wardrip v. Hart,* 934 F.Supp. 1282, 1286 (D.Kan.1996) (holding that "[f]inancial records of the defendant in the possession of the defendant's **accountant** are documents which the defendant has the legal right to obtain"). In this Circuit, the term "control" is construed broadly. *E.g., M.L.C., Inc. v. North Am. Philips Corp.,* 109 F.R.D. 134, 136 (S.D.N.Y.1986); *cf. Camden Iron & Metal, Inc. v. Marubeni Am. Corp.,* 138 F.R.D. 438, 441 (D.N.J.1991). Specifically, control is defined as "the legal right, authority, or ability to obtain upon demand documents in the possession of another." *Florentia Cont. Corp. v. RTC,* No. 92 Civ. 1188, 1993 WL 127187, at *3 (S.D.N.Y. Apr.22, 1993).

**\*5** It is undisputed that Vuono would have disclosed the contents of its file had Federal so requested during discovery. (*See* Vuono Aff. ¶ 8.) *See generally* Geoffrey C. Hazard & W. William Hodes, *Law of Lawyering: A Handbook on the Model Rules of Professional Conduct* 286-300 (1985); Stephanie W. Kanwit, *Attorneys' Liens: When Can You Retain a Client's Files?,* 79 Ill. B.J. 274, 274 (1991) (noting that "[w]hen a former client requests notes, documents or files, or research accumulated in the course of the attorney-client relationship, the attorney usually cooperates"). There is no allegation of hostility between Federal and the Vuono Firm, and, as the Plaintiff points out, the fact that Federal's relationship with Vuono is ongoing only reinforces the conclusion that Vuono would have assisted Federal in its quest to locate the relevant documentation. (Pl.'s Mem. at 18 n. 7.) Accordingly, the Court concludes that the Assignment and Assumption Agreement was within Federal's control at the time of discovery, and thus the Defendant's Rule 60(b)(2) motion is denied on these grounds.

b. *Due Diligence*

Apart from the requirement that the evidence be newly discovered, a party seeking relief pursuant to Rule 60(b)(2) must also establish that such evidence could not have been discovered through the exercise of "due diligence." *Music Research, Inc. v. Vanguard Rec. Soc'y, Inc.,* 547 F.2d 192, 196 (2d Cir.1976); *Corbett v. Guardian Worldwide Moving Co.,* 164 F.R.D. 323, 327 (E.D.N.Y.1995). The Defendant's motion, in no uncertain terms, fails to meet this requirement as well.

A party responding to a discovery request under Fed.R.Civ.P. 34 must review all the files in its possession which may contain documents responsive to its adversary's requests. *See Bank of New York v. Meridien Biao Bank Tanz. Ltd.,* 171 F.R.D. 135, 147-54 (S.D.N.Y.1997) (imposing continuing obligation to inquire about responsive documents in possession of managing agents, accountants and lawyers); *cf. Chase Manhattan Bank, N.A. v. T & N PLC,* No. 87 Civ. 4436, 1991 WL 190541, at *3 (S.D.N.Y. Sept.19, 1991) (mem.). The Plaintiff contends that in the face of specific discovery requests-and given the contested nature of the assignment issue-Federal's inability or unwillingness to locate the alleged Assignment and Assumption Agreement is an "inexcusable failure." (Pl.'s Mem. at 19.) We agree.

At the outset, the Court notes that the "Plaintiff's First Request for the Production of Documents" expressly requested the production of all relevant documents "now in Federal's possession, custody or control, or in the possession, custody or control of its employees, officers, directors, partners, *attorneys* or other representatives or agents." (Wagner Aff. Ex. A at 1 (emphasis added).) Thus, assuming *arguendo* that the Defendant was somehow temporarily bewildered by the absence of the lynchpin documentation from the file in Aus' office, the fore-

Case 1:07-cv-04137-BSJ-GWG   Document 87-6   Filed 09/09/2008   Page 6 of 10

Not Reported in F.Supp. Page 6
Not Reported in F.Supp., 1998 WL 43125 (S.D.N.Y.)

going request for production should have put Federal's representatives back on course and impelled them to look for a copy of the Assignment and Assumption Agreement in the place where such documentation would most logically be located-in the closed files of the corporate lawyer who consummated the Federal-Loomis transaction.

**\*6** Indeed, Vuono acknowledged that it has been his firm's "usual practice" to keep copies of important corporate documents, and this should come as no surprise to a sophisticated commercial entity or its litigation counsel. In short, then, Federal could have-and should have-obtained the alleged Assignment and Assumption Agreement from Vuono, and the Defendant's manifest lack of diligence precludes relief under Rule 60(b)(2). *Compare Meridien Biao Bank,* 171 F.R.D. at 149 (finding that compliance with the plaintiff's discovery requests was necessary where the defendant bank had been able to obtain pertinent documents from the non-party whenever the defendant requested them, and the non-party appeared to be "fully cooperating with [the defendant's] requests by searching for and turning over relevant documents from its files").

The Defendant places heavily reliance on three cases. *See Whimsicality, Inc. v. Rubie's Costume Co.,* 836 F.Supp. 112 (E.D.N.Y.1993); *Gemveto,* 613 F.Supp. 1052; *IBM v. Sperry Rand Corp.,* 44 F.R.D. 10, 14-15 (D.Del.1968). All of them, however, are readily distinguishable.

In *Whimsicality,* for instance, the plaintiff sought to reopen the record only after the Court of Appeals upheld the judgment on the grounds of the plaintiff's bad faith in obtaining a copyright registration, which issue was not squarely addressed in the district court. Specifically, the plaintiff sought to submit the affidavit of the copyright examiner who evaluated the Plaintiff's registration application, in which document the examiner explained that the representations made by plaintiff in connection with its copyright application would not have been considered misleading by the copyright office, thereby challenging the appellate finding of bad faith. *Id.* at 116.

The district court granted the plaintiff's motion pursuant to Rule 60(b)(2) in light of its finding that the affidavit constituted "*unusual* evidence which a diligent attorney would not expect to be available and which may have been obtainable only in the wake of the Court of Appeals finding of bad faith." *Id.* at 119 (emphasis added). The court explained that as a general proposition an examiner can refuse to testify regarding his mental processes, and, therefore, it was likely that plaintiff's counsel would have deemed the examiner's affidavit impossible to obtain. *Id.* at 118-19.

In stark contrast to *Whimsicality,* the instant case does not involve "unusual" evidence. An assignment agreement-such as that at issue here-is a common commercial document, and one that is routinely introduced in lawsuits. It would, moreover, strain credulity to suggest that it was "impossible" for the Plaintiff here to obtain this evidence, especially where an executed original of the alleged Assignment and Assumption Agreement was resting peacefully in the files of the attorney who crafted the transaction. *Cf. Longden v. Sunderman,* 979 F.2d 1095, 1102-03 (5th Cir.1992) (finding that class counsel was not entitled to relief from judgment awarding attorney fees and expenses on ground of allegedly newly discovered evidence of agreement between attorney and other counsel guaranteeing attorney reimbursement for time and expenses in representing individual plaintiffs prior to class certification, as evidence was in counsel's files prior to fee hearing and, moreover, counsel did not exercise due diligence in discovering evidence).

**\*7** The *Gemveto* case is also inapposite. *See* 613 F.Supp. at 1057-58 (holding that although the Plaintiff offered little factual support for its contention that the model ring-which evidence was offered nine months after judgment-had been "secreted" in a "back area" by a disgruntled former employee, "the fact remains that ...*the model was not found in any area where plaintiff's personnel would have expected to find it* " (emphasis added)).

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:07-cv-04137-BSJ-GWG   Document 87-6   Filed 09/09/2008   Page 7 of 10

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 43125 (S.D.N.Y.)

Page 7

In contrast to the facts in *Gemveto,* the most logical place for Federal to have expected to find the alleged Assignment and Assumption Agreement would have been in the files of the Vuono firm, and the Court is astonished by the Defendant's claim that it never looked there after concluding that said document was missing from the file in Aus' office. This oversight is, as a matter of law, inexcusable. *See Lewis v. Kepple,* 185 F.Supp. 884, 888 (W.D.Pa.1960) (finding that the mere fact that plaintiffs' employees did not discover a letter in their files and bring it to the attention of plaintiffs' attorney in time for trial was not sufficient reason to grant a new trial on grounds of newly discovered evidence), *aff'd,* 287 F.2d 409 (3d Cir.1961).[FN8]

> FN8. Likewise distinguishable is the *Sperry Rand* case, 44 F.R.D. 10, for a number of reasons. First, the documents in question-which were not in the defendant's possession-were created roughly two decades prior to the litigation. *Id.* at 14. And more fundamentally, the court found that there was a "considerable question" about whether the documents *ever* existed in the first instance. *Id.*

While the foregoing suffices to warrant denial of the Defendants' motion, the Court "bears fully in mind the injunction that the Federal Rules should be construed to secure the just as well as the speedy and inexpensive determination of litigation." *Frankel v. ICD Holdings S.A.,* 939 F.Supp. 1124, 1127 (S.D.N.Y.1996). Accordingly, the Court proceeds to conduct a brief discussion of the merits of the Defendant's claims in light of the newly proffered evidence.

c. *The "Ferrell" Doctrine*

Federal argues that even if we find that it failed to exercise due diligence, we should nevertheless grant the Rule 60(b)(2) motion because the tardily-discovered documentation is conclusive on the issue of liability for the misdelivered gold. We disagree.

The watershed case in support of the Defendant's proposition is *Ferrell v. Trailmobile, Inc.,* 223 F.2d 697 (5th Cir.1955). As was recently summarized:

*Ferrell* involved a foreclosure on a truck trailer; the dispute at trial centered on whether or not certain payments had been made. After judgment was entered in favor of the plaintiff, the defendant found copies of the money orders used to make the disputed payments. The Fifth Circuit reversed the district court's denial of the Defendant's Rule 60(b) motion, holding that if "practically conclusive evidence shows that the appellant had actually paid all eighteen installments for the purchase of the trailer, it is obvious that the judgment should be set aside to prevent a manifest miscarriage of justice. In such a case, the ends of justice may require granting a new trial even though proper diligence was not used to secure such evidence for use at trial."

*United States v. McGaughey,* 977 F.2d 1067, 1075-76 (7th Cir.1992) (quoting *Ferrell,* 223 F.2d at 698),*cert. denied,* 507 U.S. 1019, 113 S.Ct. 1817, 123 L.Ed.2d 447 (1993).

*8 Courts in this Circuit have recognized the *Ferrell* doctrine, characterizing it as a "narrow exception." *Ope Shipping, Ltd. v. Underwriters at Lloyds,* 100 F.R.D. 428, 432 (S.D.N.Y.1983); *see also Samuels v. Health & Hosp. Corp.,* 591 F.2d 195, 199 (2d Cir.1979); *Music Research,* 547 F.2d at 196; *710 Main Street,* 753 F.Supp. at 126, 11 Wright *et al., supra,* § 2808, at 91 n. 7. Specifically, this exception has been "restricted to cases in which the evidence is practically conclusive." *Ope Shipping,* 100 F.R.D. at 432 (citing *Niedland v. United States,* 338 F.2d 254, 260 (3d Cir.1964)).

The *Ferrell* doctrine is inapplicable to the instant case because we are not persuaded that the documentation proffered by Federal represents the "dynamite" necessary to meet the foregoing standard. *See McGaughey,* 977 F.2d at 1076. There are, as the Plaintiff points out, at least three factors that

Case 1:07-cv-04137-BSJ-GWG   Document 87-6   Filed 09/09/2008   Page 8 of 10

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 43125 (S.D.N.Y.)

Page 8

cut against the Defendant's claim that the newly discovered evidence mandates reversal of the Court's prior rulings.

First, it is not entirely clear that the documents proffered by Federal evidence an assignment of the MTB-Loomis Contract. (*See* Pl.'s Mem. at 21-24.) Second, even assuming *arguendo* that said contract was assigned, the Court finds that the terms of the Federal-MTB shipping receipts-which required Federal to deliver the gold to IBC-would govern the issue of Federal's liability. *See Teal v. Place,* 85 A.D.2d 788, 445 N.Y.S.2d 309, 311 (App.Div.1981) (finding that "[w]here two documents are to be construed-one specifically for the transaction in question and the other a general form-the former takes precedence as to all provisions which are repugnant in the two documents"); *cf. Barnum v. Millbrook Care Ltd. Partnership,* 850 F.Supp. 1227, 1236 (S.D.N.Y.) (holding that under New York law a subsequent contract regarding the same matter will supersede the prior contract), *aff'd,* 43 F.3d 1458 (2d Cir.1994).

Third, even under the terms of the MTB-Loomis Contract, the carrier appears obligated to deliver the shipments to the address identified on the shipping receipts. (*See* Pl.'s Mem. at 27-29.) Accordingly, even assuming that the contract was assigned and further that its terms controlled, Federal would still have been required to deliver the gold to IBC-and thus releasing to shipments to the Guardiola Brothers was actionable misconduct. In summary, then, "[t]he concerns we have identified prevent us from believing, with the required degree of certainty, that the underlying judgment is incorrect." *McGaughey,* 977 F.2d at 1076; *cf. Longden,* 979 F.2d at 1102-03.[FN9]

> FN9. Moreover, the Defendant's reliance on *Ope Shipping,* 100 F.R.D. 428, is misplaced for at least two reasons. First, in that case the court expressly concluded that the defendants "could not have discovered prior to trial the [potentially dispositive] evidence to be offered by Captain [[George] Robakis." *Id.* at 433 (finding that plaintiff's produced no log books or crew lists during discovery from which the existence or identity of Captain Robakis could have been learned). Second, the court found that:
>
>> Even if the defendants in the exercise of due diligence could have discovered the evidence to be offered by Captain Robakis, defendant's motion for a new trial would not be denied. Given the distinct possibility that plaintiff's herein knew of any prior use [by General Anastazio Somoza, then President of Nicaragua] of the Managua as a Somocista gunboat and *concealed such use from this Court,* a new trial must be ordered on the basis of the defendant's newly discovered evidence to prevent the miscarriage of justice.
>
> *Id.* at 434 (emphasis added). There is, of course, no possibility of similar bad faith in this action, given that the document at issue was created and controlled by the Defendant.

The lone issue that gives the Court pause regards the notice provisions of the MTB-Loomis Contract. Assuming *arguendo* that the assignment was valid, the Defendant argues that MTB is barred from recovery because it failed to provide timely notification of its losses. The Court has reviewed this claim, and finds that Federal's allegations are insufficient to warrant relief under Fed.R.Civ.P. 60(b).[FN10] As was explained in a similar scenario:

> FN10. The Plaintiff's position in response is twofold: (1) MTB's notices of loss were timely as a matter of fact and law; and (2) Federal waived any defense based on "late notice." (*See* Wagner Aff. Ex. K at 46-56.) The Court finds these arguments persuasive, and thus rejects the Defendant's claims.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:07-cv-04137-BSJ-GWG   Document 87-6   Filed 09/09/2008   Page 9 of 10

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 43125 (S.D.N.Y.)

Page 9

*\*9* [The movant's allegation] "raises only a doubt, although perhaps a disturbing doubt," that there may have been a miscarriage of justice in the instant case. In the *Ferrell* case, there was no doubt that there had been a miscarriage of justice. The newly-discovered evidence in that case was conclusive. Under the circumstances at bar, we cannot say that [this is the case].
*Niedland,* 338 F.2d at 260. Accordingly, the Defendant's application for relief under the *Farrell* doctrine is rejected.

B. *Fed. R. Civ.App. 60(b)(1)*

The Defendant also moves for relief pursuant to Fed.R.Civ.P. 60(b)(1). Under this provision, the party may seek relief for "mistake, inadvertence, surprise, or excusable neglect." *Id.; see, e.g., Wells v. LeFarve,* No. 96 Civ. 3417, 1997 WL 675335, at \*2 (S.D.N.Y. Oct.29, 1997) (mem.). The case law is clear, however, that "the party must make some showing of why he was justified in failing to avoid mistake or inadvertence." 11 Wright *et al., supra,* § 2858, at 276-77 (collecting cases). Specifically:

*Gross carelessness is not enough.* Thus, relief has been denied based on the attorney's careless actions in misplacing papers in an office move, failing to discover service of process, mistakes in office procedures, failing to read a proposed settlement, losing track of time, or when the oversight was due to the "demands of being a busy lawyer." Ignorance of the rules is not enough, nor is ignorance of the law.

*Id.* at 277-78 (citations omitted) (emphasis added).

The Defendant has failed to make the requisite showing in this case. *See, e.g., Richardson v. NRA,* 879 F.Supp. 1, 2-3 (D.D.C.1995). A simple phone call to the Vuono firm would have produced the relevant documentation, and the failure to take this action was careless, if not grossly so. *Cf.* Brett Warren Weathersbee, Note, *No More Excuses; Refusing to Condone Mere Carelessness or Negligence Under the "Excusable Neglect" Standard in Federal Rule of Civil Procedure 60(b)(1),*50 Vand. L.Rev. 1619, 1637-46 (1997) .[FN11]

> FN11. None of the law cited by the Defendant suggests a contrary result. For instance, *Speare v. Consolidated Assets Co.,* 360 F.2d 882 (2d Cir.1966), is clearly inapposite. In that case, the court found that a "series of mischances led to the unavailability of a document that would have completely altered the aspect of the hearing." *Id.* at 886. In short, the debtor's failure to produce a document relevant to the assignment was not due to any carelessness or neglect, but was rather the result of a myriad of uncontrollable factors, including the fact that the one party with substantive knowledge of the lease was incarcerated, and the fact that the debtor's wife conducted a diligent search of several files-including those maintained by the local "Hall of Records" and the bankruptcy court-in an attempt to locate the pertinent documentation. *Id.* at 882-83. Such facts are not present here, and, regardless, the earlier introduction of the alleged Assignment and Assumption Agreement would not have "completely altered" this Court's prior rulings.

C. *Fed. R. Civ.App. 60(b)(6)*

The Defendant also moves for relief pursuant to Fed.R.Civ.P. 60(b)(6). Under this "catch-all" provision of Rule 60(b), the Court may grant relief for "any other reason justifying relief from the operation of the judgment." *Id.* Although there is some controversy on the issue, we recognize that the provisions of Rule 60(b) identifying specific grounds for relief, *see*Fed.R.Civ.P. 60(b)(1)-(5), and the provision authorizing relief for "any other reason justifying relief," *see*Fed.R.Civ.P. 60(b)(6), are "not mutually exclusive"; thus, where, as here, a motion is timely filed under any of the clauses of

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:07-cv-04137-BSJ-GWG   Document 87-6   Filed 09/09/2008   Page 10 of 10

Not Reported in F.Supp.   Page 10
Not Reported in F.Supp., 1998 WL 43125 (S.D.N.Y.)

Rule 60(b), the Court will "not be bound by a strict categorization of the particular claims, and may appropriately aggregate claims under the various provisions." 11 Wright et al., supra, § 2864, at 355 n. 12.

*10 Rule 60(b)(6), however, is "not a *carte blanche* to cast adrift from fixed moorings ... guided only by the necessarily variant consciences of different judges." Rinieri v. News Synd. Co., 385 F.2d 818, 822 (2d Cir.1967). The Court has examined the relevant case law and, having concluded that no "extraordinary circumstances" are present here, we are convinced that the Defendant "has failed to bring itself within the 'extremely meagre' scope, as Judge L. Hand referred to it, of Rule 60(b)(6)." *Id.*(quoting United States v. Karahalias, 205 F.2d 331, 333 (2d Cir.1953)); *cf.* 11 Wright et al., supra, § 2864, at 355 (courts deny relief where party or counsel "is deemed to have been negligent in keeping apprised of the state of the case"). Accordingly, the Defendant's motion is denied on this ground as well.

D. *Public Policy*

Finally, the Court notes that considerable resources have been expended in pursuit of this litigation. The parties have engaged in extensive motion practice since the original Complaint was filed on August 11, 1993, and this represents the fourth opinion that the Court has written in this matter. *See supra* note 3.

As a matter of sound public policy, of course, "[t]here must be an end to litigation someday." Ackermann v. United States, 340 U.S. 193, 198, 71 S.Ct. 209, 95 L.Ed. 207 (1950). Under the facts of this case, the Court concludes that the judicial interest in finality is a consideration that weighs against the Defendant's position. *Cf.* Frankel, 939 F.Supp. at 1127 (holding that "new" financial reports did not constitute newly discovered evidence, where all material facts in the new reports were in existence at the time of the original litigation). Accordingly, having already denied the Defendant's motion after finding that our prior rulings were not unjust, even in light of the purportedly new evidence, the Court further finds that considerations of public policy, to the extent that they are applicable in this case, do not mandate a different result.

CONCLUSION

For the foregoing reasons, the Defendant's motion is denied.

S.D.N.Y.,1998.
MTB Bank v. Federal Armored Exp., Inc.
Not Reported in F.Supp., 1998 WL 43125 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.